**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 17 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| DEANDRE ARNOLD | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| | ) 1:23-CV-2219 |
| | ) |
| | ) |
| BRIAN KEMP et al. | ) EMERGENCY RELIEF REQUESTED |
| Defendants. | ) |

## VERIFIED DECLARATION AND CLAIM

Plaintiff says, publishes and declares here and now that Georgia's agencies and

institutions by and through her officials, officers and agents, acting under color of law have

knowingly and persistently denied and withheld from the Plaintiff an obligation and duty of

protection of the laws as to his person and liberty, a reciprocating duty for Plaintiff's obligation

of obedience, although within their power to do so. Plaintiff says that by and through Georgia's

agents, officers and officials, multiple sworn Formal complaints showing probable cause

received by her law enforcement and agencies with prosecutorial powers alleging acts of state

created danger via affirmative acts of her state officials have been deliberately and persistently

ignored, that Plaintiff's attempts at judicial relief through her state and appellate courts via

Georgia's judicial branch has turned entirely against the Plaintiff by delaying the due course of

those remedies, frustrating or denying him meritorious redress, relief and a proper remedy, that

Plaintiff attempts at judicial relief in her federal district to remove said state created danger or to

make him less vulnerable to the danger turned entirely against the Plaintiff by delaying the due

course of those remedies, frustrating or denying him meritorious redress, relief and a proper

remedy, that her Judicial Qualifications Commission, deliberately refused to investigate, if true, violations of the Judicial Code of Conduct submitted by the Plaintiff, that her State Inspector General's Office, deliberately refused to investigate, if true, probable cause of corruption in her executive branch submitted by the Plaintiff. Plaintiff claims & declares that his grievances were confronted by state and federal actors in a systematic pattern, scheme or manifest conduct of prejudicial bias in lieu of impartialness, denial of protection in lieu of protection, deliberate or recklessness foreclosure or unlawful delay of meritorious remedies in lieu of a due or adequate remedy and that each of these grievances involved chief judge Brian Amero of her state and that the pattern and scheme being so far from the duties, obligations and oaths of the wrongdoers and manifestly incompatible with the law, that a single plan and general conspiratorial objective to frustrate or deny Arnold of due and proper redress, relief, remedy vindication and protection of the laws when such grievances involved chief judge Brian Amero was patently obvious and concerted. Plaintiff's alleges that if the sworn formal and public corruption complaints alleging acts of state created danger had been promptly investigated, in good faith, pursuant to the duties and obligations owed to Plaintiff, he would be less vulnerable severe emotional distress. Plaintiff declares that he has repeatedly plead for protection by her state and have been answered by repeated injury marked by every act which defines Tyrannical activity in the public offices of Georgia. Plaintiff publishes and declares that by and through her agents, as applied to Plaintiff, that Georgia's institutions and agencies have been usurped and managed as an instrument of oppression and her law enforcement and prosecuting agencies has refused to perform a vital duty they swore to undertake in denying Plaintiff protection and has thus caused a fundamental breach in the social compact or contract in which the Plaintiff is a beneficiary, and such breach, Plaintiff declares, annuls him of all & any obligations of obedience to her laws until such breach is cured.

1.     Plaintiff *declares,* claims and shows that there was a general conspiratorial objective, shared motives or agreement to frustrate, delay or deny him a *due* & proper remedy, redress, physiological vindication, adequate and required relief and protection of the laws in a pattern and scheme of prejudicial bias in lieu of impartialness, denial of protection in lieu of protection, deliberate or reckless foreclosure or unlawful delay or frustration of meritorious relief or a proper remedy in lieu of due or adequate relief and redress and that these objective were met by this pattern and scheme when it involved or concerned Georgia Judge Brian Amero and the objective involved delaying, denying, preventing or frustrating Plaintiff's due and proper redress, a proper remedy, relief, and psychological vindication in the protection of the laws if there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero in such relief thereof his grievances and in furtherance thereof engaged in such pattern & scheme, with malice or recklessness.

2.     At all times herein, the Plaintiff does not concern himself with any mere transient or light causes that delayed, denied or frustrated his due remedy or vindications in good faith, but rather, persistent acts of the same being manifestly incompatible with the law and a manifest injustice to Plaintiff and that measured against the experience, duties and obligations of Defendants and all of the surrounding circumstances, bad faith was apparent and obvious.

3.     The Plaintiff declares and states that in conjunction with the acts above, federal actors in in the United States Northern District Federal Court, did engage, join, combine or participate in this general conspiratorial objective, shared motives or agreement by strategically utilizing skillful judicial stratagem and experience to delay, deny, prevent or frustrate Plaintiff's due and proper redress, relief, vindication in protection of the laws if there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge

Brian Amero and in furtherance thereof engaged in the same pattern and scheme or conduct of such pattern and scheme in concert with Georgia state actors to frustrate, delay, or deny Arnold of said due and proper redress, vindication and protection of the laws.

4.    Plaintiff claims and declares that as to certain Defendants as more fully claimed below, their individual actions in the main conspiratorial objective essentially operated as a systematic cover-up, concealment, delay of, deep-sixing, frustration or denying of any grievances which involved or were related to Georgia judge Brian Amero if there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero in Plaintiff's relief thereof his grievances.

5.    Moreover, Plaintiff's declares and claims that he in good faith and with clean hands sought to redress what he claims was a fundamental breach of a social compact or contract in refusing to investigate allegations of state created danger and at every turn, whether his grievances were through Georgia's executive branch related to such state created danger or which would prove such a danger "judicially" in Georgia's federal district, a regime of actors in both sovereign states engaged in a pattern, scheme or conduct in utilizing tax-payer funds as an instrument of oppression in denying their undertaking they owed to Plaintiff according to their legal duties and obligations to deny him meritorious relief, remedy and redress.

6.    Plaintiff declares that sworn *formal complaints* not only showed probable cause of state created danger but alleged an inference of a plot to assassinate the Plaintiff in the name of his child, in his alleging state actors "[F]eared liabilty in official proceedings...if they did arrest the [Plaintiff]." This inference being shown because liabilty for the illicit acts to imprison the Plaintiff would not end with Plaintiff's arrest and the status of the state actors who received the sworn formal complaints were prudent and experienced enough to know that Plaintiff

showed a heightened risk of state created danger that was not *only* tailored to unlawful imprisonment into prisons, necessarily dangerous places, but the suspicious efforts to do so.

7.    Plaintiff says the failure to investigate, arrest, indict or correspond with the Plaintiff when he made good faith attempts to alert the state of corruption and state created danger that would affect the public trust, integrity and confidence in the administration of justice **caused overwhelming distress to the Plaintiff** – for he waved his flag alerting that the British were coming, but when state danger reached the shores of Plaintiff's liberty, they ignored it.

8.    Plaintiff requests immediate protection of the laws under the United States Constitution and due to the severity of the acts alleged herein, Plaintiff requests that this court be amendable to Plaintiff and bypass any procedural bars as it would work a manifest injustice to deny relief under the circumstances where a threat to life has been alleged – and to immediately use its Federal hand to cure a breach of the social compact or contract and bring justice within the borders of the State of Georgia for Georgia's *fundamental* refusals to do so.

9.    To prove this declaration *and* his claims, let these sworn facts under penalty of perjury be submitted to a candid world *and* this court, to expose this Tyranny and all of its Oppression.

## JURISDICTION

10.   This action arises under 28 U.S.C. § 1331, 28 U.S.C. § 1367, 28 U.S.C. 1343, 28 U.S.C. § 2201, 42 U.S.C. § 1983.

11.   Jurisdiction is proper under 28 U.S.C. § 1391(a) because at least one of the Defendants are residents of the Federal Northern district and the transactions or events at issue herein did occur within said Federal district.

## PARTIES

12.     Plaintiff, Deandre Arnold, brings this claim and declaration against the Defendants and is
a Georgia state citizen.

13.     Defendant Brian Kemp, Governor of the State of Georgia, is the head executive official
in the State of Georgia and principal of the State of Georgia, in charge and control of all of
the executive branches within the State of Georgia, sued in his individual capacity.

14.     Defendant Chris Carr, Attorney General of the State of Georgia, is the head Attorney and
Prosecutorial official in the State of Georgia, sued in his individual capacity.

15.     Defendant Reginald Scandrett, duly elected Sheriff of Henry County Georgia, in charge
and control of the Henry County Sheriff's office, sued in his individual capacity.

16.     Defendant Darius Pattillo, duly elected District Attorney for Henry County Georgia, is in
charge and control of the Henry County District Attorney's office, is sued in his individual
capacity.

17.     Defendant Stephen Dillard, Appellate Court Judge or Justice of the Georgia Court of
Appeals, sued in his individual capacity.

18.     Defendant Todd Markle, Appellate Court Judge or Justice of the Georgia Court of
Appeals, sued in his individual capacity.

19.     Defendant Amanda Mercier, Appellate Court Judge or Justice of the Georgia Court of
Appeals, sued in her individual capacity.

20.     Defendant Tabatha Cooper, Appellate Court Clerk for the Georgia Court of Appeals,
sued in her individual capacity.

21.     Defendant Charles Boring, Director of the Judicial Qualifications Commission, is the
former director of the Judicial Qualifications Commission, sued in his individual capacity.

22.     Defendant Judicial Qualifications Commission ("JQC"), is an institution in the State of
        Georgia charged with investigating judicial misconduct complaints of Georgia's Judges, sued
        in her by and through their acting Director Courtney Veal, in her official capacity.

23.     Defendant Nigel Lance, Interim Director for the Georgia's Inspector General's office and
        is in charge and control of the office's of Inspector General and all of its employees, is sued
        in his official/individual capacity.

24.     Defendant Tonette Spencer, is an employee of the Inspector General's office and is
        gainfully employed with the Georgia State Inspector General's office, is sued in her
        official/individual capacity.

25.     Defendant Belinda Edwards, Fulton County Superior Court Judge, is sued in her
        individual capacity.

26.     Defendant Sarah E. Geraghty, Judge for the Northern District Federal court, is sued in her
        individual capacity.

## GEORGIA CONSTITUTION AND THE UNITED STATES CONSTITUTION GENERALLY

27.     The State of Georgia recognized that "Protection to person and property is the duty of
        Government; and a Government which knowingly and persistently denies, or withholds from
        the governed such protection, when within its power, releases them from the obligation of
        obedience." *See Georgia constitution 1877.*

28.     The People of the State of Georgia are entitled to a civilized society.

29.     The People of the State of Georgia are also entitled to a society free from "*Government*
        Corruption, Abuse, Oppression and Tyranny."

30.     The Plaintiff is a Georgia state citizen and one of the people thereof.

31.     The Plaintiff is a citizen of the United States of America.

32.     As such a citizen, every Defendant herein owed and continues to owe to Plaintiff a legal

duty and obligation in the protection of the laws, to his person and liberties and to protect

against any acts of state created danger unlawfully created by any of Georgia's officials,

agents or officers – and a Government which knowingly and persistently denies or withholds

from the Plaintiff such protection when within its power, releases him from the obligation of

obedience to Georgia's laws.

33.     John Locke's Second Treatise, Chapter VIII. Sec. 97;

> "[A]nd thus every man, by consenting with others to make one body politic under one
> government, puts himself under an obligation, to every one of that society, to submit to
> the determination of the majority, and to be concluded by it; or else this original compact,
> whereby he with others incorporates into one society, would signify <u>nothing</u>."

34.     On July 4th, 1776, in a unanimous Declaration of Independence it was said;

> "[W]e hold these truths to be self-evident, that all men are created equal, that they are
> endowed by their creator with certain unalienable Rights, that among these are Life,
> Liberty and the pursuit of Happiness. **That to secure these rights, Governments are
> instituted among Men**, deriving their just powers from the consent of the governed."

35.     The protection of Plaintiff's unalienable and/or fundamental rights under Georgia's

constitution is one of the privileges and benefit of a governmental *society. See John Locke's*

*Second Treatise.*

36.     Following the American Civil War and the ensuing success by the Union, soon followed

the introduction and ratification of the 14th Amendment providing protection for all who was

previously without that protection under the constitution. *<u>See Dred Scott v Sandford, 60 US</u>*

*<u>39319 How. 393 – Supreme Court.</u>*

37.     Under the 14th Amendment, ratified on July 9th, 1868, all citizens born and naturalized in

the United States are entitled to protection of the laws.

38.     Each Defendant herein took an oath to support and defend the United States Constitution.

39.     Each Defendant who took an office to support and defend the U.S. constitution and/or the
        Georgia Constitution is bound by contract with the beneficiaries of the State of Georgia's and
        United States Constitution as a result of said oath.

40.     The Plaintiff is a beneficiary of the "United States Constitution and Georgia constitution"
        – the social compact(s) or contract(s).

41.     The Georgia and the United States Constitution was erected for the benefit of the Plaintiff
        **to secure his rights**, liberties and person as a state citizen of Georgia & citizen of the United
        States.

42.     The protection of the Plaintiff's person, property and liberty under the laws of Georgia
        and its constitution by the state is one of the reciprocating duties of the State of Georgia in
        return for the Plaintiff's obligation of obedience to her (Georgia's) laws.

## GENERAL ALLEGATIONS AND REVELANT STATUTORY AUTHORITY

43.     The State of Georgia and each Defendant herein has a legal duty and legal obligation to
        provide protection of the laws and protect its citizens from state created danger arising from
        the unlawful affirmative acts of Georgia state actors thereof – the State of Georgia.

44.     Each Defendant herein is bound by this legal duty and obligation by contract as a result
        of their oath to support and defend the United States Constitution – erected for the benefit of
        the Plaintiff and Georgia state citizens to *secure* their rights.

45.     Each Defendant were bound by their oaths at the time of each of the acts declared in this
        claim and declaration and at all times herein this claim and declaration are still bound.

46.     Because of the knowing and persistent denials in refusing to provide Plaintiff protection
        to person and liberty – a duty within the social compact – Plaintiff alleges that his

performance, any legal obligation and any duty to remain obedient to Georgia's laws is terminated or annulled – until such breach is cured or remedied.

47.     The legal duties and obligations of each Defendant herein included providing protection of the laws to the Plaintiff, a proper remedy, psychological vindication, adequate relief or a proper redress to his petitions or any grievances on paper brought to their attention.

48.     Each Defendant herein did knowingly, with malice or reckless indifference to the rights of the Plaintiff did refuse to provide Plaintiff a proper remedy, psychological vindication, adequate relief or proper redress to his meritorious grievances brought to their attention and did so without any justification in the law in their failure to do so and such failures to do so were manifestly incompatible with the law and/or a manifest injustice to Plaintiff.

49.     The People of the State of Georgia did delegate their authority to their state legislatures to make, procure, draft, vote on, sponsor, write or pass laws locally and federally.

50.     The Plaintiff exhibited good faith when attempting to utilize such protection of the laws provided by his State's legislature for redress, relief and a proper remedy to reverse, remove or make himself less vulnerable to the alleged acts of state created danger by Georgia state in which he alleges caused a fundamental breach of the social compact or contract actors and has been unsuccessful due to the denials, delay or frustration of a proper remedy, psychological vindication, adequate relief or proper redress to his meritorious grievances.

51.     Defendant Carr, as Attorney General is the head of the Department of Law and the chief legal officer of the state and "is authorized to prosecute in the criminal courts of this state any *official*, person, firm or corporation which violates criminal statute while dealing with or for the State of Georgia and is authorized to call upon the district attorney or the prosecuting officer of any state court to assist or conduct such prosecution." **O.C.G.A. § 45-15-10 et seq.**

52.     Moreover, while Georgia State Attorney General and acting as chief legal officer of the
state of Georgia, he is authorized to "institute and conduct investigations at any time into the
affairs of the state, any of its Departments or into the affairs of any person and to perform
such other services as shall be required of him by law." **See O.C.G.A. § 45-15-17 et seq,**
**O.C.G.A. § 45-15-3 et seq.**

53.     Defendant Kemp as Governor of Georgia "may at any time direct the Attorney General to
conduct an investigation into the affairs of any department of the state or into the official
conduct of any state official or employee dealing with the state." See **O.C.G.A. § 45-15-18 et**
**seq.**

54.     Defendant Kemp has a duty as Governor to see that the laws of this state are executed
and when the facts warrant declare by proclamation "that because... a danger exists to... any
citizen... of the state and that the peace and tranquility of the state... or political subdivision
thereof is threatened... an emergency, with reference to said threats and danger, exists." See
**O.C.G.A. § 45-12-27 et seq., O.C.G.A. § 45-12-30 et seq.**

55.     Defendant Scandrett has a duty as Sheriff of Henry County "to execute and return the
processes and orders of the courts and, to perform such other duties as are or may be imposed
by law or which necessarily appertain to his or her office." See **O.C.G.A. § 15-16-10 et seq**.

56.     Defendant Pattillo has a duty as District Attorney of Henry County "to draw up all
indictments or presentments, when requested by the grand jury, to prosecute all indictable
offenses, to advise law enforcement concerning the sufficiency of evidence, warrants, and
similar matters relating to the investigation and prosecution of criminal offenses and... to
perform such other duties as are or may be required by law or which necessarily appertain to
their office." **See O.C.G.A. § 15-16-6 et seq**.

57.    Under the United States and Georgia Constitution, the Governor, the Attorney General, the Henry County Sheriff and Henry County District Attorney has a legal duty and obligation to provide services and protection to the Plaintiff to protect him from acts of state created danger or which make him more vulnerable to danger created unlawfully by Georgia state officials, officers or agents – public servants.

58.    Defendant Kemp, Carr, Scandrett and Pattillo cannot knowingly and persistently disregard, withhold, deny nor refuse to arrest, indict, criminally refer or investigate sworn formal Complaints submitted under oath and under penalty of perjury *showing* probable cause that acts of state created danger has been or is about to committed unlawfully by Georgia state officials within their jurisdiction against a Georgia Citizen.

59.    Defendant Kemp, Carr, Scandrett and Pattillo having actual or constructive knowledge of sworn formal complaints by mail receipt showing probable cause of state created danger that was being committed or was about to be committed did without justification, knowingly & persistently, with malice or reckless disregard for the rights of the Plaintiff did acquiesced, ignore, withheld, denied, refused to arrest, investigate, criminally refer, indict or file warrants or procure the same against state officials who based on *probable cause* as shown in Plaintiff's multiple sworn formal complaints were committing or were about to commit unlawful acts of state created danger in their jurisdiction against Georgia and U.S. Citizen.

60.    Defendant Dillard, Markle and Mercier hereinafter "Defendant Appellate Justices", did with bias and prejudice, malice or reckless disregard for the rights of the Plaintiff, and in conspiracy, did knowingly and persistently, without justification, disregard controlling authority, the law & facts & refused to provide a proper remedy, redress, vindication & relief to his meritorious grievances during his appeal of judgements of Georgia judge Brian Amero.

61.     Defendant Boring, Georgia's former Judicial JQC Director did without justification, when reviewing Plaintiff's Judicial Misconduct complaint against Georgia judge Brian Amero, disregarded the judicial code of conduct, the rules and the law applying to Georgia judges and did refuse to launch a preliminary investigation into Georgia Judge Brian Amero when reviewing Plaintiff's judicial misconduct complaint alleging allegations, if true, were violations of the judicial code of conduct requiring a preliminary investigation, in a pattern, practice or policy of refusing to investigate judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions and was the motivating and contributing factor to the Plaintiff's and the publics injury in breach of his obligations & duties owed to Plaintiff in the social compact or contract.

62.     The State of Georgia by and through Defendant Judicial Qualifications Commission ("JQC") did and continues to have a pattern, practice or policy of refusing to investigate judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions and is the motivating and contributing factor to the Plaintiff's alleged general injury in breach of their obligations & duties owed to Plaintiff & the general public in the social compact or contract.

63.     The State of Georgia, by and through Defendant Cooper, Georgia's Appellate court clerk, did, and in conspiracy, with malice or reckless disregard and indifference for the rights of the Plaintiff, did without justification in the law, refuse to perform her ministerial duties and file on demand, a Motion for reconsideration to an Order denying disqualification (which Order defended against the allegations of a recusal) of Defendant Appellate Justices and did so, in breach of her legal duty's and obligation owed to Plaintiff.

64.    Defendant Spencer and Defendant Lange, with malice or reckless disregard and
indifference to the rights of the Plaintiff, and in conspiracy, and without justification in the
law, continuously and persistently refused do any act to cause an investigation to be launched
into probable cause of corruption and abuse within Georgia's executive branch arising from a
conspiracy to commit false imprisonment involving the Department of Humans Services and
Georgia judge Brian Amero which if true, required an investigation required an investigation
and report to Governor & did so in breach of their legal duty's & obligation owed to Plaintiff.

65.    Defendant Edwards, Fulton County Superior Court Judge, did without providential cause,
with bias and prejudice, with malice or reckless disregard and indifference to the rights of the
Plaintiff and, in conspiracy, continuously & persistently, avoided and delayed the due course
of law by delaying or frustrating Plaintiff's proper remedy, redress, relief and vindication by
failing to make a ruling on Plaintiff's Open records suit alleging the Department of Human
Services failed to respond to open records request for "any and all action taken on
[Plaintiff's] Child support case for a period of 4 months) for more than 80 days pass the 90
day requirement in breach of her legal duty's and obligation owed to Plaintiff.

66.    Defendant Geraghty, with bias and prejudice, malice or reckless disregard for the rights
of the Plaintiff, did frustrate, delay or deny Arnold of a due, proper & adequate remedy,
redress, physiological vindication, adequate, minimum and required relief and protection of
the laws when acting as presiding Judge in Plaintiff's Writ of Habeas proceeding case no.
1:21-cv-04536-SEG by a delaying a ruling on Plaintiff's COA and his Motion to stay and
subsequently, recklessly, arbitrarily and erroneously denying his COA and Motion to stay
and his Motion to file electronically in a separate case, case no. 1:21-cv-04970-SEG knowing
or having reason to know to do so was manifestly incompatible in breach of her duties.

67.  Plaintiff alleges that at all times herein the Defendants failed to perform in honor, in good faith and acted in bad faith, contrary to their duties and obligations owed to Plaintiff with malice or reckless disregard for the rights of the Plaintiff knowing that it was contrary to the security of the rights of the Plaintiff that the Defendants swore to protect and defend.

## FACTUAL ALLEGATIONS

68.  In the year of 2022 and in 2023 the offices of Attorney General, the Henry County District Attorney and Sheriff's Office and the Governor of Georgia received multiple sworn Formal Complaints alleging probable cause of criminal offenses and that the Plaintiff's "life was in danger" and that not on perturbation but established facts he feared an assassination attempt on his life arising from acts of state created danger by Georgia state public officials.

## ATTORNEY GENERAL CHRIS CARR, GOVERNOR BRIAN KEMP, SHERIFF SCANDRETT, DISTRICT ATTORNEY PATILLIO[1]

69.  The Plaintiff hereby incorporates all exhibits attached to this claim and declaration and as to his sworn formal complaint(s), states such complaint is attached solely for the purposes of showing *probable cause* within this claim and declaration and states that "[A] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Babalola v. HSBC BANK, USA, NA, 751 SE 2d 545 – Ga. App. 750 (2013)*.

70.  At all times mentioning "*Sworn* Formal Complaints", these complaints alleged state created danger under oath & penalty of perjury, generally alleging **probable cause** that Brian Amero conspired with agents of Division of Child Support Services – Department of Human Services, mainly Barbara Briley (Assistant District Attorney for Henry County Georgia) to knowingly falsely imprison the Plaintiff and in the furtherance thereof, utilized a 2019

---

[1] This claim and declaration is separated in sections and by title of each Defendant(s) and their acts.

registration and enforcement child support order that they knew was lacking in lawful or legal authority including Plaintiff's modification of child custody case to falsify support records to effectuate such an imprisonment.

71.     The sworn formal Complaints was necessary to alert the state of Georgia's law enforcement and prosecutorial authorities with jurisdiction over such alleged crimes of *criminal offenses* that had been committed by Georgia state officials, officers or agents or were about to committed and that the alleged acts affected the safety and security of the Plaintiff, the public trust, public confidence and the integrity in the judicial system.

72.     At all times herein, Exhibit A was received by the Attorney General and the Governor.[2]

73.     The Plaintiff less recent sworn complaints was mailed to the Attorney General & GA Governor in 2022 based on the failures and/or reasonable belief that he would not secure protection from local law enforcement and local prosecutors in or around August of 2022.

74.     The Plaintiff followed up with his sworn formal complaint(s) on or around January of 2023 by sending notice of probable cause to Defendant Kemp, Carr, Pattillo and Scandrett of violators of the criminal laws committed by state officials as alleged therein the Complaints.

75.     The sworn formal complaints received by the offices of Attorney General, addressed to Defendant Carr were received on the dates below and are identified as follows;

   1. **1/20/2023 | *Sworn* Formal Complaint – 5 pages (Exhibit B)**
   2. **10/27/2022| Sworn Formal Complaint – 5 separate pages and 37 page initial sworn complaint (Exhibit A)**

---

[2] Plaintiff also mailed criminal complaints to the Governor and the Attorney General that reached the Attorney General's office on January 26th, 2022, and the Governor's Office on January 29th, 2022, that were interrelated to the general claims alleged against Brian Amero stated in no. 69 including Exhibit A of this Complaint of a conspiracy to commit false imprisonment and falsification of support records to accomplish said goal. The Governor's Office also received a public corruption complaint alleging probable cause of the exact similar allegations alleged in Exhibit A against Georgia judge Brian Amero and Barbara Briley from the Offices of Senator John Ossoff which was sent via email from Staff Assistant John Aldrich of the Senator's office on 8/22/2022 on behalf of the Plaintiff.

76.    The sworn formal complaints received by the Governor of the State of Georgia,

addressed to Defendant Kemp were received on the dates below are identified as follows;

   1. **1/20/2023 | Sworn Formal Complaint – 8 pages (Exhibit C)**
   2. **8/18/2022 | Sworn Formal Complaint – 37 pages (Exhibit A)**

77.    The sworn formal complaints received by the Henry County Sheriff's Office were

received on the dates below and are identified as follows;

   1. **1/20/2023 | Sworn Formal Complaint – 8 pages (Exhibit D)**
   2. **2/11/2022 | Criminal Complaint. (Not attached)**

78.    The Henry County Sheriff's did receive criminal corruption complaints via email that

were interrelated to the general claims alleging probable cause against Brian Amero as stated

in Exhibit A of a conspiracy to commit false imprisonment and the falsification of support

records to accomplish such a goal.

79.    Plaintiff sent a John Doe captain (name currently unknown at this time) (An African

American individual who on information and belief wore reading glasses in it that his picture

image was on the website around such time Plaintiff contacted the Sheriff's Office – now

been removed) who told Plaintiff to send his public corruption or criminal complaint(s) to

Dnewton@co.henry.ga.us on or around February 3rd, 2022 so that he may review them.

80.    Plaintiff was told by this John Doe Captain that his claims was a civil matter and that he

should seek legal counsel.

81.    Plaintiff reiterated that his concerns were criminal in nature to no avail to said Captain.

82.    Plaintiff is not aware of whether this Captain submitted the specific criminal public

corruption Complaint(s) emailed to him directly to the Sheriff directly at such time.

83.    The Sworn Formal Complaints received by the Henry County District Attorney's office

were received on the dates below and are identified as follows;

1. **3/20/2023 | Sworn Formal Complaint – 9 pages (Exhibit E)[3]**

84.     In addition to the receipt of the formal Complaint received by the District Attorney's
        office, his office has also received public corruption complaints via email related to or
        concerning acts of falsification of records by Georgia Judge Brian Amero.

85.     Plaintiff sent Terrence Wise an email on or around February of 2022 alleging threats to
        safety and security concerning and involving acts of Brian Amero.

86.     Plaintiff learned from Terrence Wise on or around February of 2022 via telephonic
        communication that his matters appeared to be civil and requested him to forward his claims
        to the Henry County Sheriff's Office.

87.     Plaintiff also learned from Ms. Venuto (Chief Assistant District Attorney) via telephonic
        communication on or around February of 2022 that the Henry County D.A. could not
        investigate his claims because of an appearance of impropriety – because the Plaintiff had
        named Henry County officials and the nature of his claims at Ms. Venuto's request so that
        she could ascertain, the nature of his claims and the individuals involved.

88.     When Plaintiff asked Ms. Venuto to refer the matter to an agency of the state to
        investigate or to the Attorney General to investigate, the Plaintiff was referred to the
        Attorney General of Georgia who failed, withheld or refused to investigate or refer.

89.     At all times mentioning the "Sworn Formal Complaint(s)" *received in 2023* by the offices
        of Offices of the Attorney General, the Governor's office, the Henry County Sherriff and
        District Attorney's office for Henry County, it stated the following within such complaint;

        • "These Affirmative acts entails not only have these state officials knowingly filed an
          unlawful action for the purposes of falsely imprisoning the [Plaintiff] but has

---

[3] The Sworn Formal complaints received by the District Attorney on 3/20/2023, was also restricted to
Darius Pattillo.

effectuated said affirmative act for the purposes of **placing my life in danger or making me vulnerable to danger and that danger is ongoing.**"

**i.** **Allegations in Plaintiff's sworn formal Complaint(s) showing Probable Cause of a Conspiracy to commit false imprisonment – threat to Plaintiff's safety and security.**

90.    At all times mentioning the "Sworn Formal Complaint(s)" received in *2023* by the offices of Offices of the Attorney General, the Governor's office, the Sherriff and District Attorney's office for Henry County, Plaintiff stated the following in support of probable cause of a conspiracy to commit false imprisonment, and actual probable cause was shown, to wit;

- "That Brian Amero, Henry County Superior court Judge and Barbara Briley, ("Briley") Assistant District Attorney for the Division of Child Support Services and possibly others **conspired, combined,** or agreed on or around December 1st, 2021 in the County of Henry **to falsely imprison Plaintiff under an unenforceable registered support and enforcement order** ("2019 registered order") **entered on November 18th, 2019 that he and others knew was unlawful.**"

- "**In September of 2019**, in the Henry County Superior Court, Judge Brian Amero presiding, the Department of Human Services ("**Department**") by and through their assistant District Attorney Barbara Briley **did bring an enforcement action** against the Affiant **and sought to register an out of state Child Support order** which originated in the State of Florida to do so. (**case no. SUCV-2019-2651**) Complainant ("Affiant") was served and within 20 days filed a special appearance to be heard and other documents. **A hearing on the matter would eventually occur** in the Henry County Superior Court **on November 18th, 2019, without the presence, appearance or sufficient or any notice to Complainant of the hearing** in such location **and the court did register the out-of-state Florida support** order in the Henry County Superior court **without hearing Affiant's challenges in Affiants** *request to be heard* or **without having his <u>required</u> appearance in the hearing.** *On the face of the record*, it does not show that the Affiant appeared at said hearing on November 18th, 2019 **nor does it show that any notice of said hearing was placed on the record in said court.** Accordingly, on November 18th, 2019, **the registration and enforcement support order was confirmed** ("2019 support order") (without the presence of Affiant) **by Brian Amero** without Affiant's required appearance and **without a hearing on [Plaintiff's]** *request to be heard.*"

- **"That in furtherance of the conspiracy** [to falsely imprison] **Amero falsified a Child Support Addendum** ("Addendum") in Plaintiff's modification of child custody **case no. SUCV-2021-0700** in which Affiant was a Defendant, **by falsely writing** therein said Addendum **that the action was a "modification" action** and that "the parties agree that an income deduction order is not immediately necessary" **although the parties in said action never filed a Petition to Modify Child Support** and never stated that an income deduction order ("IDO") was not immediately necessary and Amero sometime **thereafter** solicited or **conspired with, Barbara Briley who** in the furtherance thereof **filed a contempt action** against Plaintiff in December of 2021 **to accomplish the goal of imprisonment** and showed that Amero and Briley both **knew the 2019 registered order was lacking in lawful enforcement authority by** "agreements" or communications which could be inferred between them that showed **Briley requested to enter an IDO** in the December 2021 contempt action less than **two (2) months after Amero fabricated** the Support Addendum which Addendum falsely stated that **the parties agree that no IDO was immediately necessary and by Briley's omitting of $8,097.67 of alleged arrearages** in the December 2021 contempt action which arrearages were **confirmed in the 2019 registered order** and that these facts showed probable cause that Briley deliberately omitted the arrearages from the 2019 registered order because she knew the 2019 registered order was unlawful and Brian Amero falsified the Support Addendum which stated "no income deduction order was immediately necessary" because he knew the prior 2019 IDO arising from the 2019 registered order was unlawful and attempted to make the contempt action appear distinct from the 2019 registered order by falsifying the Support Addendum to make it appear as if the prior 2019 IDO was obsolete as a result of the Support Addendum. **That the imprisonment of Plaintiff** under the 2019 registered order <u>**did not diminish the liability of these state actors**</u> and these facts <u>**support further inferences**</u> that Amero and Briley conspired to falsely imprison the Affiant knowing **that his life would be in danger** when they did so and/or **that he would be more vulnerable to danger to unlawful imprisonment in a proceeding filed in bad faith** under an action **that Amero is conveniently the presiding judge** and **Briley is representing the Department** and **both have an adverse interest in the successful outcome of Affiants challenge to the validity of the 2019 support order**. Further, that the collective affirmative acts of the state actors named **in his sworn formal complaints** consequently and unlawfully affected official proceedings in this state in which he seeks to redress grievances."

91.    Plaintiff believed and it was held that the only thing required to show probable cause is,

"[W]hether at that moment the facts and circumstances within their knowledge and of which

they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [state actors] had committed or was committing an offense."[4]

92.    As to the Sworn Formal Complaint received in *2023*, Probable cause was first shown in that the registered support order for enforcement was unlawful, in that in an **action to enforce and register an out of state Child Support order** by Barbara Briley in **case no. SUCV-2019-2651**, although Plaintiff within 20 days of being served filed a special appearance and a request to be heard, on November 18th, 2019, Georgia Judge Brian Amero confirmed the registration and enforcement support order without the ***required*** appearance of the Plaintiff at said hearing and according to Plaintiff's sworn formal complaint, "On the face of the record, it does not show… that any notice of said hearing was placed on the record in said court.[5]

93.    Further, probable cause was shown that Georgia judge Brian Amero and Barbara Briley **knew the registered and enforcement support order was unlawful** by their affirmative acts, in that **(1)** Barbara Briley did not include any of the alleged arrearages that was purportedly confirmed in the 2019 support enforcement order – *and that agreements and communication between the two could be inferred in that* – **(2)** Barbara Briley only requested that an "income deduction order" be entered two months after **(3)** Georgia Judge Brian Amero fabricated a Child Support Addendum in Plaintiff's modification of child custody proceedings – which Addendum falsely stated that the parties agree that no IDO was

---

[4] "[A]ffidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial." *Spinelli v. United States, 393 US 410 – Supreme Court (1969)* In addition, "Probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit." *United States v. Leon, 468 US 897 – Supreme Court (1984)*

[5] The Registered Support & enforcement order is attached for the purposes of this complaint. (Exhibit Y)

immediately necessary – which request came well after the 2019 support order which order had already called for immediate income deduction.

94.     Probable cause was shown as alleged in the sworn formal complaints that the Georgia Judge Brian Amero falsified a child support Addendum, in that within the Child support Addendum it stated that the "action" was a modification [child support] action although as Plaintiff alleged, "no parties filed a modification of child support in such case".

95.     Each sworn formal complaint received in 2023 provided the name and telephonic number of a witness (The Plaintiff in the modification of custody proceedings at the time) to **confirm** that the parties never stated that an income deduction order was not immediately necessary.

96.     Moreover, the Plaintiff stated within the sworn formal complaints sent in 2023 that, "Jacob Davis of the Department of Human Services would willfully ignore his requests for "any and all records taken on [Plaintiff's] Child Support case which led to Affiant filing an Open records suit against the Department in the Fulton County Superior court" and provided the case number of such case which created a reasonable belief or inference and with any prompt investigation, that the Department ignored Plaintiff's Open records request at a time Plaintiff's contempt proceeding was pending in a possible attempt to secret the hearing in further support of probable cause of a plot to unlawfully imprison the Plaintiff.

97.     Further, as to the Sworn Formal Complaints sent to the Attorney General and the Governor in 2022 (Exhibit A), the Plaintiff indeed alleged that he "then gained cognizance that the failure to respond to these [open records requests] *emails* on information and belief were an attempt to secret the hearing from the [Plaintiff]... that had a pre-determined outcome **regardless of any of the legal reasons**..." [Exhibit A pg. 9]

98.     The Attorney General, the Governor, the Henry County District Attorney and Henry County's Sheriff's Office had the legal expertise and knowledge from the *2023 sworn formal complaints* to support a sufficient belief and inference in their minds and in any prudent persons mind acting in good faith would know that the conspirators would imprison or incarcerate the Plaintiff regardless of his legal reasons because probable cause shows that the contempt proceeding was *knowingly* filed unlawfully and, as the Plaintiff alleged, the conspirators feared liabilty in a *successful* outcome in those [contempt] proceedings.

99.     Moreover, as Plaintiff alleged in each sworn formal complaint sent in 2023 alleging probable cause, "Brian Amero and Barbara Briley both knew that the enforcement support order was unlawful and lacking in legal or lawful enforcement authority and **feared liabilty** in official proceedings in this state **if they did arrest the Affiant**."

100.    Further, the Attorney General & the Governor had actual or constructive knowledge of every single fact alleged in Plaintiff's *2022 Sworn Formal Complaint* (Exhibit A) via mail delivery *addressed* to the officials which showed more in depth additional facts supporting **probable cause and inferences** of a conspiracy of false imprisonment regardless of the legal reasons Plaintiff would have in said contempt proceedings being that on May 11th, 2022, "**The same date**… [Plaintiff] had requested from the Court of Appeals an **affidavit** that was tendered and submitted into evidence that **proved** [Plaintiff] maintained the **majority of child custody** in 2020 and the beginning of 2021 – … Barbara Briley filed a Rule Nisi seeking the Affiant's incarceration for non-payment of Child Support under the December 1st, 2021 contempt action – and had done so by addressing an address that the Affiant had changed in case no. SUCV-2021-0700 days prior and on information and belief may have not known that the address belonged to family members of the Affiant." **[Exhibit A pg. 7]**

101.   This is because the alleged tendered affidavit could have been used by the Plaintiff to either offset a substantial amount of purported arrearages or support amounts owed, owing to the fact that as Plaintiff alleged, "it proved he maintained the majority of child custody in 2021 and the beginning of 2021" and a parent maintaining the majority of the custody of the child could reasonably said reasons as a legal excuse to not have to pay support for the child.

102.   Thus, the Attorney General and the Governor had the legal expertise, experience and knowledge from the sworn facts in 2022 to further support the sworn facts alleged in 2023 of a sufficient belief and reasonable inferences that the conspirators would arrest the Plaintiff regardless of any legal reason based on facts in 2022 showing when Barbara Briley or others got wind of the Plaintiff's request for an affidavit that he swore was tendered in his custody proceedings showing he maintained the majority of the custody of his child in 2020 and the beginning of 2021, Barbara Briley not only immediately filed a Rule Nisi to incarcerate the Plaintiff under the contempt proceeding in the name of his child but sent the Rule Nisi to an address that the Affiant had changed in case no. SUCV-2021-0700 mere days prior.

103.   Nonetheless, probable cause was shown in each 2023 sworn formal complaint based on the prima facie actions of Barbara Briley and Georgia judge Brian Amero in that their goal was to *knowingly,* falsely imprison the Plaintiff *and* that that they "knew... or had knowledge that the enforcement contempt action was unlawful & unenforceable" from their attempts to separate the 2021 enforcement contempt proceeding from the previous enforcement actions purportedly previously ordered in the 2019 Order of Enforcement – by falsifying a support record in 2021 and falsely stating therein said falsified record that "the parties agree that no income deduction order was immediately necessary" and thereafter requesting that an income

deduction order be entered at the same time omitting arrearages that were both purportedly confirmed or previously ordered in the 2019 Order of Enforcement attached as Exhibit Y.

104.    The Attorney General, the Governor, the Henry County District Attorney and Henry County's Sheriff's Office had the legal expertise, experience and knowledge to **first** ascertain from the sworn facts a sufficient belief that the support order was indeed unlawful or enforceable and that Georgia judge Brian Amero and Barbara Briley and possibly others knew it was unlawful and unenforceable from the acts alleged above regarding Georgia judge Brian Amero and Barbara Briley or, could have easily criminally referred them to a prosecutorial state or investigate agency to determine the criminal actions (GBI or FBI).

105.    Continuing, the Attorney General, the Governor, the Henry County District Attorney and Henry County's Sheriff's Office had the legal expertise, experience and knowledge from the sworn facts that supported a sufficient belief that the registered enforcement support order was unlawful or unenforceable due to Plaintiff's allegation of the registration and enforcement order being confirmed without his "required" appearance although within 20 days of service of the registration and enforcement action *he requested to heard* and any prudent person would know in their positions that (1) the term "required" signified an appearance that was required by law and (2) that an appearance or right to be heard in such an registration and enforcement support action, if not every action is indeed required by law.[6]

106.    Moreover, the Attorney General, the Governor, the Henry County District Attorney and Henry County's Sheriff's Office had the legal expertise and knowledge from the *2023 sworn formal complaints* that supported a sufficient belief and inference in any prudent persons mind acting in good faith based on the sworn facts alleged in Plaintiff's formal complaints

---

[6] According to the *2023 sworn formal complaints* Plaintiff provided the case no. in which he filed a special appearance *to be heard within 20 days* of service of the registration and enforcement action.

that the Plaintiff was in danger or more vulnerable to danger for two reasons, the first being because the illicit acts support that the plot was to *knowingly* falsely imprison the Plaintiff and any arrest to place any person into prison is dangerous because, "[P]risons… [are] necessarily dangerous places." *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*

107.    The **second** reason being that Plaintiff's safety and security was further at risk as a result of the false imprisonment because, as the sworn facts alleged – "[The conspirators] knew that the enforcement support order was unlawful and lacking in legal or lawful enforcement authority and [conspired to imprison the Plaintiff] because [they] feared liabilty in official proceedings… if they did arrest the Affiant" – which facts support a further inference that Plaintiff's safety and security was at risk if he was imprisoned because the **liabilty** for the unlawful acts to falsely imprison the Plaintiff **would not end** with Plaintiff's arrest.

108.    Moreover, the Plaintiff alleged in each sworn formal complaint sent in *2023* that "the danger is ongoing… will not cease… or deter…" which supported a reasonable belief in any prudent persons mind acting in good faith that the conspiracy to falsely imprison the Plaintiff in such contempt proceeding was ongoing and any investigation would have showed that the contempt proceeding was pending and ongoing requiring immediate attention.

109.    However, after receiving Plaintiff's sworn formal complaints in *2023*, the offices of Defendant Carr, Defendant Kemp, Defendant Pattillo, and Defendant Scandrett neither corresponded or contacted to Plaintiff in regard to any allegation, to clarify any information or request further information on any issue nor did they investigate, criminally refer, arrest, indict, seek warrants or cause to be done any act suggesting in any way that they would consider or look into the claims swore to by the Plaintiff in his sworn formal complaints & it **is not the practice of either office to intercept or hinder mail in the name of the officials**.

110.     At all times herein, Defendant Carr, Defendant Kemp, Defendant Pattillo, and Defendant
Scandrett all had actual or constructive knowledge and notice of probable cause allegations
alleged above within the Plaintiff's sworn formal complaint(s) received in *2023* because each
mailing envelope housing said complaints mailed by plaintiff were addressed to each of them
personally, were not returned to sender, reached their exact mailing offices according to UPS
telephonically & its proof of receipt & is the practice of their offices to get their mail to them.

111.     At all times herein, Defendant Carr and Defendant Kemp had actual or constructive
knowledge or notice of the facts supporting probable cause of the criminal counts within the
Plaintiff's sworn formal complaint(s) received in *2022 (Exhibit A)* because each mailing
envelopes housing said complaints sent by plaintiff were individually addressed to them
personally and it is not the practice of their offices to intercept, hinder, delay or prevent any
mailings addressed to them individually from reaching their specific offices and persons.

112.     At all times herein, the public offices of Defendant Carr, Defendant Kemp, Defendant
Pattillo, and Defendant Scandrett failed to act promptly, in good faith and without delay to
investigate, arrest, indict or criminally refer any criminal related matter alleged in Plaintiff's
sworn formal complaints to any state or Federal investigative agencies in response to
Plaintiff's sworn formal complaints alleging and showing probable cause of a conspiracy to
commit false imprisonment although they had within their power the means to do so.

113.     At all times herein, the public offices of Defendant Carr, Defendant Kemp, Defendant
Pattillo, and Defendant Scandrett all had constructive or actual knowledge that the Plaintiff's
sworn formal complaints received in 2023 alleged and showed probable cause of acts to
falsely imprison the Plaintiff and knew and had reason to know that the facts alleged

supported inferences that Plaintiff was in "state created" danger and that such danger threatened his safety and security.[7]

114.    At no time whatsoever did the Offices of the Attorney General, the Governor's office, the Sherriff and District Attorney's office for Henry County announce any investigation into the Plaintiff's claims alleging state created danger and on information and belief has not been involved in any investigation of the state actors alleged in his sworn formal complaints because no investigate Federal or state agency or person has contacted any witnesses named in his sworn formal complaints, has not acknowledged receipt of Plaintiff's sworn formal complaints sent in 2023 and to the AG and Governor in 2022, has not contacted the Plaintiff for any additional information or clarifications, has not arrested any offender for the prima facie facts showing evidence of a crime that requires no broad investigation, and because the contempt proceeding is still pending and the officers who are alleged to be the criminal offenders are still providing services to the public at large and employed by the state.

115.    The Plaintiff provided the Attorney General, the Governor's office, the Henry County Sherriff and District Attorney's office his *sworn* formal corruption complaints as recent as of January of 2023 – and as to the Attorney General as early as October of 2022 and as to the Governor early as of August of 2022 to show that any notions that his claims were civil in nature were indeed criminal and threatened his safety and security as alleged above.

116.    The Offices of the Attorney General, the Governor's office, the Sherriff and District Attorney's office for Henry County having actual or constructive knowledge of Plaintiff's *sworn* formal complaints alleging threats to safety and security and state created danger did refuse, withheld and deny, knowingly and persistently, protection of the laws and services to

---

[7] "[P]risons... necessarily dangerous places." *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*.

the Plaintiff to protect him from the acts of state created danger or make him less vulnerable to danger and did so with actual malice or reckless disregard and indifference for the rights of the Plaintiff & continues to do so each day after their receipt of such sworn formal complaint.

117.   The failure of the offices of the Attorney General, the Governor, the Henry County Sherriff and District Attorney's office to charge, indict, arrest, investigate or criminally refer the offenders who were the culprits of threats to Plaintiff's safety and security and state created danger to falsely imprison him via probable cause alleged within the Plaintiff's sworn formal complaints made Plaintiff even more vulnerable to state created danger by their inaction *and*, in of itself created a new state created danger by their failure to intervene. [8]

118.   The Attorney General, the Governor's office, the Henry County Sherriff and District Attorney's office had and continues to have a legal undertaking, a duty and obligation under the Georgia constitution and United States Constitution and as a result of the social compact or contract between them and the Plaintiff to protect him and provide him protection services from state created danger arising from the acts of Georgia state officials, officers or agents.

119.   The Attorney General, the Governor's office, the Henry County Sherriff and District Attorney's office, with malice or reckless disregard for the rights of the Plaintiff did deny to Plaintiff protection of the laws in their refusing to investigate, arrest, charge, refer or indict state officials based on probable cause of a conspiracy to commit false imprisonment in breach of their legal duties and obligations owed to Plaintiff and in breach of the social compact or contract in violation of Plaintiff's substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution. *See Deshaney v Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*.

---

[8] "[O]ppression can result when a State **undertakes a vital duty and then ignores it**." *DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

i. *Intentional infliction of Emotional Distress from refusals to promptly arrest, indict, investigate or refer.*

120.    Because the offices of the Attorney General, the Governor, the Henry County Sherriff and District Attorney's office failed to initially, in good faith, promptly procure, charge, indict, investigate or arrest the alleged state criminal offenders named within the Plaintiff's sworn formal complaints who created such a danger to falsely imprison the Plaintiff, the Plaintiff has had to deal with severe emotional distress because of their failures to charge, indict, investigate, refer, arrest or procure the same of the alleged state criminal offenders and would be less vulnerable to severe emotional distress because of such danger because;

- Any arrest, indictment, investigation or charging of the alleged officials, officers or agents ("state actors") named in the criminal counts based on the showing of probable cause that the state actors knew of a **"unenforceable and unlawful registered support and enforcement order"** in a plot to *knowingly* falsely imprison Plaintiff as alleged in his Complaint – "under said order" – would have lessened the dangers of Plaintiff faced in arresting, charging, indicting or referring the state actors who utilized said order in bad faith to knowingly imprison the Plaintiff rendering him less vulnerable to danger and consequently less vulnerable to severe emotional distress.

- Any arrest, indictment, investigation or charging of the alleged state actor named in the criminal counts based on the showing of probable cause that a state actor falsified a **Child Support Addendum** in furtherance of a conspiracy to commit false imprisonment could be utilized by the Plaintiff in any proceeding to show that there has been sufficient findings that the Child Support Addendum is unlawful rendering him less vulnerable to danger and consequently less vulnerable to severe emotional distress.

- Any arrest, indictment, investigation or charging of the alleged state actors named in the criminal counts of all sworn formal complaints based on the showing of probable cause that state actors **engaged, aided or abetted, or furthered the conspiracy** to commit false imprisonment under a registered and enforcement support order that they knew was unlawful would have lessened the dangers Plaintiff faced in arresting, charging, indicting or referring the state actors who utilized said order in bad faith to knowingly imprison the Plaintiff rendering him less vulnerable to danger and consequently less vulnerable to severe emotional distress.

- Based on all of the above, it could be argued to a jury that an arrest, charge, indictment, investigation or criminal referral or even mere contact or simple acknowledgement of the receipt of the Plaintiff's sworn formal complaint as early as August of 2022 and recent as 2023 would have had some psychological advantages or benefits to the Plaintiff that would have lessened his anxiety, worry, or severe emotional distress concerning his allegations showing probable cause, dangers and threats to his safety and security in lieu of no contact at all or correspondence at all.

- Any arrest, indictment or charging of the alleged officials, officers or agents based on the probable cause of the counts named in Plaintiff's sworn formal complaint from such referral, investigation, arrest, charge or indictment by the creators of such danger could be argued to a jury that such acts, a prompt investigation or any correspondence within a reasonable amount of time showing consideration of his claims would have had some psychological advantages or benefits to the Plaintiff that lessened his anxiety, worry, or distress of such probable cause alleging such dangers.

121.  The Attorney General, Governor, Henry County Sheriff and District Attorney has a duty and obligation to provide Plaintiff protection of the laws, especially from acts of state created danger alleged in sworn formal complaints showing actual probable cause of unlawful acts to knowingly falsely imprison Plaintiff by Georgia state officers, officials or agents.

122.  The Plaintiff sent his sworn formal complaints with the knowledge that Defendant Kemp, Carr, Pattillo and Scandrett had such a legal duty and obligation to provide him protection of the laws and believed that they would in good faith do so, especially from acts of state created danger to falsely imprison him to propel him into prisons.

123.  However, the Plaintiff has had to suffer anxiety, mental and emotional distress to what has become a continuation of a denial or withholding, ignoring or looking the other way in the face of their duties and obligations to provide Plaintiff protection because the offices of Defendant Carr, Kemp, Scandrett and Pattillo has not even acknowledged, corresponded, considered or did any act that would place Plaintiff's mind-frame within the belief that their offices were going to abide by their duties and obligations and provide protection of the laws.

124.    The Plaintiff has had to suffer severe mental distress and severe mental anxiety in being in a constant state of fear that his state may have sanctioned or all agreed to ignore a showing of probable cause of a plot to falsely imprison the Plaintiff because of the persistent failures to acknowledge receipt or contact Plaintiff with regard to his sworn complaint nor investigate, arrest, indict or refer the matters nor do any act that showed any concern of his allegations and has affected the Plaintiff economically, socially and mentally.

125.    The Plaintiff has had to undergo severe mental distress, severe mental anxiety and severe mental anguish in the belief, that Georgia judge Brian Amero and the Department's plot to falsely "imprison" the Plaintiff may have been sanctioned or allowed or deliberately ignored because of a lawsuit he filed against the City of Hampton in December of 2021, which based on the allegations alleged therein such motions and filings in said lawsuit, could be argued that a ruling in his favor could substantially impact each of Georgia's local city treasuries or state treasury – and on information and belief, was one of the reasons of *their* failures to provide protection to the Plaintiff. (*Arnold v City of Hampton 1:21-cv-04970-SEG*)[9]

126.    This is because Plaintiff in fact mentioned this suit in his sworn formal complaint sent to the Governor and the Attorney General in which they had notice of. (Exhibit A pg. 4, 16)

127.    The acts of the Defendants mentioned herein this section has caused Plaintiff to believe that although he is entitled to such protection of the laws and to be free from state created

---

[9] The Plaintiff filed a Response in opposition on 2/2/2022 to Defendants in said case (1:21-cv-04970-SEG | Doc. 12 pg. 16) [Requests to take Judicial notice] alleging that his, "State traffic misdemeanor traffic offense [stop sign violation] **is not an offense as defined under O.C.G.A §40-13-21(a)**." Moreover, the Plaintiff filed a Summary Judgment Motion contending City courts did not have the authority to preempt state courts in enforcement of state criminal laws. [Doc. 25] On its face, if true and if the Plaintiff received a ruling in his favor in further proceedings on appeal or Certiorari to the Supreme Court it can be argued to significantly impact every city treasury in the State of Georgia because *Municipal* courts would be prohibited from prosecuting or convicting citizens for *state* traffic offenses or as not defined under O.C.G.A. § 40-13-21(a).

danger in this society like all citizens, that he has been esoterically left within the realm of the state of nature to fend for oneself all because of his knowledge and his pursuit to hold public servants accountable to the laws that they had a duty and were obligated by law to follow and/or because he engaged in an act within a Federal lawsuit that could potentially significantly impact the purse of the state and city treasuries if his allegations are true.

128.    Because of the severe mental and emotional distress, severe anxiety and worry from the Defendants refusals to investigate, arrest, indict or refer, the Plaintiff has for a period extending after the receipt of all sworn formal complaints, a fear that if the named state officials had been successful at the allegations supporting probable cause in his sworn formal complaint, that it would be overlooked by Georgia's law enforcement and prosecutorial offices – and such belief caused Plaintiff to relocate out of his state briefly, avoid the public roads and miss social events with friends, miss job opportunities & prevented him from going anywhere with his minor child alone based on the paranoia that because of the broad nature and severity of the acts alleged in his sworn formal complaints that state actors would have attempted in secret to erroneously pull him over, grab him in public or do any other act related to the probable cause allegations to imprison him and that if they were successful, the ensuing crimes would be overlooked by all of Georgia's law enforcement and all of its prosecutorial offices and such distress and fear continues as of the date of this filing.

129.    It is a fact that Plaintiff alleged in his sworn formal complaints, "*a goal to secretly falsely imprison the affiant by causing a warrant to issue in a secret proceeding*" [Exhibit A – pg. 16] and it is a fact that the Plaintiff alleged in November of 2022 in a Writ of Habeas filing that he was "*being deprived of information concerning whether any judicial determinations or adjudications took place on his child support account no. – which includes the nefariously*

*filed contempt action*," [Case no. 21-cv-04536-SEG doc. 1 no. 97] and these facts support inferences that Plaintiff in fact had such a reasonable belief in his state of mind dating back to November of 2022, prior and continuing known by Defendant that warrants may have been secretly placed on him and hidden from him and that the attempts to erroneously pull him over or grab him in public or do any other act related to the probable cause allegations to imprison him had a likelihood to occur and Defendant Carr, Kemp, Scandrett and Pattillo all had notice that such "*danger*" was possible and continues to know such danger is "ongoing".

130.   When the Plaintiff does decide to drive on the public roads and attend social events it is only briefly and because he is accompanied by a member of his family and while doing so still faces severe anxiety, mental and emotional distress based on the belief of an erroneous attempt to pull him over or grab him in public regardless of who accompanies him.

131.   It can be argued to a jury that these Defendants would know that a failure to intervene, investigate, arrest, indict, chare, refer or even correspond with the Plaintiff after knowledge and notice of his alleging a plot involving state officials to "knowingly" falsely imprison him including a threat to his safety and security could cause the exact and constant fear in the Plaintiff, severe mental and emotional distress and severe anxiety he faced.

132.   It can be argued to a jury that the Defendants deliberate or recklessness in ignoring, refusing, withholding or denying or avoiding an investigation, arrest, indictment, referral or even acknowledgement of receipt of Plaintiff's sworn formal complaints showing probable cause of a plot to falsely imprison the Plaintiff or any citizen by state officials could cause the exact distress Plaintiff alleged herein and can be further argued that the Defendants knew that to ignore, avoid, deny, refuse or withhold such protection would cause Plaintiff severe mental, emotional distress, severe mental anguish, worry and extreme severe anxiety.

133.    Defendant Kemp, Carr, Pattillo and Scandrett is referred to collectively hereforward as
Georgia's executive branch Defendants, ("EBD's").

## GEORGIA COURT OF APPEALS (DEFENDANT APPELLATE JUSTICES)

134.    By way of the Georgia constitution and by an act of the General Assembly of the State of
Georgia, the Plaintiff is entitled like all other citizens of this state to a Direct Appeal in the
Appeals court of Georgia from any alleged erroneous order, decision, or judgment in the
superior courts of the State of Georgia involving the custody of his minor child. See O.C.G.A
§ 5-6-34 et seq.

135.    Defendant Justices Stephen Dillard, Todd Markle and Amanda Mercier ("Appellate
Justices") all have the legal knowledge, skill, education, capability and intellectual capacity
to understand law and case authority and on information and belief, have a combined 50
years of experience as Appellate court judges in the Georgia Court of Appeals.

136.    On December 7th, 2021, the Plaintiff would file an Amended Notice of Appeal in a
custody modification action in which he was a Defendant (case no. SUCV-2021-0700)
seeking direct review of a **(1)** Final Order granting relocation of Plaintiff's child to the State
of Florida, **(2)** the entry of a Child Support Addendum and **(3)** the denial of a recusal or
disqualification motion all filed and dated October 7th, 2021.[10]

137.    On October 7th, 2021, Georgia judge Brian Amero entered its Final Order giving
Plaintiff's child's mother Primary physical custody leaving Plaintiff with certain visitation
basing its sole findings for modifying the parties custodial arrangement as follows;

1. Petitioner has moved to Hillsborough County, Florida and started a new job there.
2. This move would make the following parties prior Parenting Plan impossible.

---

[10] The Final Order causing the relocation of Plaintiff's minor child modified the Plaintiff's parenting time
with his child from 12 days a month to 3 days a month. Plaintiff asks the Court to take Judicial Notice of
all filings, motions and pleadings in case no. SUCV-2021-0700 – Henry County Superior Court.

3. Petitioner has close and extended family in Florida who are able to act as her support system and care for the Minor Child.

138.    Importantly to note, the Plaintiff's custody modification proceeding was also mentioned in each sworn Formal Complaint attached herein, stating *summarily*, to wit;

> "[Plaintiff's] Final order in his modification of child custody case concerning the custody of his child included a falsified Child Support Addendum, an act in furtherance of a conspiracy to commit false imprisonment." (*See Exhibit B-E pg. 2–5*)

139.    Plaintiff's direct appeal ("direct appeal") was docketed in the Georgia court of appeals on April 26th, 2022, case no. A22A1367.

140.    The Plaintiff was owed a legal duty and obligation from Defendant Appellate Justices to provide protection to person, provide an adequate, honest and good faith review of Plaintiff's direct appeal and a proper remedy, relief and redress from any erroneous decision of Georgia judge Brian Amero and overall protection of the laws.

141.    The Plaintiff asks this court to take judicial notice of each and every pleading or paper filed therein said judicial proceeding (direct appeal) which pleadings Plaintiff's incorporate herein this section ("Georgia Court of Appeals"), also by citation and reference. (A22A1367)

142.    Although owing Plaintiff such a legal duty and obligation, on January 19th, 2023, the Georgia Court of Appeals, by and through Judge Stephen Dillard, Amanda Mercier and Todd Markle ("Appellate Justices") did with bias and prejudice all concurred and affirmed the decisions of Georgia judge Amero via a rule 36 order or decision although being presented with state statues, material facts, case law and controlling and citation to authority in Plaintiff's Appellate brief [Exhibit X-1] which would have required a different decision from the one rendered favoring Georgia judge Brian Amero's recusal, reversal of the entry of the child support order and/or reversal of the Final Order granting relocation of Plaintiff's minor

child and the affirmance of said orders were manifestly incompatible with the law and worked a manifest injustice. [11]

143.    At all times herein, the Appellate Justices did make such a ruling in a continuing pattern of prejudicial prejudice and bias being completely against the Plaintiff or in favor of the lower court Judge Brian Amero because; prior to the entry (and after) the Rule 36 order the Defendant Appellate Justices repeatedly **(1)** deliberately and knowingly mischaracterized records in Plaintiff's multiple attempts to perfect and supplement the record on appeal that they knew or should have known were not the records the Plaintiff was seeking, **(2)** consistently misgendered the Plaintiff when they knew or should have known that Plaintiff's name had the quality, state or degree of masculinity in lieu of femineity that a Justice could easily discern **(3)** consistently denied meritorious motions that were manifestly incompatible with the law that they knew and had the legal experience to know was not a proper remedy and required a different decision from the one rendered, and **(4)** argued against Plaintiff's disqualification motion or in defense of themselves in Plaintiff's motion to disqualify Defendant Appellate Justices when Plaintiff presented such facts as alleged herein of a systematic pattern of prejudicial prejudice and bias in lieu of taking the facts as true.

144.    At all times herein, Plaintiff alleges that the decisions and orders entered by the Appellate Justices were no mere erroneous decisions or orders entered in good faith that could have been decided in a better way but were prejudicial and bias decisions and orders entered with malice or reckless disregard for the rights of the Plaintiff and that their orders or decisions

---

[11] A Rule 36 decision or Appellate order is an order or ruling that does not result in a written opinion, rather, a one-page affirmance of the lower court decision without explanation as to how or why they made such a decision. Plaintiff asks the Court to take Judicial Notice of all court filings in this claim.

manifestly shows that it *should* have been decided in Plaintiff's favor affording him the

proper remedy, redress, vindication and relief that he should have been entitled to.

1. **Affirmance of a Purely Falsified Child Support Addendum.**

145.    On January 26th, 2023, the Plaintiff filed a Motion for Reconsideration to the Appellate

Justices Rule 36 affirmance of the entry of a child support Addendum stating therein, to wit;

"The courts entry of a Child Support Addendum in **this case is purely falsified**. This courts
Rule 36 affirmance overlooks a decision on this issue as controlling as authority… that…,
"[T]he term custody does not include a payment of child support. It follows that **a prayer for
a change in custody does not of its own force pray for a simultaneous and
commensurate modification of child support. The petition here does not pray for any
modification of child support.**" *Petry v Romo, 547 SE 2d 736 – Ga: Court of Appeals
(2001)* There is no Petition to modify Child Support filed on the record in the lower court nor
included in the record in this case although mischaracterized as such in the court index on
page 2 Par. 7 by *Henry County clerks*. **No Petition to modify child support by any of the
parties was filed in this [lower case] and no prayer requested such**. It follows that this
action was solely a modification of custody proceeding and not otherwise, thus this issue is
appropriate for reconsideration on appeal as the record does not support that a Child Support
modification petition was ever filed in such case nor was there a prayer for such relief…
which requires a different decision from that rendered." [Exhibit X-2 – Motion for
Reconsideration pg. 11]

146.    On February 1st, 2023, Defendant Appellate Justice(s) denied Plaintiff's Motion for

Reconsideration and with prejudice and bias, did refuse, omit, and/or ignore statue, material

facts, law and authority in denying Plaintiff's Motion to Reconsider because the authority

presented to them within Plaintiff's Motion for reconsideration as alleged above required a

different decision from the one rendered and to deny said motion was manifestly

incompatible with the law and contrary to the purpose the Court of appeals was erected.

147.    The Appellate Justices had knowledge and reason to know based on their collective

experience and intellectual capacity that a Rule 36 decision affirming the entry of a Child

Support Addendum entered by Brian Amero, would essentially allow them to affirm the

entry of the support without explaining in detail the legal, lawful or adequate reasons they
affirmed the lower court decisions of Brian Amero's entry of a Child Support Addendum.

148.    The Appellate Justices affirmed such decision by Rule 36 because on information and
belief, they had the collective legal experience, intellectual capacity and legal knowledge to
know that that they could not explain through case authority, law, statute or decision how
Plaintiff's enumeration of error based on the entry of a Child Support Addendum could be
affirmed while collectively knowing that, "**[N]o Petition to modify child support** by any of
the parties was filed… and **no prayer** [for relief] **requested such**" and entered a Rule 36
Order to avoid said explanation in detail and Appellate opinion.

149.    On 2/1/2023, Defendant Justices denied Plaintiff's Motion to reconsider the affirmance of
the entry of a Child Support Addendum on 1/19/2023 although on both occasions they knew,
had the education, knowledge and legal skill to know that it was not a proper remedy to be
rendered in such case and required a different decision from the one rendered and knew that
what they had affirmed was contrary to law, statute, controlling authority and required a
different decision from the one rendered and was manifestly incompatible with the law.

150.    Defendant Appellant Justices, contrary to their obligations and duties owed to the
Plaintiff, with bias and prejudice, malice or reckless disregard for his rights, with a combined
50 years of legal knowledge, skill and intellect did fundamentally frustrate, deny or delay
Plaintiff's relief, proper remedy, redress and psychological vindication in affirming a Child
Support Addendum knowing or having reason to know that to do so was manifestly
incompatible with the law and a manifest injustice to the Plaintiff in violation of his First &
Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and

vindication and his Fourteenth Amendment protection to procedural and substantive due

process of law.

2. **Affirmance of Georgia Judge Brian Amero's refusal to recuse when mandated and required**.

151.    On January 26th, 2023, the Plaintiff filed a Motion for Reconsideration to the Appellate

Justices affirmance of the denial of a recusal motion stating therein said motion, to wit;

"The lower court judge had solely *two reasons* for denying Appellants recusal, with respect to the first reasoning… [the court stated]…

"…Respondent alleged the Court acted within a "scheme, plot or conspiracy" to block Respondents suits… by unreasonably **delaying a hearing on Respondents request to proceed in forma pauperis** in a separate case, Case No. 2021-SUCV-1579-BA. However, Respondent alleged in the Motion that his poverty affidavit was filed on June 8th, 2021, and that a hearing on that matter was scheduled for August 11th, 2021."

However, the Appellant's recusal motion never stated that the court acted to block his Open records lawsuit…and specifically alluded to the trial court Judge's "failure to ensure that the issue of indigence did not affect a decision on the merits of the *pending* action." [Vol 2. ¶ Pg. 112]. The recusal motion specifically stated; "there has been no order denying or allowing the Open Records Complaint to proceed." [Vol 2. ¶ Pg. 112 Par. 8] Not that Appellant's Open Records suit was being blocked. Thus, this court overlooked a material fact including controlling authority which would require a different decision from rendered because, **"[M]ischaracterizing the defendants allegation regarding the reason for the delay, the trial court evaluated and accepted the truth of his own factual allegations, mandating his recusal".** *A & M HOSPITALITIES, LLC v. Alimchandani, 871 S.E.2d 290 (2022)* [See Exhibit X-2 pg. 8]

152.    On the face of the Plaintiff's motion, it *manifestly* shows that Georgia judge Brian Amero

deliberately mischaracterized the reason for the delay of Plaintiff's Open records Complaint

and the Appellate Justices deliberately overlooked said case law and cite to authority

mandating his recusal in affirming the first reasoning of Georgia judge Brian Amero's refusal

to recuse or disqualify.

153.    As to the **second and final reasoning** of lower courts denial of Appellants recusal

motion, the Plaintiff's Motion to Reconsider stated that the lower court stated, to wit;

"[The] Respondent also alleged that the Court had the opportunity to review a "Writ of Habeas" challenging a prior conviction from a case involving Hampton City officials but did not do so because of the Court's "agreement or possible agreement" to delay Respondent's complaints against the City of Hampton. However, Respondent acknowledged that this writ, which he alleged was presented to the "Henry County clerks" on July 23, 2021, was neither filed nor was assigned a case number. "Bare conclusions and opinions stated in the affidavit are not legally sufficient to support the motion or warrant further proceedings... [Exhibit X-2 pg. 8]

154.   Plaintiff then alleged in his Motion to reconsider, to wit;

"Appellant alleged that "based on information received from Suzette Gray... said Writ of Habeas was assigned to and under Brian Amero and could not be assigned to another Judge." [Vol 2. ¶ Pg. 112 Par. 50] Appellant further stated that, "[s]aid writ, assigned to or under Brian Amero, has not received a case no." [Vol. 2. ¶ Pg 113 Par. 16] **This court overlooked a material fact** that the lower court judge was required to, but never considered, "[a]ll of the facts set forth in the affidavit are true." A & M HOSPITALITIES, LLC v. Alimchandani, 871 S.E.2d 290 (2022) Such controlling authority would require this court to reconsider based on the totality of the circumstances as a whole of the reasoning Appellants Writ of Habeas was neither filed nor was assigned a case number however assigned under Brian Amero... [Exhibit X-2 pg. 9]

Appellant's recusal motion stated that, "an inference can be drawn that Suzette Gray had motive to assign said writ under Brian Amero because of his agreement or possible agreement *with* shared motives of conspirators to delay Arnold complaint(s) involving the City of Hampton." [Vol 2. ¶ Pg. 112 Par. 52] One complaint being Appellants Open records [complaint]... The second being the Appellants Writ of Habeas which was **assigned to Brian Amero according to his court staff and others although not being filed nor having a case**... [T]his court overlooked controlling authority of precedential value in this case of whether a conspiracy can [be proven] through circumstantial evidence in a recusal motion because "a conspiracy may be shown by direct proof, or by inference, deduced from acts and conduct." *Jones v. State, 827 SE 2d 887 - Ga: Supreme Court (2019)*. The courts denial...deliberately failing to assume all of the facts in the affidavit as **true as to the reasoning said Writ of Habeas was neither filed nor assigned a case number**, including why it was assigned to him according to his staff without being filed in said court... the courts denial of the recusal motion with respect to Appellants Writ of Habeas presentment alluded to said Writ of Habeas being neither filed nor... assigned a case number, to mischaracterize Appellants statements as bare conclusions and opinions while deliberately failing to assume all of the facts in the affidavit as true as to the reasoning said Writ of Habeas was neither filed nor assigned a case number, including **why it was assigned to him according to his staff without being filed in said court**. MAYOR & ALDERMEN v. Batson-Cook Co acts as controlling authority here which would require a different decision from that rendered [Exhibit X-2 pg. 9-10]

155.    On the face of the Plaintiff's motion to reconsider, it also *manifestly* showed that Georgia
        judge Brian Amero failed to assume all of the facts in the affidavit as true as to the reasoning
        said Writ of Habeas **was neither filed nor assigned a case number**, including why it was
        **assigned to Georgia judge Brian Amero according to his staff without being filed in said**
        **court** and the Defendant Appellate Justices deliberately overlooked the case law and cite to
        authority in Plaintiff's Motion in affirming and denying the second and final reasoning.

156.    On February 1st, 2023, Defendant Appellate Justices, with bias and prejudice, denied
        Plaintiff's Motion to reconsider their Rule 36 affirmance of Georgia judge Brian Amero's
        denial of Plaintiff's Motion to disqualify and did so with malice or reckless disregard for the
        rights of the Plaintiff by deliberately refusing, omitting, and/or ignoring statue, material facts,
        case law and plain controlling authority which required a different decision from the one
        rendered and was manifestly incompatible with law and contrary to their legal duties and
        obligations of correcting errors on review for which purpose the appellate court was erected.

157.    Defendant Appellate Justices had the education, knowledge, experience and legal skill to
        know that their decision required a different decision from the one rendered and knew that
        what they had affirmed was contrary to law, statute, controlling authority and was not a
        proper remedy nor the proper relief that should have been rendered or afforded to Plaintiff.

158.    On information and belief, the Appellate Justices rendered a Rule 36 Order in lieu of a
        written opinion with respect to Plaintiff's enumeration of error regarding Georgia Judge
        Brian Amero's refusal to disqualify because they knew and had reason to know that with
        their collective legal experience, intellectual capacity and legal knowledge, that they could
        not explain through case authority, law, statute or decision how Plaintiff's enumeration of

error did not require a different decision from the one they rendered via Rule 36 and such act was a manifest injustice to Plaintiff because of such absence of a written opinion.

159.    Defendant Appellate Justices denied Plaintiff's Motion to Reconsider on 2/1/2023 after affirming Georgia judge Brian Amero's refusal to disqualify on 1/19/2023 although on both occasions they had the education, knowledge and legal skill to know that it was not a proper remedy or adequate remedy and knew that what they had affirmed was contrary to law, statute, controlling authority and required a different decision from the one rendered and was manifestly incompatible with the law.

160.    Defendant Appellant Justices, contrary to their obligations and duties owed to the Plaintiff, with bias and prejudice, malice or reckless disregard for his rights, with a combined 50 years of legal knowledge, skill and intellect, did fundamentally frustrate, deny or delay Plaintiff's relief, proper remedy, redress and psychological vindication by affirming the refusal disqualify Georgia judge Brian Amero knowing or having reason to know that to do so was manifestly incompatible with the law in violation of his First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law.

3. **Affirmance of the relocation of the Plaintiff's minor child**.

### i.    *Plaintiffs request to supplement the record.*

161.    On February 9th, 2023, the Plaintiff filed a Post-judgment motion concerning his prior attempts to supplement the Appellate record with records identified as tendered and admitted in his modification of child custody proceeding's final trial that Plaintiff alleged made a substantial issue on appeal regarding whether the trial court erred in granting the relocation of the Plaintiff's minor child.

162.  This was not the first occurrence the Plaintiff would request such records as the Plaintiff

had requested these records on more than 3 occasions before the filing of his Post-Judgment

motion and all were denied and mischaracterized as records *already* in the appellate record.

163.  On February 9th, 2023, the Plaintiff filed his Post-Judgment motion, stating therein said

motion, to wit;

"Appellant in this case discovered that trial exhibits **tendered and admitted** in the lower
court were not included in the record and filed two motions to supplement the record for
exhibits that were identified as exhibits tendered and admitted into evidence in the lower
trial court final trial in both Motions to Supplement on May 9[th], 2021, and May 31[st],
2022."

…On 5/9/2022 the Appellant Motioned the Appellant court to order the trial court clerk
to; "transmit an exhibit **tendered in the lower court** Final trial on July 21st, 2021,
**specifically the Appellant's affidavit entitled "Arnold Affidavit"**… The Appellant
described this affidavit as seven (7) pages and stated generally that the, "admitted
affidavit **make an issue of fact** relevant to the direct appeal from the Final Order… as to
whether the trial court Judge's factual findings were erroneous on review…

…Appellant filed another Motion to Supplement the record on 5/31/2022, this time
requesting and also identifying the records as tendered and admitted in the lower trial
court at the Final Trial, to wit; The Appellant specifically requested a, "Contempt Order
**tendered as evidence** and/or filed in the lower trial court for inclusion in the appellate
court record in the above-styled case because the exhibit and filing would assist the court
in deciding the appeal and is necessary for the determination of whether there was a need
to find a substantial change in circumstances…

…The Appellate court contended these records were included in the record in its orders
**but did not reflect records that were admitted or tendered in the Final trial as
opposed to mere filings or exhibits attached to pleadings** and the Appellant
consistently identified these records in his motions to supplement as "**admitted**"…
"**tendered**"… "**exhibits**… and may prejudice him on further review."

164.  Defendant Appellate Justice(s) denied this motion one (1) a day later on 2/10/2023

although being confronted with facts in Plaintiff's Post-Judgment motion that the tendered

and admitted records were not included in the appellate record.

165.   With malice or recklessness, Defendant Appellate Justice(s) attempted to lead the
        Plaintiff to believe that the tendered & admitted records were already included in the record
        although they knew and had reason to know that the records the Plaintiff were requesting
        were not the tendered and admitted affidavits or records in the appellate court record.

166.   As a consequence of the Rule 36 decision or Order affirming the Final order relocating
        the Plaintiff's minor child, there is reason to believe that the Plaintiff would and could not be
        apprised of whether or not his records requested to be supplemented on appeal were actually
        needed *on appeal* absent a written opinion showing in detail or laying out the facts of how
        the Appellate court found a substantial change of circumstances or did not find it based on
        the lower courts findings in its Final Order causing the relocation of Plaintiff's minor child.

167.   This is because the 1/29/2020 contempt ruling & Affidavit (showing Plaintiff maintained
        the majority of the custody of his child in 2020 up until June of 2021) (As Plaintiff alleged)
        made **a "substantial issue of fact"** of whether there was a showing or was not a showing of
        a substantial change in circumstances, because the 1/29/2020 contempt ruling (1) showed
        that Plaintiff's custody agreement was altered within 2 years which required a showing of a
        substantial change in circumstances and (2) Plaintiff's affidavit contradicted any
        inference/evidence in the lower court's *findings* in its Final Order that Plaintiff was not *"the"*
        support system for his child or a support system was lacking to find a substantial change of
        circumstances because the Affidavit showed that for the majority of 2020 up until June of
        2021 he maintained the majority of the custody of his child and on these basis, (3) they knew
        that absent a written detailed opinion or ruling it was no way for the Plaintiff or any other
        court to determine that his records in fact made a substantial issue of fact on appeal and were
        needed in the appeal.

168.    Defendant Appellate Justice(s) knew and had reason to know that they could not
        successfully write a written opinion without it operating in Plaintiff's favor and with actual
        malice or reckless disregard for the rights of the Plaintiff did not write a written opinion for
        two reasons (1) because Plaintiff's "Arnold Affidavit" that he stated was tendered and
        admitted in the lower court manifestly made a **substantial issue of fact** which operated
        against the findings of a substantial change of circumstances based on the lower courts
        findings and (2) they knew that without a written opinion the Plaintiff would not be apprised
        or have knowledge that his multiple attempts to supplement the record which were denied,
        were actually needed on appeal and instead rendered a one page Rule 36 decision or Order.

169.    Thus, absent a written and detailed opinion the Plaintiff could not point out the error in
        law or fact in such a written opinion normally rendered by the Appellate courts to determine
        whether or not his request to supplement the records were needed on because the Defendant
        Appellate Justices knew and had reason to know that to render a Rule 36 order would deprive
        Plaintiff of being apprised or having knowledge that his requested records were actually
        needed on appeal and said act *further* frustrated Plaintiff's remedy, redress, relief and
        vindication chilling or violating Plaintiff's First Amendment right to a remedy or redress –
        and as the Plaintiff alleged in his Post Judgment Motion to Supplement the Record– "The
        Appellate court did not have the full record or evidence tendered and admitted in the lower
        trial court… and **may *prejudice him*** on further review."

### ii.    *Plaintiff's Motion to Reconsider Affirmance of Relocation of Plaintiff's Minor Child.*

170.    On January 26th, 2023, the Plaintiff filed a Motion to reconsider the Rule 36 decision
        affirming the relocation of his minor child which stated the following, to wit;

"On October 7th, 2021, the trial court entered its Final Order giving Appellee Primary physical custody with the Appellant having certain visitation and the courts based its sole findings for modifying the parties custodial arrangement as follows;

  1. Petitioner has moved to Hillsborough County, Florida and started a new job there.
  2. This move would make the following parties prior Parenting Plan impossible.
  3. Petitioner has close and extended family in Florida who are able to act as her support system and care for the Minor Child. [Exhibit X-2 pg. 4]

This court overlooked a material fact in the record that required the lower court to review and find a substantial change in circumstances before considering the best interests standard because the parties' **custodial agreement was modified and altered within two years from the date of the Final hearing in the lower court that occurred on July 21st, 2021**. The custody arrangement was altered or modified on January 29th, 2020, in the Gwinnett County Superior Court. [Vol 2. ¶ Pg. 63-65] (Also See Appellate Court order dated June 1st, 2022.) Accordingly, this material fact would require a different decision from the decision rendered because the lower court Final order's sole findings is but a consequence of the Appellee's relocation or move to the State of Florida and relocation of a party in relocation cases does not constitute a **substantial change in circumstances warranting consideration of the best interest standard**…. [Exhibit X-2 pg. 4]

Reconsideration is appropriate here because of the controlling authority in *Bodne* and other cases that "[t]he trial court must consider the best interests of the child and cannot apply a bright-line test." 588 SE 2d 728 - Ga: Supreme Court (2003). The court overlooked controlling authority which states that, "[T]he court in *Bodne* did not alter the standard two-step framework for a trial court's consideration of a change in custody, and we find no language in *Bodne* intimating that a parents out-of-state relocation constitutes a material change in circumstances that warrants the best interests inquiry." Brazil v. Williams, 859 SE 2d 490 – Ga Court of Appeals (2021) [Exhibit X-2 pg. 5]

Secondly, the Appellant motioned the Appellate court on 5/9/2022 and 5/27/2022 to "order the clerk of the trial court" (due to bias in the lower court) to supplement the record because his, "admitted affidavit make an issue of fact… whether the trial court judge's factual findings were erroneous on review." This affidavit would "[d]isprove, or shed light upon any material fact at issue in a case," *Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals (2009)*, which was; the **affidavit showed that Appellant maintained equal or majority of the custody a month before the Final hearing began** (June). In such regard this court overlooked a material fact in the record that the affidavit disproved any notions in the courts "findings" that a support system or care was needed elsewhere to support a substantial change in circumstances and requires a different decision than that rendered… "[H]ere, the… record does not include the crucial document tendered into evidence and admitted by the trial court." *In re RST, 748 SE 2d 498 – Ga Court of Appeals (2013)* [Exhibit X-2 pg. 5]

171.   On February 1st, 2023, the Georgia Court of Appeals with prejudice and bias denied Plaintiff's Motion to reconsider their Rule 36 affirmance of Brian Amero's Final Order relocating the Plaintiff's minor child and did so with reckless disregard for the rights of the Plaintiff or by deliberately refusing, omitting, and/or ignoring statue, material facts, case law and plain controlling authority although presented with such facts, law or authority that required a different decision from the one rendered and was manifestly incompatible with correcting errors on review which for one purpose the Georgia court of appeals was erected by Georgia's general assembly.

172.   The Appellate Justices continued to knowingly mischaracterize and deny Plaintiff's requests to supplement the record on appeal and avoided a written opinion on this issue and was a manifest injustice to Plaintiff because they knew or had reason to know that a written decision would have shed light or showed that the mischaracterized records in Plaintiff's attempt to perfect the record on appeal were needed, required and thus required a different decision than the one(s) rendered.

173.   Defendant Appellate Justices denied Plaintiff's Motion to Reconsider on 2/1/2023 after affirming Georgia judge Brian Amero's Final Order relocating Plaintiff's minor child on 1/19/2023 although on both occasions they had the education, 50 years of combined knowledge and legal skill to know that it was not a proper remedy or adequate remedy, was an manifest injustice to Plaintiff as a result of his not supplementing the record and the absence of a written decision and knew that what they had affirmed was contrary to law, statute, authority and required a different decision from the one rendered and was manifestly incompatible with the law.

174.    Defendant Appellant Justices, contrary to their obligations and duties owed to the
        Plaintiff, with bias and prejudice, malice or reckless disregard for his rights, their combined
        50 years of legal knowledge, skill and intellect, did erect a tactical judicial stratagem to
        fundamentally frustrate, deny or delay Plaintiff's relief, proper remedy, redress and
        psychological vindication in the reversal of modification of his initial custody agreement on
        appeal by denying Plaintiff's Motion to reconsider to keep Plaintiff from being apprised that
        his request to supplement the record made an issue of fact & were needed on appeal knowing
        or having reason to know that modification was improper and, knew that to do so was a
        manifest injustice to Plaintiff & manifestly incompatible with the law in violation of his First
        & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and
        vindication and his 14th Amendment rights to procedural and substantive due process of law.

## 4. **Motion to Disqualify Appellate court Justices**.

175.    On February 13th, 2023, the Plaintiff filed a Motion to Disqualify all Justices dealing
        with, concerning or involved with the "Rule 36" affirmance of the lower court decision in its
        January 19th, 2023 – Rule 36 Order and any judges dealing with, concerned or involved in
        the drafting, signing or making of any court order involving Appellant's multiple motions to
        supplement the record including all motions to reconsider related to those motions.

176.    The Plaintiff had done so because of the Defendant Appellate Justices *patterns* of bias or
        prejudice being completely against the Appellant or in favor of the lower court judge.

177.    The Plaintiff's Motion to disqualify stated therein, to wit;

        "The Appellant states that throughout the due course of his appeal he has been
        deliberately misgendered in multiple court orders, his requests to supplement the record
        for evidence in this court has been repeatedly denied and knowingly mischaracterized in
        multiple orders denying such requests, that a decision in this case was deliberately
        rendered without all evidence from the lower court and that the Justices making such
        decision knowingly failed to render a written opinion and comply with the law and

controlling authority which would require a different decision from the one rendered…
and that from this *conduct as a whole now* exists a **patterns of bias or prejudice
completely against the Appellant** or **in favor** of the Appellee or **the lower court judge
and a systematic pattern of prejudicial conduct** is evident or can be determined that
each Judge(s) impartiality can be *reasonably questioned* requiring recusal." [Exhibit X3
pg. 1]

"This systematic pattern of deliberate and knowing prejudicial conduct, bias and
prejudice regarding the Appellant and his direct appeal came as a whole came within the
knowledge of Appellant on or around February 1st, 2023 when the court denied his
Motion for Reconsideration that clarified, made certain, corrected, alluded to and **made
clear of controlling or case authority that required a different decision than the one
rendered**." [See Exhibit X3 pg. 8]

178.   Plaintiff's attached disqualification Motion, which Plaintiff incorporates herein *this*

*section* all allegations as if fully alleged herein &, **requests the court to take judicial notice**

**of**, states that each allegation *if true*, required the recusal of Defendant Appellate Justices and

the Defendant Appellate Justices knew or had reason to know that the facts alleged therein

the Plaintiff's Motion and his supporting Affidavit required their recusal. [Exhibit X3]

179.   Two days later, on 2/15/2023 the Appellant Justices denied this disqualification motion

by defending against the allegations – **mandating their recusal** – stating, to wit;

"Specifically, appellant contends that the judges of this Court exhibited bias by
**admittedly, mistakenly** referring to him with the wrong pronoun in several orders
denying his motion to supplement the record and by denying those same motions…
appellant seeks recusal based on an inadvertent use of the wrong pronouns that had no
bearing on the orders in which they occurred…" [Exhibit X3 pg. 28-29]

180.   They did so in "[e]fforts at defending… **against a motion to recuse** will inevitably create

an appearance of partiality. One reason is that if he defends himself he becomes an adversary

of the movant for recusal." *Post v State, 779 SE 2d 624 – Ga: Supreme Court (2015)*[12]

---

[12] (explaining that argument over recusal issues "may draw the judge into presenting his side of the
story, which in turn may create a perception that the judge is an advocate or hostile witness rather
than an impartial adjudicator in the case," **requiring disqualification**. *Mondy v. Magnolia Advanced
Materials, Inc., 815 SE 2d 70 303 Ga. (2018)*)

181.    The Appellate Justices knew and had reason to know that if they were disqualified based on the bias and prejudice as alleged, all of their orders & Rule 36 affirmance would be void.

182.    Although required and mandated to disqualify themselves due to their defending against the allegations of the Plaintiff's disqualification motion the Appellate Justices deliberately, refused, failed, and with malice or reckless disregard for the rights of the Plaintiff did fail to disqualify although required and mandated by controlling authority.

183.    There is reason to believe that the Appellate Justices were actually bias and prejudicial against the Plaintiff and/or showed favor to the lower court judge before the entry of their Rule 36 order by their defending against the allegations made in Plaintiff's disqualification motion seeking to disqualify the Appellate Justices for the exact acts and omissions supporting Plaintiff's allegations of bias and prejudice in his Motion to disqualify.

184.    Moreover, no reasonable member of the public can reasonably state nor conclude that Appellate Judges would affirm an entry of a child support *modification* order without a petition nor prayer for relief in the record requesting modification and that to affirm such records without statutory or lawful authority would bring into question each judges impartiality and Plaintiff alleged such in his motion to disqualify. [Exhibit X3 pg. 8 no. 25]

185.    No reasonable member of the public can reasonably state nor conclude that Appellate Justice(s) would continuously deny and mischaracterize **admitted and tendered** evidence in a final trial as mere filings and exhibits attached to pleadings after their having notice and knowledge in motion(s) to reconsider and supplement that Appellant sought and were in search of records tendered and admitted in the Final trial – not mere filings or exhibits attached to pleadings – and would conclude that to do so would bring into question each judges impartiality and Plaintiff alleged such in his motion. [Exhibit X3 pg. 5 no. 12]

186.    No reasonable member of the public can reasonably state nor conclude that Appellate
Justices would continuously knowingly and deliberately misgender an individual on appeal
even though name "Deandre Arnold" had the quality, state or degree of masculinity in lieu of
femineity that a Justice could easily discern and knowledge of pronouns in his motions such
as ("his") that Justices fully read, and the public would conclude that to do so continuously
would bring into question each judges impartiality and Plaintiff alleged such in his motion to
disqualify.[13] [Exhibit X3 pg. 4 no. 6]

187.    Based on the facts alleged in Plaintiff's disqualification motion and supporting affidavit,
*if true*, the recusal of the Appellate Justices was manifestly apparent because all Plaintiff
need prove in such motion is that the Defendant Appellate Justices "impartiality might
reasonably be questioned" and to deny his motion was manifestly incompatible with the law.

188.    Defendant Appellant Justices, contrary to their obligations and duties owed to the
Plaintiff, with bias and prejudice, malice or reckless disregard for his rights, combined 50
years of legal knowledge, skill and intellect did frustrate, deny or delay Plaintiff's relief,
proper remedy, redress and psychological vindication by **(1)** denying Plaintiff's
Disqualification Motion and refusing to recuse or disqualify when required and **(2)**
subsequently arguing against Plaintiff's disqualification motion in refusing to recuse or
disqualify when required knowing or having reason to know that to do so was manifestly
incompatible with the law and in violation of his First & Fourteenth Amendment
constitutional protections to a proper remedy, redress, relief and vindication and his
Fourteenth Amendment right to procedural and substantive due process of law.

5. **Conspiracy of Defendant Appellate Justices**

---

[13] Four court orders identified the Appellant, Deandre Arnold as a "she" or "her" at a time Plaintiff identified
himself in motions prior to these orders with the gender specific pronoun as "his". [Exhibit X3 pg. 3 no. 3]

189.    Plaintiff repeats the preceding paragraphs 136–187 by reference as if fully alleged herein.

190.    Defendant Appellate Justices did collectively participate in a common venture to delay, deny, prevent or frustrate Plaintiff's due and proper redress, relief, psychological vindication and protection of the laws when and if those grievances were against Georgia judge Brian Amero and in furtherance thereof engaged in a pattern and scheme of prejudicial bias in lieu of impartialness, denial of protection in lieu of protection, deliberate or recklessness foreclosure or unlawful delay or frustration of meritorious relief or a proper remedy in lieu of due, minimum or adequate relief and redress – to railroad the Plaintiff – knowingly, persistently, with malice or reckless disregard for the rights of the Plaintiff.

191.    Defendant Appellate Justices knew that Plaintiff's direct appeal was a grievance, as he was seeking direct review for errors of Georgia judge Brian Amero's entry of a **(1)** Final Order granting relocation of Plaintiff's child to the State of Florida, **(2)** the entry of a Child Support Addendum and **(3)** an order denying a recusal or disqualification motion.

192.    Defendant Appellate Justices knew and had reason to know based on their combined 50 years of legal experience, their judicial experience and knowledge that Plaintiff was entitled to the relief, redress, vindication & the remedy he sought on appeal related those grievances.

193.    Defendant Appellate Justices knew that they also owed Plaintiff a legal duty and obligation according to their oath within this society to provide Plaintiff a proper remedy, relief, vindication and the redress he was entitled to and was not to erroneously or arbitrarily deny Plaintiff a remedy or relief if he was entitled to it absent any justification in the law.

194.    However, having such experience and knowing they owed Plaintiff a legal obligation and duty, the Defendant Appellate Justices denied, withheld and refuse to provide Plaintiff a

proper remedy, relief, vindication and the redress he was entitled knowing that to do so was manifestly incompatible with the law and a manifest injustice to the Plaintiff in his appeal.

195.    The Defendant Appellate Justices not only affirmed what Plaintiff alleged to be a purely falsified order, repeatedly misgendered the Plaintiff, mischaracterized requested records to perfect the record on appeal that they knew were not the records Plaintiff sought and ignored controlling authority in which Georgia judge Brian Amero's recusal was mandated but also defended against the allegations of a recusal motion alleging a pattern of bias and prejudice based on these rulings, decisions and acts – becoming an adversary against the motion itself.

196.    On information and belief, Defendant Appellate Justices knew and had knowledge of an esoteric understanding and motive shared between other courts, state and federal actors also involved in the railroading campaign against the Plaintiff of the need to make certain that by any means or under no circumstances could any relief in his grievances go in his favor because there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against judge Brian Amero if any of the Plaintiff's relief in his grievances actually went in his favor or had an agreement between other courts, state and federal actors also involved in the railroading campaign against the Plaintiff to make certain of the same.

197.    On information and belief, Defendant Appellate Justices including other courts, state and federal actors as a whole knew or had reason to know of the implications of a Georgia judge being criminally prosecuted as a result of the relief requested by the Plaintiff in his grievances if said relief went in his favor and made certain that all grievances which would have supported any criminal prosecutions would not go in his favor.

198.    This is because there is no other plausible reason (and the only plausible reason) why highly skilled and educated Appellate Court Justices with a combined 50 years of legal

experience would affirm orders and render multiple decisions or rulings, especially affirm
absent a modification petition and what Plaintiff alleged to be a "purely falsified support
order", that was manifestly incompatible with the law and blatantly contrary to authority or
citation to controlling authority if they had not known or had no knowledge of such an
esoteric shared motive, understanding or agreement of the need to deny Plaintiff of any relief
related to any grievances against Georgia Judge Brian Amero if there was a possibility that
criminal prosecution could be brought if the relief actually went in his favor on appeal.

199.    Defendant Appellate Justices knew and had reason to know based on their combined 50
        years of experience that when Plaintiff mentioned that the Child Support Addendum was
        "purely falsified" in his Motion to reconsider and stated that it was entered "absent a
        Modification Petition" in his Appellate brief that criminal prosecution was possible, likely or
        a certainty against Georgia judge Brian Amero if the relief went in Plaintiff's favor.

200.    Based on the totality of circumstances of this claim and declaration as a whole and all of
        the facts surrounding the acts of Defendant Appellate Justices, inferences of a **plausible
        conspiracy** can be formed that Defendant Appellate Justices had motive in the reasons they
        needed to deny Plaintiff of his relief or a proper remedy and denied all required or justiciable
        relief without justification in Plaintiff's direct appeal because they knew or had reason to
        know that if the relief went in his favor there was a possibility that criminal prosecution
        could be brought against Georgia judge Brian Amero and did so with bias and prejudice.

201.    Facts and inferences show that Appellate Justices decided to deny Plaintiff of all relief
        with bias and prejudice regardless of its legality or his time, work and effort it took to present
        his filings to a court erected to correct errors on appeal for the benefit of the Plaintiff.

202.    Accordingly, Defendant Appellate Justices owing the Plaintiff a duty and obligation,

having over a collective 50 years of experience as Appellate Justices, with bias and prejudice,

malice or reckless disregard for the rights of the Plaintiff did, and in conspiracy, refused to

perform and abide by their obligation and duties owed to Plaintiff and did frustrate, delay or

deny Arnold of a due, proper & adequate remedy, redress, physiological vindication,

adequate, and required relief and protection of the laws by affirming orders and denying

motions manifestly incompatible with the law while acting as Appellate Justices in Plaintiff's

Direct appeal in violation of his First & Fourteenth Amendment constitutional protections to

a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to

procedural and substantive due process of law contrary to their sworn oaths and their acts as

a whole breached the obligations & duties owed to Plaintiff in the social compact or contract.

## APPELLATE COURT CLERK DEFENDANT TABATHA COOPER

203.    On February 27th, 2023, the Plaintiff presented a "Motion for Reconsideration" of the

Court of Appeals 2/15/2023 Order denying his disqualification motion of Defendant

Appellate Justices and had written therein clear controlling authority requiring recusal based

on the Defendant Appellate Justices defending against the allegations of recusal, to wit;

> "The Georgia Supreme Court stated not long ago that a justice or judges "[e]fforts at
> defending himself against a motion to recuse will inevitably create an appearance of
> partiality. One reason is that if he defends himself he becomes an adversary of the
> movant for recusal." *Post v State, 779 SE 2d 624 – Ga: Supreme Court (2015)* ...**The
> Appellate court defended itself from recusal in stating that the Court "admittedly,
> mistakenly and (later) inadvertently** "referred to Appellant with the wrong pronoun.
> The Supreme Court of Georgia has explained that, "[a] judge cannot become actively
> involved in presenting... argument against a motion seeking his recusal without that
> defense itself becoming a basis for recusal... and that by attempting to refute a charge of
> bias, a judge may become – or appear to have become – an adversary of the party seeking
> his disqualification." *A & M Hospitalities, LLC v. Alimchandani, 871 S.E. 2d 290 (2022)*)
> A **community without certainty** in the true administration of justice is a community
> without justice." *Matter of Inquiry Concerning a Judge, 462 SE 2d 728 265 Ga. 843
> (1995)*)" [See Exhibit X – 3 pg. 5]

204. On February 27th, 2023, an Appellate court clerk, mainly Tabatha Cooper did deliberately refuse and fail to perform her ministerial duty and file said motion in the Appeals court.

205. Defendant Coopers did provide the *initial* reasons for denying the Plaintiff's Motion to reconsider that was stated to him via email as follows;

> "**Reason**: Document was submitted without permission to file (amended brief, supplemental brief, or second motion for reconsideration). Rules 27(a) and 37(d)."

206. The Plaintiff responded to this email or electronic submission by clarifying that his motion to reconsider did not need nor required a motion to reconsider by stating, to wit;

> "It appears a recent filing of a document (Motion for Reconsideration) was rejected due to the notion that the Motion for Reconsideration did not include permission to file a second motion for reconsideration. This reconsideration however is in reference to the denial of a disqualification motion entered in on February 15[th] 2023 not the recent opinion affirming the lower court decision in this case on January 19th 2023. The clerk [in] this ministerial duty is thus depriving Appellant of reconsideration in the integrity of the court system. Please submit the filing as required."

207. After a whole day surpassed, Defendant Cooper had then found another reason to deny the filing of the Plaintiff's motion completely, in her stating on 2/28/2023, to wit;

> "Mr. Arnold, This court is in receipt of a docket notice from the Georgia Supreme Court dated 2/21/2023 which robs this court of jurisdiction to make any changes to your appeal in this court while the Supreme court has jurisdiction. While, upon review, your motion for reconsideration that was returned to you is against a non-case disposing order, we cannot docket it as it was submitted after the date that the Supreme Court docketed your certiorari and pulled jurisdiction into their Court..."

208. Defendant Cooper's initial reasons for denying Plaintiff's motion to reconsider in fact only changed after Plaintiff responded to her email showing that her initial reasoning would in fact require the filing of the Plaintiff's motion to reconsider.

209. In other words, if Defendant Cooper's second reasoning for denying his Motion to reconsider on 2/28/2023 were true, she would have stated so in her initial reasoning on 2/27/2023 and there is reason to believe that Defendant Cooper deliberately refused and had an intent to prevent Plaintiff's Motion to Reconsider in her providing such second reason.

210. Defendant Cooper has over 7 years of experience as an Appellate court clerk and knows or had reason to know that her sole "[D]uties... related to the filing of pleadings are ministerial in nature and do not involve the exercise of discretion." *Alexander v. Gibson 794 S.E.2d 597 300 Ga. 394 (2016)*

211. Tabatha Cooper having over 7 years of experience refused to perform a ministerial duty and concerned herself with the alleged jurisdiction of Plaintiff's appeal and exercised unwarranted and inexplicable discretion in refusing to docket Plaintiff's Motion to reconsider the denial of the Defendant Appellate Justices refusal to disqualify.

212. Defendant Cooper knew or had reason to know that the claims in Plaintiff's "Motion to Reconsider" would have required recusal of the Appellate Justices for their defending against the allegations in Plaintiff's disqualification motion alleging a pattern of bias and prejudice as a result of the verbiage, cite to law and writings in Plaintiff's motion alleging such.

213. Defendant Cooper also knew or had reason to know that the claims in Plaintiff's "Motion to Disqualify" would or could have required recusal of the Appellate Justices for the allege pattern of bias and prejudice, and affidavit in support, within said Motion to Disqualify as a result of the verbiage, cite to law and writings in Plaintiff's motion alleging such.

214. Defendant Cooper in fact had access to the view all of the filings in Plaintiff's appeal, its writings and the citation to authority therein and knew and had reason to know that Plaintiff had taken an appeal from an order of Georgia judge Brian Amero in said appellate court case.

215.    Defendant Cooper knew or had reason to know based on her having access to Plaintiff's appeal and all of its filings, writings and the citation to authority that Defendant Appellate Justices had affirmed Georgia judge Brian Amero's Order and that Plaintiff Motion to Disqualify sought to disqualify those Appellate judges from his case and reverse their orders.

216.    Moreover, she knew and had reason to know based on Plaintiff writings and cite to law within his Motion to Reconsider that it would or could have resulted in the recusal of the Appellate Justices for their defending against the allegations in Plaintiff's recusal motion.

217.    Further, Defendant Cooper knew or had reason to know based on the written claims, writings and cite to law in the Plaintiff's motion to reconsider that any required recusal would or could have resulted in recusal of the Appellate Justices who affirmed the lower court decisions of Georgia judge Brian Amero's entry of Final order causing the relocation of his minor child, the entry of a Child Support Addendum and the denial of a recusal motion.

218.    Tabatha Cooper knew or had reason to know that if she did not file the Plaintiff's Motion to Reconsider that the Appellate Justices would not be presented with his Motion to Reconsider that had written therein cite to law and writings alleging that they defended against the allegations in the disqualification motion **requiring and mandating** their recusal.

219.    Tabatha Cooper knew of, participated, and joined a conspiratorial objective to frustrate, delay or deny Arnold of relief, redress, vindication and a proper remedy based on grievances concerning Brian Amero and in furtherance thereof refused to file Plaintiff's Motion to reconsider that she knew and had reason to know would or could have resulted in the recusal of Appellate Justices and reversal of Georgia judge Brian Amero's Orders in the lower court.

220.    The facts support inferences that Defendant Cooper knew of the need to refuse or prevent the filing of the Plaintiff's Motion to reconsider because she knew, had knowledge and

reason to know that Defendant Appellate Justices would or could have been mandated or

required to disqualify and as a consequence would or could have resulted in the reversal of

Georgia judge Brian Amero's lower court orders or decision(s) if they were ever to be

presented with Plaintiff's motion to reconsider and knowing such, inexplicably refused to file

said pleading contrary to her duties, obligations and experience as an Appellate court clerk.

221.    It cannot be disputed that the act of Tabatha Cooper allowed the Appellate Justices to

avoid being confronted with Plaintiff's Motion to Reconsider that showed clear controlling

authority that mandated their recusal and there is reason to believe that Tabatha Cooper

engaged in such conspiracy, or took orders from Defendant Appellate Justices, to make

certain that the essential objective of the conspiratorial objective was not disturbed.

222.    Further, on information and belief, Defendant Cooper knew and had knowledge of an

esoteric understanding and motive shared between other courts, state and federal actors also

involved in the railroading campaign against the Plaintiff of the need to make certain that by

any means or under no circumstances could any relief in his grievances go in his favor if

there was a possibility, likelihood or certainty that criminal prosecution could or would be

brought against judge Brian Amero if any of the Plaintiff's relief in his grievances actually

went in his favor or, had an agreement between other courts, state and federal actors also

involved in the railroading campaign against the Plaintiff to make certain of the same.

223.    This is because there is no other plausible reason (and the only plausible reason) why an

Appellate Court clerk with 7 years of legal experience would not only refuse to adhere to her

ministerial duties but change the reasoning for the failure to adhere to her ministerial duties

which reasons contradicted her initial excuses if she had not known or had no knowledge of

such an esoteric understanding, shared motive or agreement of the need to deny Plaintiff any relief related to any grievances of Georgia Judge Brian Amero.

224. Defendant Cooper owing the Plaintiff a duty and obligation and having over a collective 7 years of experience as Appellate clerk to know the law, what her duties were and how to apply them did, in conspiracy, refuse to perform and abide by her obligations and ministerial duties in refusing to file Plaintiff's Motion to Reconsider in violation of Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law contrary to her sworn oaths and said acts of Defendant Cooper as a whole breached her obligations and duties owed to the Plaintiff in the social compact or contract.

225. A Writ of Mandamus was filed in the Supreme Court of Georgia against Defendant Cooper on 5/7/2023 case no. S23O0904 and is pending as of the date of this filing.

i. ***Intentional Infliction of Emotional Distress as to Defendant Appellate Justices and Defendant Cooper***

226. Plaintiff realleges paragraphs 134 – 225 as if fully alleged herein and by reference.

227. It is a fact that the Plaintiff had grievances and sought to overturn in the Appellate court of Georgia Final Order(s) or decision(s) rendered in his child custody modification action that (1) caused the relocation of his minor child across state lines, (2) an Order denying recusal in the same case to overturn such decision causing his child's relocation and (3) including the entry of a Child support Addendum that Plaintiff alleged in Appellate filings was purely falsified.

228. The Defendant Justices and Defendant Cooper knew or had reason to know that Plaintiff in fact had these grievances by way of his seeking by his filings, motions and pleadings and

writings in the Appellate court to overturn orders causing the relocation of his minor child including an order denying recusal and the entry of a child support addendum.

229.    Defendant Justices knew and had reason to know that any finding of meritorious errors or required relief in Plaintiff's appeal which was seeking relief based on his grievances would or could; (1) result in Brian Amero being disqualified and his orders causing the relocation of Plaintiff's minor child being overturned or declared void; (2) in a finding that a substantial change of circumstances was not found resulted in the reversal of modification or; (3) in the entry of the child support addendum being reversed or considered void.

230.    Defendant Appellate Justices and Cooper also knew and had reason to know that before any modifications of Plaintiff's "Initial custody agreement" were rendered in the lower court that he was entitled to 12 days a month according to said custody agreement and that the modification rendered in the lower court entitled him to visitation only 3 days a month.

231.    Thus, Defendant Appellate Justices knew and had reason to know that Plaintiff sought grievances to overturn the modification of his "Initial Custody Agreement" and that any overturning of said modification would entitle Plaintiff to spend more time with his child.

232.    The Defendant Justices knew or had reason to know based on their collective 50 years combined experience or legal knowledge that they owed the Plaintiff a legal duty and obligation to make all of their rulings in his Appellate court case in accordance with the law, in good faith, with honesty and care and pursuant to their oaths to "protect and defend" and with the intent of correcting meritorious errors on review and to render a proper remedy, relief, vindication and redress when required and were not to deny, withhold or refuse to render meritorious relief or a required remedy when any errors or the need for correction of errors was present without justification in the law.

233.    The Defendant Justices holding such knowledge, with actual malice or reckless disregard

and indifference to the rights of the Plaintiff did fail, withhold or refused to adhere to their

obligations and duties owed to Plaintiff and render a correction of errors, relief, proper

remedy and psychological vindication of meritorious issues by; (1) affirming the recusal of

Georgia judge Brian Amero knowing or having reason to know such decision was manifestly

incompatible with the law; (2) affirming the entry of a support addendum knowing or having

reason to know such decision was manifestly incompatible with the law; (3) affirming a Final

Order causing Plaintiff's minor child to relocate across state lines which knowing or having

reason to know that such decision was a manifest injustice to Plaintiff and manifestly

incompatible with the law; (4) denying all motions for reconsideration knowing or having

reason to know such decision was manifestly incompatible with the law; and (5) denying

Plaintiff's disqualification motion of Defendant Appellate justices knowing or having reason

to know such decision was manifestly incompatible with the law.

234.    It can be argued to a jury that the moment Defendant Appellate Justices denied Plaintiff's

Motion to Reconsider dated 1/26/2023 that they knew it would cause severe, mental and

emotional distress because they were in fact presented with cite to law, authority and facts

that "clarified and made certain" that Plaintiff was entitled to relief and denied such relief.

235.    As such, an inference can be made that knew or had reason to know prior to the denial of

Plaintiff's Motion to reconsider that they had an intent to deny Plaintiff of all relief in which

he was entitled and would know that it would cause severe, mental and emotional distress.

236.    Moreover, Defendant Appellate Justices refused to disqualify from the Plaintiff's appeal

when presented with a motion to disqualify including defended against the allegations of the

recusal motion knowing or having reason to know based on their experience that their recusal

was required and knew to refuse to do so would frustrate, delay, or prevent Plaintiff's relief and redress of his grievances in the return of his minor child and correction of errors.

237.    Thus, there is reason to believe that the Defendant Appellate Justices made their rulings and decisions having actual bias and prejudice against the Plaintiff because when presented with a motion to disqualify alleging such bias and prejudice they defended against the motion to disqualify having the experience to know that such defense mandated their recusal and disqualification from Plaintiff's appeal in his seeking relief in his grievances.

238.    As such, because the Defendant Appellate Justices (1) affirmed or denied Plaintiff's relief and (2) refused to disqualify knowing or having reason to know to do so was manifestly incompatible with the law including (3) remaining in Plaintiff's appeal & refusing to disqualify having such a bias and prejudice – the Plaintiff suffered severe mental and emotional distress, severe mental anxiety, and mental aguish in knowing that in his attempts to seek the return of his minor child and correct errors on direct appeal, that highly skilled and educated Appellate Justices were in fact engaging in a pattern and scheme of bias and prejudice to ignore, delay, frustrate, or deny his relief in his grievances on appeal regardless of the law.

239.    Because of their failures to adhere to their obligations and duties the Plaintiff was deprived, denied or delayed a proper remedy, relief, and therefore psychological vindication in his time, effort and months of self-study and labor to present the enumerations of errors to receive a remedy on appeal and overall, overturn the modification of his initial custody agreement and has caused Plaintiff severe mental and emotional distress in knowing that a court erected for the purposes of correcting errors on appeal for such grievances had in fact decided to disregard all his cite to law and authority.

240.  In lieu of Plaintiff's direct appeal being docketed in a court erected for his benefit for correction of errors on appeal amongst judges who owed him an obligation and duty to correct such errors, he was instead met by a strategic and skillful judicial stratagem to prevent, delay and deny him proper redress and relief from any errors that would have or could have resulted in substantially more time with his child and it can be argued to a jury that this act would in fact cause Plaintiff severe mental & emotional distress and Defendant Appellate Justices would know that such acts would in fact cause the distress alleged.

241.  Moreover, it can be argued to a jury that the Defendant Appellate Justices denied Plaintiff of all of his relief with a bias and prejudice, which on information and belief, arose from an esoteric understanding, motive or agreement shared between other courts, state and federal actors of the need to make certain that under no circumstances could any relief in his grievances go in his favor against Brian Amero if there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against judge Brian Amero.

242.  It could be argued to a jury that Plaintiff would certainly face mental and emotional distress, mental anguish, and psychological anxiety **while merely *awaiting*** any decisions on appeal of (1) whether or not the modification of his custody agreement was in error and/or (2) whether the parties in the custody proceeding would continue to be subject to a modification of the initial custody agreement which Plaintiff decreased time with his minor child to 3 days a month in lieu of the initial 12 days a month by a finding of required recusal voiding all orders altering or modifying his initial custody agreement.

243.  It could be further argued to a jury that Plaintiff would certainly face *severe* mental and emotional distress, anxiety, mental anguish and become severely deprived of psychological vindication and that the Defendant Appellate Justices would know the Plaintiff would **when**

**the decisions or orders were rendered**, which orders, or decision were manifestly

incompatible with the law and contrary to authority, the law and his cite to law.

244.    Defendant Cooper also owed Plaintiff a duty and obligation to adhere to her ministerial

duties and file all motions and filings presented to her and not concern herself with the legal

viability of a pleading or whether a court had jurisdiction to make a ruling on a pleadings and

knew with her 7 years experience that such obligation and duty was to be made in good faith,

in accordance with the law, her duties and her oath of office.

245.    It could be argued to a jury that Plaintiff would certainly face mental and emotional

distress, mental anguish in awaiting psychological vindication based on the time, study,

effort and labor it took to present a Motion for reconsideration for filing in the Appellate

Court only to have an Appellate court clerk who had a duty to file such motion, refuse.

246.    It could also be argued to a jury that Defendant Cooper, knowing such appeal involved

the possible overturning of modifications to Plaintiff's initial custody agreement based on

errors in the lower court would know that such deliberate refusal to file his Motion to

reconsider would deprive him of psychological vindication and also cause severe mental and

emotional distress in a possible recusal of Appellate Justices reviewing his errors on appeal

for reversal of lower court orders for *their* bias and prejudice whom she knew could or would

have been required or resulted in the overturning of lower court orders if she had filed said

Motion.

247.    It can be argued to a jury that Defendant Cooper would know that to refuse to file

Plaintiff's Motion to reconsider would not only deprive him of psychological vindication in

recusing Appellate Justices reviewing an appeal concerning his minor child to ensure he had

a fair appeal based on the Appellate justices bias and prejudice but also cause severe mental

and emotional distress to the Plaintiff in being delayed arbitrarily in spending substantially

more time with his child by her refusing to file said motion to reconsider because she knew

that to do so could or would have required or resulted in the overturning of lower court

orders if she had filed said Motion in said court.

## JUDICIAL QUALIFICATIONS COMMISSION

248. By an act of the General Assembly of the State of Georgia, the Plaintiff is entitled and

may like all other citizens of this state to file a Judicial Complaint against any Judge in this

state for ethics violations and violations of the Judicial Code of Conduct with the Judicial

Qualifications Commission ("JQC").

249. The JQC was required to receive Plaintiff's Judicial Complaint and act fairly, honestly,

with due and reasonable promptness and accurately according to the Rules of the JQC and

the Judicial Code of Conduct.

250. The JQC has and Defendant Boring as former director of JQC had a legal duty and

obligation to the public and Plaintiff to follow the law and evaluate all information from any

source and conduct a preliminary investigation into any complaint if the allegations, if true,

constitute judicial misconduct of any Georgia judge.

251. On December 9th, 2021, via email the Plaintiff did file a Judicial Complaint against judge

Brian Amero with the JQC which was acknowledged on or around December 10th, 2021.

252. The Plaintiff's initial Judicial Complaint submitted on 12/9/2021, named Judge Brian

Amero and stated general claims alleging including but not limited to Brian Amero's

falsification of child support records and a custody proceeding the refusal to disqualify when

required, delay of his open records complaint and the presentment of his Writ of Habeas

against the City of Hampton action in conspiracy.

253.    Plaintiff supplemented his judicial misconduct complaint on 4/6/2022, for inclusion of his

       priors complaint via email which was received by Kristen Bertsch of the JQC on 4/7/2022.

254.    The supplemented Judicial misconduct complaint is attached as "Exhibit F", incorporated

       herein, as if fully alleged herein & by reference. (Exhibit F – Judicial Misconduct Complaint)

255.    Generally, the Plaintiff's amended judicial misconduct complaint gave notice of the

       following claims of judicial misconduct by Brian Amero, to wit;

       1.  Falsification of records and proceedings;
       2.  Delaying a ruling on the merits of his open records suit;
       3.  Conspiring with others to avoid the issue of his Writ of Habeas complaint;
       4.  Conspiring with others to delay the docketing of his appeal from appellate review.

256.    Plaintiff then came into correspondence with Ms. Khalifa of the JQC on the dates of

       April 6th, 2022, and April 14th, 2022, via email who had continuously inquired about whether

       Plaintiff had "evidence" to substantiate the allegations of document falsification and

       conspiracy within his judicial misconduct complaint.

257.    Ms. Khalifa is the staff attorney for the JQC and has the educational and legal experience

       to ascertain the rules of the JQC and JQC procedure.

258.    Ms. Khalifa had inquired about whether Arnold had evidence for his "conspiracy"

       allegations multiple times via email although she knew or had reason to know that evidence

       of Plaintiff's claims were not needed in the preliminary stages of review of judicial

       complaints according to Rule 17 of the JQC.

259.    Plaintiff had told Ms. Khalifa that he had evidence to each and every allegation of his

       judicial misconduct complaint.

260.    After such a correspondence, Ms. Khalifa stated that she would "get back" to Plaintiff

       and the JQC would not act on Plaintiff's complaint for more than a period of 8 months which

prompted Plaintiff to then reach out to Chief Investigator of the JQC John Gosart and inquire

about his Complaint on 12/27/2022 who stated he would look into the matter.

261.    A day later, on 12/28/2022, the JQC dismissed Plaintiff's Amended judicial misconduct

complaint for the following reasons, to wit;

"Complaints relating to a judge's *discretionary* rulings will, in most cases, be dismissed for
failure to allege judicial misconduct... After reviewing and evaluating the information you
submitted, the Director has determined that the information provided in your complaint does
not identify an allegation which amounts to a violation of the Code of Judicial Conduct.
**"[C]hild Custody modification determinations are discretionary rulings [which] do not,
in and of themselves, amount to violations of the Code of Judicial Conduct."** (Exhibit G
– JQC dismissal)

262.    The JQC has a pattern, practice and policy of refusing to investigate any acts of judicial

misconduct from any source alleged to have been committed by Georgia Judges in *child*

*custody cases* if such source alleges acts and omissions of such judges that (1) are the result

of a *discretionary* decision or (2) on information and belief non – *discretionary* decisions &

such pattern, practice & policy was the motivating & contributing favor to Plaintiff's injury.

263.    On January 5th, 2023, the Plaintiff then submitted a document purporting to have the

panel to reconsider ("Reconsideration') the former Directors denial of Plaintiff's judicial

complaint. (Exhibit H – Reconsideration)

264.    The reconsideration gave notice to the JQC panel that Defendant Boring had dismissed

his complaints on the notion that the JQC does not consider judicial complaints based on

*discretionary acts* of a trial court judge although the director knew or had knowledge, and the

Plaintiff presented acts of the judge mentioned in Plaintiff's judicial misconduct complaint

that the acts he complained of were in fact **non-discretionary**.

265.    The Plaintiff stated with reference to allegations of falsifying records, to wit;

"[A] Judge **has no discretion** to make a modification of any Child Support orders
absent a Petition to Modify Child Support filed on the court record. As such,

Complainant alleged an act of falsifying documents and proceedings in violation of Georgia law. O.C.G.A. § 16-10-20, O.C.G.A. § 45- 11-1." [Exhibit H – page 3]

266.    Moreover, the Plaintiff clearly stated in his submitted reconsideration document with reference to Georgia judge Brian Amero's denial of his recusal motion, to wit;

>   "[F]ailing to immediately recuse in order to use such time to falsify a Child Support record constitutes misconduct." [Exhibit H – page 5]

>   "[U]SCR 25.3 **does not authorize a discretionary determination** on the part of the trial judge presented with a motion and affidavit to recuse." *MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)* [Exhibit H – pg. 5]

267.    The Plaintiff also presented claims in how such Child Support record was falsified which should have required a preliminary investigation, *if true*, by stating, to wit;

>   "[J]udge Brian Amero... stating in a modification of custody proceeding on a recorded document, mainly a Child Support Addendum... that the action was a modification [of child support] action and that the parties agree that an income deduction order [was] not immediately necessary when ... the parties never agreed during or following the modification of custody hearing that an income deduction order was not immediately necessary... and no petition to modify child support was filed on the court record."[14] [Exhibit F – pg. 3]

268.    The Plaintiff also pointed out how prior investigations of JQC years prior based on the discretionary acts by a trial court Judge in a separate case supported cause for a preliminary investigation by the JQC in that instance, albeit Plaintiff's judicial misconduct complaint alleged non-discretionary acts in a child custody case.

269.    On January 23rd, 2023, the Judicial Qualifications Commission Investigative panel denied the Plaintiff's request to reconsider although it **clearly** alleged, again non-discretionary acts.

---

[14] The Plaintiff also provided the telephonic number of the Plaintiff in the custody proceeding "Tyarielle Patterson" and identified her as a "witness". [Exhibit H – pg. 4]

270.    The dismissal of the Plaintiff's judicial complaint by former Director Charles Boring and the JQC Investigative panel alleging violations of the judicial code of conduct which *if true* should have required a preliminary investigation at least into or at minimum the allegations of acts of falsifying Child Support records and proceedings and refusal to recuse and the failure to do so was manifestly incompatible with the law and JQC rules.

271.    Because of the Defendant Borings dismissing Plaintiff's Judicial Complaint and the JQC denying reconsideration although if true, it should have required a preliminary investigation including their pattern, practice and policy of dismissing Judicial misconduct complaints in child custody cases, the public and Plaintiff is injured because "[A] **community without certainty** in the true administration of justice is a community without justice," *Matter of Inquiry Concerning a Judge, 462 SE 2d 728 265 Ga. 843 (1995)*.

272.    By the refusals of the JQC or Defendant Boring to even conduct an investigation into Plaintiff's judicial complaint alleging acts that, if true, violated the judicial code of conduct, including their pattern, practice or policy of refusing to investigate judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions – the Plaintiff was and continues to be injured because the JQC is allowing Georgia judges to violate the judicial code of conduct with no consequences by refusing to investigate any judicial misconduct complaints which are the result of discretionary acts in child custody cases and also non-discretionary.

273.    The Plaintiff being a Georgia state citizen and the public, is injured generally and personally as a result or contributing factor of the JQC's refusal to investigate violations of

the judicial code of conduct and canons by Georgia judges in child custody cases as a result of their pattern, practice and policy which is continuing as of the date of this filing.[15]

274. The Plaintiff and the public has a right and interest to ensure that the JQC investigate and discipline Georgia judges violating canons and the judicial code of conduct.

275. Such discipline operates as a coercive act in the interest of deterrence from future violations of the judicial code of conduct in the interest of the public and to protect the public from Tyrannical judges or judges violating the judicial code & if not for the pattern, practice and policy, the JQC would have investigated Plaintiff's judicial misconduct complaint because the allegations, if true, therein his judicial misconduct complaint required such.

276. According to JQC's 2022 Annual Report, in 2022 the JQC received 1,103 complaints and 392 of these Complaints were dismissed because of legal/Appellate issues and 552 were dismissed because it did not constitute a code of judicial conduct ("CJC") violation.

277. It is a fact that one of the 552 Complaints dismissed was Plaintiff's Complaint.

278. Because Defendant Boring dismissed Plaintiff's Judicial Misconduct Complaint and the JQC's investigative panel refused to reconsider or investigate acts that were clearly and manifestly shown to be non-discretionary acts, there is reason to believe and an strong inferences which suggests that a significant number, if not all other 943 judicial misconduct complaints were also dismissed for alleged non-discretionary acts and on this basis Plaintiff states that there is reason to believe that the JQC has a pattern, practice or policy of dismissing judicial misconduct complaints also alleging **non-discretionary acts** rendered in child custody proceedings and such is injurious to the public.

---

[15] "[T]hat injury need not always be individualized; sometimes it can be a **generalized grievance** shared by community members, especially other... citizens." *Sons of Confederate Veterans v. Henry County Board of Commissioners S22G0039, S22G0045 Ga Supreme Court (2022)*

279.  Although the JQC and Defendant Boring as former director owed a legal duty and

obligation to the public and Plaintiff as a Georgia state citizen to follow the law and evaluate

all information from any source and to conduct preliminary investigations if the allegations

constituted judicial misconduct, if true, and in a pattern, practice or policy refused to launch a

preliminary investigation into Plaintiff's judicial misconduct complaint against Georgia

judge Brian Amero and continues to refuse to conduct investigations into any judicial

misconduct complaint because of the pattern, practice or policy of refusing to investigate

judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the

result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions and was the

motivating and contributing factor to the Plaintiff's and the publics injury.

## GEORGIA'S OFFICE OF INSPECTOR GENERAL

280.  Georgia's Office of Inspector General's ("OIG") is an office within the State of Georgia

charged with investigating allegations of corruption, fraud, waste and abuse within an agency

of the executive branch agency pursuant to Executive Order 01.13.03.02.

281.  It is important to note that Georgia Senate Bill 59 was signed and approved by the

Governor on March 29th, 2023, and became effective upon its approval by the Governor. [16]

282.  However, Plaintiff concerns himself and his claims against the OIG based on their

failures to correspond, investigate or even specifically acknowledge his complaints sent prior

to the passage of Georgia Senate Bill 59 alleging solely as stated within his complaint

**probable cause** of allegations corruption and abuse.

283.  Plaintiff does not seek to litigate any specific or general act alleged within the complaint.

---

[16] Senate Bill 59 Summary provided for definitions; for duties, certain powers, procedures for the
application of such duties and office; duty to report certain actions; to provide for employment of peace
officers; and for related matters and to repeal conflicting laws. https://legiscan.com/GA/bill/SB59/2023

284.   Moreover, Senate Bill 59 did not provide nor state whether the Bill had retroactive
       application or applied to any complaints submitted prior to the bills approval.

285.   It is a fact that each complaint (or grievance) sent to the OIG's office by the Plaintiff was
       sent via email and mail prior to the passage of Senate Bill 159, which Bill was approved on
       3/29/2023.

286.   On January 31st, 2023, the Georgia Office of Inspector General ("OIG") received notice
       from Plaintiff via electronic online submission on its direct website that *referenced* his
       complaint in its "Please describe in detail what you are reporting" section and received the
       confirmation no. BD6EFC3585.

287.   On 2/1/2023 Plaintiff emailed the reference 22 page complaint hereinafter ("Agency
       corruption complaint") via email submission to the OIG and referenced the confirmation no.

288.   The Plaintiff's sent his Agency corruption complaint because he knew or had cause,
       solely probable cause, of a conspiracy to commit false imprisonment that involved
       employees within the executive branch, and also alleged therein, including but not limited to;

> "The **Department of Human Services combined**, concerted, aided **and assisted Brian
> Amero to falsely imprison the Complainant** by knowingly and willfully utilizing its
> state agency and filing **within** the state judiciary **a contempt action** against Complainant
> **that employees of the Agency** and Brian Amero (presiding Judge in this action) **knew
> was void** and **without valid enforcement authority** arising from a proceeding to register
> an out-of-state support order in 2019 that occurred without the required presence of the
> Complainant. Complainant states that there is reasonable evidence to believe that Brian
> Amero did falsify said Child Support Addendum for the purposes of concerting with the
> Department to bring forth a subsequent income deduction order in a contempt action
> because of his knowledge that the prior 2019 income deduction order was void and
> without effect; and that the Department knew the support order for enforcement was
> unlawful and the contempt action was thus void and without effect; because agreements
> or communications between Brian Amero and the Department which can be inferred by
> the Departments request to enter an "income deduction order" in such contempt action
> shortly after Brian Amero fabricated the "Child Support. Addendum" which falsely stated
> that "the parties agree that no income deduction order was immediately necessary."
> Moreover, the Department deliberately conflated Petitioner's request for case information
> with an open records request, a separate and distinct request for open records, in order to

further conceal any other basic information concerning Complainants "questions" (not records) regarding any judicial determinations or judicial adjudications in the year of 2022 for Complainant's child support case. **There is probable cause to believe that the Department concealed case information in order to assist or obscure evidence** that Brian Amero and Barbara Briley were **conspiring to falsely imprison the Complainant** or had already did an act to make Complainant more vulnerable to arrest other than the filing of the action… and that the Department **ignored open records request** for any and all action taken on his child support case **at a time the contempt action was pending**."

289. The Agency corruption complaints also alleged facts to support his probable cause

allegations of such a conspiracy in that the Plaintiff had learned in July of 2022 that the

Department has filed a Rule Nisi after its filing of a contempt action under an alleged void

order for the purposes of falsely imprisoning the Plaintiff, by stating, to wit;

"The Complainant would learn in July of 2022, that on May 11th, 2022 – two days before the Complainant requested to supplement the record for exhibits tendered and admitted in his custody modification action (SUCV-2021-0700) in the Appellate court – the Department, by through Assistant District Attorney Barbara Briley **would file a Rule Nisi seeking the Complainant's incarceration for non-payment of Child Support** under the December 1st, 2021 contempt action – and had done so by addressing an address that Complainant had changed in case no. SUCV-2021-0700 (in which Brian Amero presided) only days prior to the filing of said Rule Nisi. Upon information and belief, the Department may have not known that the address belonged to family members of the Complainant and that Complainant would have never gotten notice if said Rule Nisi was mailed or any purported service of summons."

[Continuing] "There is reasonable evidence to believe that the Department **concealed the Contempt hearing by secreting records**, refusing to respond to records request and omitting a contempt action in such a misrepresentation of a false response in an **Open Records lawsuit** filed in the Fulton County Superior Court. (2022CV370090)"

290. The Plaintiff also alleged that he duly fears a predetermined outcome by state actors who

would become liable for his successful challenge of the unlawful registration support order.

291. Because of their inaction Plaintiff fears that if he were to challenge the order in official

proceedings by suing the actors individually that they will retaliate or effectuate an act

threatening the safety and security of the Plaintiff and mentioned such fear in said complaint.

292.   No correspondences other than the automatic acknowledgement of receipt of Plaintiff's

Agency corruption complaint would be received from the Inspector General.

293.   The Plaintiff would make an Open Records request on 2/28/2023 to the Inspector

General's Office ("O.I.G.") requesting records related to the date of the receipt of his Agency

Corruption complaint and who was assigned to said complaint and Defendant Nigel Lange,

as Interim Director at such time, would respond stating that the OIG received Plaintiff's 22

page complaint on 2/1/2023 & that Defendant Spencer was assigned to his case on 2/1/2023.

294.   Days later, the Plaintiff would supplement his Agency corruption complaint on or around

March 1st, 2023 (Exhibit I) also alleging probable cause of a conspiracy to commit false

imprisonment, to wit;

"Mr. Arnold ("Complainant") states **that there is probable cause** to believe that
employees, officials and officers employed within the above agencies acted in concert
with other state officers in acts of corruption for pecuniary gain of their state agencies
and others. The initial Complaint in conjunction with this Supplemental Complaint
establishes that these state officers, employees and officials within the above agencies
filed an unlawful contempt proceeding without lawful authority to falsely imprison the
Complainant, concealed open records of such proceeding, knowingly and unlawfully
enforced collection of monies related to this concerted effort and unlawfully influenced
Complainant for pecuniary gain of their agencies and to assist or avoid liabilty for
themselves and others whose pecuniary interests were affected by these acts. (Exhibit I –
pg. 4 – Supplemented Agency Corruption Complaint)

295.   Plaintiff incorporates all of the facts therein said Exhibit I ("Supplemental Complaint")

by reference as if fully alleged herein to avoid repetition when referenced in this section.

296.   According to the State Inspector General's Office Executive order 01.13.03.02 section 3.,

signed by Governor Perdue, the Inspector General had authority and the duty and was to

determine whether the complaints allege facts that give reasonable cause to investigate, and if

so, to determine whether the alleged… corruption was in fact being committed or had been

committed by a state agency or employee within the executive branch.

297.    Pursuant to O.C.G.A. § 45-12-211 et seq., the Inspector General had jurisdiction over any official in the executive branch and pursuant to O.C.G.A. § 45-12-212 et seq., had duties to receive and investigate complaints from any source alleging fraud, waste, abuse or corruption; and report suspected acts of the same to the Governor, or as appropriate, other state or federal entities with jurisdiction over the matter.

298.    However, although having in their possession since 2/1/2023 the Plaintiff's initial Agency corruption complaint and since 3/1/2023 the Plaintiff's Supplemental Agency corruption complaint alleging probable cause of acts of corruption and abuse, the OIG, Defendant Lange and Defendant Spencer all refused to respond, correspond, investigate his complaint or determine whether the complaint alleged corruption that was being committed or had been committed consider Plaintiff's Agency corruption complaint(s), whatsoever.

299.    In other words, the OIG, Defendant Lange and Defendant Spencer having knowledge of being assigned Plaintiff's complaint never in fact investigated his probable cause allegations alleging corruption whatsoever.

300.    Defendant Lange, Spencer and the OIG had not mailed nor emailed Plaintiff regarding any procedures of how a complaint was to be investigated, had not stated whether the Plaintiff's complaint alleged or did not allege any allegations of corruption and abuse, had not reported the suspected acts to the Governor, had not reported the suspected acts to any other agency with jurisdiction over the matter nor have they stated to Plaintiff that an investigation was actively ongoing or in fact was actively occurring.

301.    The OIG, Defendant Spencer and Lange ignored the Plaintiff's Agency corruption complaint including his supplemental complaint.

302.   Open Records Request made to Defendant Lange on March 27th, 2023, requesting whether any physical correspondence had been mailed to the OIG showed in their response by Defendant Lange himself that no physical correspondence had been mailed to him at all.

303.   No mailings from the OIG has ever been received by the Plaintiff and the OIG in fact has had the Plaintiff's mailing address and has yet to send any physical correspondence to the Plaintiff whatsoever as of the date of this filing.

304.   Plaintiff also sent multiple emails as early on February 3rd, 15th, 28th and March of 2023 to the actual email address that the OIG received his Agency corruption complaints from requesting an update on his case and whether or not his complaint was proper and within the purview of the Georgia State Inspector General and neither email was responded to.

305.   Defendant Lange and Tonette Spencer knew of the Plaintiff's complaint(s) and knew that that the claims involved in Plaintiff's Agency corruption complaints involved Brian Amero and an agency of Georgia's executive branch – the Department of Human Services and had reason to know based on the allegations within Plaintiff's Agency corruption complaints in which they had receipt of, facts supporting *probable cause* of a conspiracy to commit false imprisonment by Georgia judge Brian Amero and agents within the Department.

306.   The also knew and had reason to know that the allegation of probable cause stated that "Barbara Briley and Brian Amero acted in concert to *knowingly* file [a] contempt action although they knew such enforcement of the support order was unlawful." [Exhibit I pg. 3]

307.   This is because Plaintiff first alleged allegations to support that there was probable cause to believe that the support order was unlawful by stating, to wit;

> "On September 24th, 2019, the Division of Child Support Services Department of Human Services, by and through Barbara Briley filed an out-of-state child support order for registration and enforcement purposes by contempt against the Petitioner in the Henry County Superior court case no. SUCV-2019-2651, judge Brian Amero presiding. On the

face of the record, it shows that Complainant was served with the notice of registration and summons in this case. On the face of the record, it shows that on October 15th, 2019, Complainant filed a special appearance in response to the registration and enforcement action and within the special appearance stated, "that on November 18th, 2020, in the above-entitled court at the hour of 8:30 a.m… Deandre Arnold… can be heard." On the face of the record, it shows that neither the Henry County Superior court nor the Georgia Department of Human Services schedule the matter for hearing nor give notice to any of the parties of the date, time and place of the hearing that would occur in the Henry County Superior Court. On the face of the record, it follows and shows that the Henry County Superior court could never consider any challenges regarding jurisdiction or validity or enforceability of the support order because the court failed to schedule a hearing as within Petitioner's request "to be heard" within his special appearance notice filed on the court record five days after service of the action for registration and enforcement. On the face of the record, it shows that on November 19th, 2019, the court entered an order entitled "Order Recognizing the Out-of-State Child Support Order that is controlling for enforcement and Order of enforcement." [Exhibit I – pg. 3]

308.    Plaintiff then alleged allegations to support probable cause that the state actors, mainly,

Barbara Briley and Brian Amero knew the support order was unlawful by stating, to wit;

"Department would ask for an additional income deduction order less than 2 months after Brian Amero's falsified support Addendum that stated therein no income deduction order was necessary. Moreover, the Department would not include any of the 2019 arrearages in its December 2021 contempt action for enforcement." [Exhibit I – pg. 9-10]

309.    Moreover, to further support his allegations of probable cause it was further alleged that

there was probable cause to believe the Department of Human Services had concealed the

contempt hearing by refusing to respond to open records request by stating, to wit;

"[The] Department concealed the Contempt hearing by secreting records, refusing to respond to records request and omitting a contempt action in such a misrepresentation of a false response in an Open Records lawsuit filed in the Fulton County Superior Court. (2022CV370090) On the dates of 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022, 6/7/2022, the Affiant sent repeated emails to the Georgia Department of Human Services Open Records Officer Jacob Davis and DCSS that went unresponsive more than 7 times over the course of 4 months. Neither record sought were confidential under any state or Federal statute as the records requested were related to "self" and identified the Affiant as the requestor in the information. Moreover, the Department neither provided evidence whatsoever that they sent records related to the pending contempt action filed in

December of 2021. [See Departments Motion to Dismiss filed 10/17/2021 – case no. 2022CV370090] [Exhibit I pg. 11]

310.   Plaintiff also stated in his initial Agency corruption complaint allegations of probable cause that, to wit;

> "There is reasonable evidence to believe that the Department concealed records requests requested by the Complainant of a contempt action at a time a hearing for contempt was purportedly pending against Complainant."

311.   All of the facts alleged in Plaintiff's Agency corruption complaint and more fully in his supplemental complaint supported probable cause that agents within the Department of Human Services had conspired to commit false imprisonment which was criminal in nature.

312.   Moreover, the allegations within Plaintiff's Agency corruption complaints alleged enough facts of probable cause to alert Defendant Lange and Spencer of *state* created danger because Plaintiff stated in his initial Agency corruption complaint, the following, to wit;

> "The acts and omissions of these Georgia officials entail that they believe they will avoid all accountability for their unlawful acts so long as they arrest the target of their conspiracy – the Complainant. Further, **any unlawful incarceration will not in of itself automatically remove liabilty** which is why I reasonably believe that the main goal to spearhead this unlawful incarceration is a part of esoteric goal that involves the assassination of a United States Citizen to avoid liabilty and to do so by unlawfully utilizing the state judiciary and its agencies to do so."

313.   Defendant Lange and Spencer knew and had reason to know that if they had investigated or reported the matter to the Governor that there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero because the acts mentioned within the complaint involved allegations of probable cause of officials within the executive branch acting in conspiracy with Georgia judge Brian Amero.

314.    The OIG in fact had the authority pursuant to Executive Order 01.13.03.02 to investigate such claims and as appropriate report such corruption to the appropriate prosecuting authority for possible criminal prosecution or law enforcement agency for criminal referral.

315.    Moreover, pursuant to Executive Order 01.13.03.02 section 4, the Inspector General was required to provide a complete copy of each report of an investigation to the Governor.

316.    At any time prior to the approval of Georgia Senate Bill 59 or after Defendant Spencer could have investigated Plaintiff's complaint(s) and Defendant Lange having reason to know that there was no action taken on Plaintiff's complaint(s) as a result of his responding to Plaintiff's open records request stating that no physical correspondence had been sent, could have or should have procured or made certain that an investigation took place but refused.

317.    Thus, there is reason to believe that Defendant Lange knew that Defendant Spencer had not responded to the Plaintiff, had not mailed the Plaintiff nor took any action on his Agency corruption and supplemental complaint(s) and with malice or with reckless disregard for the rights of the Plaintiff failed to prevent said acts by failing to ensure Defendant Spencer had in fact investigated and the acts were manifestly incompatible with their duties.

318.    Defendant Lange and Defendant Spencer owed the Plaintiff a duty to act fairly, in good faith, with honesty, in accordance with Executive Order 01.13.03.02 and their oaths when taken possession of or receipt of Plaintiff's Agency corruption and supplemental complaints.

319.    Although owing the Plaintiff a legal duty and obligation to act in good faith and with honesty in accordance with Executive Order 01.13.03.02, Defendant Lange and Spencer refused to investigate nor determine whether his complaint(s) alleged facts that gave reasonable cause to investigate and to determine whether corruption had been committed in the executive branch and has not done so as of the date of this filing – 100 days.

320.    On information and belief, Defendant Lange and Spencer knew and had knowledge of an esoteric understanding and motive shared between other courts, state and federal actors or agreement of the same of the need to make certain that under no circumstances could any relief in his grievances go in his favor because there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against Georgia judge Brian Amero if any of the Plaintiff's relief in his grievances actually went in his favor.

321.    This is because there is no other plausible reason (and the only plausible reason) why 100 days would surpass (and continuing) in which Defendant Lange and Spencer would neither investigate nor determine whether or not Plaintiff alleged corruption in his complaint if they had not known or had no knowledge of such an esoteric shared motive, understanding or agreement in conspiracy of the need to deny Plaintiff of any relief related to any grievances against Georgia Judge Brian Amero if there was a possibility that criminal prosecution could be brought if the relief in his grievances actually went in his favor on appeal.

322.    As such, in furtherance of the conspiracy, Defendant Spencer refused to investigate his claims whatsoever and Defendant Lange knowing or having reason to know that Defendant Spencer had not investigated Plaintiff complaint(s) nor mailed any correspondence to Plaintiff alleging such, refused to make certain that an investigation took place.

323.    Defendant Spencer and Lange owing the Plaintiff a duty and obligation to investigate complaints did, and in conspiracy, refused to perform and abide by their obligations and duties in refusing to investigate Plaintiff's multiple complaint(s) in violation of Plaintiff's Fourteenth Amendment rights to substantive due process of law under a duty to protect analysis and did so contrary to their sworn oaths and their acts as a whole breached the obligations and duties owed to the Plaintiff in the social compact or contract.

## OPEN RECORDS COMPLAINT IN THE FULTON COUNTY SUPERIOR COURT (JUDGE BELINDA EDWARDS)

324.    On September 13th, 2023, the Plaintiff filed a complaint against the Georgia Department

of Human Services ("Department") for violations of the Georgia Open Records Act.

325.    The Plaintiff asks the court to take judicial notice of all of the filings within that Open

Records suit filed against the Department case no. 2022CV370090.[17]

326.    The Plaintiff contended within his Open records complaint that the Department for a

period of 4 months refused to respond to records request made by the Plaintiff that were

neither confidential nor unresponsive and without justification.

327.    Plaintiff stated within the Open Records Complaint, to wit;

"On the dates of 4/28/2022 the Plaintiff made a public records request pursuant to the
ORA which was addressed to Defendant Jacob Davis ("Defendant Davis"), via email @
openrecordsdhs@dhs.ga.gov and [the Departments'] local McDonough Child Support
office. [Open Records Complaint No. 41]
… Plaintiff made a public records [request] pursuant to O.C.G.A. 50-18-70 et seq., for 3
specific records, which went unresponsive and remains unresponsive, for the following;
        (1) Any and all information related to any and all actions taken on the child
            support case no identifying Plaintiff in the information. (2) The name current
            of the caseworker of the Child Support Account no. (3) The name of the
            manager at the McDonough Child Support Office. [Id. no. 50]

328.    The Plaintiff also alleged that as to his 4/28/2022 records request, that duplicate records

request would be made on 5/3/2022, 5/5/2022, 5/9/2022, 5/13/2022, 5/19/2022 and 6/7/2022

which were too all ignored. [See Open Records Complaint in case no. 2022CV370090 no.

42]

329.    At all times herein, the Plaintiff's Open Records suit was a meritorious claim for the

relief sought in the Complaint under the applicable Georgia Open Records law.

---

[17] "(Taking judicial notice of pleadings in other lawsuits attached to defendants' motion to dismiss)

330.   Such case would be assigned to Judge Belinda Edwards of the Fulton County Superior court.

331.   The Department of Human Services ("Department") would file an answer in this case and a motion to dismiss on October 17th, 2022.

332.   The Plaintiff would respond to both the answer and the Department's motion to dismiss on November 17th, 2022 – any proper responses expired on 11/17/2022.

333.   No other pending motions would be filed in the case after 11/17/2022 until March 2nd, 2023 – 105 days after the November 17th, 2022 filing.

334.   On March 2nd, 2022, the Plaintiff would file a "Plaintiff's Inquiry and Motion for a Ruling on Defendants pending Motion to Dismiss."

335.   The Motion stated therein the following, to wit;

> "The Plaintiff submits a friendly reminder and this motion to the Court contending the Defendants Motion to dismiss has operated as a stay of all discovery in this action and that the passage of time in wait for a decision on this motion has surpassed 90 days and will lead to an erosion of memory and the dispersion of witnesses which would make discovery of proof of certain matters in this trial, impossible. Pursuant to O.C.G.A. 15-6-21(b) "it shall be the duty of the judge of the superior… court, unless providentially hindered or unless counsel for the plaintiff and the defendant agree in writing to extend the time, to decide promptly, within 90 days… all… motions of any nature." [See Motion For A Ruling on Defendants Pending Motion to Dismiss no. 7-8]

336.   Although submitting a motion to the court on 3/2/2023 for a ruling on the pending motions in such case for the initial 105 day delay – 70 days and counting as of the date of this filing surpassed without Judge Belinda Edwards making a ruling on the pending motions.

337.   According to the United States Census Bureau as of 07/01/2022, the population of Fulton County Georgia was estimated to be around 1,074,634.

338.    Pursuant to O.C.G.A. § 15-6-21(b), a Judge in the Fulton county Superior court with a

population of more than 100,000 inhabitants has only 90 days to rule on all motions of any

nature unless ***providentially*** hindered.[18]

339.    Defendant Edwards is one of twenty judges that serves on the Fulton County Superior

court bench and at all times herein there were also no shortage of Judges causing for delay.

340.    Defendant Edwards took an oath of office to support and defend the United States

Constitution and is bound by her oath and knows and had reason to know of all the processes

and procedures of a Superior court Judge, the law and knows that she is to engage in her

duties in good faith, honesty and in accordance with the law and her oath of office.

341.    Defendant Edwards knew and had reason to know with her experience and status as a

Judge that to delay Plaintiff's Open Records suit in such a manner was contrary to the law

and was so severe that it would have been cause for the impeachment of her judgeship.

342.    With the amount of judges and the cases docketed in the Fulton county superior court in

which she would be presiding at a time all responsive pleadings to the Department's motion

to dismiss and Plaintiff's response expired, Judge Belinda Edwards was not and could not

have been *providentially* hindered from making a ruling on the pending motions in his case

prior to March 2nd, 2022, nor was hindered from being flexible in making such a ruling.

343.    For more than 85 days after the 90 day requirement to rule on all motions, Defendant

Edwards has unlawfully delayed the due course of the Plaintiff's Open Records suit by

failing to make a ruling on the minimum of motions in his case and continues as of the date

---

[18] While O.C.G.A. 15-6-21(b) provides for delay only if a Judge is providentially *hindered*,
"[P]rovidential cause is something **greater than excusable neglect**. *Providential* cause includes such acts
only as may be attributed **to an act of God**." *Thomas v. State, 165 S.E.2d 477 118 Ga. App. 748 (1968)*

of this filing although, neither providentially hindered from ruling on the pending motions sooner than at minimum 100 days and such act is manifestly incompatible with the law.

344. Judge Belinda Edwards with her experience and knowledge as a Superior court judge, knowing that to delay or frustrate vindication, redress, relief, remedy and the due course of the justice and proceedings of the Plaintiff's open records suit would be contrary to law, did do so with malice or gross neglience or reckless disregard for the rights of the Plaintiff.

345. Defendant Edwards owing the Plaintiff a duty and obligation and having experience as a Judge to know the law and what her duties were did, with malice or reckless disregard for the rights of the Plaintiff refused to perform and abide by her obligations and duties in substantially delaying the due course of law in Plaintiff's Open Records suit in violation of Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law contrary to her oath and her acts as a whole breached the social compact or contract.

## NORTHERN DISTRICT FEDERAL COURT (DEFENDANT GERAGHTY)

346. On December 1st, 2021, Sarah E. Geraghty was present in a Senate Judiciary Committee nomination hearing given testimony under oath.

347. Sarah E. Geraghty stated to Senator Feinstein the following words in her testimony to the Senate Judiciary Committee;

"I have had **20 years of litigation experience** first as a criminal appellant defense lawyer and for the last **18 years litigating complex civil actions mostly in Federal court** and **I have a broad grasp of constitutional analysis and of the Federal rules of civil procedure from that experience**... from year to year 20 I have been involved in the nuts and bolts of litigation on a daily basis... At this point in my career I believe I have the experience, the energy, the intellectual capacity and the temperament to make a good judge and serve my country in this way."

348.    Defendant Geraghty was confirmed as Federal court Judge and thereafter took an oath of
        office and swore on the bible to support and defend the Constitution of the United States.

349.    Defendant Geraghty has over 20 years of legal knowledge and legal experience to know
        that honesty, due care and good faith was required in the making of all her judicial rulings
        and was to be in accordance with the law and with her oath at all times while acting in the
        capacity as a Federal Judge for the Northern District Federal Court of Georgia.

350.    On November 15th, 2022, Defendant Geraghty was assigned to a Writ of Habeas action
        naming Judge Brian Amero within the Writ of Habeas petition.[19] (1:21-cv-04536-SEG)

351.    In such action, it alleged acts of state created danger and threats to Plaintiff's safety and
        security and named GA Judge Brian Amero as one of the state actors who was involved in
        the allegations of Plaintiff's alleging such state created danger.

    *i.   Plaintiff's Writ of Habeas action in the Northern District Federal Court of Georgia
          Case no. 1:21-cv-04536-SEG.*

352.    In Plaintiff's Writ of Habeas action, it stated, to wit; (**Case no. 1:21-cv-04536-SEG**)[20]

        "Petitioner in this case **is not only in "custody" in violation of the Fourteenth
        Amendment** to the United States Constitution but **he is in custody as a result of state
        created danger** arising from an artifice, scheme and design concocted by state officials
        as a means to prevent his civil redress of grievances and avoid liability in official
        proceedings who seek to accomplish this goal imminently by doing acts that can't be
        undone vacant this Writ. Petitioner states that this artifice involves Defendants and others
        associated with Defendants **knowingly enforcing and placing the Petitioner in a
        position of "custody" under an unlawful registered controlling support order** for
        enforcement in violation of well settled principles of constitutional law and these facts
        create inferences which strongly suggest that Petitioner's sudden custody **threatens his**

---

[19] The file stamp of the actual filing was November 14th, 2022, however said document was filed in the
wrong case one November 14th, 2022 causing a one-day delay of the filing in a new case on the actual
record. After the day surpassed, Judge Sarah E. Geraghty was assigned to the case.
[20] Plaintiff requests that the court take judicial notice of the filings in this case as referenced by
the Plaintiff.

**safety and security** warranting this Great Writ over any considerations of comity." (Id. Doc. 1 pg. 1-2)

"As such, although Petitioner is in custody as a result of an unlawful registered controlling support order for enforcement, this order has been and was nefariously utilized by Defendants in concert with other state actors in retaliation for Petitioner's civil redress of grievances in official proceedings all in violation of the Fourteenth Amendment and these facts support inferences that strongly suggest that Petitioner's sudden "custody" threatens his safety and security – his life." (Doc. 1 pg 2.)

353.    The Petition for Writ of Habeas alleged the following acts of Brian Amero, to wit;

- [O]n October 7th, 2021, the entry of the Final Order would also incorporate a Child Support Addendum entered by presiding judge Brian Amero.
- Child Support Addendum as alleged on Page 4, said that the Petitioner's "custody action" was a "modification action" – modification of child support.
- However, at the time of the Final hearing that occurred on July 23rd, 2021, neither party had filed a Petition to Modify Child Support in said case nor on the record.
- Accordingly, the Child Support Addendum had been fabricated or falsified by the presiding judge Brian Amero.

354.    Defendant Geraghty had knowledge of the summary of the **claims actually alleged in**

**Plaintiff's Writ of Habeas Petition,** to wit;

Agents of the Department of Human Services brought an enforcement and registration of an out-of-state support order against Plaintiff and, on 11/18/2019 judge Brian Amero presiding, confirmed said registration and enforcement without the required appearance of the Plaintiff, without scheduling the matter for hearing nor giving notice to Plaintiff of the date, time and place of the hearing in the Henry County Superior Court after Plaintiff's request to be heard less than 10 days in response to the registration and enforcement action in a special appearance which specifically stated therein, "that on November 18th, 2020, in the above-entitled court at the hour of 8:30 a.m... Deandre Arnold... can be heard" and two years later the Department of Human Services, judge Brian Amero presiding, filed a contempt proceeding against the Plaintiff under an unlawful registered controlling support order for enforcement as a means of retaliation and to prevent [Plaintiff's] civil redress of grievances and avoid liability in official

proceedings and that they knew the contempt proceeding was unlawful because the contempt action did not include any of the alleged adjudicated arrearage under the 2019 "Order of Enforcement" but instead included arrearage which were distinct and separate from said 2019 "Order of Enforcement" and that concerted action could be inferred between the presiding judge Brian Amero and the Department, by the Department's request to enter an "income deduction order" in the contempt action shortly after Brian Amero fabricated a "Child Support Addendum" which stated therein no income deduction order was immediately necessary and the Department ignored his requests, concealed records or case information and refused to respond whatsoever for a period of 4 months or more related to any action concerning this filed contempt action and that these acts were all a part of a scheme, design and artifice of state created danger that threatened the Plaintiff's safety and security – his life." [Case no. 1:21-cv-04536 doc. 1.]

355.    Having knowledge of the summary of the claims of Plaintiff's Writ of habeas action, on December 6th, 2022, Defendant Geraghty denied Plaintiff relief and dismissed his Writ of Habeas action in her Order. [*Id.* Doc. 6]

356.    Also in her Order, Defendant Geraghty ruled that Plaintiff's additional "Emergency Motion to Stay State Court Proceedings", including a "Motion to file electronically" was MOOT.

357.    Days later, on December 13th, 2022, the Plaintiff filed a **Certificate of Appealability** ("COA") seeking a certificate in order to appeal the denial of his Writ of Habeas action up to the United States Court of Appeals. [1:21-cv-04536-SEG Doc. 9] and Plaintiff also renamed his "Emergency motion to stay state court proceedings" as an "**Emergency motion to stay state court proceedings pending appeal.**" [Id. Doc. 8] [Exhibit X–2 Emergency Motion to Stay state court proceedings and Exhibit X–3 Certificate of Appealability][21]

---

[21] The Plaintiff requests that the Court take judicial notice of said pleadings filed in such Federal court case and judicial notice of all of the filings in said case, case no. 1:21-cv-04536-SEG.

358.   Plaintiff's Certificate of Appealability ("COA") stated meritorious claims that were neither frivolous nor could be considered filed in bad faith, rather at all times herein stated claims that were manifestly shown to be arguable or had merit that a reasonable juror would find deserving of encouragement to proceed further on appeal regardless of his success on appeal. [See Exhibit X-2] (*See also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003))*[22]

359.   Moreover, at all times herein the Plaintiff's Emergency Motion to stay state court proceedings ("Motion to Stay") *pending appeal* stated meritorious claims that also manifestly showed that Plaintiff he was in custody and/or that at a minimum, that the Younger Abstention Doctrine did not apply to his claims in his Motion to stay. [See Exhibit X–3]

360.   At all times herein, Plaintiff had alleged in his 12/13/2022 Motion to stay state court proceedings *pending appeal* and his COA threats to Plaintiff's safety and security – his life.

361.   There were no responsive motions filed against these motions as there were no opposing counsel to file such a response in such action and on the date of the filings, his COA and Emergency Motion to Stay pending appeal were ready for a ruling in such case.

362.   Months later, on February 13th, 2023, the Plaintiff mailed an "**Emergency motion for Expedited Ruling**" which was received and allegedly filed on the 15th of February of 2023, because of a 2-month delay of a ruling on his COA and his Motion to stay. [*Id.* Doc 18]

363.   Plaintiff stated within said motion the following, to wit;

> "Although initially ruling on Petitioner's Writ of Habeas in 21 days, the court has not ruled on either pending emergency pleading **for a period of sixty (60) days** when it has been recognized since 1973 that, "[T]he federal habeas statute provides for a *swift*, flexible, and summary determination of his claim." *Preiser v. Rodrigues, 411 US 475 Supreme Court (1973)*

---

[22] Defendant Geraghty also knew that a certificate of Appealability did **"[N]ot require a showing that the appeal will succeed."** *Barefoot v. Estelle, 463 U.S. 880, 893 n.4., 103 S. Ct. 3383 (1983)*

364.   Also, on 2/13/2023, the United States Court of Appeals also sent an inquire to the District

Court Judge to inquire about the Plaintiff's COA for the delay of the ruling.

365.   Both the Plaintiff and the United States Court of Appeals had knowledge that a ruling on

the Plaintiff's COA and his Motion to stay was delayed which delay caused the inquiries

regarding the delay by the Plaintiff and the U.S. Court of Appeals to Defendant Geraghty.

366.   One day later, after two months delay, on 2/14/2023 Defendant Geraghty filed a 2 & a

half page Court Order concluding that the Plaintiff's COA lacked any arguable basis in law

or fact and **certified** that Plaintiff's COA and his appeal was not taken in good faith.[23]

[Exhibit Y-1 pg. 10-12]

367.   Defendant Geraghty also stated within such order that, "[Plaintiff] has since filed another

motion seeking to stay the state court proceedings, this time pending his appeal of this

Court's December 6th, 2021. (Doc 8) **For the reasons explained in the December 6 order**,

this latest motion is also DENIED." [Exhibit Y pg. 10-11]

368.   At any time prior to her 2/14/2023 Order she could have ruled on Plaintiff's COA and his

Motion to stay because she was neither hindered nor prevented from being flexible.

   a. **Allegations regarding Delay of a Ruling on Plaintiff's**
      **Certificate of Appealability and Motion to Stay.**

369.   Defendant Geraghty having taken her oath of office, having 20 years of legal knowledge,

skill, intellectual capacity knew that a ruling on Plaintiff's COA and motion to stay was to be

made promptly, in good faith, impartially, swiftly, and in accordance with the law and had a

legal duty and obligation to not avoid, delay nor frustrate a ruling, vindication or relief on

---

[23] In her 2/14/2023 order it read, "[A]n appeal on a matter of law is frivolous where [none] of the
legal points are arguable on their merits." _Neitzke v. Williams, 490 U.S. 319, 325 (1989)_)

Plaintiff's COA and Motion to stay and knew that she owed Plaintiff a legal duty and
obligation to provide Plaintiff protection of the laws under a duty to protect analysis.

370.   Defendant Geraghty knowing she owed the Plaintiff a duty, as a fact finder or presiding
Judge to make a prompt, swift and flexible ruling on his COA and Motion to stay in his
federal Writ of Habeas case no. 1:21-cv-04536-SEG did with bias and prejudice for a period
of 63 days avoid, delay and/or frustrate a ruling on Plaintiff's COA contrary to her duties and
obligations and only decided to render a decision on Plaintiff's COA and his Motion to stay,
one (1) day after an inquiry from the United States Appellate court concerning her delayed
ruling and could have rendered a decision prior to the date she had made such a decision.

371.   Defendant Geraghty knowing that she owed Plaintiff such a duty, with actual malice or
reckless disregard for the rights of the Plaintiff did withhold, delay, or refuse to make a ruling
on Plaintiff's COA and Motion to stay swiftly, with flexibility and promptly when she knew
according to her experience, duties and obligations that it was a duty she owed to him.

b.  **Allegations regarding Denying Plaintiff Meritorious relief or a
proper remedy on Plaintiff's Certificate of Appealability.**

372.   Defendant Geraghty having taken her oath of office, having 20 years of legal knowledge,
skill, intellectual capacity knew that when considering or ruling on Plaintiff's COA that she
was to do so in good faith, impartially, with honesty and in accordance with the law and that
she was not to erroneously deny, withhold, avoid or frustrate any meritorious relief,
vindication or a proper remedy and knew that she owed Plaintiff such a duty according to her
legal duty and obligation to provide Plaintiff the protection of the laws.

373.   To avoid repetition, Plaintiff incorporates each fact alleged in his COA (Exhibit X6) by
reference and as if fully alleged herein & states that his COA alleged meritorious claims that

were manifestly shown **to have an arguable basis in law or fact** and Defendant Geraghty knew and had reason to know that his COA in fact had an arguable basis in law or fact.

374.    For instance, Defendant Geraghty initially alleged in her 12/6/2022 order denying Plaintiff's Writ of Habeas, citing to authority in her stating that "The possibility of arrest if Petitioner fails to pay child support in the future does not satisfy the "in custody" requirement for purposes of a habeas attack." (Exhibit Y1 pg. 6)

375.    However, Plaintiff alleged that said cite to authority and all similar cases were inapposite to Arnold's case because those cases based its findings on whether those Petitioner's had the "keys to the jailhouse door" *solely* on their payment of a fine or support to avoid any incarceration altogether but the Plaintiff alleged, however, that his *restraints* were not separate from the unlawful registration of a controlling support order entered for the purposes of enforcement but the resultant of the registered support order itself forcing him to pay at all through an unlawful registered support order for enforcement and Plaintiff stated that the "notion that Plaintiff can control whether he would be incarcerated by merely paying support only supports "[i]n the perpetuation of unlawful agency action…" *League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir. 2016)*, "[t]o exact something unlawfully by threats or putting in fear." *US v. Jackson, 180 F.3d 55 – Court of Appeals 2nd Circuit (1999)*." [Exhibit X6 – pg. 3-7]

376.    Moreover, Defendant Geraghty *initially* alleged in her 12/6/2022 order denying Plaintiff's Habeas Writ, "All three Younger requirements are satisfied here." (Doc. 6 pg. 7)

377.    However, Plaintiff alleged facts that she knew and had reason to know based on her experience that Plaintiff satisfied the **three exceptions** to Younger by his **First stating** evidence of state proceedings motivated by bad faith in that the Department was, to wit;

"knowingly enforcing and placing the Petitioner in a position of "custody" under an unlawful registered controlling support order far from those "Incidental to every criminal proceeding brought lawfully and in good faith." *Younger v. Harris, 401 US 37 – Supreme Court (1971)* (Exhibit X6 – pg. 13-17]

378.   **Second**, by stating that irreparable injury would occur, to wit;

"Arising from this contempt action which is of in itself "Patently and flagrantly unconstitutional on its face" and shows "Bad faith and harassment – official lawlessness" in Respondents knowing enforcement of a void support order to successfully incarcerate Arnold *knowingly* under an unlawful judgment into "Prisons... necessarily dangerous places." *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*, "[W]ithout hope of obtaining a valid conviction," *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*, because any action brought unlawfully cannot be made lawful. These facts *again* show that the contempt action is far from those "Incidental to every criminal proceeding brought lawfully and in good faith" Younger v. Harris, 401 US 37 – Supreme Court (1971). Accordingly, there is a substantial threat of irreparable injury that Arnold would be "Stripped... of Virtually every means of self-protection and foreclosed of access to outside aid," *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)* due to this state created danger. (Exhibit X6 – pg. 18, 17-23)

379.   **Third**, by stating that there was no adequate alternative state forum where the

constitutional issues can be raised by alleging, to wit;

"The contempt action that was undoubtedly brought in "bad faith" also threatens Arnold's, "Right to be free from wrongful restraints upon... liberty." *Jones v. Cunningham, 371 US 236 – Supreme Court (1963)*, in situations where, "[T]he bringing of the prosecution or the threat is itself a constitutional deprivation since it **subjects a person to a burden of criminal defenses which he should not have to bear**, and there then exists a situation "in which defense of the State's criminal prosecution **will not assure adequate vindication of constitutional rights**." *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*. The cite to Perez is especially true and furthers this existence of inadequate vindication of constitutional rights when Arnold has stated that Respondents including the presiding judge in the contempt action has an adverse interest in the outcome of a successful challenge to the support order – liabilty." (Exhibit X6 – pg. 19)

380.   Each claim made in his COA was based on the facts alleged in Plaintiff's attached Writ of Habeas and was manifestly shown that Plaintiff in fact stated meritorious claims that had an arguable basis in law or fact due to the **inapposite factor** of "whether he had the keys to

the jailhouse door" alleged by Plaintiff in his COA and his allegations that he satisfied the three exceptions to Younger and it cannot be disputed that when a ruling on a COA Defendant Geraghty knew that Plaintiff did not have to be successful on appeal.

381.    Thus, Defendant Geraghty knowing she owed Plaintiff such a duty when considering or ruling upon Plaintiff's COA, with bias and prejudice, did frustrate, deny, withhold, or avoid Plaintiff's relief, vindication or a proper remedy when ruling **upon Plaintiff's COA** by concluding that it was frivolous, filed in bad faith and lacked any arguable basis in law when she knew and had reason to know based on her 20 years of legal experience that Plaintiff stated meritorious relief **manifestly showing** that his COA had an arguable basis in law and was neither frivolous nor filed in bad faith and did so with malice or reckless disregard and indifference to the Plaintiff's rights, contrary to her duties and obligations.

   c.  **Allegations regarding Denying Plaintiff Meritorious Relief or a Proper Remedy on Plaintiff's Emergency Motion to Stay State Court Proceedings Pending Appeal**.

382.    Defendant Geraghty having taken her oath of office, having 20 years of legal knowledge, skill, intellectual capacity knew that when considering or ruling on Plaintiff's Motion to stay knew that she had a duty to do so in good faith, impartially, with honesty and in accordance with the law and that she was not to erroneously deny, withhold, avoid or frustrate any meritorious relief and knew that she owed Plaintiff such a duty according to her legal duty and obligation to provide Plaintiff the protection of the laws.'

383.    To avoid repetition, Plaintiff incorporates each fact alleged in his attached Motion to Stay (Exhibit X6) as if fully alleged herein and states that his Motion to stay in fact alleged facts manifestly showed that the Younger Abstention did not apply.

384.   For instance, Defendant Geraghty *initially* alleged in her 12/6/2022 order denying

Plaintiff's Habeas Writ, "All three Younger requirements are satisfied here." (Doc. 6. pg. 7)

385.   However, on 12/13/2023 the Plaintiff alleged facts that manifestly shown on its face that

Younger Abstention Doctrine did not apply because Plaintiff clearly alleged facts supporting

that there (1) was evidence the state proceedings were motivated by bad faith, (2) irreparable

injury would occur, or (3) there is no adequate alternative state forum where the

constitutional issues can be raised which manifestly showed that it satisfied the three

exceptions that the Supreme Court set out to the Younger Abstention doctrine. [Exhibit X7]

386.   Plaintiff incorporates each and every allegation within his attached Motion to Stay

(Exhibit 7) as if fully alleged herein to support his claim that Plaintiff in fact alleged claims

that Defendant Geraghty knew and had reason to know satisfied Younger's three exceptions

when ruling upon Plaintiff's Motion to Stay on 2/14/2023.

387.   Thus, Defendant Geraghty knowing that she owed Plaintiff a duty, with bias and

prejudice, malice or reckless disregard and indifference for the rights of the Plaintiff, did

dismissed and deny Plaintiff's "Motion to stay" by stating in her 2/14/2023 court order that

"**For the reasons explained in the December 6 order,** this latest motion [Motion to Stay] **is**

**also DENIED**," although she knew and had reason to know based on her 20 years of legal

experience that Plaintiff had stated meritorious claims for relief in his Motion to stay which

manifestly showed that the Younger Abstention Doctrine did not apply.

388.   Defendant Geraghty failed to act in accordance with the duties and obligations she owed

to Plaintiff and render him a proper remedy, relief and vindication and protection of the laws

when ruling on or considering his "COA and Motion to Stay Pending Appeal" ("Pending

matter") because on information and belief, she *quickly* needed to make a ruling on the pending matters due to the U.S. Appeals court inquiring about a delay she knew and had reason to know was contrary to her legal duties, obligations and the habeas statute proving for a swift, summarily and flexible determination and, in an expeditious nature after such inquiry, *quickly*, deliberately or recklessly made such ruling(s) to prevent any further delay.

389.    In other words, Defendant Geraghty placed her personal need to make an expeditious ruling primarily over the duties and obligations she owed to Plaintiff to quickly prevent any further delay to avoid any further appearance of purposeful delay, which delay she knew was contrary to her duties and obligations owed to the Plaintiff following an inquire from the U.S. Appeals court concerning her delayed ruling.

390.    There is reason to believe that Defendant Geraghty failed to act in accordance with the duties and obligations she owed to Plaintiff and render him a proper remedy, relief, vindication and protection of the laws when ruling on or considering his "COA" because she knew or had reason to know that to render Plaintiff a proper remedy, relief, vindication and protection of the laws that he was entitled to that there was a possibility, likelihood or certainty that it would result in criminal prosecution against Georgia Judge Brian Amero.

391.    Defendant Geraghty knew that Plaintiff's alleged *claims* to "knowingly" place Petitioner in a position of "custody" under an unlawful registered controlling support order for enforcement in a contempt action that was itself criminal in nature and knew that Plaintiff alleged claims within his Writ of Habeas (1:21-cv-04536-SEG. Doc. 1) that the conspirators knew the support order was unlawful by his **stating therein his Writ of Habeas,** to wit[24];

---

[24] The Plaintiff requests that the court take judicial notice of case no. 1:21-cv-04536-SEG and Doc. 1 and each and every paragraph therein and states that his Writ of Habeas is not attached as an Exhibit to his *complaint* but nonetheless alleges allegations within this claim and declaration.

"[T]his contempt action did not include any of the alleged adjudicated arrearage under the 2019 "Order of Enforcement" but instead included arrearage which were distinct and separate from said 2019 "Order of Enforcement. (Id. no. 82) This fact creates a strong inference that the Department (and others acting in concert with the Department) knew of the invalidity of the enforcement of the support order. (Id. no. 83) Moreover, "agreements" or communications between the presiding judge Brian Amero and the Department can be inferred by the request to enter an "income deduction order" shortly after the fabricated "Child Support Addendum" which stated no income deduction order was immediately necessary. (Id. no. 84) The Child Support Addendum as alleged on Page 4, said that the Petitioner's "custody action" was a "modification action" – modification of child support. (Id. no. 50) However, at the time of the Final hearing that occurred on July 23rd, 2021, neither party had filed a Petition to Modify Child Support in said case nor on the record. (Id. no. 51) Further, the Child Support Addendum stated that the parties "agreed that an income deduction order was not immediately necessary." (Id. no 52) However, neither the Petitioner nor the Petitioners' child's mother (Plaintiff in the custody modification action) stated or agreed that an income deduction order was not immediately necessary. (Id. no. 53.) Accordingly, the Child Support Addendum had been fabricated or falsified by the presiding judge Brian Amero (Id. no. 54)

392.   Defendant Geraghty knowing such facts, knew and had reason to know based on her experience that a key, if not the most important claim in Plaintiff's grievance was whether (1) the support order was unlawful and knew based on her experience that if she was to rule in Plaintiff's favor, that there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero – because rendering a judicial ruling in favor of Plaintiff's grievances that the support order was unlawful supported all inferences of his allegations that the Department did not include arrearages in the contempt action and that an income deduction order was requested after Brian Amero falsified a Child Support Addendum stating no income deduction order was necessary, although as Plaintiff alleged in his Writ, "The 2019 registered controlling support order for enforcement called for… an income deduction order by DCSS to be made effective immediately." (Id. no. 28)

393.    Defendant Geraghty neither specifically stated nor articulated any reasons whatsoever in her 2/14/2023 Order stating how or why the Plaintiff's COA failed to make a showing of the denial of a constitutional right and or how it was frivolous or filed in bad faith.

394.    As to his Motion to stay, Defendant Geraghty merely stated on 2/14/2023 that she dismissed Plaintiff's Motion to Stay for same reasons in her 12/6/2022 order.

395.    Thus, there is reason to believe, that Defendant Geraghty engaged in a conspiracy to delay, deny, prevent or frustrate Plaintiff's due and proper redress, vindication and protection of the laws and did so with bias and prejudice knowing that her impartialness could reasonably be questioned.

396.    Defendant Geraghty had 20 years of legal experience to know that her acts of malice or reckless disregard for the rights of the Plaintiff in her delaying a ruling on Plaintiff's COA and his Motion to stay and thereafter deep-sixing his Motion to stay and COA in her 2/14/2023 Order would **cause her impartialness to reasonably questioned**.

397.    **In addition**, there is reason to believe that Defendant Geraghty acted knowingly with a bias and prejudice against the Plaintiff for her acts in delaying Plaintiff's motion to stay and COA and thereafter deeming his COA frivolous and recklessly denying his Motion to stay for prior reasons in a previous order she rendered when she knew or had reason to know that to do so was manifestly incompatible with the law and contrary to her duties and obligation owed to the Plaintiff.

398.    Moreover, Defendant Geraghty knew or had reason to know of all the parameters of the need to further an esoteric goal or conspiracy of denying Plaintiff protection of the laws and his redress if there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero.

399.    Defendant Geraghty also knew and had reason to know that Plaintiff's direct appeal in

case no. SUCV-2021-0700 was denied by Defendant Appellate Justices on January 20th,

2023 because she had actual knowledge of the Plaintiff's direct appeal and his case no. in her

stating in her December 6th, 2023 order in Plaintiff's Writ of Habeas action, to wit;

> "Mr. Arnold alleges that this addendum to the Henry County Child Support Order was
> fabricated or falsified... [H]is currently pending appeal in the Court of Appeals of
> Georgia seeks review of the addendum to the Henry County Child Support Order." [Case
> no. 1:21-cv-04536 [Exhibit Y1. Pg. 3]

400.    Defendant Geraghty's 2/14/2023 order came nearly 3 weeks after Defendant Appellate

Justices affirmed said order and the child support addendum which was an issue in his Writ

of Habeas action and knew and had reason to know of the need to deny Plaintiff further relief

in his Habeas action and in furtherance of the conspiracy denied, delayed and frustrated a

proper remedy, relief, vindication and redress by denying his Motion to stay and COA.

401.    Defendant Geraghty also had reason to know that the Department had deprived Plaintiff

of information concerning a judicial ruling or determination regarding a contempt proceeding

that he sought to stay pending appeal because Plaintiff had in fact alleged such an allegation

in his Writ of Habeas filing that she was conveniently assigned to. [1:21-cv-04536-SEG doc.

1 no. 93-97]

402.    As such, there is reason to believe that Defendant Geraghty knew or had reason to know

that a "secret" warrant or some other act to bring Plaintiff into the custody of the state via

said state court proceeding was not speculative but likely and that one additional reason for

the delaying, frustrating or denying his relief ruling was to allow the state actors he sought

protection from to effectuate the acts in the same proceedings that Plaintiff sought to stay.

403.    On information and belief, Defendant Geraghty knew and had knowledge of an esoteric

understanding and motive shared between other courts, state and federal actors also involved

in the railroading campaign against the Plaintiff of the need to make certain that under no circumstances could any relief in his grievances go in his favor if there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against judge Brian Amero if any of the Plaintiff's relief in his grievances actually went in his favor or, had an agreement between other courts, state and federal actors also involved in the railroading campaign against the Plaintiff to make certain of the same.

404.    This is because it is the only plausible reason of why a newly confirmed Federal Judge with over 20 years of legal experience in complex civil law would delay a ruling on Plaintiff's COA and his Motion to Stay – knowing it be contrary to her duties and law and only after the U.S. Court of Appeals inquired about her delay, rendered a decision concluding Plaintiff's COA frivolous and filed in bad faith and deeming Younger applicable to his Motion to stay knowing or having reason to know that to do so was manifestly incompatible with the law – if she had not known or had no knowledge of such an esoteric understanding, shared motive or agreement of the need to deny Plaintiff of any relief related to any grievances of Georgia Judge Brian Amero if there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against judge Brian Amero.

405.    Moreover, under the totality of circumstances surrounding the acts involving Defendant Geraghty as presiding judge in his Federal Writ of Habeas action, it reasonable to believe based on the facts alleged that Defendant Geraghty was bias and prejudice against the Plaintiff in case no. 1:21-cv-04536-SEG or knew or should have known that her impartially could reasonably be questioned and was manifestly apparent requiring her disqualification and knowing such refused to disqualify from Plaintiff's case in violation of Plaintiff's

Fourteenth Amendment right to an impartial judge and her acts as a whole breached the obligations & duties owed to Plaintiff in the social compact or contract.[25]

406.    Defendant Geraghty owing the Plaintiff a duty and obligation, having 20 years of legal experience, with bias and prejudice, malice or reckless disregard for the rights of the Plaintiff did, and in conspiracy with state actors, frustrate, delay or deny Arnold of a due, proper & adequate remedy, redress, physiological vindication, adequate, minimum and required relief and protection of the laws when acting as presiding Judge in Plaintiff's Writ of Habeas proceeding in violation of his First & 14th Amendment constitutional protections to a proper remedy, redress, relief and vindication and his 14th Amendment right to procedural and substantive due process under a duty to protect analysis contrary to her oath and her acts as a whole breached the obligations & duties owed to Plaintiff in the social compact or contract.

   *ii.    Plaintiff's 42 U.S.C. 1983 lawsuit in the Northern District Federal Court (1:21-cv-04970-SEG)*

407.    Defendant Geraghty was also assigned to Plaintiff's 42 U.S.C. § 1983 lawsuit in April of 2022 shortly after being confirmed as a Federal Judge for the Northern District Federal court Atlanta. (1:21-cv-04970-SEG | *Arnold v City of Hampton et al.,.*)

408.    Defendant Geraghty, with a bias and prejudice against the Plaintiff arising from the acts and conspiracy taken place in his Writ of Habeas action in case no. 1:21-cv-04536-SEG did refuse to disqualify from Plaintiff's 42 U.S.C. § 1983 action in case no. 1:21-cv-04970-SEG when she knew that she had a bias and prejudice against the Plaintiff, could not act impartially to the Plaintiff or that her impartiality could reasonably be questioned.

---

[25] As of the date of the filing of this claim and declaration, Plaintiff has not sought to recuse Defendant Geraghty in such case but intends to do so immediately thereafter the filing of this claim and declaration.

409.   There is reason to believe that Defendant Geraghty was biased and prejudice in this case

based not only on the facts alleged above that took place within his Writ of Habeas action but

due to the denial of a Motion for Permission to file Electronically which manifestly provided

for just and adequate reasons showing why his motion should have been granted.

410.   Plaintiff certifies that he concerns himself only with the bias and prejudice of Defendant

Geraghty in case no. 1:21-cv-04970-SEG herein this section and claims of her refusal to

recuse when she knew she had a bias or prejudice against the Plaintiff, could not impartially

or knew or should have known that her impartiality could be reasonably questioned.

411.   In such case, the Plaintiff filed such a motion, mainly a "Motion For Permission For

Electronic Access" which included the following claims under penalty of perjury, to wit;

- The constant mailing of documents in this case has caused hardship to Plaintiff as he does not have the adequate funds nor can he at all times successfully borrow the funds in order to mail his filings to this clerk's office.
- The Plaintiff at this time **cannot afford** payment of multiple mailing in this case in order to send documents to this clerk's office for filing and to Defendants counsel.
- The Plaintiff also can neither determine nor suggest when and if he may be able to borrow the funds to successfully mail filings in this case.
- Another unforeseen circumstance is weather that may affect the timing of the mailing in the future or in the near coming days that may burden the Petitioner's "emergency motions" and thus limit and prejudice any emergent filing consistent with his emergency by subtracting nearly five days from date of actual mailing.
- Moreover, there is no opposition or suggestion that Plaintiff cannot follow the applicable rules such as attorneys who have access to the electronic filing system.
- Moreover, in this case, **summons was omitted** from the filing on the court record in February 2022 of Wayne Jernigan although a friend of the family mailed a substantial number of summons to the clerk's office on behalf of the Petitioner for clerk's signature of summons which included Wayne Jernigan. [See Exhibit X3 – Motion for Permission to File Electronically][26]

---

[26] The Plaintiff incorporates each and every paragraph alleged therein such motion and by reference attached as Exhibit X3 and requests the court take judicial notice of such filing and each paragraph therein.

412.    On April 12th, 2023 Defendant Geraghty's Order denying Plaintiff's motion was docketed in such Federal court case, stating to wit;

> "The Court's Local Rules and procedures generally do not permit pro se litigants to file electronically... A judge may, however, deviate from the foregoing procedures "in specific cases... if deemed appropriate in the exercise of discretion, considering the need for the **just, speedy, and inexpensive determination** of matters pending before the court." (Doc. 76 pg. 2) [Exhibit Y1- pg. 14]

413.    Defendant Geraghty knew or should have known based on her 20 years of legal experience that when Plaintiff alleged that he "did not have the... funds... nor can he at all times... successfully borrow the funds to mail his filings to [the] clerk's office" that Plaintiff alleged a need for the **just, speedy, and inexpensive determination** of matters pending before the court at such time.

414.    Further, Plaintiff alleged that "summons was omitted from the filing on the court record in February 2022 of Wayne Jernigan although a friend of the family **mailed a substantial number of summons to the clerk's office** on behalf of the Petitioner for clerk's signature of summons which included Wayne Jernigan" which she knew or should have known was an allegation of an inference the equivalence of obstruction of mail by the U.S. clerk's office.

415.    Continuing, Plaintiff stated that if he "were to mail his documents to the court for manual filing it would without a doubt reach the court nearly 2-3 days after his mailing and possibly another 2-3 days before the clerk's intake office eventually files it. 10. This is not speculation but is likely to occur or will occur as a regular process of mail delivery and clerk's intake procedure of how documents are filed when sent manually" which Defendant Geraghty knew or should have known would have affected any emergency filings he would have sought.

416.    Moreover, Plaintiff stated that there is no opposition or suggestion that Plaintiff cannot follow the applicable rules such as attorneys who have access to the electronic filing system.

417.    Defendant Geraghty knew that she owed Plaintiff a duty when considering or ruling upon

Plaintiff's Motion for Permission to File Electronically in case no. 1:21-cv-04970-SEG to not

erroneously deny, withhold, avoid, frustrate Plaintiff's requested relief and did with bias and

prejudice, erroneously deny, withhold, avoid or frustrate Plaintiff's relief, vindication or a

proper remedy in considering or ruling upon Plaintiff's Motion for Permission to File

Electronically when she knew and had reason to know that based on Plaintiff's claims in his

motion that it was manifestly apparent that a need for a *just*, speedy and **inexpensive**

determination of matters pending before the court was shown and knew or should have

known based on her 20 years of complex legal experience that to deny his motion would be

manifestly incompatible with the law.

418.    It is a fact that Plaintiff's Motion to file electronically swore under penalty of perjury (1)

had inability to afford the funds for such mailing to the court for his relief, (2) the inference

of obstruction of mail by the U.S. District court clerk's office including but not limited to (3)

being unable to have his filings on the record for 5 days or more due to the amount of days it

would in fact take for regular mailed documents to reach the court eventually be filed on the

record through the court's intake process or unforeseen weather which would prejudice his

emergency and such facts manifestly showed the need for a just and inexpensive

determination of matters pending before the court.

419.    It cannot be disputed, and Plaintiff alleges that being unable to afford mailing of

documents would prejudice any persons redress and relief for their not being able to file

documents in such case and it also a fact that mailing a summons to the clerk's office and not

having the summons filed on the record would prejudice the Plaintiff.

420.    Under the totality of circumstances surrounding the acts involving Defendant Geraghty as

presiding judge in his case 42 U.S.C. § 1983 case, it reasonable to believe based on the facts

alleged herein that Defendant Geraghty was bias and prejudice against the Plaintiff in case

no. 1:21-cv-04970-SEG, knew she could not act impartially or knew or should have known

that her impartially could reasonably be questioned which was manifestly apparent and

knowing such refused to disqualify or recuse from Plaintiff's case in violation of Plaintiff's

fourteenth Amendment right to an impartial judge and her acts as a whole breached the

obligations & duties owed to Plaintiff in the social compact or contract.

a. *__Intentional Infliction of Emotional Distress as to Defendant Geraghty__*

421.    Plaintiff realleges paragraphs 346 – 406 as if fully alleged herein and by reference.

422.    At all times herein, Defendant Geraghty knew that Plaintiff sought relief in his Writ of

Habeas action from allegations of state created danger and threats to his safety and security

in which he also alleged within his Writ of Habeas, – [his] "life".

423.    Because of Defendant Geraghty's failures to perform and adhere to her obligations and

duties, the Plaintiff suffered severe mental and emotional distress and severe mental anxiety

in being frustrated, delayed and denied of a *proper* remedy, relief, redress and psychological

vindication without justification from what he alleged to be was state actors, to wit;

> "[K]nowingly enforcing and placing the Petitioner in a position of "custody" under an
> unlawful registered controlling support order for enforcement in violation of well settled
> principles of constitutional." [1:21-cv-04536-SEG Doc. pg. 1]

424.    The Plaintiff genuinely believed that Defendant Geraghty would adhere to her duties and

obligations in his Writ of Habeas action and would make her rulings in accordance with the

law, in good faith, with due care and consistent with her oath to "protect and defend".

425.    However, the Plaintiff had to experience severe mental and emotional distress & anxiety in knowing that a Federal Judge within the Federal government whose history is entrenched in efforts to protect the people from *state* Tyranny and Oppression had decided to, with malice or recklessness, deny, delay and frustrate Plaintiff's grievances alleging such Tyranny and Oppression without justification knowing it to be manifestly incompatible with the law and Plaintiff experienced a severe sense of anxiety, distress, fear and hopelessness and a substantial removal of confidence in any system of government state or Federal in society.

426.    It can be argued to a jury that Defendant Geraghty would know that to delay a ruling on Plaintiff's COA and his Motion to stay knowing or having reason to know based on her experience that the delay was unlawful and contrary to her duties owed to Plaintiff, would cause Plaintiff severe emotional and mental distress and mental anxiety because she knew the Plaintiff claims were titled as emergencies which she knew to be an expeditious request for relief from what she also knew to be were threats to Plaintiff's safety and security – his life.

427.    It can be further argued to a jury that Defendant Geraghty would know to deny Plaintiff's emergency COA in concluding that it was frivolous and filed in bad faith including recklessly deny his Motion to Stay knowing or having reason to know based on her experience that to do so was manifestly incompatible with the law would cause Plaintiff severe emotional and mental distress and severe anxiety because she knew that Plaintiff was seeking an emergency certificate of appealability based on allegations of his being "in "custody" in violation of the Fourteenth Amendment to the United States Constitution… as a result of state created danger arising from an artifice…[of] *knowingly* enforcing and placing the Petitioner in a position of "custody" under an unlawful registered controlling support order for enforcement in violation of well settled principles of constitutional law."

428. Moreover, she knew based on Plaintiff's allegations within his Writ of Habeas that his alleged "custody" threatened his safety and security – his life – and knew that to deny his COA to appeal her previous denials as frivolous and certify that it was filed in bad faith would cause Plaintiff severe anxiety, distress and worry in knowing that in his attempts to seek relief to prevent such a threat would be delayed or frustrated and knowingly looked upon as frivolous even if the claims alleged therein had an arguable basis in fact or law.

429. Such deliberate or reckless disregard for the rights of the Plaintiff in delaying a ruling in his case and subsequently arbitrarily and erroneously denying him a proper remedy, relief, vindication and redress in which he was entitled to knowing it was manifestly incompatible with the law would cause Plaintiff severe mental and emotional distress, fear, anxiety, and mental anguish, especially concerning allegations regarding threats to his safety and security and Defendant Geraghty would have had to know that to do so would cause Plaintiff severe mental and emotional distress and severe anxiety.

430. Moreover, based on the facts alleged there is reasonable evidence which could be argued to a jury that Defendant Geraghty engaged in a conspiracy and was bias and prejudice to Plaintiff while presiding as judge within his Habeas action in denying his relief, redress, a proper remedy and psychological vindication and that she knew that in order to further the conspiracy, causing Plaintiff severe emotional and mental distress, anxiety, worry and mental anguish would be necessary to further the goal of the conspiracy and knowing such engaged in said acts regardless of the distress the Plaintiff would face.

431. Under the circumstances where it is alleged that a Federal Judge with an obligation and duty to provide protection of the laws, who disregarded those obligations and duties in order to deny or delay and use judicial stratagem against a citizen seeking meritorious relief, a

proper remedy, redress and the psychological vindication in a Habeas proceeding where it
was alleged of one being held in custody in violation of the Constitution that threatened his
safety and security would certainly cause severe emotional or mental distress and Defendant
Geraghty would know that either anxiety, worry, distress, fear and emotional and mental
distress would in fact occur and would be necessary to achieve the goals of conspiracy.

## EXPEDITED, EMERGENCY AND PRIMARY CONSIDERATION OF CASE

432.   Under the totality of the circumstances and taking the Plaintiff's declaration and claim as
a whole, his multiples of redress of grievances that were met by a pattern and scheme of bias
and prejudice, an acquiescence or sanctioning of state created danger, the continuation of the
denial or delay of a proper remedy, the denial relief, redress and vindication in the protection
of the laws, the failure of multiple officials to perform according to their duties, obligations
and sworn oath, the alleged vulnerability to danger and new danger affecting Plaintiff's
safety and security and the esoteric scheme at large which based on its construction, a
likelihood exist that workers currently known to the Plaintiff may be activated to obstruct
justice through the passage of time when considering these claims herein, the Plaintiff calls
on this Court's and Judge's Honor to apply its "[J]udicial experience and common sense."
*Geinosky v. City of Chicago, 675 F. 3d 743 – Court of Appeals Seventh Circuit (2012)*

433.   Plaintiff requests that based on the totality of circumstances in this claim and declaration
that he has cause for an emergency consideration and adjudication based on the existential
need to provide Plaintiff protection of the laws under the United States Constitution because
of the inaction or refusals of what is shown to be, the entire State of Georgia – who having a
duty & obligation to provide Plaintiff protection, without any justification - refusals to do so,

although within their power to do so & calls on the court to use any of its power to provide such protection and bypass any procedural barriers due to a threat to safety being alleged.

434.   Plaintiff does not call for a foregoing or subtraction of court procedures related to response times to motions, briefs etc., which may prejudice Defendant(s), rather, expedited consideration of his claims once the claims, motion, briefs, pleadings or any paper or document becomes ripe for review or judicial determination or adjudication.

435.   Plaintiff certifies that he in good faith intends to serve process and summons on each and every Defendant in an expeditious fashion unless providentially hindered to assist the court.

## COUNT 1 – DECLARATORY RELIEF

436.   Plaintiff repeats & realleges par. 27 – 435 as if fully alleged herein and by reference.

### i.   Declaratory relief for EBD's refusal to investigate sworn formal acts alleged probable cause of State Created Danger.

437.   Plaintiff states that there is an actual, present, and justiciable controversy between Plaintiff Defendant Carr, Defendant Kemp, Defendant Scandrett and Defendant Pattillo, collectively "Executive Branch Defendants" ("**EBD's**") of whether they're knowing and persistent refusals to investigate, arrest, indict or criminally refer or procure the same, although within their power to do so, of sworn formal complaints, alleging probable cause of a conspiracy to commit false imprisonment and state created danger by GA state officials violates Plaintiff's substantive due rights in violation of the Fourteenth Amendment under a duty to protect analysis.

438.   Plaintiff states that the EBD's had actual or constructive knowledge of Plaintiff's sworn formal complaints alleging probable cause of a conspiracy to commit false imprisonment and state created danger and although they had the power to arrest, indict, charge, investigate, criminally refer or procure the same, the EBD's knowingly and persistently failed to act or

otherwise prevent the state created danger or make Plaintiff less vulnerable to danger for the acts of *Georgia* state officials as alleged and by failing to provide such protection services or intervene when they had a duty to do so under the Georgia constitution or as a result of their Compact with the Plaintiff violated Plaintiff's substantial due process rights.

439.     Plaintiff states that the EBD's knowing and persistent refusals to investigate, arrest, indict, charge or even refer matters sworn to in formal complaints alleging probable cause of a conspiracy to commit false imprisonment by state officials in which a reasonable and prudent person acting in good faith would have found sufficient including all inferences of what Plaintiff alleged to be "threats his safety and security", clearly shocks the conscience and violates the Due Process clause in *Deshaney* because the government is to "[S]ecure the individual from the arbitrary exercise of the powers of government and to prevent governmental power from being used for purposes of oppression... [because]... [I]t's purpose was to **protect the people** from the *State*, not to ensure that the State protected them from each other."[27] *DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)* and there is a justiciable issue and controversy of whether the States EBD's failure to act, intervene or provide protection services to Plaintiff violated the Fourteenth Amendment.

## ii.     Declaratory relief for Breach of Contract – Breach of Contractual Compact obligation for failure to perform according to their legal duties and obligations.

440.     Plaintiff states that there is an actual, present and justiciable controversy between the Plaintiff and all Defendants of whether they're knowing or persistent, withholding, frustrations, delays, denials and refusals to perform according to their obligation and duties

---

[27] "[I]naction can be every bit as abusive of power as action,... oppression can result when a State undertakes a vital duty and then ignores it." *DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

and provide protection of the laws to Plaintiff by rendering him a proper remedy, relief, redress and vindication for his meritorious relief in which he was entitled to, breached a contractual obligation of a compact in which the Plaintiff is the beneficiary.

441.   Plaintiff states that the actions herein entail a fundamental breakdown of the social compact and the administration of justice in the State of Georgia as applied to Plaintiff by **Defendant EBD's** who denied him protection of laws in their refusing to investigate sworn formal complaints; **Defendant Appellate Justices** who frustrated, delayed, denied, prevented or withheld Plaintiff's meritorious redress, relief, vindication and remedy in his Direct Appeal; **Defendant Cooper** who frustrated, prevented or withheld Plaintiff's Motion to reconsider in his direct appeal, relief, vindication and remedy in his Direct Appeal; **Defendant Borings & JQC** who refused to investigate Plaintiff's allegations of judicial misconduct; **Defendant Spencer & Lange** who refused to investigate Agency corruption complaints; **Defendant Edwards** who frustrated delayed, withheld Plaintiff's redress, relief, vindication and remedy in his Open records suit; and **Defendant Geraghty** who frustrated, delayed, denied, prevented or withheld Plaintiff's meritorious redress, relief, vindication and remedy in his Writ of Habeas action and 42 U.S.C. § 1983 action.

442.   Plaintiff alleges that being a beneficiary of a social compact and all Defendants being bound by contract with the beneficiaries of the State of Georgia's and United States Constitution's – the social compact or contract – breached said compacts and their contractual obligations and that the acts of the officials named herein evince a continuing pattern and scheme that were neither separate or isolated incidents but a continuing nature of multiple denials, delays or frustrations of almost identical grievances which were manifestly incompatible with the law and occurred within multiple agencies within Georgia's executive

branch, multiple courts within Georgia's judicial branch and carried over into the Federal district court of Georgia.

443.    Plaintiff states that all Defendants took an oath and swore to support and defend the constitution of the United States, had a legal duty and obligation to provide Plaintiff protection of the laws and failed to perform according to their duties and obligations, with malice or reckless indifference to the rights of the Plaintiff and said actions breached the compacts in which Plaintiff was a beneficiary and their contractual obligations.

   iii.    **Declare that the EBD's knowing and persistent failures to provide Plaintiff protection of the laws relives Plaintiff from the obligation of obedience to Georgia's law.**

444.    Plaintiff states that there is an actual, present and justiciable controversy between the Plaintiff and the EBD's of whether they're knowing or persistent, withholding, frustrations, delays, denials and refusals to perform according to their obligation and duties and provide protection of the laws to Plaintiff by rendering him a proper remedy, relief, redress and vindication for his meritorious relief alleging probable cause of acts of state created danger in breached a compact in which the Plaintiff is the beneficiary of thereby reliving Plaintiff from the obligation of obedience to Georgia's laws – until such breach is cured.

445.    Plaintiff declares based on his claims alleged herein that he no longer has an obligation to remain obedient to Georgia's laws as a result of the breach of a compact by the EBD's of a fundamental nature in which Plaintiff is a beneficiary.

446.    Plaintiff alleges that that the acts and conducts of each EBD herein evince a continuing pattern that were neither separate or isolated incidents but of a continuing nature of identical grievances and were of a fundamental nature because the Plaintiff alleged threats to safety and security arising from plots to imprison him by state officials which supported the

likelihood or certainty based on probable cause allegations that Plaintiff was in danger or more vulnerable to danger and the EBD's "[A]re not free to let the state of nature take its course." *Farmer v. Brennan, 511 US 825 – Supreme court (1994)*

447.     Such refusals to investigate, arrest, indict, charge refer or procure the same or merely contact the Plaintiff based on the facts of probable caused alleged is transient, light or de minimis cause but as applied to the Plaintiff one of the most fundamental liberties promised to him in society, life and liberty, especially from acts involving state created danger by state officials under probable cause allegations of a "knowing" conspiracy to commit false imprisonment and to engage in conduct withholding, denying, refusing, or avoiding Pany investigation, arrest, charge, indictment or referral of the state actors cause of a fundamental breach of a compact in which Plaintiff is and such breach, in its fundamental character relieves Plaintiff of obligation of obedience to Georgia's laws until such breach is cured.

## COUNT 2 – BREACH OF CONTRACT - CONTRACTUAL OBLIGATION – LEGAL OBLIGATION AND LEGAL DUTY

448.     Plaintiff repeats & realleges par. 27 – 435 as if fully alleged herein and by reference.

449.     "[T]o ensure the preservation of this **social contract** between our government and its citizens… we developed a group of rights defined by a constitution, and a judicial system charged with being the vigorous and independent guardian of those rights." *Christensen v. State, 468 SE 2d 188 266 Ga. 474 – Ga Supreme Court (1996)*

450.     Each Defendant who took an office to support and defend the U.S. constitution and/or the Georgia Constitution is bound by contract with the beneficiaries of Georgia's and United States Constitution as a result of each Defendants said oath.[28]

---

[28] "[H]ow immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support." *Marbury v Madison. 5 US 137 – Supreme Court (1803)*

451.    The Plaintiff is a beneficiary of the "United States Constitution and Georgia constitution" – the social compact(s) or contract(s).

452.    All times herein, Defendants owed Plaintiff a legal duty and an obligation when considering any grievance, petition, complaint, document or paper for request for any relief, redress or grievance for protection of the laws, to honestly, in good faith, with care, in accordance with the law, their offices and their oaths, to provide Plaintiff a proper remedy, redress, relief and vindication and knew that there were not to erroneously, arbitrarily, with malice or reckless indifference to the rights of the Plaintiff deny to him any meritorious request for relief, redress, a proper remedy or psychological vindication when such relief, redress, remedy or vindication was required, appropriate, mandated or Plaintiff was entitled to it.[29]

453.    At all times herein, this duty and obligation owed to Plaintiff as a beneficiary of the social compacts was an enforceable contract or enforceable contractual obligation.

454.    The Plaintiff has a right to enforce this contractual obligation as beneficiary to the social compact or contract. ("Georgia constitution and United States Constitution")

455.    At all times herein, each Defendant, did with malice or reckless disregard and indifference to the rights, with bias or prejudice, knowing or having reason to know Plaintiff was owed a duty in his grievances, and owing Plaintiff a duty and obligation did delay, withhold, deny, prevent or frustrate Plaintiff's due and proper redress, relief, remedy and vindication in protection of the laws.

456.    Defendant EBDs, having the power to investigate, criminally refer, indict, charge, place warrants, arrest or procure the same and having actual or constructive knowledge of sworn

---

[29] Each Defendant in this case took an oath of office and signed such oath and did swear on the bible that they would support and defend the United States Constitution.

Formal Complaint(s) showing probable cause of which a reasonable and prudent person

would have known of state created danger in a conspiracy to commit false imprisonment and

all inferences that the Plaintiff's "life was in danger" *state* actors who were alleged to be the

cause of state created, did with malice and reckless indifference to the rights of the Plaintiff

did fail to perform according to their duties and obligations owed to Plaintiff, promptly and

in good faith, knowingly and persistently by investigating, indicting, arresting, charging,

criminally referring or procuring the same, of the state actors who were alleged to the cause

of the state created danger in Plaintiff's sworn formal complaint(s), repeatedly and

persistently, each day after their receipt of such sworn complaint(s) and said acts

fundamentally breached the contractual obligation and duties they owed to Plaintiff in the

social compact or contract.

457.    Defendant Appellate Justices owing the Plaintiff a duty and obligation, having over a

collective 50 years of experience as Appellate Justices, with bias and prejudice, malice or

reckless disregard for the rights of the Plaintiff did refuse to perform and abide by their

obligation and duties owed to Plaintiff by frustrating, delaying or denying Plaintiff a due,

proper or adequate remedy, redress, physiological vindication, adequate, and required relief

and protection of the laws when acting as Appellate Justices in Plaintiff's Direct appeal

contrary to their sworn oaths and their acts as a whole breached the obligations & duties

owed to Plaintiff in the social compact or contract.

458.    Defendant Cooper owing the Plaintiff a duty and obligation and having over 7 years of

experience as Appellate court clerk to know the law, what her duties were and how to apply

them did, with malice or reckless disregard for the rights of the Plaintiff refused to perform

and abide by her obligations and ministerial duties in her refusing to file Plaintiff's Motion to

Reconsider in Plaintiff's Appellate court case contrary to her sworn oath and her acts as a whole breached her obligations & duties owed to Plaintiff in the social compact or contract.

459.    The JQC and Defendant Boring as former director owed a legal duty and obligation to the public and Plaintiff as a Georgia state citizen of the public to follow the law and evaluate all information from any source and to conduct preliminary investigations if the allegations constituted judicial misconduct, if true, and in a pattern, practice or policy refused to perform and abide by their obligations and duties and launch a preliminary investigation into Plaintiff's judicial misconduct complaint against Georgia judge Brian Amero and continues to refuse conduct investigations into any judicial misconduct complaint because of the pattern, practice or policy of refusing to investigate judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions and was the motivating and contributing factor to the Plaintiff's and the publics injury and their acts as a whole breached their obligations & duties owed to Plaintiff in the social compact or contract.

460.    Defendant Spencer and Lange owing the Plaintiff a duty and obligation to investigate complaints did, refuse to perform and abide by their obligations and duties in refusing to investigate Plaintiff's multiple Agency corruption complaint(s) in Georgia's executive branch contrary to their sworn oaths and their acts as a whole breached the obligations and duties owed to the Plaintiff in the social compact or contract.

461.    Defendant Edwards owing the Plaintiff a duty and obligation and having experience as a Judge to know the law and what her duties were did, with malice or reckless disregard for the rights of the Plaintiff refused to perform and abide by her obligations and duties in substantially delaying the due course of law in Plaintiff's Open Records suit in violation of

Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law contrary to her oath and her acts as a whole breached the social compact or contract.

462.    Defendant Geraghty owed Plaintiff a duty to not act partially nor with bias or prejudice, when acting as a presiding judge in his case and was to recuse or disqualify when she knew or should have known that her impartially could reasonably be questioned and knowing such refused to disqualify or recuse from Plaintiff's case, case no. 1:21-cv-04536-SEG when she knew she had a bias or prejudice or knew or should have known that her impartially could reasonably be questioned by her delaying Plaintiff's COA and Motion to Stay and essentially deep-sixing Plaintiff's COA and Motion to stay by denying relief that she knew and had reason to know was manifestly incompatible with the law, contrary to her oath & her acts as a whole breached the obligations & duties owed to Plaintiff in the social compact or contract.

463.    Defendant Geraghty owed Plaintiff a duty to not act partially nor with bias or prejudice, when acting as a presiding judge in his case and was to recuse or disqualify when she knew or should have known that her impartially could reasonably be questioned and knowing such refused to disqualify or recuse from Plaintiff's case, case no. 1:21-cv-04970-SEG when she knew she had a bias or prejudice or knew or should have known that her impartiality could reasonably be questioned by denying Plaintiff's Motion for permission to file electronically knowing or having reason to know to do so was manifestly incompatible with the law, contrary to her oath and her acts as a whole breached the obligations & duties owed to Plaintiff in the social compact or contract.

464.    Defendant Geraghty owing the Plaintiff a duty and obligation, having 20 years of legal experience, with bias and prejudice, malice or reckless disregard for the rights of the Plaintiff did frustrate, delay or deny Arnold of a due, proper & adequate remedy, redress, physiological vindication, adequate, minimum and required relief and protection of the laws when acting as presiding Judge in Plaintiff's Writ of Habeas proceeding case no. 1:21-cv-04536-SEG by a delaying a ruling on Plaintiff's COA and his Motion to stay and subsequently recklessly, arbitrarily and erroneously denying his COA and Motion to stay and denying his Motion to file electronically in case no. 1:21-cv-04970-SEG knowing or having reason to know to do so was manifestly incompatible with the law contrary to her oath & her acts breached the obligations & duties owed to Plaintiff in the social compact or contract.

## COUNT 3 – 42 U.S.C. § 1983 VIOLATION OF SUBSTANTIAL DUE PROCESS - STATE CREATED DANGER UNDER *DESHANEY*

465.    Arnold realleges paragraphs 27 – 133, and paragraphs 280-323 as if fully alleged herein and by reference.

466.    The EBD's has and continues to have a legal duty and obligation to provide protection to its citizens from any state created danger arising from the acts of their state officials. *See Deshaney v Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

467.    "[T]he Due Process Clause… was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression… Its purpose was to protect the people from the **State**, not to ensure the State protected them from eachother. *Id.*

468.    Plaintiff brings two claims under *Deshaney*; (1) the failure to protect Plaintiff from state *probable cause* of created danger (2) and creating a new danger in the failure to protect in violation of the substantive due process clause of the Fourteenth Amendment.

469.   Defendant Carr of the Attorney General's Office, Defendant Pattillo of the Henry County District Attorney's office, Defendant Scandrett of the Henry County Sheriff's Office and Defendant Kemp of the Governor of the State of Georgia collectively referred hereto as "Executive Branch Defendants" ("EBDs") received actual or constructive addressed to them of notice of sworn Formal Complaints alleging probable cause of a conspiracy to commit false imprisonment, that the Plaintiff's "life was in danger" and that he feared an assassination attempt on his life arising from the affirmative acts of Georgia state actors.

470.   The probable cause allegations stated claims that were acts of state created danger because the Plaintiff alleged probable cause of an act of false imprisonment by state officials to "knowingly" propel him into "[P]risons… necessarily dangerous places." *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*

471.   The Plaintiff concerns himself with the claims alleging and only the allegations showing *probable cause* into the allegations alleging a conspiracy to commit false imprisonment and state created danger and does not attempt to litigate any of the specific or general acts in Plaintiff's sworn formal complaints that Plaintiff alleges were unlawful.

472.   The probable cause alleged in Plaintiff's sworn formal complaints was not of any matter de minimis but matters that shock the conscience as a threat to life was stated or alleged and ignored by the EBD's who a duty and obligation to act but refused to do so.

473.   The allegations in Plaintiff's sworn formal complaints supported probable cause of a "knowing" conspiracy to commit false imprisonment of which a reasonable or prudent person would have known based on the facts alleged therein his sworn formal complaints that there was sufficient cause to believe that probable cause to commit the illicit acts were in fact committed, had been committed or about to committed.

474.   Moreover, as stated in Exhibit A (which Plaintiff incorporates herein and incorporates by

reference as if fully alleged herein) sent & received by the Governor's office & the Attorney

General, the Plaintiff alleged further claims in his sworn formal complaints to support

probable cause in that the Department ignored his open records requests for a period of four

months and only attempted service of process of the purported contempt action at an address

the Plaintiff had changed in case no. SUCV-2021-0700, by stating to wit. [Exhibit A – 22-27]

- "Affiant would later learn on May 11th, 2022 – the same date relevant movement occurred after the Affiants Direct Appeal was eventually transmitted to the appellate court of Georgia after the delay4 – DCSS, by through ASA Barbara Briley filed a Rule Nisi seeking the Affiant's incarceration for non-payment of Child Support under the December 1st, 2021 contempt action – and had done so by addressing an address that the Affiant had changed in case no. SUCV-2021-0700 days prior."

- "Chelsea Shelton and others employed with DCSS, on or around May 11th, 2022, did retrieve, obtain, procure and send mail to the address of 5420 Riverdale Rd. Apt D15 College Park Ga 30349 (after Affiant changed this incorrect mailing address in case of SUCV-2021-0700.)" [Exhibit A – pg. 24]

- "[On] June 3rd, 2022... documents were served at 5420 Riverdale Rd. ... College Park Ga 30349, at a time Defendants herein had reason to believe the Affiant (and possibly no family members of Affiant) were residents of this address but DCSS in fact attempted to serve Affiant at said address." [Exhibit A – pg. 26]

- "From Feb of 2022 up until July of 2022, Affiant requested on multiple instances for "all and any" records related to his Child Support case under statutory records request. Department of Human Services ("DHS") Open Records officer Jacob Davis and employees charged with responding to email requests within the McDonough office of the Division of Child Support Services ("DCSS") failed to respond to any of these emails although they had receipt of these emails" [Exhibit A – pg. 8]

- "On or around July 14th, 2022, Affiants' elderly family member who was a tenant of the residence of the residential location [5420 Riverdale Rd...] where service of process was attempted sent a notarized letters to DHS informing the state agency that Affiant was not a resident of the location of the attempted service of process upon him." [Exhibit A – pg. 8-9]

- "Affiant then gained cognizance that the failure to respond to these emails on information and belief were an attempt **to secret the hearing from the Affiant**." [Exhibit A – pg. 9]

475.    False swearing is a crime in the State of Georgia and there was no reason not to at a minimum promptly and in good faith "investigate" or criminally refer the sworn formal complaints or contact the Plaintiff via mail or telephonically about his claims or to clarify any confusion or gain clarification of any of his claims.

476.    In addition, "Probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit." *United States v. Leon, 468 US 897 – Supreme Court (1984)*

477.    Each sworn formal complaint had the mailing address and telephonic number of the Plaintiff and after Defendant Kemp's and Carr's receipt of Plaintiff's sworn formal complaint in 2022 (Exhibit A) and each of the EBD's receipt of Plaintiff's sworn formal complaint in 2023 (Exhibit B-E) none of the EBD's contacted Plaintiff via mail, telephonically or email.

478.    The Plaintiff provided overwhelming evidence of probable cause of a conspiracy to commit false imprisonment by state officials in that there was not only evidence that Georgia judge Brian Amero and Barbara Briley (subjects of the complaint) knew that the registered enforcement support order mentioned in Plaintiff's sworn formal complaints was unlawful or unenforceable but, additional evidence of an attempt to secret the hearing from the Plaintiff which further supported the "*knowing*" conspiracy to commit an act of *false* imprisonment.

479.    Based on the allegations in Plaintiff's sworn formal complaints any reasonably prudent person acting in good faith would know that a crime was afoot or about to occur and such threat or looming of a crime continues as of the date of this filing.

480.    Moreover, the allegations of a conspiracy to commit false imprisonment supported a reasonable belief that it was probable cause to believe that Plaintiff's life was in danger or that he would be more vulnerable to danger as a result of their inaction because as the sworn facts alleged – "[The conspirators] knew that the enforcement support order was unlawful

and lacking in legal or lawful enforcement authority and [conspired to imprison the Plaintiff] because [they] <u>feared liabilty in official proceedings... if they did arrest the Affiant</u>" – which facts support a further inference that Plaintiff's safety and security was at risk if he was imprisoned because the **liability** for the unlawful acts to falsely imprison the Plaintiff **would not end** with Plaintiff's arrest.

481.    Because of the EBD's *failure* to do any act, intervene or attempt to lessen the dangers the Plaintiff faced the Plaintiff was in danger or more vulnerable to danger.

482.    Because of the EBD's failure to do any act, intervene or attempt to lessen the dangers the Plaintiff faced when they knew or should have known that Plaintiff faced such dangers and owed him a duty and obligation to provide such protection, those knowing and persistent denials each day created a new state created danger in the form of, "[O]ppression... when [the] State undertakes a vital duty and then ignores it." [*DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*] and such new danger is which Plaintiff brings his claim.

483.    The Attorney General, the Governor's office, the Henry County Sherriff and District Attorney's office, with malice or reckless disregard for the rights of the Plaintiff did deny to Plaintiff protection of the laws in their refusing to investigate, arrest, charge, refer or indict state officials based on probable cause of a conspiracy to commit false imprisonment and state created danger in breach of their legal duties and obligations owed to Plaintiff and in breach of the social compact or contract.

484.    Lastly, Defendant Spencer and Lange owing the Plaintiff a duty and obligation to investigate complaints did, with malice and reckless disregard for the rights of the Plaintiff did refuse to perform and abide by their obligations and duties in refusing to investigate

Plaintiff's multiple Agency complaint(s) alleging acts that they knew to be or had reason to

know was state created danger and in doing so violated Plaintiff's Fourteenth Amendment

rights to substantive due process of law under a duty to protect analysis.

## COUNT 4 – VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHT TO A PROPER REMEDY, REDRESS AND RELIEF – VIOLATION OF FOURTEENTH AMENDMENT PROTECTION OF THE LAWS

485.    Plaintiff repeats & realleges par. 27 – 435 as if fully alleged herein and by reference.

486.    Plaintiff had a right to claim protection of the laws and it is, "[T]he very essence of civil

liberty… in the right of every individual to claim the protection of the laws, whenever he

receives an injury." *Marbury v. Madison, 1 Cranch 137, 163 (1803)*[30]

487.    Moreover, while seeking protection of the laws, "[T]he State's obligations under the

Fourteenth Amendment are not simply generalized ones; rather, the State owes to each

individual that *process* which, in light of the values of a free society, can be characterized as

*due*." *Boddie v. Connecticut, 401 U.S. 371 (1971)*)

488.    For what purpose is the right to a *redress of grievances* when that right is met by public

servants in either the offices of the judicial or executive branch where the grievance is

submitted, who owe a duty and obligation to provide a remedy if one shall be rendered

according to law but with malice or reckless disregard for the rights of the aggrieved, refuses,

fails, withholds or denies meritorious redress when such redress should have been rendered?

489.    Plaintiff believes the answer lies in the 1803 case of *Marbury v Madison* in which the

court stated, "[I]t cannot be presumed that any clause in the constitution is intended to be

without effect." *Marbury v. Madison, 5 US 137 – Supreme Court (1803)*

---

[30] "The First Amendment interests involved in private litigation – compensation for violated rights and interests, the psychological benefits of vindication [and] public airing of disputed facts." *Bill Johnson's Restaurants, Inc. v. NLRB, 461 US 731 (1983)*

490.    To that end, Plaintiff says what was *due* was "[T]he maxim *ubi jus, ibi remedium* [which]
        lies at the very foundation of all systems of law," [*United States v. Loughrey 172 U.S. 206
        (1898)]* but was violated by all Defendants herein who, with malice or reckless indifference
        to the rights of the Plaintiff, and/or with bias and prejudice, engaged in prejudicial bias in lieu
        of impartialness, denial of protection in lieu of protection, deliberate or recklessness
        foreclosure or unlawful delay of meritorious remedy in lieu of due or adequate remedy by
        delaying, denying, preventing or frustrating Plaintiff's due and proper redress, remedy, relief,
        grievances and vindication in the protection of the laws knowing or having reason to know
        that to do so was contrary to their duties and obligations owed to Plaintiff and manifestly
        incompatible with the law.

491.    At all times herein, each Defendant had a contractual obligation they owed to Plaintiff to
        adhere to their duties and obligations they owed Plaintiff and failed to perform in those
        obligations with malice or reckless disregard for the rights of the Plaintiff.

492.    Defendant EBD's owed Plaintiff a duty to act in good faith and in accordance with the
        law while acting as Governor, Attorney General, District Attorney and Sheriff, and having
        actual or constructive knowledge of Plaintiff's sworn formal complaints, with malice or
        reckless disregard for the rights of the Plaintiff did deny to Plaintiff protection of the laws in
        a grievance he had via his sworn formal complaints requesting an investigation into state acts
        to unlawfully imprison him by knowingly and persistently, refusing to investigate, arrest,
        charge, refer or indict the state officials based on probable cause of a conspiracy to commit
        false imprisonment and state created danger in violation of Plaintiff's First & 14th
        Amendment constitutional protections to a proper remedy, redress, relief and vindication and

his Fourteenth Amendment right to procedural and substantive due process of law in the protection of the laws.

493.    Defendant Appellate Justices, owing Plaintiff a duty to act in good faith, in accordance with the law while acting as presiding judges in his direct appeal, with malice or reckless disregard for the rights of the Plaintiff, in a pattern of bias and prejudice, (1) did affirm the lower court decisions of Georgia judge Brian Amero and (1) deny Plaintiff's Motions to reconsider, post motions to supplement and disqualification motions while acting as presiding judges in Plaintiff's Direct appeal knowing or having reason to know based on their 50 years of collective experience that to do so was manifestly incompatible with the law and required a different decision from the one(s) rendered; and thereafter (3) refused to recuse in Plaintiff's direct appeal when they knew or had reason to know they had a bias or prejudice or that their impartiality could reasonably be questioned in violation of his First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law in the protection of the laws.

494.    Defendant Cooper owing the Plaintiff a duty and obligation to perform and abide by her ministerial duties and file Plaintiff's motions, pleadings, papers or documents while acting as an Appellate court clerk, with malice or reckless disregard for the rights of the Plaintiff, did refuse to file Plaintiff's Motion to Reconsider knowing or having reason to know that to do so was manifestly incompatible with the law in violation of Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law.

495.    The JQC and Defendant Boring as former director of JQC owed a legal duty and

obligation to the public and Plaintiff as a Georgia state citizen to follow the law and evaluate

all information from any source and to conduct preliminary investigations if the allegations

constituted judicial misconduct, if true, and in a pattern, practice or policy refused to launch a

preliminary investigation into Plaintiff's judicial misconduct complaint against Georgia

judge Brian Amero and continues to refuse conduct investigations into any judicial

misconduct complaint because of the pattern, practice or policy of refusing to investigate

judicial misconduct by Georgia Judges in *child custody cases* if the acts alleged (1) were the

result of a *discretionary* decision and (2) on belief, non-*discretionary* decisions and was the

motivating and contributing factor to the Plaintiff's and the publics injury in violation of

Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy,

redress, relief and vindication and his Fourteenth Amendment right to procedural and

substantive due process of law.

496.    Defendant Edwards owing the Plaintiff a duty and obligation and having experience as a

Judge to know the law and what her duties were, with malice or reckless disregard for the

rights of the Plaintiff refused to perform and abide by her obligations and duties in

substantially delaying the due course of law in Plaintiff's Open Records suit in violation of

Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy,

redress, relief and vindication and his Fourteenth Amendment right to procedural and

substantive due process of law.

497.    Defendant Geraghty owing the Plaintiff a duty and obligation, having 20 years of legal

experience, with bias and prejudice, malice or reckless disregard for the rights of the Plaintiff

did frustrate, delay or deny Arnold of a due, proper & adequate remedy, redress,

physiological vindication, adequate, minimum and required relief and protection of the laws

when acting as presiding Judge in Plaintiff's Writ of Habeas proceeding case no. 1:21-cv-

04536-SEG by a delaying a ruling on Plaintiff's COA and his Motion to stay and

subsequently recklessly, arbitrarily and erroneously denying his COA and Motion to stay and

denying his Motion to file electronically in case no. 1:21-cv-04970-SEG knowing or having

reason to know to do so was manifestly incompatible with the law in violation of Plaintiff's

First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief

and vindication and his Fourteenth Amendment right to procedural and substantive due

process of law.

### COUNT 5 – 42 U.S.C. § 1983 CONSPIRACY

498.    Arnold repeats & realleges par. 27 – 435 as if fully alleged herein and by reference.

499.    The Plaintiff was entitled to be free from a conspiracy to commit a violation of his

constitutional rights under the constitution & 42 U.S.C. § 1983 under the Klu Klux Klan Act.

500.    Each of the Defendants herein this count engaged in a conspiracy to delay, deny, prevent

or frustrate Plaintiff's due and proper redress, vindication and protection of the laws if there

was a possibility, likelihood or certainty that criminal prosecution could be brought against

Georgia judge Brian Amero in such relief thereof his grievances and in furtherance thereof

engaged in a pattern and scheme of prejudicial bias in lieu of impartialness, denial of

protection in lieu of protection, deliberate or reckless foreclosure or unlawful delay or

frustration of meritorious relief or a proper remedy in lieu of due or adequate relief and

redress in violation of (1) Plaintiff's First and Fourteenth Amendment rights to a proper

remedy, redress, psychological vindication and relief, (2) and his right to protection of the

laws under the duty to protect analysis under the Fourteenth Amendment.

501.    More bluntly, the conspirators participated in a common venture to railroad the Plaintiff to prevent him obtaining redress, relief, psychological vindication and a proper remedy in his grievances against Georgia judge Brian Amero if there was a possibility, likelihood or certainty that criminal prosecution could be brought against Georgia judge Brian Amero in such relief thereof his grievances.

502.    Each conspirator herein had knowledge of Plaintiff's grievances and according to the facts alleged in Plaintiff's grievances, appeals or complaints brought to their attention, knew that they were grievances against Georgia judge Brian Amero.

503.    On information and belief, there was a major understanding in the State of Georgia known by each Defendant of an esoteric understanding and motive shared between other courts, state and federal actors also involved in the railroading campaign against the Plaintiff of the need to make certain that under no circumstances could any relief in Plaintiff's grievances go in his favor if there was a possibility, likelihood or certainty that criminal prosecution could or would be brought against judge Brian Amero or had an agreement between other courts, state and federal actors also involved in the railroading campaign against the Plaintiff to make certain of the same.

504.    At every turn and at every step of the way during the Plaintiff's attempts to redress even the most basis grievances brought to the attention of the Defendants herein, they all played their parts & played their roles in this common venture to make their conspiracy work.

505.    In furtherance of this Conspiracy, Defendant Stephen Dillard, Todd Markle, Amanda Mercier and Tabatha Cooper Appellate Justices, while acting as presiding judges in his direct appeal, with malice or reckless disregard for the rights of the Plaintiff, in a pattern of bias and prejudice, (1) did affirm the lower court decisions of Georgia judge Brian Amero in (2) and

denied Plaintiff's Motions to reconsider, post motions to supplement and disqualification

motions knowing or having reason to know based on their 50 years of collective experience

that to do so was manifestly incompatible with the law and required a different decision from

the one(s) rendered; and thereafter (3) refused to recuse in Plaintiff's direct appeal when they

knew or had reason to know they had a bias or prejudice or that their impartiality could

reasonably be questioned in violation of his First & Fourteenth Amendment constitutional

protections to a proper remedy, redress, relief and vindication and his Fourteenth

Amendment right to procedural and substantive due process of law.

506.     Defendants Stephen Dillard, Todd Markle, Amanda Mercier, when faced with a motion

to disqualify to void their Rule 36 ruling and all prior rulings related to Plaintiff's motion to

supplement the record, did because of bias and prejudice defend themselves against

Plaintiff's motion to disqualify and denied his motion when they knew or should have known

that such a defense against Plaintiff's allegations created an appearance of partiality

mandating their recusals and in furtherance of the conspiracy refused to disqualify to ensure

that their court orders were not reversed or the conspiracy was not disturbed.[31]

507.     In furtherance of the conspiracy, Defendants Cooper with malice or reckless disregard for

the rights of the Plaintiff, did refuse to file Plaintiff's Motion to Reconsider knowing or

having reason to know that to do so was manifestly incompatible with the law to further

conspiracy in violation of Plaintiff's First & Fourteenth Amendment constitutional

protections to a proper remedy, redress, relief and vindication and his Fourteenth

Amendment right to procedural and substantive due process of law.

---

[31] "[E]fforts at defending himself against a motion to recuse will inevitably create an appearance of
partiality. One reason is that if he defends himself he becomes an adversary of the movant for recusal."
*Post v State, 779 SE 2d 624 – Ga: Supreme Court (2015)*

508.    In furtherance of the conspiracy, Defendant Lange and Spencer, with malice or reckless disregard for the rights of the Plaintiff refused to investigate Plaintiff's multiple Agency corruption complaint(s) alleging probable cause of acts to commit false imprisonment by employees thereof the Department of Human Services within the executive branch of Georgia in conspiracy with Georgia judge Brian Amero Brian Amero in violation of Plaintiff's Fourteenth Amendment rights to substantive due process of law under a duty to protect analysis.

509.    In furtherance of the conspiracy, Defendant Geraghty, with bias and prejudice, malice or reckless disregard for the rights of the Plaintiff, did frustrate, delay or deny Arnold of a due, proper & adequate remedy, redress, physiological vindication, adequate, minimum and required relief and protection of the laws when acting as presiding Judge in Plaintiff's Writ of Habeas proceeding case no. 1:21-cv-04536-SEG by a delaying a ruling on Plaintiff's COA and his Motion to stay and subsequently, recklessly, arbitrarily and erroneously denying his COA and Motion to stay and his Motion to file electronically in a separate case, case no. 1:21-cv-04970-SEG knowing or having reason to know to do so was manifestly incompatible with the law in violation of Plaintiff's First & Fourteenth Amendment constitutional protections to a proper remedy, redress, relief and vindication and his Fourteenth Amendment right to procedural and substantive due process of law.

## COUNT 6 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

510.    Arnold repeats & realleges par. 27 – 435 as if fully alleged herein and by reference.

511.    Plaintiff brings a claim of intentional infliction of emotional distress based on the violations of the Plaintiff's constitutional protections in the EBD's failure to investigate probable cause of state created danger, the Defendant Appellate arbitrary, erroneous, reckless

delaying, denying and frustrating Plaintiff of his meritorious relief while acting as a presiding

judge in his Direct Appeal which they knew or should have known was manifestly

incompatible with the law and a manifest injustice, Defendant Lange and Spencer's failure to

investigate probable cause of state created danger and Defendant Geraghty's arbitrary,

erroneous, reckless delaying, denying, frustrating Plaintiff of meritorious relief while acting

as a presiding judge in his Federal Writ of Habeas action and 42 U.S.C. § 1983 action which

they knew or had reason to know was manifestly incompatible with the law.

512.     At all times herein each act of the Defendants named herein shock the conscience

because the acts of the Defendants herein were no mere citizens who not only had a legal

duty and obligation to follow the law, act in good faith, with honestly in accordance with

their oath but had the experience and status of a State or Federal official who would know or

had reason to know that their acts was manifestly incompatible with the law or in violation of

the Plaintiff's rights.

513.     At all times herein, it is a fact that his attempts at redress, protection, relief or remedy

were also not any basic intangible rights the Plaintiff sought to vindicate, rather, sacred

liberties or circumstances in which the decisions would exact severe emotional and mental

distress involving (1) probable cause alleging threats to his safety and security and an

inference of threat to his safety and security involving threats to his life by state officials; (2)

grievances seeking the reversal of alterations and modifications of his initial custody

agreement arising from child custody proceedings which substantially lowered the time spent

and overnights with his child; (3) allegations of probable cause of threats to safety and

security involving the executive branch (4) and attempts to remove him from allegations of

Habeas "custody" in violation of the constitution of the United States.

514.    To avoid repetition, as to Defendant EBD's causing the Plaintiff severe mental and

emotional distress, mental anguish, anxiety the Plaintiff repeats, realleges and incorporates

each and every paragraph of 120 – 133 above as if fully alleged herein.

515.    It could be argued to a jury that to ignore, refuse, deny or withhold from doing any act

that at minimum, offered some sense of a belief or relief that protection or consideration of

claims alleging probable cause of a plot to *knowingly* imprison Plaintiff including all of the

inferences thereof would in fact cause Plaintiff severe emotional and mental distress, anxiety

and mental anguish especially when the EBD's had a duty to do so and engaged in conduct

and behavior that can be reasonable considered to be acquiescence to the allegations of

probable cause alleging state created danger.

516.    To avoid repetition, as to Defendant Appellate Justices and Defendant Cooper causing

the Plaintiff severe mental and emotional distress, mental anguish, anxiety the Plaintiff

repeats, realleges and incorporates paragraphs 226 – 247 as if fully alleged herein.

517.    Moreover, Defendant Edwards knew and had reason to know based on the Plaintiff's

"Motion for Inquiry and Ruling" that he filed in the Superior court (case no. 2022CV370090)

in which she was a presiding judge the following claims in which he alleged, to wit;

- Pursuant to O.C.G.A. § 15-6-21(b) "it shall be the duty of the judge of the superior…
  court, unless providentially hindered or unless counsel for the plaintiff and the
  defendant agree in writing to extend the time, to decide promptly, within 90 days…
  all… motions of any nature…
- [O]utside of court acts are manifesting a state of mind in the Plaintiff **of nefarious
  intentions of the Defendants which may influence this case**…"

518.    As to Defendant Edwards, it can be argued to a jury that to delay an open records suit for

nearly 100 days and continuing after having notice of a 90 day requirement to rule on all

motions pursuant to a Georgia statute and of allegations of nefarious intentions of the

Defendants, and disregard such statute and notice would cause severe anxiety, mental and emotional distress and deprive him of psychological vindication in the Plaintiff having to know based on her conduct that in his seeking such court in good faith to redress grievances in which he was entitled to do would be deliberately delayed and frustrated contrary to law regardless of any claims of nefarious intentions on behalf of the Defendants.

519.    Plaintiff suffered severe mental and emotional distress and an extreme loss in confidence in the system of governance in the State of Georgia in knowing that a Superior court judge would blatantly violate the law and refuse to render a decision in his case.

520.    It can be argued to a jury that Defendant Edwards would know that her acts would cause the exact distress the Plaintiff faced and would know that to delay Plaintiff would cause such distress and did engaged in such acts regardless of Plaintiff's distress.

521.    To avoid repetition, as to Defendant Geraghty causing the Plaintiff severe mental and emotional distress, mental anguish, anxiety the Plaintiff repeats, realleges and incorporates by reference paragraphs 346 – 406 as if fully alleged herein.

522.    At all times herein this count, Defendants engaged in conduct that was intentional or reckless and outrageous and the distress each Defendant caused the Plaintiff was casually connected to his attempts to seek redress of grievances or protection from which each Defendant owed Plaintiff according to their duties and obligations and their failures to provide Plaintiff such protection of the laws, relief, redress and a proper remedy was without justification and each Defendant knew that to engage in said course of conduct was to cause and result in severe mental and emotional distress, anxiety and aguish to the Plaintiff.

523.    As to Defendant Spencer and Lange, it could be argued to a jury that to ignore, refuse, deny or withhold from doing any act that at minimum, offered some sense of a belief or relief

that protection or consideration of claims alleging probable cause of a plot to *knowingly* imprison Plaintiff including all of the inferences thereof would in fact cause Plaintiff severe emotional and mental distress, anxiety and mental anguish especially when the Defendants had a duty to do so and engaged in conduct and behavior that can be reasonable considered to be acquiescence to the allegations of probable cause alleging state created danger.

**COUNT 7 – 42 U.S.C. § 1988 ATTORNEY FEES**

524.   Plaintiff says that if he is successful on any claim he is deserving of any fee for his work, time, study and labor just like any other Attorney or lawyer as the "successful party."

525.   Plaintiff alleges that any interest into which Plaintiff may not be entitled to attorney fees on the notion of "encouragement of attorney participation" prejudices him because he like dozens of other citizens, who will testify as witnesses, that most attorneys are not attracted and rarely accept lawsuits against judges.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, the Plaintiff requests that this Court:

A) Exercise jurisdiction and supplemental jurisdiction over this action and Plaintiff claims in the interest of justice;

B) Award Plaintiff compensatory, actual and punitive damages in the amount of $1 Million Dollars ($1,000,000.00) from each Defendant and intentional emotional distress damages in the amount of $10 Million Dollars ($10,000,000.00) or an amount determined by a jury;

C) Impose all civil penalties by law;

D) Award Plaintiff reasonable attorney's fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 to the pro se Plaintiff if he is the prevailing party;

E) Declare that the Attorney General's Office, the Governor of Georgia, the Henry County Sheriff's Office and the Henry County District Attorney failures to provide Plaintiff protection violated Plaintiff's Fourteenth Amendment rights;

F) Declare that each Defendants, knowing and persistent, withholding, denial and refusals to provide protection to person, property and liberty to the Plaintiff, although within their power to do so, breached a contractual obligation in which Plaintiff was a beneficiary;

G) Declare that the Attorney General's Office, the Governor of Georgia, the Henry County Sheriff's Office and the Henry County District Attorney knowing and persistent failures to provide Plaintiff protection of the laws breached a compact in which Plaintiff was a beneficiary relieving Plaintiff from the obligation of obedience to Georgia's laws;

H) Any and all other relief the court deems just and proper.

---

The Plaintiff declares under penalty of perjury under the laws of the United States that each and every factual allegation is true and correct and to those alleged to be based on information and belief, I deem those to also be true and correct according to the facts. **28 U.S.C. § 1746.** [32]

This 12th day of May 2023

By: _____

Mr. Deandre Arnold
**Mailing**: c/o Arnold, Deandre
7757 Rutgers Circle
Fairburn Georgia USA
**Email**: Dresmailbox89@gmail.com
**Telephone**: 4705143097

---

[32] There are approximately 276 exhibits attached to this Claim and Declaration. Plaintiff reserves the right to Amend his Complaint as to certain Defendants or as a whole if circumstances warrant.

# EXHIBIT A

## ("Initial Sworn Formal Complaint")

(Proof of Receipts also Attached 2 pgs.)

Received by Governor Brian Kemp on 8/18/2022 | 37 page initial complaint.

Received by Attorney General Chriss Carr on 10/27/2022 | **(Exhibit A-2)** 5 separate pages (Exhibit A) 37 page initial sworn complaint.

## 44 PAGES

(Note: Sensitive information that may unnecessarily affect the interests of Plaintiff in other litigation, maintains private information and which overall has no bearing on the acts related to the probable cause allegations of conspiracy to commit false imprisonment has been redacted. Defendant Kemp and Defendant Carr, however, has a full copy of the unredacted complaint.)

If necessary, the Plaintiff may move the court to file the document under seal, or in the alternative and if necessary and if ordered by the court, may file a reference list that identifies each item of redacted information under deal.

Deandre C. Arnold ("Affiant")
**Mailing Address**: 7757 Rutgers Cir. Fairburn Ga 30213
**Telephone**: 470-514-3097 | **Email**: Dresmail828@gmail.com

Governor Brian Kemp
206 Washington Street Suite 203,
State Capitol                                          **Re**: Public Corruption Complaint
Atlanta, GA 30334                                      **Date**: 8/18/2022

Dear Governor Brian Kemp,

This correspondence is not de minimis. This letter is being brought to your attention as I have reason to believe that due to the rank of certain officials named herein, the depth of this conspiracy and the implications of their crimes, that my safety and security is in jeopardy including others willing to testify to facts herein. Governor Kemp, I have reason to believe based on evidence that public officials have and are planning to unlawfully weaponize the power of the state of Georgia, its judicial system and its state agencies for the unlawful purposes of preventing a lawful redress of grievances and the vindicating of deprivations in official proceedings occurring within this state and that currently my life and the life of others willing to testify to certain of the facts below, are in danger.

This excessive concern was brought to the attention of the Henry County District Attorney's Office who has stated that they have an appearance of a "conflict of interest" with certain public officials named herein and have refused to investigate. The Henry County Police Department informed me that all corruption matters occurring within "Public buildings" are to be investigated by the Henry County Sheriff's Office "Special Investigations Division". The Special Investigations Division has not investigated these crimes. These agencies including the State Attorney General's office has been made aware of the "Public Corruption" affecting my safety and the safety and security of others but has been unable or unwilling to investigate.

Therefore, I am requesting that the Governor promptly appoint a Special Prosecutor, Special Counsel or District attorney pursuant to O.C.G.A. § 45-15-18 or otherwise and to direct the appropriate Investigative Agencies (GBI or FBI) to investigate the sworn statements to deter highly intolerable criminal offenses at large committed by public officials and departments of this state that affect the safety and life of citizens in the counties of the State of Georgia.

Deandre C. Arnold
| 470-514-3097 |
Mailing Address: 7577 Rutgers Circle
Fairburn Georgia 30228

Attorney General Chris Carr
40 Capitol Avenue
Atlanta GA 30334                              Enclosed: 4 separate pages and 37 pages

Dear Attorney General Chris Carr,

This is my second letter to alert and bring to your attention paramount and severe public corruption that affects the safety and security of the named Complainant above. I send this letter because of Previous public Corruption Complaints that were sent to your offices via mail on January 24th, 2022 (Certified mailing # 7021 2720 0000 1548 7530) and email on January 24th, 2022, from 'Dresmailbox89@gmail.com' because of the Henry County District Attorney's and Sheriff's office failure to investigate its claims. The Attorney General's Office contently deemed my previous Public Corruption Complaints of threats to safety and security a civil matter and suggested I seek a private attorney with those matters. Mr. Attorney General, the enclosed is to alert you as Attorney General of the State of Georgia and Top Prosecutor of the Criminal laws in this state, is that my attempt to redress the contended civil matters or grievances in official proceedings in this State has and is currently threatened, hindered, oppressed, or have been interfered with by public officials in this state and the enclosed documents and public corruption Complaint provides you the basis of the crimes, the individuals, the place, date and motives.

Mr. Attorney General, I believe it is your paramount duty under the Constitution of the State of Georgia to protect person and property especially from state officials who have manifested the dangers and threats to my safety and security to avoid liability or exposure of their crimes. As alleged in the Public Corruption Complaint, officials sworn to "protect and defend" have plotted to "attack and retaliate" in a Tyrannical and Oppressive style manner and upon information and belief, I believe their scheme, artifice, or design to falsely imprison me was to effectuate an act on my life because of the civil grievances in which the officials named therein the attached Complaint will be liable. The acts that threaten Complainant's safety and security are imminent and is currently being used as a means of oppression and intimidation. I request an immediate investigation by the AG's Office, or other act that requests an investigation from other agencies or local District Attorneys. (Please see page attached Complaint, 41 pages).

| | |
|---|---|
| DEANDRE ARNOLD, | ) |
| | ) |
| | ) PUBLIC CORRUPTION COMPLAINT |
| | ) |
| v. | ) (1) ATTEMPTED MURDER OR THREATENING OF |
| | ) WITNESSES IN OFFICIAL PROCEEDINGS O.C.G.A. § |
| | ) 16-10-32(b)(1)(2)(3) |
| BRIAN AMERO, | ) (2) FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq., |
| | ) (3) THEFT BY DECEPTION. O.C.G.A. § 16-8-3 et seq., |
| GLORIA BANISTER, | ) (4) CONSPIRACY. O.C.G.A. § 16-4-8 et seq., |
| MARTY MATTHEWS, | ) (5) TRAFFICKING OF PERSONS FOR LABOR O.C.G.A. § |
| | ) 16-4-8 et seq., |
| WAYNE JERNIGAN, | ) (6) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1 |
| OTANYA CLARKE, | ) (7) OFFENSES INVOLVING PUBLIC RECORDS, |
| | ) DOCUMENTS AND OTHER ITEMS O.C.G.A. § 45-11-1 |
| MELISSA BROOKS, | ) (8) UNPROFESSIONAL CONDUCT; MISDEMEANOR; |
| JACOB DAVIS | ) APPLICABILITY O.C.G.A. § 45-11-4 et seq., |
| | ) (9) FALSE STATEMENT AND WRITINGS O.C.G.A. § 16-10- |
| DANNA YU, | ) 2, |
| | ) (10) FILING FALSE DOCUMENTS O.C.G.A. § 16-10-20.1. |
| BARBER BRILEY, | ) (11) CRIMINAL SOLICITATION O.C.G.A. § 16-4-7 |
| ANDREA SHELTON | ) |
| | ) VERIFIED PROBABLE CAUSE COMPLAINT |
| WILLIAM T. SIMMONS | ) FOR ARREST WARRANTS |

## I.    INTRODUCTION

In the State Courts of Georgia, officials sworn to "protect and defend" esoterically

plotted to "attack and retaliate" in a Tyrannical and oppressive manner, design and scheme

against the Affiant and others to accomplish an unlawful goal of avoiding civil, financial, and

criminal liabilty. In furtherance, Defendants unlawfully exploited the power of the state

judiciary system and its agencies to accomplish their unlawful acts of liabilty avoidance. The

Affiant states that there exists reason to believe that the Defendants are and have been planning

to accomplish an act of false imprisonment and are planning to imminently accomplish said act

esoterically under the "guise" of legal authority in order to commit **an assassination attempt**

on the Affiant. Affiant seeks the arrest of these Defendants to deter acts to obstruct Justice.

My name is Deandre Arnold, ("Affiant") being over the age of 21 years, give this Affidavit based on my own personal and firsthand knowledge of the following facts and the Affiant knows the contents of the foregoing to be true and state that such facts are true and correct, except as to those matters and allegations specifically stated to be *on information and belief* and as to those matters, the Affiant believes them to be true.

## II.    GENERAL BACKGROUND AND ALLEGATIONS

The Affiant is the Plaintiff in a pending Federal lawsuit ("suit") and a recent prosecutor in pre-arrest warrants in the State of Georgia, which official proceedings display the names of certain Defendants herein, their multiple deprivations against the Affiant including their violation of dozens of penal offenses. This Complaint establishes and is based on a continued esoteric scheme, criminally established to avoid civil litigation and liabilty for all past unlawful acts that affect the interests of the Defendants named herein if Affiant is able to fully litigate within civil proceedings pending in the courts of the United States and the State of Georgia. This Complaint establishes that throughout the years of 2021 and 2022, agreements were made, and a plan was concocted and combined by multiple public officials in the nature of obstructing justice for the purposes of preventing the Affiant from redressing civil grievances in the state courts of Georgia and the United States in order to prevent the Affiant from fully litigating his civil claims throughout all stages of the Judicial Process contrary to established law.

The Affiant has exhausted all feasible avenues within the State of Georgia, its law enforcement and executive agencies to investigate these crimes, and these avenues have proven either compromised or fruitless to the Affiant. ████████████████████████

████████████████████████████████████████████████████

██████ █████████████████████████████████████████████████

███████████████████████████████████████ ████████



<u>These acts are in addition or supplemental to acts provided in previous "Public Corruption Complaints" to law enforcement officials in the State of Georgia.</u>

On October 21, 2020, the Affiant was convicted in the Hampton Municipal Court, in the county of Henry, for the state offense of failure to stop at a stop sign. The Affiant contended that his constitutional protections to his Sixth Amendment right to counsel and right to trial by jury in the Municipal court of Hampton were blatantly violated. Affiant, contending his

conviction was a wrongful restraint, attempted to overturn his conviction by bringing said conviction under review by Writ of Certiorari from the Municipal court of Hampton to the Henry County Superior court. Throughout the months of November of 2020 up until September 2021 the Affiant **sought on multiple instances to overturn his wrongful restraint** by **(1)** exercising a lawful right to seek and file a Writ of Certiorari in the Henry County Superior court, **(2)** by seeking statutory requested records that were related to the overturning of his conviction and **(3)** by his presenting a Writ of Habeas Petition to the Henry County Superior court clerk's office in order to bring under question and overturn what Affiant contended was an unlawful conviction in the Municipal court of Hampton. In lieu of constitutionally accessing the court as provided by law, the Plaintiff was confronted by officials who conducted themselves as a criminal regime designed to prevented Affiant's constitutional redress of grievances by failing to file, concealing, destroying and refusing to file Writ of Certiorari's and a subsequent Writ of Habeas presented to clerks in the Henry County Superior Court. A scheme was concocted by Defendants that involved the deliberate failure to provide notice to the Affiant of revocation of probation hearings in order to purposely cause a false arrest and imprisonment of the Affiant – to close the Municipal court case[1]. Affiant was arrested at the Court of Appeals after presenting his ID to state troopers who later approached Affiant with assault rifles on a warrant the Affiant had no knowledge of and that was issued out of the Hampton Municipal court. This arrest took place on the last day the Affiant could appeal an order arising from the Henry County Superior court which order interests the City of Hampton. In addition, Judge Brian Amero, willfully and deliberately refused to disqualify himself as the

---

[1] *On information and belief,* the conspirators concocted this plan and scheme as a legal strategy to "avoid liability" and subject the Affiant to Heck v. Humphrey defense so that he could not legally overturn his conviction he contends was unlawful.

presiding Judge in two of the Affiants cases in the Henry County Superior court when he knew he had a legal interest in the outcome of the case and had an appearance of impartiality and did so in a combined effort to avoid liabilty and civil claims with employees of state agencies and local City of Hampton officials for their collective deprivations against the Affiant. Refusing to disqualify, on June 8th, 2021 and continuing Brian Amero willfully delayed enforcement of the Affiant's statutory records request in an official proceeding against the City of Hampton and knowingly falsified a Child Support record[2] on October 7th, 2021 in order to cure or make legal, a defect or invalidity of a prior support order that he and others employed within a state agency knew were unlawful and had been unlawful for a period of 2+ years which exposed them to severe civil and financial liabilty. Affiant did not express or make known to Judge Brian Amero or others at the time these falsified orders were entered of knowledge of its falsity until the filing of his Federal lawsuit which was filed on December 3rd, 2021.[3]

As Affiant would later learn, on December 1st, 2021, less than 2 months after the act of Judge Brian Amero's falsifying child support records, Assistant District Attorney Barbara Briley, of an agency of the State of Georgia, the Department of Human Services, ("DCSS"), brought forth a support contempt action against the Affiant in the county of Henry seeking his incarceration for non-payment, Judge Brian Amero presiding. On December 7th, 2020, a family member of the Affiant personally arrived at the Henry County Superior Courthouse in order to file an Amended Notice of Appeal – a direct appeal on Affiant's behalf – from orders entered in Affiant's Modification of Custody Action to overturn and bring under review Brian Amero's act of falsifying support records and custody orders that wrongfully caused the relocation of the

---

[2] Brian Amero stated in a court record that Affiants "Modification of Custody" action was a "Modification of Child Support" action although no **"Petition to Modify Child Support"** was filed required by Georgia law. OCGA 19-6-
[3] Plaintiff also Appealed said order on December 7th, 2021, and sought to overturn said order after the appeal was submitted.

Affiants minor child across state lines. In lieu of immediately transmitting the appeal for appellate review, Defendant's Gloria Banister, Danna Yu and others caused a delay of the transmittal and submission of the Affiant's direct appeal for a period of 100+ days and in their refusal to file Affiants paupers affidavit returned Affiants paupers affidavit via mail which – initially presented with his Notice of Appeal – for an alleged "lack of information" and was used concocted by Defendants did so in order to prevent "supersedeas" of the Affiant's direct appeal (which must be heard as it was non-discretionary) under the guise that Judge Brian Amero had to "sign and Grant" Affiants paupers affidavit when no such statute required his signature in order for a "supersedeas" to occur. (*See O.C.G.A. § 5-6-47 et seq*) However, Judge Brian Amero sign and granted the paupers affidavit that was mailed to Affiant for purported "lack of information" in April 2022.

As Affiant would later learn on **May 11th, 2022** – the same date relevant movement occurred after the Affiants Direct Appeal was eventually transmitted to the appellate court of Georgia after the delay[4] – DCSS, by through ASA Barbara Briley filed a Rule Nisi seeking the Affiant's incarceration for non-payment of Child Support under the December 1st, 2021 contempt action – and had done so by addressing an address that the Affiant had changed in case no. SUCV-2021-0700 days prior and on *information and belief* may have not known that the address belonged to family members of the Affiant. On May 18th, 2022, due to refusals to investigate, the Affiant filed pre-arrest warrants for the Arrest of Brian Amero and Gloria Banister that were willfully and deliberately stalled by William T. Simmons, Sixth District Administrative court Coordinator. The warrant hearings would eventually be denied without a

---

[4] The Affiant had requested from the Court of Appeals an affidavit that was tendered and submitted into evidence that proved Affiant maintained the majority of child custody in 2020 and the beginning of 2021. This hearing was not taken down or recorded by a "court reporter".

hearing on July 14th, 2022 – for what Affiant would learn was (4) days before a planned Child Support contempt proceeding within DCSS brought against the Affiant.

On or around July of 2022, the Affiant would also learn of a falsified service of process of summons and documents related to the support/contempt proceeding that displayed the name of Deandre Arnold as the person "personally" served summons although Affiant was neither personally served such a summons nor was a resident or tenant at the address such service was attempted upon. Communications with the serving Lieutenant entail that this may have been genuine mistaken error on the part of the officer. Affiant would soon realize a contrived plan of public officials in this state who had planned and were willing to weaponize the lawful power of a state agency unlawfully for an unlawful purpose to avoid liabilty and may have engaged in efforts to secret such a hearing or proceeding away from the Affiant on *information and belief* – under the notion that Affiant could be "legally" served under the fallacy of his residential status at an address DCSS employees and others knew to be false and to cause a warrant to issue without his knowledge.

From Feb of 2022 up until July of 2022, Affiant requested on multiple instances for "**all and any**" records related to his Child Support case under statutory records request. Department of Human Services ("DHS") Open Records officer Jacob Davis and employees charged with responding to email requests within the McDonough office of the Division of Child Support Services ("DCSS") failed to respond to any of these emails although they had receipt of these emails. On or around July 14th, 2022, Affiants' elderly family member who was a tenant of the residence of the residential location where service of process was attempted, sent a notarized letters to DHS informing the state agency that Affiant was not a resident of the location of the

attempted service of process upon him. Affiant then gained cognizance that the failure to respond to these emails on *information and belief* were an attempt to secret the hearing from the Affiant or "induce" the Affiant within said contempt hearing under his perceived knowledge of said hearing that had a pre-determined outcome regardless of any of the legal reasons for his nonpayment.

On or around July 14th, 2022, Affiant provided a similar Public Corruption Complaint to the officers of Senator Jon Ossoff for the purposes of submitting the Complaint to the Governor of the State of Georgia and the FBI to request Federal and state assistance and a special prosecutor or investigate counsel to investigate the crimes alleged therein. Neal VanMarter of the Offices of Senator Jon Ossoff stated that he had transmitted this Compliant to the Office of Governor Brian Kemp on July 14th, 2022. On or around July 18th, 2022, Affiant made contact with the DCSS informing the Agency on captured telephonic statements that he was neither personally served nor a resident of the address service of process was attempted and asked for an explanation regarding their failures to return his phone calls, emails and requests for "**all and any**" information (records) for a period of (4) four months or more prior to their planned hearing. Affiant's child support case workers suddenly changed. Affiant began under fear and threat to comply with the demands of the state agency with cognizance that the conspirators had concocted such Contempt hearing with a pre-determined outcome although the Affiant maintained a legal reason for any non-payment.

On or around 7/28/2022, Affiant expressed these concerns via a letter mailed to DCSS concerning their unlawful *activity* related to their invalid enforcement authority under an invalid enforcement order. Affiant was forced to pay for the immediate return of his license

which were suspended without notice and as of 8/18/2022, ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████.

Because of the pressing need for investigations into the growing crimes, the Affiant sought to request a meeting with the Attorney General of Georgia. On June 8th, 2022, days after his request, Amanda Rutherford of the Attorney General's office stated or was told to state that such a matter was not such a matter in which their offices could assist. The Affiant also sought to request a meeting with the Governor of the State of Georgia. However, recent certified mailing of prior public corruption Complaints received by the Governor's Office has been alleged by custodians of the Governor as to not exist. Affiant then sought out Neal VanMarter of the offices of Senator Jon Ossoff to submit two Public Corruption Complaints on July 14th, 2022 to the Office of Governor Brian Kemp which requested the offices of the Governor to appoint a special prosecutor or investigative counsel for the refusals of local law enforcement to investigate the crimes against the Affiant and possibly others. This email was stated by Neal VanMarter to have been accomplished on July 14th, 2022. The Governor's office has yet to respond to any of the Public Corruption Complaints, acknowledge receipt to the Affiant of any Complaints or contact the Affiant for further investigations.

## THE CONSPIRACY

Beginning in or about October 2020, and continuing through in or about July 2022, in the County of Henry and elsewhere, the Defendant WAYNE JERNIGAN (Municipal Court of Hampton Chief Judge for the City of Hampton) Defendant OTANYA CLARKE (Municipal Court of Hampton Prosecutor) Defendant Marty Matthews (Judicial Alternatives of Georgia L.L.C. Probation Officer), Defendant BRIAN AMERO (Chief Judge for Henry County Court) Defendant GLORIA BANISTER (Henry County Superior clerk of court for appeals), Defendant MELISSA BROOKS, (City Clerk for the City of Hampton), Defendant JACOB DAVIS, (Georgia Department of Human Services Open Records Officer), Defendant DANNA YU, (Henry County Superior Court Law Clerk), Defendant BARBARA BRILEY, (Henry County District Attorney), Defendant CHELSEA SHELTON (McDonough Georgia Division of Child Support services case worker) Defendant WILLIAM T. SIMMONS (Sixth Judicial Circuit Court Administrator), and **others known and unknown** all carried out, carried on, conspired, combined, confederated, agreed, aided and assisted the unlawful efforts to prevent the Affiant's redress of grievances in official proceedings in the State Courts of Georgia and the United States in the **ultimate goal** of <u>avoiding liability</u> in the nature of obstructing justice and preventing redress of grievances and Defendants utilized and exploited the judicial power of the state of Georgia and the lawful power of its state agencies to accomplish their unlawful goal.

Claimant states that a scheme was concocted that **did falsely imprison** the Affiant and, an attempt in conspiracy **to falsely imprison** the Affiant did occur and is occurring **to prevent the full litigation of the Affiant throughout all stages of the judicial process or testimony of the Affiant in any official proceedings** in the state courts of Georgia and the United States that affect the interests of the Defendants named herein and others.

# Factual Allegations

*Continuing*

On October 21st, 2020, the Affiant was convicted and prosecuted by Defendant Prosecutor Clarke and Judge Wayne Jernigan knowingly and willfully without them first receiving the "prerequisite" intelligent, voluntary and signed waiver of Affiant's right to trial by jury or even his right to counsel. Without obtaining these prerequisite waivers the Defendants did knowingly and willfully convicted and sentenced the Affiant to probation under the supervision of Judicial Alternatives of Georgia, LLC. On November 23rd, 2020, the last day to file an appeal, the Affiant sought to appeal and overturn his Municipal court conviction, however a Henry County Superior court clerk by the name of Katy Snyder directed the Affiant to file his Writ of Certiorari in the Municipal Court of Hampton in November 2020 in order that Affiant may had appealed his conviction. Attempts to appeal in the suggested court expired upon his arrival due to court hours. On March 10th, 2021, the Affiant sought again to file a Writ of Certiorari from the denial of a probation order to challenge his probation order and conviction. However, Stacey Corley, (City of Hampton employee assuming clerk duties) including Melinda O'Neill, (Henry County Superior court clerk), both contacted the Affiant telephonically and provided legal advice to the detriment of the Affiant by stating that he was required by law to file his Writ of Certiorari in the Hampton Municipal court in lieu of the Henry County Superior court. ██████ on telephonic voicemails, ████████████████ ██████████████████████, Stacey Corley stated that she had spoken to Melinda O'Neill and that Affiant was to file his Writ of Certiorari in the Hampton Municipal court in lieu of the Henry County Superior court in order to "transfer" his appeal to the Henry County Superior court – a willful misrepresentation. On March 10th, 2021, at the direction of Stacey

Corley and Melinda O'Neill and to his detriment, Affiant did file a Writ of Certiorari in the Hampton Municipal court – the incorrect court to file such an appeal. On March 22nd, 2021, Stacey Corley did mail letters to the Affiant demanding a $30.00 payment payable to the Hampton Police Department in order to "transfer" his appeal to the Henry County Superior Court – a willful misrepresentation. On March 29th, 2021, **twelve (12) days after the expiration date of the filing of the Writ of Certiorari**, the Affiant received a letter from City's legal counsel, L.F. Barnes for the City of Hampton, informing the Affiant that his Writ of Certiorari was filed procedurally incorrect and was now untimely and therefore void. Affiant then continued to engage in community service seemingly without any recourse. During Affiant's undergoing of community service, he made multiple statutory records request to Melissa Brooks who willfully frustrated access to public records causing Affiant to file an Open Records lawsuit on May 26th, 2021, although filed on June 8th, 2021.

In December 2020, Affiant's Probation Officer had changed to "Chief" Probation Office Marty Matthews and on April 1st, 2021, the Affiant provided a lengthy letter requesting that Marty Matthews exercise her contractual authority under her probation contract (or JAG probation agreement) with the Hampton Municipal court to not "violate the laws of the State of Georgia" until Affiant's case was either overturned and to exercise her lawful duty as a public officer to place the interests of justice over the interest of her employer. Marty Matthews was also with the knowledge that the Affiant was undergoing treatment from an injury from prior rear end accident which caused a work release of 30 days requesting that Affiant not perform any work conditions which was sent to her via email on May 14th, 2021. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████. However, Marty Matthews continued to demand the labor of the affiant when she knew that Affiant was undergoing treatment and when she knew that her acts were unlawful due to her knowledge of the failure of the Municipal court to "duly" convict the Affiant.

On July 23rd, 2021, the Affiant physically brought a Petition for **Writ of Habeas** in the Henry County Superior Court and presented said Writ to court clerk Gloria Banister. Affiant was told that the Writ of Habeas would be presented to a Judge who would deny or Grant the Writ. Affiant telephonically contacted the court at a later date who stated that the Writ was assigned to Brian Amero. Affiant telephonically contacted Suzette Gray (Brian Amero's staff clerk) who telephonically told Affiant that the Writ would be reviewed by Judge Brian Amero when he returned from his absence on judicial conference. However, the Writ was neither filed nor had a case number. On July 28th, 2021, Affiant arrived personally at the Henry County Superior courthouse to inquire about his Writ of Certiorari and approached court clerk Denise Henderson. Affiant inquired about whether the writ he presented had a "$5 filing fee" or any other amount that had not been paid upon his presentment and Denise Henderson stated that she was unsure but would find out. ████████████████████████████████████████. Denise Henderson also told Affiant that Brian Amero was out of town and could not hear his Writ until August 10th, 2021 due to his absence on judicial conference. Denise Henderson also told Affiant, that all Judges were out of town on judicial conference and could not hear his Writ of Habeas. At such time, the Writ of Habeas had also not been filed nor received a case no. although was in the possession of the Henry County Superior court clerk's office. On and around August Affiant sent multiple emails to Brian Amero's court staff Suzette Gray, Lynn Chambers and Andrew

Fillipore asking multiple questions concerning the filing of his Writ of Habeas. Suzette Gray did not respond until August 13th, 2021, (3) three days after the filing of the Affiant's recusal of Brian Amero. As of 8/17/2022, this Writ of Habeas has been destroyed or concealed by the Henry County Superior Court who alleges it no longer has possession of the Writ.

On August 10th, 2021, Affiant filed two **recusal motions** seeking to disqualify Brian Amero from two of Affiant's pending cases in the Henry County Superior court, case no. *SUCV-2021-0700* and *SUCV-2021-1579*. Affiant filed this motion to recuse Brian Amero contending he unlawfully delayed Affiants Open Records lawsuit against the City of Hampton by failing to ensure the issue of Affiants indigence did not affect a decision on the merits in violation of O.C.G.A. § 9-15-2 et seq. Secondly, because of a presumed motive of his being named as an assigned Judge in a Writ of Habeas Petition presented to Henry County Superior court clerks on 07/23/2021 although the Writ was never filed nor received a case no. [SUCV-2021-0700 Doc. 23] [SUCV-2021-1579 Doc. 9] Affiant filed these motions for his appearance of impartiality and otherwise. Brian Amero denied Affiant's recusal Motions and **refused to disqualify** on October 7th, 2021. Affiant having 30 days to appeal on November 8th, 2021, the Affiant filed a direct appeal in the Henry County Superior court requesting transcript of proceedings.

On the same date he later arrived **at the Court of Appeals building** to file a discretionary appeal. **After Affiant presented his ID to a state trooper**, namely Dexter Cladd, a **search in the system ensued** and after Affiant's return from filing his discretionary appeal of Brian Amero's denial of Affiant's recusal Motion in case no. SUCV-2021-1579, he was approached by state troopers armed with assault rifles who demanded that the Affiant place his hands behind his back on account of a warrant which was issued out of Henry County's

Municipal court of Hampton. Affiant was then transported to the Henry County Jail to be processed on a warrant which was issued out of Henry County. Upon his arrival, nurses attempted to isolate Affiant for possible COVID, but Affiant refused. Affiant took a number of COVID tests and was eventually placed in processing with other inmates.

While imprisoned, Affiant contacted family members and learned that **a demand of $700.00** was made by Marty Matthews, probation officer for JAG Probationary services, before Affiant's release. The Affiant's family paid said amount within 24 hours which closed the Municipal court case and any Writ of Habeas proceedings became fruitless due to the Affiant **"no longer in custody as a result of the false imprisonment."** According to Federal court records in which counsel for Defendant Marty Matthews responded, probation officer Marty Matthews did not provide notice to the Affiant of the revocation hearing. [*1:21-cv-04970-SEG/Docket 47*]. On *information and belief,* City of Hampton officials and others concocted a scheme to **illegally kidnap the Affiant** and hold the Affiant in jail until he had paid the fine and did so in order to cause a perceived bar to any future lawsuit he may have filed or if he had challenged the arrest, do an act affecting his safety and security. The probation violation (revocation) warrant was issued, procured or effectuated by the acts of Defendant Wayne Jernigan, Marty Matthews, Otanya Clarke, and Melissa Brooks in the **overt acts of no. 1, 2, and 3** named below in furtherance of a conspiracy.

### OVERT ACTS IN WHICH THE BELOW DEFENDANTS ASSISTED OR PARTICIPATED IN THE CONSPIRACY

### WAYNE JERNIAN, OTANYA CLARKE, MARTY MATTHEWS AND MELISSA BROOKS

**Overt Act. No. 1:**   Marty Matthews did willfully and knowingly cause and procure a
revocation hearing to occur on September 1st, 2021,
without providing notice whatsoever to the Affiant including using all
reasonable means available to her of one desirous of notice to the Affiant
which caused a warrant to issue against Affiant without his knowledge that
did prevent his challenges to revocation, an overt act in furtherance
thereof.

**Overt Act. No. 2:**   Wayne Jernigan did knowingly and willfully sign and issue a warrant for
the arrest of Affiant on September 1st, 2021, although Defendant Jernigan
including Otanya Clarke knew that the Affiant was neither provided lawful
notice of the revocation hearing or that his conviction was unlawful and
without legal authority for his and Otanya Clarkes failure to intelligently
and individually inquire about the waiver of Affiant's right to trial by jury
and right to counsel in conspiracy, an overt act in furtherance thereof.

**Overt Act. No. 3:**   On the dates of 2/18/2021 4/6/2021, 4/20/2021, 4/21/2021, 4/26/2021 and
5/3/2021, Melissa Brooks on her own cognizance and/or at the direction of
others did willfully and knowingly frustrated and refuse to provide public
records that she knew was related to Affiant's Municipal court conviction
without substantial justification, an overt act in furtherance thereof.

*Continuing*   _____

On October 7th, 2021, after Judge Brian Amero's refusal to disqualify when required to
do so, Brian Amero did cause a falsified a Child Support record titled Child Support
Addendum dated and signed by Brian Amero on 10/07/2021 to be placed on the court record in
case no. *SUCV-2021-0700* under the false guise that the Modification of custody action of the
parties was a modification of child support action – a false record and proceeding. The Final
Order also granted the relocation of the Affiant's minor child across state lines. On December

7th, 2021, the Affiant filed an **Amended Notice of Appeal** to his first appeal and excluded transcript of proceedings. This amended notice of appeal was presented with a pauper's affidavit signed by Affiant pursuant to O.C.G.A. § 5-6-47 to require supersedeas in the trial court case to transmit his direct appeal to appellate court clerks. In lieu of immediately filing the pauper's affidavit when presented to receive supersedeas, the Affiant was told by Suzette Gray, Katy Snyder and Gloria Banister, telephonically that the Paupers Affidavit needed to be reviewed by Brian Amero and Granted by Amero before it could be filed. These telephonic communications were captured and can be provided to investigators on demand.

Accordingly, according to Suzette Gray and Gloria Banister and others, Brian Amero needed to sign and **"Grant"** Affiant's pauper's affidavit before Affiant's case could be considered supersedeas requiring the transmittal of his case to appellate court clerks in lieu of filing the pauper's affidavit pursuant to O.C.G.A. § 5-6-47. In lieu of filing the pauper's affidavit Danna Yu directed Suzette Gray on or around January 2022 to inform the Affiant that his pauper's affidavit had "incomplete information" and to return his paupers affidavit by mail. The pauper's affidavit was subsequently returned to the Henry County Superior court by a family member of the Affiant maintaining the same exact information however was never placed on the court record until March of 2022. [SUCV-2021-0700 Docket No. 33]. Although the pauper's affidavit had been returned under the guise of "incomplete information", the pauper's affidavit was signed and Granted by Brian Amero on April 4th, 2022, although said signature was not required for a Supersedeas – O.C.G.A. § 5-6-47. [SUCV-2021-0700 Docket No. 34]. The pauper's affidavit was also identical to a previous paupers form in case no. *SUCV-2021-1579* under Brian Amero in which Suzette Gray had knowledge of and others. The direct appeal was eventually filed on April 14th, 2022, after the Affiant corrected or amended

an inaccurate address of 5420 Riverdale Rd. Apt D15 College Park Ga 30349 which was not

the address of the Affiant at the start of the proceedings in this case but was placed on the

record improperly. Affiants direct appeal was delayed for **100+ days after the filing and**

**presentment of his "completed and sufficient" paupers' affidavit** under the guise that

Gloria Banister had to wait on Judge Brian Amero's signature to grant the paupers affidavit.

contrary to law in a scheme to do so **in a time or manner desirous by the conspirators**.

Because Affiant's pauper's affidavit was not immediately filed and **stalled** contrary to

O.C.G.A. § 5-6-47, such act delayed the due course of proceeding of law by depriving the

Affiant of a prompt appellate process to overturn Judge Brian Amero's court records. Because

of the unlawful delay and hinderance of a lawful supersedeas, Brian Amero's Final order

causing the relocation of the Affiant's minor child which incorporated a falsified Child Support

record could not be challenged or overturned in a lawful and timely manner. These actions

explained herein were procured and brought about by Brian Amero, Danna Yu and Gloria

Banister and others who did confederate, combine, aid, abet, assist and agreed to cause, procure

or effectuate the unlawful delay of the Affiant's supersedes and direct appeal to stall, hinder, or

prevent his direct appeal and did so by committing the **overt acts of no. 1, 2, 3 and 4** named

above unlawfully and in furtherance of a conspiracy to avoid liabilty.

## OVERT ACTS IN WHICH THE BELOW DEFENDANTS ASSISTED OR PARTICIPATED IN THE CONSPIRACY

### BRIAN AMERO, DANNA YU, AND GLORIA BANISTER

The Affiant incorporates by reference all allegations prior hereto as if fully alleged herein.

**Overt Act. No. 1:**   On October 7th, 2021, Brian Amero having knowledge that he had a legal interest in the outcome, prejudice, bias or appearance of impartiality in case no. SUCV-2021-1570, and case no. SUCV-2021-0700 did willfully fail to disqualify himself when required to do so in order to carry out, carry on, solicit, aid, assist, conspire, confederate or combine with others to deprive Affiant's timely direct appeal taken from orders in his modification of custody action, prevent Affiant's access to public records related to his Municipal Court Conviction in an enforcement of Open records action, falsify Child Support records, and cause the relocation of the Affiant's minor child across state lines in bad faith and without due process of law, an overt act in furtherance thereof.

**Overt Act. No. 2:**   Gloria Banister did on or around December 27th, 2021, willfully and knowingly refuse to transmit Affiant's direct appeal in case no. *SUCV-2021-0700* in a timely manner under a scheme concocted to deprive Affiant of a lawful supersedeas by refusing to transmit the Appellate court record to appellate court clerks promptly and within 20 days under the pretext that Brian Amero was required to sign and grant a pauper's affidavit that was submitted with his Notice of Appeal pursuant to O.C.G.A. § 5-6-47 although she knew said signature was not required but did so for the purposes of delay, an overt act in furtherance of conspiracy.

**Overt Act. No. 3:**   Danna Yu, did on or around January 15th 2020, knowingly and willfully directed, Suzette Gray, to return by the usage of the mail the Affiant's paupers affidavit presented with his Notice of appeal pursuant to O.C.G.A. § 5-6-41 under the false guise that the affidavit showed "incomplete information" in order to prevent supersedeas and delay Affiant's direct appeal when she knew that the Affiant's paupers affidavit was a sufficient and adequate paupers affidavit and should have or ought to have been filed immediately, an overt act in furtherance of conspiracy.

*Continuing*



In September of 2019, the Department of Human Services ("Department") by and through their assistant District Attorney Barbara Briley did bring an enforcement action against the Affiant while also seeking to register an out of state Child Support order which originated in the State of Florida, Judge Brian Amero presiding. Affiant was served and *within 20 days* filed a special appearance and an answer. The "registering tribunal" did fail to schedule a hearing on the matter that would occur in the Henry County Superior court. Affiant appeared at the local McDonough Child Support office according to the time, place and date on the Rule Nisi. However, no notice to Affiant was provided to him in reference to the hearing that occurred in the Henry County Superior court and a hearing occurred without Affiant's presence or notice.

Accordingly, in November of 2019 the registration and subsequent enforcement order was confirmed ("2019 support order") which called for the suspension of Affiant's Driver's license, deduction of income, credit reporting etc. and affirmed an arrearage amount. This order was filed over the objection of the Affiant and without notice or his presence at the "Henry County Superior Court" hearing where his challenges "could be heard". Affiant immediately filed an action to vacate the registration and enforcement order in which Brian Amero denied. Affiant did not appeal.

For a period of one year after the entry of the 2019 support order, DCSS did unlawfully deduct the income of the Affiant but did not deduct said income under the authority of the 2019 support order. DCSS did not suspend the Driver's license of the Affiant until one year later on December 28th 2020, and did so without notifying the Affiant whatsoever. According to captured telephonic statements from multiple DCSS phone agents an unidentified individual employed by DCSS caused an override and the suspension of Affiants Driver's license based on the November of 2019 support order when they knew or had reason to know that the validity and enforcement of the order was unlawful and in 2022, DCSS employees with notice of the invalidity did refuse to release, reinstate or return the license to the status of valid or remove their lien claim to an injury insurance settlement. Affiant complied under fear.

In March of 2021, when the Affiant's minor child's Mother Petitioned for a Modification of Custody, Brian Amero refused to recuse when he knew he had a legal interest in the outcome and on October 7th, 2021, falsified a Child Support record and did so in order to cure a legal defect or make legal the 2019 support order for the purposes of "enforcement" for future purposes related to the overall Conspiracy to accomplish the ultimate goal.

On the dates of 3/21/2022, 3/29/2022, 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022, 6/7/2022, the Affiant sent repeated emails to the Georgia Department of Human Services Open Records Officer Jacob Davis and DCSS that went unresponsive **more than 7 times over the course of 4 months**. The Office of the Georgia State Attorney General Open Records Mediator Ms. Colangelo was cc'd in each of these emails to DHS Open Records Officer Jacob Davis including DCSS's local McDonough Office but did fail to acknowledge or respond to any emails or requests. Office of the Georgia State Attorney General Open Records Mediator Ms. Colangelo did not mediate any of the requests to DCSS or DHS.

Emails sent to the local McDonough office and Jacob Davis requested "any and all records" related to his Child Support case and each email went unresponsive for **over the course of 4 months**. The **State Attorney General Chris Carr** was cc'd as a recipient in each of these multiple emails. The Attorney General Chris Carr also received a copy of a prior Public Corruption Complaint entailing certain allegations within this Complaint at the equivalent email and also received such Complaint by mail (*certified mail no. 7021 2720 0000 1548 7530*) Affiant contacted the DCSS numerous of times over the course of 3 months telephonically and received no contact or call back whatsoever. Affiant left multiple voicemails on the voice mail machine of Chelsea Shelton who failed and refused to respond or return any calls of the Affiant.

**For a period of 4 months or more, individuals employed with the local McDonough Child Support Office and Jacob Davis did direct, cause, refuse and avoid all contact with Affiant** by refusing to respond or acknowledge any statutory records request, emails, phone calls and voice messages. On *information and belief*, Barbara Briley, Chelsea Shelton, Jacob Davis and possibly others employed and not employed or contracted with DCSS specifically knew of specific parameters of the overall conspiracy and knew that their refusal to respond or acknowledge Affiant's records request or emails for "any and all" case information related to his Child Support case was in furtherance of some future goal related to a contempt action that sought to issue a warrant against the Affiant under the guise of providing lawful service of summons and subsequent notice to the Affiant pursuant to O.C.G.A. § 19-6-28 or on *information and belief*, to induce the Affiant to file into an action related to a future Rule Nisi hearing because they had or maintained specific knowledge of a predetermined outcome notwithstanding any lawful defenses or excuses by the Affiant in furtherance of the conspiracy.

While actively avoiding Affiants emails, voicemails and phone calls, **Chelsea Shelton and others employed with DCSS**, on or around May 11th, 2022, did retrieve, obtain, procure and send mail to the address of 5420 Riverdale Rd. Apt D15 College Park Ga 30349 (after Affiant changed this incorrect mailing address in case of SUCV-2021-0700) in order to act on falsified Child Support order and a 2019 enforcement order that she or others knew employed with DCSS, had a legal defect or lacked valid enforcement authority in order to procure, cause or effectuate the ultimate goal of the conspiracy.

While actively avoiding Affiants emails, voicemails and phone calls, **Chelsea Shelton, Barbara Briley and others employed with DCSS**, on or around the month of May 11th, 2022, did by themselves, directed by others or directed others, by the usage of mail, to send mail envelopes that had displayed thereon the face of the envelope an incorrect return address of 46 Sloan St. McDonough Ga 30252 which was neither the accurate, correct or true mailing address of the local McDonough DCSS office. Because of this act, **any "returned mail" to the incorrect address of "46 Sloan St" thereon the face of the envelope could not reach the actual and true address of the local McDonough Child Support office** or would reach their offices at a later date which on information and belief was done in order to receive returned mail so that it could not interfere with a collective plan which was concocted to falsely imprison the Affiant, obstruct justice and affect official proceedings in a contempt proceeding with a predetermined outcome, and was to be accomplished **in a time or manner desired by the conspirators.**

While **actively avoiding Affiant's emails, voice mails and phone calls**, Chelsea Shelton, **contacted the telephonic number of a family member** of the Affiant which

telephonic number she could have not possibly known because it was not provided to her by the

Affiant and known by no one else outside the Affiant's family. On *information and belief*,

Chelsea Shelton was to contact ████████████████████ under the guise of seeking the

whereabouts of the Affiant concerning his "Child Support case" when the true purpose of the

call was to intimidate the Affiant who had placed the address of ████████ on pre-arrest

warrants filed against Brian Amero and Gloria Banister in the Henry County Magistrate court.

The Affiant's family members have also expressed that they fear their safety may be at risk.

**Barbara Briley and others employed with DCSS**, with knowledge of the invalidity of

the 2019 support order and a falsified a Child Support record titled Child Support Addendum

dated and signed by Brian Amero on 10/07/2021 in case no. SUCV-20210700, did cause

herself or others **employed with DCSS in a time or manner desirous by the conspirators** to

send, mail, serve, file, print, write or do any act or anything to take action on the 2019 support

order or falsified record in order to procure, cause, help, aid or assist in conspiracy an act of

false imprisonment, obstruction of justice and interference with official proceedings in this state

against the affiant in the Henry County Superior Court in 2021 and 2022 by filing a contempt

action against the Affiant on December 1st, 2021.

On the dates of 3/21/2022, 3/29/2022, 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022,

6/7/2022, **Jacob Davis, Open Records Officer for the Department of Human Services** did

refuse to respond to each of the Affiant's repeated email messages requesting statutory **record**

**requests for "all case related information"** and other public records related to the Affiant's

Child Support case in bad faith and neither record sought were confidential under any state or

Federal statute as the records requested were related to "self" and identified the Affiant as the

requestor in the information. Nor was any statutory record requested subject to any exemptions

or delay under any state or federal statute however said records were either not provided to the Affiant or the DHS Open Records Officer Jacob Davis willfully and knowingly failed and refused to provide the records requested or even acknowledge the Affiants statutory records requested made to him.

**FALSIFIED SERVICE OF PROCESS**

Affiant also learned **of a falsified "service of process" document** that was served by a Clayton County Police Officer Lieutenant ████████. Affiant was told that this document **had the name of the Affiant "Deandre Arnold" in the "personally served section" although the Affiant was never personally served** and was dated June 3rd, 2022. The Lieutenant corrected this mistaken error, retrieved the documents falsely served on the Affiant and **mailed the "Service of process summons and documents" back to the local McDonough Office** that should show and displayed that "Deandre Arnold is not a resident of that address". Affiant was told by family members that a Rule Nisi had a date of on May 11th, 2022, on one of the documents -- the day the Affiant asked for "supplemental records" in the Appellate court that proved the Affiant maintained the majority of custody over his child during March 2020 up until July 2021.

These documents were served at 5420 Riverdale Rd. Apt D15 College Park Ga 30349, at a time Defendants herein had reason to believe the Affiant (and possibly no family members of Affiant) were residents of this address but DCSS in fact attempted to serve Affiant at said address. The Affiant has since been since the date of 7/18/2022 in direct contact with Child Support Agents, whose communications have been captured telephonically about the lack of service of their contempt proceedings and their receipt of mailed documentation from Affiant

and his Family members. Affiant has made payments under fear of the power of these individuals and a pre-determined outcome.

## OVERT ACTS IN WHICH THE BELOW DEFENDANTS ASSISTED OR PARTICIPATED IN THE CONSPIRACY

### BRIAN AMERO, BARBARA BRILEY, CHELSEA SHELTON AND JACOB DAVIS

**Overt Act. No. 1:** Brian Amero having knowledge that he had a legal interest in the outcome, prejudice, bias or appearance of impartiality in case no. SUCV-2021-0700 did on October 7th 2021 willfully and deliberately did fail to disqualify himself when required to do so in order to carry out, carry on, solicit, aid, assist, conspire, confederate or combine with others to falsify a Child Support record and cause a contempt proceeding to be issued against Affiant in order to cause or bring about an act of false imprisonment, an obstruction of justice or unlawful infringement on official proceedings in the state courts of Georgia and courts of the United States, an overt act in furtherance thereof.

**Overt Act. No. 2:** Defendant Barbara Briley on or around November 2019 and continuing through on or about July 2022 and thereafter, did carry on, carry out, conspire, confederate, combine, assist, aid and agree with Defendants named herein and others known and unknown to cause herself and others employed with DCSS or elsewhere to send, mail, serve, file, print, write or do anything to act on Brian Amero's falsified Child Support record and an invalid enforcement order that she knew was unlawful or unenforceable in a time or manner desirous by the conspirators (mainly May 11th 2022) in order to cause or bring about an act of false imprisonment, an obstruction of justice or unlawful infringement on official proceedings in the state courts of Georgia and courts of the United States, an overt act in furtherance thereof.

**Overt Act. No. 3**:    Defendant Chelsea Shelton on or around May 11th, 2022 did Andrea did carry on, carry out, conspire, confederate, combine, assist, aid and agree with Defendants to cause herself or cause other employed with DCSS to send, mail, serve, file, print, write or do anything to act on falsified orders and legal defects that she knew was unlawful or unenforceable in order to procure, cause, help, aid or assist an act of false imprisonment, obstruction of justice and interference with official proceedings in the state courts of Georgia and the United States and did so in a time or manner desirous by the conspirators, an overt act in furtherance thereof.

**Overt Act. No. 4**:    Defendant Jacob Davis did on 3/21/2022, 3/29/2022, 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022, 6/7/2022 carry on, carry out, conspire, confederate, combine, assist, aid and agree with Defendants to cause himself and others to not respond to any statutory records request made upon him without any substantial justification or reasonable basis in law to do so, an overt act in furtherance thereof.

*Continuing* _____

On May 18th, 2022, after multiple refusals by law enforcement agencies in this state to investigate imminent threats on the Affiant's life and safety, the affiant filed a pre-arrest warrant for the arrest of Brian Amero and Gloria Banister pursuant to O.C.G.A. § 17-4-40. The Affiant used his Aunt's Shun Walker's address as a mailing address. Affiant was told telephonically on 5/18/2022 that all Henry County Magistrate court Judges voluntarily recused themselves from the action although he received no court order or paper advising of such. Affiant was told telephonically on or around 5/20/2022 that William T. Simmons, court administrator for the 6th judicial circuit, **was appointed to reassign a magistrate court Judge** to hear the pre-arrest warrants filed in the Henry County Magistrate court (hereinafter

"assignment matter"). , Henry County Magistrate court clerk stated to me that on or around May 21ˢᵗ, 2022, ███ received an email from William T. Simmons requesting 30 days to assign a new Magistrate Judge to hear the warrant application. After the expiration of 30 days, a Judge had yet to be reassigned to hear the case. On or around 6/28/2022 the "assignment matter" was sent to the Fayette County Magistrate court but was still not given attention to a Judge in that county. On or around 7/5/2022, ████████ telephonically stated to me that Sheila Studdard, clerk of court for Fayette County did not respond in a timely manner to any email correspondence, so she sought and emailed William T. Simmons for assistance. ████████ stated to me that William T. Simmons on the same date did transfer the assignment matter to the Clayton County Magistrate court, **although this act was delayed for over 30+ days.** Throughout the dates of 5/18/2022 – 7/14/2022, the Affiant's pre-arrest warrants had yet to be assigned or given attention to a Judge in this state. ████████

████████. On information and belief, William T. Simmons and others did conspire, aiding, abetting and assisting a delay of "official proceedings in the state of Georgia", in this instance, the Affiants pre-arrest warrants up until such a time that contempt hearings against the Affiant would be procured and no other basis or reason for the delay exists.

### OVERT ACTS IN WHICH THE BELOW DEFENDANTS ASSISTED OR PARTICIPATED IN THE CONSPIRACY

### WILLIAM T. SIMMONS

**Overt Act. No. 1:**   William T. Simmons did on or around May 21st, 2022, willfully and knowingly delay the due course of proceedings by stalling, delaying and hindering the re-assignment of a Magistrate Court Judge in two pre-arrest warrants in the Magistrate court case no. 2022-1996PW, 2022-1994PW and did delay said reassignment for a period of 60 (sixty) days in order to aid, abet, assist, conspire or combine with Defendants named herein and possibly others unnamed to stall said warrant hearing until a date in close proximity of the contempt proceeding brought by DCSS employees in the Henry County Superior court in order to procure, cause, help, aid or assist an act of false imprisonment, obstruction of justice and interference with official proceedings in the state courts of Georgia and the courts of the United States, an overt act in furtherance thereof.

## **PROBABLE CAUSE FOR ARREST WARRANT(S)**

My name is Deandre Arnold, ("Affiant") being over the age of 21 years, give this Affidavit based on my own personal and firsthand knowledge of the following facts and the Affiant knows the contents of the foregoing to be true and correct and state that such facts are true and correct to the best of his knowledge and belief, except as to those matters specifically stated to be *on information and belief* and as to those matters, the Affiant believes them to be true; [See Notary below]

---

### MARTY MATTHEWS

  (1) **FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq.,**
  (2) **THEFT BY DECEPTION. O.C.G.A. § 16-8-3 et seq.,**
  (3) **THEFT BY EXTORTION. O.C.G.A. 16-8-16 et seq.,**
  (4) **CONSPIRACY. O.C.G.A. 16-4-8 et seq.,**
  (5) **TRAFFICKING OF PERSONS FOR LABOR O.C.G.A. 16-4-8 et seq.,**
  (6) **VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**

The Affiant incorporates by reference all facts above as if fully alleged herein.

In or around December 2020, up until September 1st, 2021, the Defendant MARTY

MATTHEWS, willfully and knowingly, individually and in conspiracy, did unlawfully obtain

property by artful practice or deceitful means and extortion; violated the personal liberty of the

Affiant and caused or procured the arrest, confinement and restraint of Affiant without legal

authority and in bad faith; and did obtain the labor by servitude of financial value by illegal

coercion or physical restraint and to prevent Affiant's from overturning his Municipal court

conviction; did to wit; cause a revocation hearing and warrant to issue in the Hampton

Municipal court after deliberately failing to notify the affiant by any and all means at her

disposal and did unlawfully demand a payment of $700.00 after the Affiants arrest as a result of

the artful practice or deceitful scheme that caused a warrant to issue without Affiant's

knowledge which caused his false imprisonment; and did knowing her actions were unlawful

did cause Affiant to undergo labor servitude under threat of legal coercion and physical

restraint for a period of 7 months or more in violation of her oath, contrary to the laws of this

state.

**WAYNE JERNIGAN**

 (1) **FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq.,**
 (2) **THEFT BY DECEPTION. O.C.G.A. § 16-8-3 et seq.,**
 (3) **CONSPIRACY. O.C.G.A. 16-4-8 et seq.,**
 (4) **TRAFFICKING OF PERSONS FOR LABOR O.C.G.A. 16-4-8 et seq.,**
 (5) **VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**

The Affiant incorporates by reference all facts above as if fully alleged herein.

  In or around October 2021 up until September 1st, 2021, Defendant WAYNE

JERNIGAN willfully and knowingly, individually and in conspiracy, did unlawfully convict

and obtain property by artful practice or deceitful means and extortion; violated the personal

liberty of the Affiant and caused or procured the arrest, confinement and restraint of Affiant

without legal authority in bad faith; and did obtain the labor by servitude of financial value by

illegal coercion or physical restraint and did prevent Affiant from overturning his Municipal

court conviction, to wit; Caused Plaintiff to undergo probation and community service for the

payment of a fine when he knew that Affiant's Municipal court conviction was void and

lacking in legal authority and jurisdiction when a signing a warrant and did sign such a warrant

without notice to the Affiant which caused the false imprisonment of the Affiant and the artful

practice or deceitful scheme led to a payment or partial payment of $700.00; and did cause

Affiant to continue to undergo labor servitude under threat of legal coercion and physical

restraint when he knew the conviction and community service work to be performed was

unlawful in violation of his oath, contrary to the laws of this state.

**OTANYA CLARKE**

    **(1) FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq.,**
    **(2) THEFT BY DECEPTION. O.C.G.A. § 16-8-3 et seq.,**
    **(3) CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
    **(4) TRAFFICKING OF PERSONS FOR LABOR O.C.G.A. § 16-4-8 et seq.,**
    **(5) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**

The Affiant incorporates by reference all facts above as if fully alleged herein.

In or around October 2021 up until September 2021, Defendant OTANYA CLARKE

willfully and knowingly, individually and in conspiracy, did unlawfully convict and obtain

property by artful practice or deceitful means and extortion; violated the personal liberty of the

Affiant and caused or procured the arrest, confinement and restraint of Affiant without legal

authority in bad faith; and did obtain the labor by servitude of financial value by illegal

coercion or physical restraint and did prevent Affiant from overturning his Municipal court

conviction, to wit; Caused Plaintiff to undergo probation and community service for the

payment of a fine when she knew that Affiant's Municipal court conviction was void and

lacking in legal authority and jurisdiction and participating in a warrant against the Affiant to

cause the false imprisonment of the Affiant which artful practice or deceitful scheme led to a

payment or partial payment of $700.00; and did cause Affiant to continue to undergo labor

servitude under threat of legal coercion and physical restraint when she knew the conviction

and community service work to be performed was unlawful in violation of her oath, contrary to

the laws of this state.

**DANNA YU**

> **(1) UNPROFESSIONAL CONDUCT; MISDEMEANOR; APPLICABILITY**
> **O.C.G.A. § 45-11-4 et seq.,**
> **(2) CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
> **(3) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**

The Affiant incorporates by reference all facts above as if fully alleged herein.

In or around 12/07/2021 and thereafter, Defendant DANNA YU did willfully and

knowingly, individually, aid, abet, agree and assist Brian Amero to use deliberate means in a

malfeasance or misfeasance manner to delay or avoid the due course or proceeding of law, to

wit; delayed Affiant's direct appeal by causing or directing Suzette Gray to return

Complainant's paupers affidavit (presented with his Notice of Appeal filed on 12/07/2021 in

case no. SUCV-2021-0700) for "incomplete information" in which she knew or had reason to

know was a sufficient affidavit; and did do so to delay, hinder, prevent, deter supersedeas

pursuant to O.C.G.A. § 5-6-47 in violation of her oath, contrary to the laws of the state.

**GLORIA BANISTER**

> **(1) UNPROFESSIONAL CONDUCT; MISDEMEANOR; APPLICABILITY**
> **O.C.G.A. § 45-11-4 et seq.,**
> **(2) CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
> **(3) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**

The Affiant incorporates by reference all facts above as if fully alleged herein.

On or around 12/07/2021 and thereafter, Defendant GLOIRA BANISTER, in a malfeasance or

misfeasance manner did willfully and knowingly, individually and in conspiracy, aid, abet and

assist Brian Amero and others in a conspiracy to **avoid liabilty** in a scheme to avoid

supersedeas, did delay or avoid the due course of proceeding of law, to wit; Gloria Banister did

for more than 100+ days fail to transmit Affiant's direct appeal in case no. SUCV-2021-0700 to

appellate court clerks by stating that Brian Amero needed to sign and Grant a paupers affidavit

when she knew those statements to be false and in furtherance of a scheme to avoid

supersedeas of Affiant's direct appeal to appellate court clerks **in the time needed or desired**

**by the conspirators** to complete or effectuate their unlawful goal of falsely imprisoning in

violation of her oath, contrary to the law of Georgia.

## BRIAN AMERO

(1) **ATTEMPTED MURDER OR THREATENING OF WITNESSES IN OFFICIAL PROCEEDINGS O.C.G.A. § 16-10-32(b)(1)(2)(3)**
(2) **OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS O.C.G.A. § 45-11-1 et seq.,**
(3) **UNPROFESSIONAL CONDUCT; MISDEMEANOR; APPLICABILITY O.C.G.A. § 45-11-4 et seq.,**
(4) **CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
(4) **VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1.**
(5) **FALSE STATEMENT AND WRITINGS O.C.G.A. § 16-10-2,**
(6) **FILING FALSE DOCUMENTS O.C.G.A. § 16-10-20.1.**
(7) **CRIMINAL SOLICITATION O.C.G.A. § 16-4-7**

The Affiant incorporates by reference all facts above as if fully alleged herein.

In or around October 7th, 2021, Brian Amero having knowledge that he had a legal

interest in the outcome, prejudice, bias or appearance of impartiality in case no. SUCV-2021-

1570 and case no. SUCV-2021-0700 in order to carry out, carry on, solicit, aid, assist, conspire,

confederate or combine with others in a tyrannical and oppressive style manner act of false

imprisonment, obstruction of justice and interference with official proceedings in the state

courts of Georgia and the courts of the United States did by himself and also in conspiracy with

others willfully and knowingly refused to disqualify himself when required by law to so and in

furtherance of the conspiracy did delay the due course of proceedings of law by depriving

Affiant's timely and prompt direct appeal taken from orders in his modification of custody

action, unlawfully delayed Affiant's access to public records related to his Municipal Court of

Hampton conviction in an enforcement of Open records action, falsified Child Support records

and a proceeding when he knew that there was no petition to modify child support on the court

record in case no. SUCV-2021-0700, backdated court records to make it appear as if the

falsified support order was filled out the same date as the order denying Arnold's recusal

motion and cause the relocation of the Affiant's minor child across state lines in bad faith and

without due process of law in violation of his oath, contrary to the laws of Georgia.

**BARBARA BRILEY**

    (1) **CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
    (2) **VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1.**
    (3) **FALSE STATEMENT AND WRITINGS O.C.G.A. § 16-10-2,**
    (4) **FILING FALSE DOCUMENTS O.C.G.A. § 16-10-20.1.**
    (5) **FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq.,**
    (6) **ATTEMPTED MURDER OR THREATENING OF WITNESSES IN OFFICIAL**
        **PROCEEDINGS O.C.G.A. § 16-10-32(b)(1)(2)(3)**

The Affiant incorporates by reference all facts above as if fully alleged herein.

     In Defendant Barbara Briley on or around November 2019 and continuing through on or

about July 2022 and thereafter, did carry on, carry out, conspire, confederate, combine, assist,

aid and agree with Defendants named herein and others known and unknown to cause herself

and others employed with DCSS or elsewhere to send, mail, serve, file, print, write or do

anything to act on Brian Amero's falsified Child Support record and an invalid enforcement order that she knew was unlawful or unenforceable in a time or manner desirous by the conspirators (mainly May 11<sup>th,</sup> 2022) in order to cause or bring about an act of false imprisonment, an obstruction of justice or unlawful infringement on official proceedings in the state courts of Georgia and courts of the United States in violation of her oath, contrary to the laws of the State of Georgia.

## CHELSEA SHELTON

**(1) CONSPIRACY. O.C.G.A. § 16-4-8 et seq.,**
**(2) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1.**
**(3) FALSE STATEMENT AND WRITINGS O.C.G.A. § 16-10-2,**
**(4) FILING FALSE DOCUMENTS O.C.G.A. § 16-10-20.1.**
**(5) FALSE IMPRISONMENT. O.C.G.A. § 16-5-41 et seq.,**
**(6) ATTEMPTED MURDER OR THREATENING OF WITNESSES IN OFFICIAL PROCEEDINGS O.C.G.A. § 16-10-32(b)(1)(2)(3)**

The Affiant incorporates by reference all facts above as if fully alleged herein

In or around February of 2021 and continuing through on or about July 2021 and thereafter, Defendant CHELSEA SHELTON and others employed with DCSS, did conspire, confederate, combine, assist, aided and agree with Defendants named herein and others known and unknown to engage in overt acts in furtherance of a conspiracy to avoid liabilty for her prior 2019 acts and 2021 acts, to wit; Andrea Shelton did cause herself and others employed with DCSS to send, mail, serve, file, print, write or do anything to act on falsified orders and a 2019 support that she and others knew was unlawful or unenforceable in order to procure, cause, help, aid or assist an act of false imprisonment, obstruction of justice and infringement on official proceedings in a time or manner desirous by the conspirators, in violation of her oath, if any, contrary to the laws of the State of Georgia.

**WILLIAM T. SIMMONS**

**(1) UNPROFESSIONAL CONDUCT; MISDEMEANOR; APPLICABILITY O.C.G.A. § 45-11-4 et seq.,**
**(2) VIOLATION OF OATH OF OFFICE. O.C.G.A. § 16-10-1**
**(3) ATTEMPTED MURDER OR THREATENING OF WITNESSES IN OFFICIAL PROCEEDINGS O.C.G.A. § 16-10-32(b)(1)(2)(3)**

The Affiant incorporates by reference all facts above as if fully alleged herein

In or around 5/18/2022 and thereafter, in the county of Henry, William T. Simmons did **in a time or manner desirous by conspirators**, conspire, confederate, combine, assist, aided and agree to engage in overt acts in furtherance of a conspiracy with Defendants named herein and others unknown, to accomplish an unlawful goal of procuring an act of falsely imprisoning the complainant, obstructing official proceedings, and delaying the due course of law, to wit; Pre-arrest warrants filed on Brian Amero and Gloria Banister on May 18th, 2022, case no.'s 2022-1996-PW and 2022-1994-PW in the Henry County Magistrate Court, were purposefully delayed and stalled up until a period of less than (4) four days from a contempt proceedings brought against Affiant by DCSS employees with no other reasonable basis or excuses for the delay; in violation of his oath, contrary to the laws of the State of Georgia.           Complaint[5]

## Notary

On this, the _18_ day of _August 2022_, before me, _Deandre Arnold_, the undersigned officer, personally appeared _MA_ known to me (and/or satisfactorily proved), upon oath and affirmation and personal knowledge that foregoing, matters, facts and things set forth are true correct.

Sworn and subscribe to me on this _18_ day of _August_, 2022.

_Thon Gabn_
Notary Jan 3, 2026

TOLONNA GADSON
Notary Public - State of Georgia
Henry County
My Commission Expires Jan 3, 2026

Deandre Arnold ("Affiant")

[5] AGENCIES WHO HAVE RECEIVED PUBLIC CORRUPTION COMPLAINTS ||| Henry County Sheriff's Office certified mail – 7021 2720 0000 1546 0359 | Governor Brian Kemp – 7021 2720 0000 1546 7516 | Attorney General Chris Carr – 7021 2720 0000 1546 7530

Mr. Chris Carr, the attached Criminal Public Corruption Complaint explains more in depth the criminal offenses against the laws of the State of Georgia committed by the public officials named therein, however, included here, on page 1 – 4 of this letter are the most significant acts of the named conspirators Brian Amero (Chief Judge of the Henry County Superior Court) and Marty Matthews (Chief Probation Officer for Judicial Alternatives of Georgia, Inc.,) and their motives as it relates to their acts and the acts of others as alleged within the Public Corruption Complaint. The acts of the two named officials are most significant because most of their crimes have been completed and there is no need to determine whether any crime exists. If any claims made in the Public Corruption Complaint contradicts with the claims made against the significant "actors" named below this document should have dominance. Page 1 – 4 herein shall be incorporated in the Public Corruption Complaint as if fully alleged therein.

---

My name is Deandre Arnold, I am over the age of 21 years old and otherwise competent to give this affidavit and testify to its contents. The Facts set forth herein are based upon my own firsthand personal knowledge and are true and correct.

Notwithstanding the claims made in the Criminal Public Corruption Complaint;

**Chief Judge Brian Amero** did refuse to recuse and disqualify himself from an official proceeding in a State court of Georgia, when he knew he had a legal interest in the outcome and prejudice against the Complainant, mainly, Complainants modification of child custody action filed on March 15, 2021 in which the Complainant was a Defendant (case no. SUCV020210700), and did thereafter refusing and failing to disqualify when required by law, falsify a court proceeding and a Child Support Addendum by stating in a "Child Support Addendum" that the parties "proceedings" were a modification of child support action therein said falsified "Child Support Addendum" when he knew or had knowledge that no Petition to modify child support was placed on the court record as required by law and did so falsify said Child Support Addendum in an artifice, design, scheme or trick before combining, aiding, soliciting, and conspiring with others to bring forth a contempt hearing in the state courts of Georgia under the authority of a "Determination of Controlling Order" that he and the

Page 1 of 4

conspirators knew was invalid, void or without lawful authority or effect; and did so for the purposes of falsely imprisoning the Complainant to affect official proceedings in this state.

**A.    Brian Amero's Motives to Refuse to Disqualify from Complainant's modification of child custody case no. SUCV-2021-0700**

    (i)    Brian Amero had motive to refuse to disqualify in order to falsify a Child Support Addendum in an artifice, design, scheme or trick because he knew that a 2019 "controlling for enforcement" and "enforcement order" arising out of a child support proceeding, case no. 19-CV-2651-BA, which sought to register an out-of-state child support order (in which Complainant was a defendant) lacked valid controlling and enforcement authority under law and the constitution.

**B.    Brian Amero's Motives to Falsify a Proceeding and Child Support record**

    (i)    Brian Amero had motive to falsify a proceeding and Child Support Addendum because of his knowledge of the invalidity of the 2019 "Controlling order" and "Order of Enforcement" and did so under an artifice, design, trick or scheme which was to determine whether Complainant would challenge said order for the purposes of ascertaining whether Complainant had knowledge of the invalidity of the 2019 Controlling order before the act of combining, aiding, soliciting, and conspiring with others to bring forth a contempt action in the state courts of Georgia under the authority of the "Determination of Controlling Order" that he and others knew was invalid, void or without lawful authority.

**C.    Brian Amero's Motives to combine, conspire, solicit, aid, assist others to bring a contempt action against Complainant after his act of falsifying a Child Support Addendum is as follows;**

    (i)    Brian Amero had motive to conspire with others to bring forth a contempt action against the Complainant in 2021, after Brian Amero's act of falsifying a Child Support Addendum in an artifice, scheme, design or trick to determine whether Complainant would challenge the "determination of controlling order" for the purposes of ascertaining whether Complainant had knowledge of the invalidity of the 2019 Controlling order because the conspirators knew of the invalidity of the 2019 "determination of controlling order" and before conspirators could bring said contempt action they needed to ascertain Complainant's knowledge of its validity.

    (ii)    there is reasonable inference to believe that Brian Amero and the conspirators knew of the invalidity of the 2019 "Determination of controlling order" based on the fact that (1) the conspirators did not enforce the alleged 2019 arrearages under the "2019 enforcement order", (2) on information and belief requested duplicate income deduction orders in 2019 and 2021 and (3) would falsify a Child Support Addendum in an artifice, scheme or trick to ensure their plan to falsely imprison the Complainant could be carried out without challenge.

## I.   ACTS TO INTIMIDATE, THREATEN AND OPRESS THE COMPLAINANT BY UNLAWFUL USAGE OF STATE JUDICIAL POWER AND TO AVOID LIABILITY IN OFFICIAL PROCEEDINGS IN THIS STATE

    (i)    Brian Amero upon information and belief, ensured he could position himself in a contempt action which he may now utilize without lawful authority in order to continue to unlawfully utilize the state's judicial power by and through state agencies in order to oppress, act partially without disqualification as previously done in order to intimidate, coerce and place the Complainant under a sense of duress and fear if Complainant seeks to vindicate any of his civil claims and grievances in official proceedings.

The Complainant brings the attention of the Attorney General and any investigate agency or law enforcement to page 23-28 of the Public Corruption Complaint related to Complainant's Open Records Request's that went unresponsive for a period of months in relation to the conspiracy, in which counsel for the Attorney General is currently representing the Defendants 2022CV370090.

Notwithstanding the claims made in the Criminal Public Corruption Complaint;

**Chief Probation Officer Marty Matthews** did willfully and knowingly cause and procure a revocation hearing to occur on September 1st, 2021, without providing notice of the revocation hearing whatsoever to the Affiant as required by law which caused a warrant to issue against the Complainant without his knowledge which caused his false imprisonment and arrest on November 8th, 2021, at the Court of Appeals building in downtown Atlanta.

### (A)   Marty Matthews Motive to secret a revocation hearing by deliberately failing to provide notice of the revocation hearing

    (i)    Marty Matthews had motive to refuse and fail to provide notice of the revocation hearing to Complainant with knowledge that he could not overturn his conviction if he was arrested and forced to pay for his freedom under fear. (See Attached Federal Filing which proves Marty Matthews did not provide notice of a revocation hearing that occurred in the Hampton Municipal court as counsel for Defendant Marty Matthews did not argue her failure to provide notice of revocation hearing. Exhibit B)

        a.    On information and belief, Marty Matthews action was a key part of the conspiracy to not only falsely imprison the Complainant but to falsely imprison the Complainant for the purposes of taking the life of the Complainant in the Henry County Jail if Complainant had challenged his arrest or if he would have challenged the act of Brian Amero's falsifying a Child Support Addendum, in which Brian Amero and others could not have known until December 3rd, 2021.

NOTARY SIGNATURE OF Page 1 – 4 which shall be incorporated in the Public Corruption Complaint as if fully alleged therein.

Sworn and subscribed to me on this day of October of 26th, 2022.

_C. Newton_

Notary Signature            [                    ]    Deandre Arnold

Page 4 of 4

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z88ZW2T0320012416

**Weight**
1.00 LBS

**Service**
UPS Ground

**Shipped / Billed On**
08/19/2022

**Delivered On**
08/23/2022 4:32 P.M.

**Delivered To**
206 WASHINGTON ST SW
203
ATLANTA, GA, 30334, US

**Received By**
OFFICE

**Left At**
Front Desk

**Reference Number(s)**
88ZW2T9GWHV

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 10/23/2022 8:02 P.M. EST

1/18/23, 12:35 PM                                    Tracking | UPS - United States

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.



**Tracking Number**
1Z4T13530190400083

**Weight**
1.00 LBS

**Service**
UPS Next Day Air®

**Shipped / Billed On**
10/26/2022

**Delivered On**
10/27/2022 11:34 A.M.

**Delivered To**
ATLANTA, GA, US

**Received By**
OFFICE

**Left At**
Inside Delivery

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 01/18/2023 12:35 P.M. EST

# EXHIBIT B

## ("*Sworn* Formal Complaint | 5 pgs.")

### ("Proof of Receipt Attached | 1 pg.")

## Received by Attorney General Chris Carr on 1/20/2023

### 6 pages

Although the attachment does not include a notarized copy this Defendant did receive a notarize copy of
this sworn formal complaint

Deandre C. Arnold ("Complainant")
**Mailing Address**: 7757 Rutgers Cir. Fairburn Ga 30213
**Telephone**: 470-514-3097 | **Email**: Dresmail828@gmail.com

_____

Attorney General Chris Carr
40 Capitol Square SW                                                        **Re**: Criminal Referral Request
Atlanta, GA 30334                                                                **Date**: 1/18/2023
                                      **Previous Criminal Complaint**: 70212720000015487530
**FORMAL COMPLAINT**                                                      1Z4T13530190400083

Dear Attorney General Chris Carr,

This is my third correspondence to your offices which has brought to your attention
egregious acts of Public Corruption affecting the safety and security of state citizens and to
request that your offices immediately investigate or effectuate a criminal referral to the Henry
County District Attorney, Department of Justice, the F.B.I., and the G.B.I. based on sworn facts
in the attached Criminal Complaint to deter state created danger. This Sworn Formal Complaint
is to be **incorporated with previous Complaints** mailed by Complainant to your offices and
includes prima facie evidence of public officials elected and unelected in this State that have
unlawfully weaponized the Judiciary power of the state of Georgia and its state agencies for the
unlawful purposes of affecting official proceedings and preventing a lawful vindication of
grievances in which the officials named below and others will face liability in a successful
outcome. The inference from these affirmative acts entails that not only have these state officials
knowingly filed an unlawful action for the purposes of falsely imprisoning the Complainant but
has effectuated said affirmative acts for the purposes of placing my life in danger and/or making
me vulnerable to danger by their acts and acts of others and that danger is ongoing and will not
cease unless your offices launch an investigation or a effectuate a criminal referral promptly.

The matters were brought to the attention of the Henry County D.A.'s Office who
refused to investigate due to a conflict of interest, the Henry County P.D who referred me to the
HCSO Special Investigations Division who also refused to investigate and was not forthcoming
about the receipt of my Complaint. Therefore, I request that your offices launch an investigation
pursuant to O.C.G.A. §§§ 45-15-10 – 18 or refer the matter to all appropriate agencies to
investigate these officials based on probable cause of the offenses below to deter highly
intolerable criminal offenses committed by public officials in this State affecting public trust.

## GENERAL ALLEGATIONS

**UNENFORCEABLE REGISTERED SUPPORT ORDER FOR ENFORCEMENT**

In September of 2019, in the Henry County Superior Court, Judge Brian Amero presiding, the Department of Human Services ("Department") by and through their assistant District Attorney Barbara Briley did bring an enforcement action against the Affiant and sought to register an out of state Child Support order which originated in the State of Florida to do so. (case no. SUCV-2019-2651) Complainant ("Affiant") was served and within 20 days filed a special appearance to be heard and other documents. A hearing on the matter would eventually occur in the Henry County Superior Court on November 18th, 2019, without the presence, appearance or sufficient or any notice to Complainant of the hearing in such location and the court did register the out-of-state Florida support order in the Henry County Superior court without hearing Affiant's challenges in Affiants request to be heard or without having his required appearance in the hearing. On the face of the record, it does not show that the Affiant appeared at said hearing on November 18th, 2019 nor does it show that any notice of said hearing was placed on the record in said court. Accordingly, on November 18th, 2019, the registration and enforcement support order was confirmed ("2019 support order") (without the presence of Affiant) by Brian Amero without Affiant's required appearance and without a hearing on his request to be heard and the said support order called for the immediate suspension of the Affiant's Driver's license, deduction of income, credit reporting etc., and affirmed an arrearage amount of around $8,098.67. Affiant immediately filed an action to vacate the registration and enforcement order and a hearing occurred on January 20th, 2020, and Brian Amero denied Affiant's motion in March of 2020. Affiant did not appeal due to threats made at Affiant by the presiding Judge at the January 20th, 2020 Motion to Vacate hearing.

**FALSIFIED PROCEEDINGS AND COURT RECORDS**

In March of 2021, the Affiant's minor child's Mother would Petition for a Modification of Custody in the Henry County Superior Court, Judge Brian Amero was assigned to the case, case no. SUCV-2021-0700. Brian Amero had an interest in the outcome of this case if this case involved any Child Support however was solely a Modification of Custody Action. Affiant would file a motion of recusal of Brian Amero for extrajudicial facts not involving the invalidity of the 2019 support order however Brian Amero would deny Affiants recusal on 10/7/2021 when he knew he had a legal interest in the outcome of the case arising from the 2019 support order including a bias or prejudice for extrajudicial facts set aside in Affiant's recusal motion.

On October 7th, 2021, Brian Amero would Falsify a proceeding and incorporate in a Final Order, a falsified Child Support record, entitled a "Child Support Addendum" and place therein said falsified record two false statements, entries and writings, to wit;

> **(1)** The Action is a Modification Action (Modification of Child Support)
> **(2)** The parties agree that an income deduction order was not immediately necessary,

although the parties never filed a Petition to Modify Child Support and never stated that an income deduction order was immediately necessary. Tyarielle Patterson, a party to the court proceedings and hearing will confirm that the parties never stated that an income deduction order was not immediately necessary whose telephonic # is 727-953-0869. Affiant did not learn about the falsity of these records until on or around November 28th, 2021 and Brian Amero and others had no reason to know about Affiant's knowledge of its falsity until the filing. On November 7th, 2021, Affiant would appeal these actions and as stated on pages 18-20 in the previous Criminal Complaints sent to this office (which shall be incorporated with this Complaint to assist any investigation into the criminal offenses herein) the appeal would be delayed by court staff of

Brian Amero and court clerks within the Henry County Superior court to stall or delay the due course of the Affiants direct appeal.

## CONSPIRACY TO COMMIT FALSE IMPRISONMENT

On or around December of 2021, after Brian Amero falsified Child Support records, the Division of Child Support Services by and through Barbara Briley, Affiant would learn through family members in July of 2021 that a contempt action ("Contempt Action") may have been filed in Henry County Georgia against Affiant to arrest the Affiant. The 2021 contempt action would be filed and presided over by the exact state actors in the 2019 registration and enforcement action that registered an out-of-state support order for "enforcement" without the required appearance of the Affiant. Barbara Briley would file the contempt action in December of 2021 and Brian Amero would preside over the contempt action. The contempt action did not include any of the alleged arrearages that arose from the 2019 support order and requested that an "income deduction order" be entered. Thus, these facts support evidence and strong inferences that "agreements" or communications between the presiding Judge Brian Amero and Barbara Briley did occur by Barbara Briley's request to enter an "income deduction order" shortly after Brian Amero fabricated a "Child Support Addendum" and proceeding in Affiant's Modification of Custody Action which Addendum has stated therein false writing that *no income deduction order was immediately necessary.*

## PROBABLE CAUSE TO ARREST BRIAN AMERO AND BARBARA BRILEY

The facts herein show probable cause for the purposes of an launching an investigation into the facts made herein this Formal Complaint or to arrest **Brian Amero and Barbara Briley** for conspiracy to commit false imprisonment against a state citizen due to facts that show that Brian Amero knowingly and willingly and in violation of their oaths of office **(1)** did refuse to

recuse in Affiant's Modification of Custody Action although he knew he had a legal interest in the outcome and **(2)** did thereafter falsify a court proceeding and a court record by **(3)** falsely writing in such falsified record that an income deduction order *was not immediately necessary* and the custody action was a modification of child support action and **(4)** thereafter said false writing solicited Barbara Briley or conspired with, Barbara Briley who aided or abetted or acted in concert with such conspiracy by filing an unlawful contempt action against the Affiant and requesting an income deduction order directly after Brian Amero's false writings and entries and omitting \$8,097.67 of alleged arrearages arising from the 2019 enforcement support order and **(5)** did so because Brian Amero and Barbara Briley both knew that the enforcement support order was unlawful and lacking in legal or lawful enforcement authority and feared liabilty in official proceedings in this state if they did arrest the Affiant.[1]

Personally appearing before the undersigned officer duly authorized by law to administer oaths, comes now, Deandre Arnold, who being duly sworn, deposes and states on oath under penalty of perjury that the foregoing information in this Formal Complaint are true and correct

Notary                                                      Deandre Arnold

---

[1] Moreover, as stated in previous public corruption Complaints sent to this office, Jacob Davis of the Department of Human Services would willfully ignore his requests for "any and all records" taken on Affiant's Child Support case which led to Affiant filing an Open records suit against the Department in the Fulton County Superior court on 9/17/2022. (Case # 2022CV370090) It appears from the Department's Motion to dismiss (in the form an exhibit – exhibit D) that an exhibit was offered to purport a meeting of the minds with the Affiant and Chelsea Shelton (Child Support agent) occurred. However, Affiant never spoke to Chelsea Shelton telephonically, orally, by email or in writing whatsoever nor gave her any new mailing address for the Affiant.

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1ZY7T3L50338860827

**Weight**
1.00 LBS

**Service**
UPS Ground

**Shipped / Billed On**
01/18/2023

**Delivered On**
01/20/2023 1:06 P.M.

**Delivered To**
40 CAPITOL SQ SW
ATLANTA, GA, 30334, US

**Received By**
MLRM

**Left At**
Mail Room

**Reference Number(s)**
Y7T3L5FL7PR

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 01/20/2023 8:38 P.M. EST

EXHIBIT C

("*Sworn* Formal Complaint | 8 pgs.")

("Proof of Receipt Attached | 1 pg.")

Received by Governor Brian Kemp on 1/20/2023

9 pages

Although the attachment does not include a notarized copy this Defendant did receive a notarize copy of this sworn formal complaint

Deandre C. Arnold ("Affiant")
**Expedited Mailing Address**: 7757 Rutgers Cir. Fairburn Ga 30213
**Telephone**: 470-514-3097 | **Email**: Dresmailbox89@gmail.com

## FORMAL COMPLAINT

Governor Brian Kemp
206 Washington Street Suite 203,
State Capitol                                         **Re**: Criminal Referral Request
Atlanta, GA 30334                                     **Date**: 1/18/2023
                              **Previous Criminal Complaints**: 70212720000015487516
                                                              1Z88ZW2T0320012416

Dear Governor Brian Kemp,

This is my third correspondence to your offices which has brought to your attention egregious acts of Public Corruption affecting the safety and security of state citizens and to request that your offices effectuate a criminal referral to the Department of Justice, the F.B.I., the G.B.I. or the Attorney General of this State based on the sworn facts in the attached Criminal Complaint to deter state created danger. This Sworn Formal Complaint is to be **incorporated with the previous Criminal Complaints** mailed by Complainant to your offices and includes prima facie evidence of public officials elected and unelected in this State that have unlawfully weaponized the Judiciary power of the state of Georgia and its state agencies for the unlawful purposes of affecting official proceedings and preventing a lawful vindication of grievances in which the officials named below will be liable in a successful outcome. The inference from these affirmative acts entails that not only have state officials knowingly filed an unlawful action for the purposes of falsely imprisoning the Complainant but has effectuated said affirmative act for the purposes of placing my life in danger and/or making me vulnerable to danger by their acts and the acts of others and that danger is ongoing, and the acts of your agents will not cease unless your offices direct the Attorney General to investigate these claims.

The attached matters were previously brought to the attention of the Henry County District Attorney's Office, the Henry County P.D., the Henry County Sheriff's Special Investigations Division and the Attorney General of the State of Georgia and each of these entities have been unable or unwilling or refraining from investigating although within their power. Therefore, I am requesting that your offices promptly direct the Attorney General pursuant to O.C.G.A.§§ 45-15-18-19 to arrest or investigate these sworn statements based on **probable cause** that these offenses below have occurred and affects public trust.

## GENERAL ALLEGATIONS

**UNENFORCEABLE REGISTERED SUPPORT ORDER FOR ENFORCEMENT**

In September of 2019, in the Henry County Superior Court, Judge Brian Amero presiding, the Department of Human Services ("Department") by and through their assistant District Attorney Barbara Briley did bring an enforcement action against the Affiant and sought to register an out of state Child Support order which originated in the State of Florida to do so. (case no. SUCV-2019-2651) Complainant ("Affiant") was served and within 20 days filed a special appearance to be heard and other documents. A hearing on the matter would eventually occur in the Henry County Superior Court on November 18th, 2019, without the presence, appearance or sufficient or any notice to Complainant of the hearing in such location and the court did register the out-of-state Florida support order in the Henry County Superior court without hearing Affiant's challenges in Affiants request to be heard or without having his required appearance in the hearing. On the face of the record, it does not show that the Affiant appeared at said hearing on November 18th, 2019 nor does it show that any notice of said hearing was placed on the record in said court. Accordingly, on November 18th, 2019, the registration and enforcement support order was confirmed ("2019 support order") (without the presence of Affiant) by Brian Amero without Affiant's required appearance and without a hearing on his request to be heard and the said support order called for the immediate suspension of the Affiant's Driver's license, deduction of income, credit reporting etc., and affirmed an arrearage amount of around $8,098.67. Affiant immediately filed an action to vacate the registration and enforcement order and a hearing occurred on January 20th, 2020, and Brian Amero denied Affiant's motion in March of 2020. Affiant did not appeal due to threats made at Affiant by the presiding Judge at the January 20th, 2020 Motion to Vacate hearing.

**FALSIFIED PROCEEDINGS AND COURT RECORDS**

In March of 2021, the Affiant's minor child's Mother would Petition for a Modification of Custody in the Henry County Superior Court, Judge Brian Amero was assigned to the case, case no. SUCV-2021-0700. Brian Amero had an interest in the outcome of this case if this case involved any Child Support however was solely a Modification of Custody Action. Affiant would file a motion of recusal of Brian Amero for extrajudicial facts not involving the invalidity of the 2019 support order however Brian Amero would deny Affiants recusal on 10/7/2021 when he knew he had a legal interest in the outcome of the case arising from the 2019 support order including a bias or prejudice for extrajudicial facts set aside in Affiant's recusal motion.

On October 7th, 2021, Brian Amero would Falsify a proceeding and incorporate in a Final Order, a falsified Child Support record, entitled a "Child Support Addendum" and place therein said falsified record two false statements, entries and writings, to wit;

> **(1)** The Action is a Modification Action (Modification of Child Support)
> **(2)** The parties agree that an income deduction order was not immediately necessary,

although the parties never filed a Petition to Modify Child Support and never stated that an income deduction order was immediately necessary. Tyarielle Patterson, a party to the court proceedings and hearing will confirm that the parties never stated that an income deduction order was not immediately necessary whose telephonic # is 727-953-0869. Affiant did not learn about the falsity of these records until on or around November 28th, 2021 and Brian Amero and others had no reason to know about Affiant's knowledge of its falsity until the filing. On November 7th, 2021, Affiant would appeal these actions and as stated on pages 18-20 in the previous Criminal Complaints, the appeal would be delayed by court staff of Brian Amero and

court clerks within the Henry County Superior court to stall or delay the due course of the
Affiants direct appeal.

## CONSPIRACY TO COMMIT FALSE IMPRISONMENT

On or around December of 2021, after Brian Amero falsified Child Support records, the
Division of Child Support Services by and through Barbara Briley, Affiant would learn through
family members in July of 2021 that a contempt action ("Contempt Action") may have been
filed in Henry County Georgia against Affiant to arrest the Affiant. The 2021 contempt action
would be filed and presided over by the exact state actors in the 2019 registration and
enforcement action that registered an out-of-state support order for "enforcement" without the
required appearance of the Affiant. Barbara Briley would file the contempt action in December
of 2021 and Brian Amero would preside over the contempt action. The contempt action did not
include any of the alleged arrearages that arose from the 2019 support order and requested that
an "income deduction order" be entered. Thus, these facts support evidence and strong
inferences that "agreements" or communications between the presiding Judge Brian Amero and
Barbara Briley did occur by Barbara Briley's request to enter an "income deduction order"
shortly after Brian Amero fabricated a "Child Support Addendum" and proceeding in Affiant's
Modification of Custody Action which Addendum has stated therein false writing that *no
income deduction order was immediately necessary*.

## PROBABLE CAUSE TO ARREST BRIAN AMERO AND BARBARA BRILEY

The facts herein show probable cause for the purposes of an launching an investigation
into the facts and counts made herein this Formal Complaint or to arrest **Brian Amero and
Barbara Briley** for conspiracy to commit false imprisonment against a state citizen and other
crimes due to sworn facts that show that Brian Amero knowingly and willingly and in violation

of their oaths of office **(1)** did refuse to recuse in Affiant's Modification of Custody Action although he knew he had a legal interest in the outcome and **(2)** did thereafter falsify a court proceeding and a court record by **(3)** falsely writing in such falsified record that an income deduction order *was not immediately necessary* and the custody action was a modification of child support action and **(4)** thereafter said false writing solicited Barbara Briley or conspired with, Barbara Briley who aided or abetted or acted in concert with such conspiracy by filing an unlawful contempt action against the Affiant and requesting an income deduction order directly after Brian Amero's false writings and entries and omitting $8,097.67 of alleged arrearages arising from the 2019 enforcement support order and **(5)** did so because Brian Amero and Barbara Briley both knew that the enforcement support order was unlawful and lacking in legal or lawful enforcement and feared liabilty in official proceedings in this state if they did arrest the Affiant.[1] Affiant states the above facts support probable cause for arrests or investigations.

---

### COUNT 1
### O.C.G.A. § 45-11-1
### OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On or around October 7th, 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully falsified a record in a modification of custody proceeding in the Henry County Superior Court, mainly a Child Support Addendum in case no. SUCV-2021-0700, by falsely writing therein said record that the *action* was a

---

[1] Moreover, as stated in previous public corruption Complaints sent to this office, Jacob Davis of the Department of Human Services would willfully ignore his requests for "any and all records" taken on Affiant's Child Support case which led to Affiant filing an Open records suit against the Department in the Fulton County Superior court on 9/17/2022. (Case # 2022CV370090) It appears from the Department's Motion to dismiss (in the form an exhibit – exhibit D) that an exhibit was offered to purport a meeting of the minds with the Affiant and Chelsea Shelton (Child Support agent) occurred. However, Affiant never spoke to Chelsea Shelton telephonically, orally, by email or in writing whatsoever nor gave her any new mailing address for the Affiant.

"modification" action although the parties in said *action* had not or did not file any Petition to *Modify* Child Support on the court record and did so in violation of his oath of office.

## COUNT 2
### O.C.G.A. § 45-11-1
### OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On or around October 7th, 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully falsify a court proceeding, mainly a modification of *custody* proceeding in the Henry County Superior Court by falsely writing in a Child Support Addendum that the custody *action* was a "modification" action although the parties in said *action* had not or did not file any Petition to *Modify* Child Support on the court record and did so in violation of his oath of office.

## COUNT 3
### O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
### CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On or around October 7th, 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully conspire, solicit, agree, combine, act in concert, or joined together with Barbara Briley and possibly others to commit false imprisonment against the Affiant, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful and unenforceable since November 18th, 2019 and did the affirmative act in violation of his oath of office.

## COUNT 4
### O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
### CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On or around October 7th, 2021, while a public officer, Barbara Briley in the County of Henry, State of Georgia did knowingly and willfully conspire, agree, combine, act in concert, or joined together with Brian Amero and others to commit false imprisonment against the Affiant, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful and unenforceable since November 18th, 2019 and did the affirmative act in violation of her oath.

## COUNT 5
### O.C.G.A. § 16-10-93; O.C.G.A. § 45-11-49(b)(2)
### INFLUENCING WITNESS; UNPROFESSIONAL CONDUCT; MISDEMEANOR APPLICABILITY

On or around October 7th 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully in a Tyrannical and oppressive style manner using partiality in the color of his office and by means of corruption, threats, intimidation and misleading conduct did combine, conspire, procure or in concert with other with Barbara Briley and others did attempt to influence the Affiant from fully and freely testifying in official proceedings to delay Affiant's testimony, cause or induce Affiant to withhold, be absent or prevent him from attending or giving testimony in official proceedings against one Brian Amero and/or his co-conspirators, to wit; causing, procuring or effectuating the filing of an unlawful enforcement action knowingly under an unlawful enforcement support order, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful and unenforceable since November 18th, 2019 and ensuring, or procuring his presiding over certain official proceedings in which he had an interest.

## AFFIANTS OATH

Personally appearing before the undersigned officer duly authorized by law to administer oaths, comes now, Deandre Arnold, who being duly sworn, deposes and states on oath and under penalty of perjury that the foregoing facts in this Formal Complaint are true and correct.

_____          _____

Notary                                              Deandre Arnold

Case 1:23-cv-02219-JPB   Document 1   Filed 05/17/23   Page 198 of 424

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z2Y180E0335513679

**Weight**
0.20 LBS

**Service**
UPS Ground

**Shipped / Billed On**
01/19/2023

**Delivered On**
01/20/2023 2:06 P.M.

**Delivered To**
ATLANTA, GA, US

**Received By**
OFFICE

**Left At**
Front Desk

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 01/20/2023 8:39 P.M. EST

# EXHIBIT D

## ("*Sworn* Formal Complaint | 8 pgs.")

("Proof of Receipt Attached | 1 pg.")

## Received by the Henry County Sheriff's Office on 1/20/2023

## 9 pages

Although the attachment does not include a notarized copy this Defendant did receive a notarize copy of this sworn formal complaint

Deandre Arnold ("Affiant")
**Expedited Mailing Address**: 7757 Rutgers Cir. Fairburn Ga 30213
**Telephone**: 470-514-3097 | **Email**: Dresmail828@gmail.com

## SWORN FORMAL COMPLAINT

Sheriff Reginald B. Scandrett
120 Henry Parkway Connector                        **Re**: Criminal Referral Request
McDonough, GA 30253                                **Date**: 1/18/2023
                              **Previous Criminal Complaint**: 70212720000015460359

Dear Sheriff Scandrett,

     This is my third correspondence to your offices and your employees bringing to the attention of egregious acts of Public Corruption affecting the safety and security of state citizens and to request that your offices immediately investigate or send a criminal referral to the Henry County District Attorney, Department of Justice, the F.B.I., and the G.B.I. based on the sworn facts in the attached Criminal Complaint of state created danger involving state officials located in Henry County. This Sworn Formal Complaint is to be incorporated with the previous Criminal Complaint mailed to your offices and emailed to Darren Newton, which Criminal Complaint includes *prima facie* evidence of public officials elected and unelected in the jurisdiction of Henry county who have unlawfully weaponized the Judiciary power of the state of Georgia against its citizens and its state agencies for the unlawful purposes of affecting official proceedings and preventing a lawful vindication of grievances in which the officials named below face liability in Complainants successful outcome in those proceedings. The inference from these affirmative acts entails not only have these state officials knowingly filed an unlawful action for the purposes of falsely imprisoning the Complainant but has effectuated said affirmative act for the purpose of placing my life in danger and/or making me vulnerable to danger and that danger is ongoing and I do not foresee a deterrent in their actions unless your offices promptly investigate, request a criminal referral or arrest these offenders immediately.

     The attached matters were previously brought to the attention of the Henry County District Attorney's Office and the Henry County P.D. who referred me to the Special Investigations Division in your Offices which Division have not been forthcoming about the prior receipt of my Criminal Complaint and certain correspondences. Please forward this Formal Complaint to such Division and ensure sufficient investigation of my formal complaint or refer this Complaint to the appropriate investigative agencies on criminal referral.

## GENERAL ALLEGATIONS

## UNENFORCEABLE REGISTERED SUPPORT ORDER FOR ENFORCEMENT

In September of 2019, in the Henry County Superior Court, Judge Brian Amero presiding, the Department of Human Services ("Department") by and through their assistant District Attorney Barbara Briley did bring an enforcement action against the Affiant and sought to register an out of state Child Support order which originated in the State of Florida to do so. (case no. SUCV-2019-2651) Complainant ("Affiant") was served and within 20 days filed a special appearance to be heard and other documents. A hearing on the matter would eventually occur in the Henry County Superior Court on November 18th, 2019, without the presence, appearance or sufficient or any notice to Complainant of the hearing in such location and the court did register the out-of-state Florida support order in the Henry County Superior court without hearing Affiant's challenges in Affiants request to be heard or without having his required appearance in the hearing. On the face of the record, it does not show that the Affiant appeared at said hearing on November 18th, 2019 nor does it show that any notice of said hearing was placed on the record in said court. Accordingly, on November 18th, 2019, the registration and enforcement support order was confirmed ("2019 support order") (without the presence of Affiant) by Brian Amero without Affiant's required appearance and without a hearing on his request to be heard and the said support order called for the immediate suspension of the Affiant's Driver's license, deduction of income, credit reporting etc., and affirmed an arrearage amount of around $8,098.67. Affiant immediately filed an action to vacate the registration and enforcement order and a hearing occurred on January 20th, 2020, and Brian Amero denied Affiant's motion in March of 2020. Affiant did not appeal due to threats made at Affiant by the presiding Judge at the January 20th, 2020 Motion to Vacate hearing.

**FALSIFIED PROCEEDINGS AND COURT RECORDS**

In March of 2021, the Affiant's minor child's Mother would Petition for a Modification

of Custody in the Henry County Superior Court, Judge Brian Amero was assigned to the case,

case no. SUCV-2021-0700. Brian Amero had an interest in the outcome of this case if this case

involved any Child Support however was solely a Modification of Custody Action. Affiant

would file a motion of recusal of Brian Amero for extrajudicial facts not involving the

invalidity of the 2019 support order however Brian Amero would deny Affiants recusal on

10/7/2021 when he knew he had a legal interest in the outcome of the case arising from the

2019 support order including a bias or prejudice for extrajudicial facts set aside in Affiant's

recusal motion.

On October 7th, 2021, Brian Amero would Falsify a proceeding and incorporate in a

Final Order, a falsified Child Support record, entitled a "Child Support Addendum" and place

therein said falsified record two false statements, entries and writings, to wit;

> (1) The Action is a Modification Action (Modification of Child Support)
> (2) The parties agree that an income deduction order was not
>     immediately necessary,

although the parties never filed a Petition to Modify Child Support and never stated that an

income deduction order was immediately necessary. Tyarielle Patterson, a party to the court

proceedings and hearing will confirm that the parties never stated that an income deduction

order was not immediately necessary whose telephonic # is 727-953-0869. Affiant did not learn

about the falsity of these records until on or around November 28th, 2021 and Brian Amero and

others had no reason to know about Affiant's knowledge of its falsity until the filing. On

November 7th, 2021, Affiant would appeal said order and as stated on pages 18-20 in the

previous Complaints, the appeal would be delayed by court staff of Brian Amero in order to delay the due course of the Affiants direct appeal.

## CONSPIRACY TO COMMIT FALSE IMPRISONMENT

On or around December of 2021, after Brian Amero falsified Child Support records, the Division of Child Support Services by and through Barbara Briley, Affiant would learn through family members in July of 2021 that a contempt action ("Contempt Action") may have been filed in Henry County Georgia against Affiant to arrest the Affiant. The 2021 contempt action would be filed and presided over by the exact state actors in the 2019 registration and enforcement action that registered an out-of-state support order for "enforcement" without the required appearance of the Affiant. Barbara Briley would file the contempt action in December of 2021 and Brian Amero would preside over the contempt action. The contempt action did not include any of the alleged arrearages that arose from the 2019 support order and requested that an "income deduction order" be entered. Thus, these facts support evidence and strong inferences that "agreements" or communications between the presiding Judge Brian Amero and Barbara Briley did occur by Barbara Briley's request to enter an "income deduction order" shortly after Brian Amero fabricated a "Child Support Addendum" and proceeding in Affiant's Modification of Custody Action which Addendum has stated therein false writing that *no income deduction order was immediately necessary*.

## PROBABLE CAUSE TO ARREST BRIAN AMERO AND BARBARA BRILEY

The facts herein show probable cause for the purposes of an launching an investigation into the facts and counts made herein this Formal Complaint or to arrest **Brian Amero and Barbara Briley** for conspiracy to commit false imprisonment against a state citizen and other crimes due to sworn facts that show that Brian Amero knowingly and willingly and in violation

of their oaths of office **(1)** did refuse to recuse in Affiant's Modification of Custody Action
although he knew he had a legal interest in the outcome and **(2)** did thereafter falsify a court
proceeding and a court record by **(3)** falsely writing in such falsified record that an income
deduction order *was not immediately necessary* and the custody action was a modification of
child support action and **(4)** thereafter said false writing solicited Barbara Briley or conspired
with, Barbara Briley who aided or abetted or acted in concert with such conspiracy by filing an
unlawful contempt action against the Affiant and requesting an income deduction order directly
after Brian Amero's false writings and entries and omitting $8,097.67 of alleged arrearages
arising from the 2019 enforcement support order and **(5)** did so because Brian Amero and
Barbara Briley both knew that the enforcement support order was unlawful and lacking in legal
or lawful enforcement and feared liabilty in official proceedings in this state if they did arrest
the Affiant.[1] Affiant states the above facts support probable cause for arrests or investigations.

## COUNT 1
## O.C.G.A. § 45-11-1
## OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On or around October 7th, 2021, while a public officer, Brian Amero in the County of
Henry, State of Georgia did knowingly and willfully falsified a record in a modification of
custody proceeding in the Henry County Superior Court, mainly a Child Support Addendum in
case no. SUCV-2021-0700, by falsely writing therein said record that the *action* was a

[1] Moreover, as stated in previous public corruption Complaints sent to this office, Jacob Davis of the Department of Human Services would willfully ignore his requests for "any and all records" taken on Affiant's Child Support case which led to Affiant filing an Open records suit against the Department in the Fulton County Superior court on 9/17/2022. (Case # 2022CV370090) It appears from the Department's Motion to dismiss (in the form an exhibit – exhibit D) that an exhibit was offered to purport a meeting of the minds with the Affiant and Chelsea Shelton (Child Support agent) occurred. However, Affiant never spoke to Chelsea Shelton telephonically, orally, by email or in writing whatsoever nor gave her any new mailing address for the Affiant.

"modification" action although the parties in said *action* had not or did not file any Petition to *Modify* Child Support on the court record and did so in violation of his oath of office.

## COUNT 2
## O.C.G.A. § 45-11-1
## OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On or around October 7th, 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully falsify a court proceeding, mainly a modification of *custody* proceeding in the Henry County Superior Court by falsely writing in a Child Support Addendum that the custody *action* was a "modification" action although the parties in said *action* had not or did not file any Petition to *Modify* Child Support on the court record and did so in violation of his oath of office.

## COUNT 3
## O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
## CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On or around October 7th, 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully conspire, solicit, agree, combine, act in concert, or joined together with Barbara Briley and possibly others to commit false imprisonment against the Affiant, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful and unenforceable since November 18th, 2019 and did the affirmative act in violation of his oath of office.

## COUNT 4
## O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
## CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On or around October 7th, 2021, while a public officer, Barbara Briley in the County of Henry, State of Georgia did knowingly and willfully conspire, agree, combine, act in concert, or joined together with Brian Amero and others to commit false imprisonment against the Affiant, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful & unenforceable since 11/18/2019 and did the affirmative act in violation of her oath.

### COUNT 5
### O.C.G.A. § 16-10-93; O.C.G.A. § 45-11-49(b)(2)
### INFLUENCING WITNESS; UNPROFESSIONAL CONDUCT; MISDEMEANOR APPLICABILITY

On or around October 7th 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully in a Tyrannical and oppressive style manner using partiality in the color of his office and by means of corruption, threats, intimidation and misleading conduct did combine, conspire, procure or in concert with other with Barbara Briley and others did attempt to influence the Affiant from fully and freely testifying in official proceedings to delay Affiant's testimony, cause or induce Affiant to withhold, be absent or prevent him from attending or giving testimony in official proceedings against one Brian Amero and/or his co-conspirators, to wit; causing, procuring or effectuating the filing of an unlawful enforcement action knowingly under an unlawful enforcement support order, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful and unenforceable since November 18th, 2019 and ensuring or procuring his presiding over certain official proceedings in which he had an interest.

## AFFIANTS OATH

Personally appearing before the undersigned officer duly authorized by law to administer oaths, comes now, Deandre Arnold, who being duly sworn, deposes and states on oath and under penalty of perjury that the foregoing facts in this Formal Complaint are true and correct.

_____          _____

Notary                                          Deandre Arnold

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z2Y180E0335511859

**Weight**
0.20 LBS

**Service**
UPS Ground

**Shipped / Billed On**
01/19/2023

**Delivered On**
01/20/2023 9:56 A.M.

**Delivered To**
MCDONOUGH, GA, US

**Received By**
POOLE

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 01/20/2023 11:10 A.M. EST

EXHIBIT E

("*Sworn* Formal Complaint | 9 pgs.")

("Proof of Receipt Attached 1 pg")

Received by the Henry County District Attorney's office on 3/20/2023

10 PAGES

Deandre Arnold ("Affiant")
**Expedited Mailing Address**: 7757 Rutgers Cir. Fairburn Ga 30213
**Telephone**: 470-514-3097 | **Email**: Dresmail828@gmail.com

## SWORN FORMAL COMPLAINT OF STATE CREATED DANGER

District Attorney Darius Pattillo                    **Re**: Criminal Referral Request
1 Courthouse Square
2nd Floor West Tower                                  **Date**: 3/20/2023
McDonough, GA 30253

Dear Darius Patillio,

      This is my third correspondence to your offices alerting you of egregious acts of Public Corruption occurring within your county of jurisdiction. State officials have and are currently in an unlawful manner utilizing state resources and taxpayer funds as a means to illegally manage and weaponize the Judiciary power of the state of Georgia and its agencies for an unlawful purpose as a means to avoid personal liability. The collective affirmative acts of the actors named in this sworn formal complaint have consequently and unlawfully affected official proceedings in this state in which I seek to redress grievances. As more alleged below, there has been and is currently ongoing a conspiracy to commit false imprisonment in a civil proceeding knowingly filed in bad faith by state officials who seek to utilize this unlawful proceeding to avoid personal liabilty. Each and every act of this proceeding is unlawful and illegal on its face. Below are facts that undoubtedly supports probable cause that this illicit act was effectuated for the specific purposes of avoiding personal liabilty by unlawfully utilizing state tax payer funds to weaponize the judiciary and these facts support inferences that this civil proceeding has been filed for the purposes of placing my life in danger and/or making me vulnerable to danger by unlawful imprisonment and this state created danger is ongoing. I do not foresee a deterrent in the actions of these officials unless your offices promptly investigate, request a criminal referral or arrest these offenders immediately. I was previously told that this office had an appearance of impropriety based on the state actors named. Please forward appropriately. The attached matters were previously brought to the attention of the Attorney General's office who has previously received a 37-page public corruption complaint that is referenced in this sworn formal complaint to assist you in your investigations. Please forward this matter as appropriate.

## GENERAL ALLEGATIONS

Affiant states that there is probable cause that Brian Amero, ("Amero") Henry County Superior court Judge and Barbara Briley, ("Briley") Assistant District Attorney for the Division of Child Support Services and possibly others did conspire, combine, or agree on or around December 1st, 2021 in the County of Henry to falsely imprison the Affiant under an unenforceable registered support and enforcement order ("2019 registered order") entered on November 18th, 2019 that he and others knew was unlawful and that in furtherance of the conspiracy Amero did falsify a Child Support Addendum ("Addendum") in case no. SUCV-2021-0700 in which Affiant was a Defendant and his child's Mother was a Plaintiff, by falsely writing therein said Addendum that the action was a "*modification*" action and that "*the parties agree that an income deduction order is not immediately necessary*" although the parties in said action never filed a Petition to Modify Child Support and never stated that an income deduction order ("IDO") was not immediately necessary and thereafter did solicit or conspired with, Barbara Briley who in conspiracy did join, combine or participate in the conspiracy and in the furtherance thereof filed a contempt action against Affiant in December of 2021 to accomplish said goal and facts show that Amero and Briley both knew the 2019 registered order was lacking in lawful enforcement authority by "agreements" or communications which could be inferred between them that showed Briley requested to enter an IDO in the December 2021 contempt action less than two (2) months after Amero fabricated the Support Addendum which Addendum falsely stated that the parties agree that no IDO was immediately necessary and by Briley's omitting of $8,097.67 of alleged arrearages in the December 2021 contempt action which arrearages were confirmed in the 2019 registered order. These facts support probable cause and inferences that Briley deliberately omitted the arrearages from the 2019

registered order because she knew the 2019 registered order was unlawful and attempted to conceal such fact by excluding the arrearages in order to make the contempt action appear distinct from the 2019 registered order. Further, these facts support probable cause that Brian Amero falsified the Support Addendum which stated "*no income deduction order was immediately necessary*" because he knew the prior 2019 IDO arising from the 2019 registered order was unlawful and attempted to make the contempt action appear distinct from the 2019 registered order by falsifying the Support Addendum to make it appear as if the prior 2019 IDO was obsolete as a result of the Support Addendum. Moreover, probable cause show that the falsification of the Addendum was effectuated to subject the Plaintiff to a void support order nunc pro tunc. the imprisonment of Affiants under the 2019 registered order does not diminish the liabilty of these state actors and these facts support further inferences that Amero and Briley conspired to falsely imprison the Affiant knowing that his life would be in danger when do so and/or that he would be more vulnerable to danger to unlawful imprisonment in a proceeding filed in bad faith. Continuing, Amero is conveniently the presiding judge in this contempt action and Briley is representing the Department within the action and both would have an adverse interest in the successful outcome of Affiants challenge to the validity of the 2019 support order. Furthermore, case information and records request made for "any and all action taken on [Affiants] child support case" to the Department were ignored at a time the contempt proceedings were pending as alleged on pgs. 22-23 in the enclosed 37-page public corruption Complaint sent to the AG. In addition, the Department concealed whether any judicial adjudications took place within the hearing in November of 2022. These facts support inferences that Amero and Briley would act to imprison the Affiant regardless of whether it

was legal or not because they feared adverse liabilty in official proceedings concerning

Affiant's challenges to the 2019 support order if he knew of their scheme and plot.

**UNENFORCEABLE REGISTERED SUPPORT ORDER FOR ENFORCEMENT**

In September of 2019, in the Henry County Superior Court, the Department of Human

Services ("Department") by and through their assistant District Attorney Barbara Briley did

bring an enforcement action against the Affiant and sought to register an out of state Child

Support order which originated in the State of Florida to do so. (case no. SUCV-2019-2651 –

Judge Brian Amero presiding) Mr. Arnold ("Affiant") was served and within 20 days filed a

special appearance which stated therein "that on November 18th, 2020, in the above-entitled

court at the hour of 8:30 a.m… Deandre Arnold… can be heard." At the time of the entry of the

order, the Registering tribunal, the Henry County Superior court, did not schedule the matter

for hearing nor give notice to any of the parties of the date, time and place of the hearing in the

Henry County Superior Court as required by law. The only hearing "scheduled" was by the

Department on November 18th, 2019, which hearing took place within the Division of Child

Support Services local McDonough Office. However, a subsequent hearing took place in the

Henry County Superior Court without the court giving full and fair or proper notice to the

Petitioner of the time, place and date of said hearing. On the face of that court record, the

Henry County Superior court scheduled no hearing and there is no notice of hearing filed in the

court action by the registering tribunal or otherwise. On November 18th, 2019, the court entered

an order entitled "Order Recognizing the Out-of-State Child Support Order that is controlling

for enforcement and Order of enforcement." ("2019 registered order") (Exhibit A) The said

2019 registered order of the Affiant by calling for the immediate suspension of the Affiant's

Driver's license, deduction of income, credit reporting etc., and affirmed an arrearage amount

of around $8,098.67 and to do so was a violation of the criminal laws of Georgia. Affiant

immediately filed an action to vacate the registration and enforcement order and a hearing

occurred on January 20th, 2020, and Brian Amero denied Affiant's motion in March of 2020.

Affiant did not appeal due to threats made at Affiant by the presiding Judge at the January 20th,

2020, Motion to Vacate hearing. The threats made were witnessed by the Department's

employees and individuals who were in attendance at the hearing and who also had cases to be

heard with the Department and court for that day. The threat was made by Brian Amero

directly after Affiant inquired about a decision or order at the conclusion of the hearing. No

immediate enforcement took place under the 2019 registered order until on information and

belief December of 2020 and to do so was a violation of the criminal laws of Georgia.

## FALSIFIED PROCEEDINGS AND COURT RECORDS

In March of 2021, the Affiant's minor child's Mother would Petition for a Modification

of Custody in the Henry County Superior Court. Judge Brian Amero was assigned to this case.

(Case no. SUCV-2021-0700.) Brian Amero had an interest in the outcome of this case arising

from his liabilty in the prior Child Support action. The parties action was strictly a modification

of child custody action. Affiant however would file a motion of recusal of Brian Amero on

August 10th, 2022, for extrajudicial facts not involving the invalidity of the 2019 support order

arising from a conspiracy involving City of Hampton officials. (Case no. SUCV-2021-0700

doc. ..) On October 7th, 2021, Brian Amero would deny Affiants recusal motion on 10/7/2021,

the same day he would enter a Final Order granting Affiant's child's mother petition to relocate

to the state of Florida with the parties minor child. This Final order would also incorporate a

"Child Support Addendum" which had therein two false statements and writings, to wit;

(1) *The Action is a Modification Action* (Modification of Child Support)

**(2)** *The parties agree that an income deduction order was not immediately necessary.*

However, the parties never filed a Petition to Modify Child Support on the record as required by law and never stated that an income deduction order was not immediately necessary and to do so was a violation of the criminal laws of Georgia O.C.G.A. § 45-11-1, et seq. Tyarielle Patterson, the Plaintiff and a party to this custody proceeding and hearing will confirm that the parties never stated that an income deduction order was not immediately necessary whose telephonic # is 727-953-0869. Affiant did not learn about the falsity of these records until on or around November 28th, 2021, and Amero and others had no reason to know about Affiant's knowledge of its falsity until the filing of a Federal lawsuit against Amero and the City of Hampton on or around December 3rd, 2021. On December 7th, 2021, Affiant would appeal said order and as stated on pages 18-20 in the 37-page public corruption Complaint (attached and enclosed), the appeal would be delayed by court staff of Amero in order to delay the due course of the Affiants direct appeal of the Final order incorporating the falsified Addendum. Thereafter, case information and open records request made for "any and all action taken on [Affiants] child support case" to the Department and McDonough support office were ignored at a time the contempt proceedings were pending as alleged on pgs. 22-23 in the enclosed 37-page public corruption Complaint. Moreover, on November 8-9th, 2022, Toneisha Jackson and Child Support Manager Stephanie Rollings of the Department continuously, purposely and deliberately conflated Petitioner's request for case information with an open records request, a separate and distinct request for open records, in order to conceal information regarding whether any judicial adjudications in the year of 2022 took place for Affiant's child support case. These facts support inferences that Amero and Briley's plan to imprison the

Page 6 of 9

Affiant was known, deliberately concealed and supports probable cause that these state actors would imprison Affiant regardless of whether it was legal or not in the contempt proceedings.

## PROBABLE CAUSE TO ARREST BRIAN AMERO AND BARBARA BRILEY

The facts herein show probable cause for the purposes of immediately arresting Brian Amero and Barbara Briley for the criminal offenses below and launch immediate investigations into additional offenses of Georgia's criminal laws by these state officials and others named in the enclosed 37 page sworn formal complaint.

## COUNT 1
## O.C.G.A. § 45-11-1
## OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On or around October 7th, 2021, in the county of Henry, Georgia, Brian Amero judge of the Henry County Superior court, did knowingly falsify a document or record in a modification of child custody proceeding in the Henry County Superior Court, mainly a Child Support Addendum in case no. SUCV-2021-0700 in the Henry County Superior court, by falsely writing therein said Child Support Addendum that the custody *action* was a "*modification*" action although the parties in said *action* never filed a Petition to *Modify Child Support* on the face of the court record as required by law and did so in violation of his oath of office.

## COUNT 2
## O.C.G.A. § 45-11-1
## OFFENSES INVOLVING PUBLIC RECORDS, DOCUMENTS AND OTHER ITEMS

On around October 7th, 2021, in the county of Henry, State of Georgia, Brian Amero Chief Judge of the Henry County Superior court did knowingly and willfully falsify a court proceeding, mainly a modification of *custody* proceeding in the Henry County Superior Court by falsely writing in a falsified Child Support Addendum that the custody *action* was a

*"modification"* action although the parties in said *action* did not file any Petition to *Modify* Child Support and no such petition is shown on the face of the court record and did so in violation of his oath of office.

## COUNT 3
## O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
## CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On around October 7th, 2021, in the county of Henry, State of Georgia, Brian Amero Chief Judge of the Henry County Superior court did knowingly and willfully conspire, solicit, agree, combine, act in concert, or joined together with Barbara Briley to commit false imprisonment against the Affiant regardless of its illegality, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against and to incarcerate one Deandre Arnold although having knowledge that the enforcement contempt action was unlawful and unenforceable.

## COUNT 4
## O.C.G.A. § 16-4-8, O.C.G.A. § 16-5-41
## CONSPIRACY TO COMMIT A CRIME; FALSE IMPRISONMENT

On or around October 7th, 2021, in the county of Henry, State of Georgia, Barbara Briley Assistant District Attorney for the Division of Child Support Services McDonough Office did knowingly and willfully conspire, agree, combine, act in concert, or joined together with Brian Amero to commit false imprisonment against the Affiant regardless of its illegality, to wit; causing, procuring or effectuating the filing of an enforcement action, mainly a contempt action in December of 2021 in the Henry County Superior Court against the Affiant to incarcerate the Affiant although having knowledge that the enforcement contempt action was unlawful & unenforceable since 11/18/2019 and did the affirmative act in violation of her oath.

## COUNT 5
## O.C.G.A. § 16-10-93; O.C.G.A. § 45-11-49(b)(2)

Page 8 of 9

## INFLUENCING WITNESS; UNPROFESSIONAL CONDUCT; MISDEMEANOR APPLICABILITY

On or around October 7th 2021, while a public officer, Brian Amero in the County of Henry, State of Georgia did knowingly and willfully in a Tyrannical and oppressive style manner did engage in partiality in the color of his office by means of corruption by utilizing one Deandre Arnold's modification of child custody case concerning the custody of his child as a means to falsify support records, a proceeding and commit an act in furtherance of a conspiracy to commit false imprisonment in violation of his oath of office.

---

### AFFIANTS OATH

Personally, appearing before the undersigned officer duly authorized by law to administer oaths, comes now, Deandre Arnold, who first being duly sworn, and will testify to the facts herein, deposes, says and states on oath and under penalty of perjury that the foregoing facts in this Formal Complaint are true and correct.

DATE: 3/20/23

Notary

Deandre Arnold

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1ZTK719E0314543424

**Weight**
1.00 LBS

**Service**
UPS Ground

**Shipped / Billed On**
03/20/2023

**Delivered On**
03/21/2023 10:39 A.M.

**Delivered To**
1 COURTHOUSE SQ
MCDONOUGH, GA, 30253, US

**Received By**
DAVIS

**Left At**
Office

**Reference Number(s)**
TK719E89SHC

Please print for your records as photo and details are only available for a limited time.

Sincerely,

UPS

Tracking results provided by UPS: 05/12/2023 2:14 P.M. EST

EXHIBIT F

("Amended Judicial misconduct complaint | 9 pgs.")

Received by the Judicial Qualifications Commission on 4/7/2022

Deandre Arnold
5420 Riverdale Rd. Apt D15
Atlanta Georgia 30349

Attn: Judicial Qualifications Commission
1995 N. Park Place, SE
Atlanta, GA 30339

## AMENDED JQC COMPLAINT

This Judicial Misconduct Complaint was submitted and received by email on December 9th, 2021. The Complainant now Amends this Complaint as of April 6th, 2022 to include allegations that have arisen since the initial submission and review of this Complaint.

This Complaint, as amended is submitted against Henry County Superior Chief Court Judge Brian Amero ("Amero") and the Complaint states that Amero violated the Code of Judicial Conduct by failing to act in a manner that promotes public confidence in the integrity of the judiciary and by failing to respect and comply with the law. The allegations alleged herein charges Brian Amero with a pattern of corruption and disrepute to his office and said conduct is in violation of the Georgia Code of Judicial Conduct ("GCJC"), state and federal law and said acts are of a serious and egregious nature and is contrary to conduct that promotes public confidence in the integrity of the judiciary.

Under OCGA § 15-1-21 (j), the Commission's Investigative Panel "shall promulgate rules for the commission's governance which comport with due process and are not otherwise provided by the Georgia Constitution or this Code section; provided, however, that such rules shall be effective only upon review and adoption by the Supreme Court." According to those

rules, The Commission shall conduct a preliminary investigation if the allegations constitute judicial misconduct. The Complainant submits this Complaint and states that said Complaint against whom the Complaint is made constitutes judicial misconduct of an extreme and egregious nature and that said misconduct is under the jurisdiction of the Judicial Qualifications Commission ("JQC"). As further alleged below, the conduct complained of is prejudicial to the administration of justice such that it brings the judicial office into immediate disrepute.

## STATEMENT OF FACTS

Judge Brian Amero, acting Chief Judge of the Henry County Superior Court for the Flint Judicial District has engaged in and are engaged acts including but not limited to tyrannical partiality under color of his office, using deliberate means to avoid the due course of proceeding of law constituting a pattern of corruption and misconduct of a high and serious nature that is incompatible with public trust and confidence placed in him as follows;

(I) (a)(b)(c)(d) ......**Acts involving Complainants Modification of Custody case**......pgs. 3-4

(II) (a)(b)(c) ............ **Acts involving Complainants Open Records suit**............pgs. 4-5

(III) (a)(b)(c) .... **Acts involving Complainants presentment of Writ of Habeas**....pgs. 5-6

(IV) (a)(b)............**Acts involving Complainant's lawful direct appeal**...............pgs. 6-7

(V) (a)(b).........**Henry County Superior court officials refusals to communicate**.....pgs. 7

(VI) ...................................... **Canon Rule Violations** ...................................... pgs. 8-9

(VII) .............................................. **Conclusion** .................................... pgs. 9

**(I)**    **Falsifying records and Child Custody proceedings and refusal to disqualify.**

**Ref: Case No. SUCV-2021-0700**

(a)    Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of;
falsifying proceedings and documents recorded on public record by stating in a modification of
custody proceeding on a recorded document in the case no. above, mainly a Child Support
Addendum ("Support Order") that "**the action was a modification action**" and "**that the
parties agree that an income deduction is not immediately necessary**" when (1) the action
was not a modification of custody action and (2) the parties collectively or individually never
agreed during or following the modification of custody hearing that an income deduction order
was not immediately necessary because the custody action was neither a modification of child
support action in which the parties due process rights of notice were afforded to them and no
Petition to Modify Child Support was filed on the court record.

(b)    Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of;
individually and/or in conspiracy with others falsifying a "Support Order" to (1) correct nunc pro
tunc an 2019 income deduction/enforcement order, in which Complainant was a party, that Brian
Amero knew or should have known was void to (2) utilize such falsified Support order to avoid
civil and financial liability from prior illegal/void enforcement (3) use such falsified Support
Order as a means to incarcerate Complainant at a later date in retaliation for his possible filing of
a lawsuit against Brian Amero and his co-conspirators and (4) utilize such falsified support order
to incarcerate Complainant to effectuate a subsequent goal affecting Complainants safety and
security to avoid civil and criminal liability.

(c)    Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of;
failing to *immediately* determine the prerequisites of whether his recusal would be warranted and

failing to recuse when presented with Complainant's recusal motion on August 10th, 2021 when he knew that he had a bias or prejudice and used such time in order to (1) correct nunc pro tunc an 2019 income deduction/enforcement order, in which Complainant was a party, that Brian Amero knew or should have known was void to (2) utilize such falsified Support order to avoid civil and financial liability from prior illegal/void enforcement, (3) use such falsified Support Order as a means to incarcerate Complainant at a later date for retaliation in his possible filing of a lawsuit against Brian Amero and his co-conspirators and (4) utilize such falsified support order to incarcerate Complainant to effectuate a subsequent goal affecting Complainants safety and security to avoid civil and criminal liability.

- Witnesses to allegations of Section (1)(a) – Plaintiff, Tyarielle Patterson – (727) – 953 – 0869
- Other evidence can be found on the court record, as in no Petition to Modify Support placed on the court record in case no referenced above.

## (II) Acts involving Complainants Open Records suit
### Ref: Case No. SUCV-2021-1579

(a)     Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of; during the pendency of Complainants Open Records suit in the above case no., failed to afford Complainant equal protection and follow prescribed law pursuant to O.C.G.A. § 9-15-2(d) by substantially and unreasonably delaying a ruling of the merits of Complainant's Open Records lawsuit for more than 75 days by (2) failing to enter an appealable order pursuant to O.C.G.A. § 9-15-2(d) allowing filing to ensure the issue of Complainant's indigence did not affect a decision on the merits regarding whether any issue of law or fact could be granted in Complainant's Open Records lawsuit and engaging in a pattern and practice of bias and prejudice against litigants who filed Complaints with paupers affidavits pursuant to O.C.G.A. § 9-15-2(d) by substantially

and unreasonably delaying a ruling regarding the merits of said Complaints until the issue of
indigence was ruled on.

(b)      Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of;
refusing to *immediately* recuse himself in Complainants Mandamus action under the Georgia
Open Records act against the *City of Hampton* when confronted with a "Motion to Recuse" on
August 10th, 2021 in case no. SUCV-2021-1579 docket no. 34), despite the fact that he was
engaged in conduct which his impartiality might reasonably be questioned or in which he had a
personal bias or prejudice concerning the Complainant due to his acts and extrajudicial acts of
(1) failing to respect and comply with the law during the pendency of Complainant's Open
Records lawsuit and (2) having a predetermined motive to falsify a Support order in
Complainant's Custody Modification action to avoid civil and financial liability as stated in
Section (1).

- Evidence exists as to the allegations herein and can be found on the court record in the case no. referenced above. To wit; no appealable order was entered prior to the issue of Complainant's hearing on the issue of his indigence pursuant to O.C.G.A. § 9-15-2(d).

## (III)   Acts involving Complainants presentment of Writ of Habeas

**Ref: Presented to Henry County Clerk Gloria Banister and on July 23rd, 2021 and followed up with Denise Henderson regarding Brian Amero's issuing of a Writ**

(a)      Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of;
aided and abetting and conspiring with others who had knowledge of Complainant's appeals
from a conviction in the Hampton Municipal court and a Writ of Habeas presented to court
clerks on July 23rd, 2021, but engaged in acts with others to avoid the immediate filing of said
Writ of Habeas and conceal Complainant's Writ of Habeas from the court record (1) in order to
prevent Complainant from *seeking review* of his conviction arising out of the Hampton

Municipal Court and Brian Amero had a tacit understanding with others to deliberately avoid the issue of Complainants Writ of Habeas presented to court clerks to prevent review and possible reversal of Complainant's city court conviction. Said Writ is currently in the possession of Henry County Court clerks office and as of to date, not filed. At the time of Complainant's presentment of said Writ of Habeas Complaint, Complainant was not made aware of any filing fees to be paid or any other defects in his bringing said **Writ of Habeas Complaint to the offices of the clerk on July 23rd, 2021.**

- Evidence exists as to the allegations made herein to wit; The Henry County Superior court is in possession of Complainants Writ of Habeas documents and refused to file or currently answer any questions surrounding the Writ. Evidence exists which are facts, and to each telephonic communication, from which a fact can infer that Brian Amero had a tacit understanding or would be a willing participate in the avoiding of Complainant's review of his City court conviction by Amero's avoiding or failing to issue Writ.

**(IV)  Acts Involving Complainant's Direct Appeal and the refusals to transmit the trial court record to appellate court clerks for docketing and review by appellate Justices**

(a)  Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of; Failing to ensure his staff did not engage in bias or prejudice against the Complainant and engaging in conspiracy with his court staff Danna Yu (Amero's Law Clerk) & Suzette Gray (Amero's Calendar Clerk) and Henry County court clerk Gloria Banister (Henry appeals court clerk) and had a tacit understanding with said court officials and a close nexus to Amero's act of falsifying Support records (1) **to delay, refuse or stall Complainant's lawful direct appeal filed as Amended on December 7th, 2021** which included a paupers affidavit by failing and refusing to treat said paupers affidavit as a "supersedes to court costs" and delaying the filing of said direct appeal until Brian Amero GRANTED said paupers. See O.C.G.A. §§ 5-6-46, 5-6-47 in which Amero's "Falsified Support Order" and "Relocation order" were a subject of said direct appeal.

(b)      On December 7th, 2021, Arnold filed an Amended Notice of Appeal which included a

paupers affidavit in response to billing costs related to such appeal. Officials within the Henry

County clerks office did not file said paupers affidavit until March 18th, 2022. Said appeal has

since been delayed and stalled.

(c)      Suzette Gray caused Complainant's paupers affidavit filed concurrent with his appeal to

be mailed back to Complainant's address and stated thereon said mailing "lacking information".

Suzette Gray stated telephonically to Complainant's that his paupers affidavit was missing

information and had to be signed and GRANTED by Brian Amero before Complainants appeal

could be sent to the appellate court clerks for review contrary to O.C.G.A. §§ 5-6-46, 5-6-47.

(d)      Danna Yu stated to Suzette Gray that Complainant's paupers affidavit was missing

information.

(e)      Gloria Banister refused to transmit the record to appellate court clerks for review and

stated telephonically to Complainant's that his paupers affidavit had to be signed and

GRANTED by Brian Amero before Complainants appeal could be sent to the appellate court

clerks for review contrary to O.C.G.A. §§ 5-6-46, 5-6-47.

(f)      Brian Amero, Suzette Gray, Danna Yu and Gloria Banister all engaged in conspiracy to

deprive Complainant of his lawful direct appeal to prevent the reversals of a falsified "Support

Order" and biased "Relocation Order" that caused the removal of Complainant's Child across

state lines without due process of law.

- Evidence also exists as to each telephonic communication, mainly on 1/19/2022, and can be found on the
court record as to the proof of the allegations made herein, to wit; The paupers affidavit/document which is
on its face reasonably a duplicate of a previous paupers affidavit/document filed in Complainant's Open
Records suit (that did not lack information) is currently on the court record in case no. SUCV-2021-0700 and
said Appeal from falsified Support Orders and Biased custody orders has been delayed and stalled.

**(V)** **Brian Amero's court staff and Henry County clerk officials refusals to Communicate with Complainant concerning any open cases in said court.**

(a)     Judge Brian Amero while acting as Chief Superior Court Judge engaged in conduct of; Failing to ensure his staff did not engage in bias or prejudice against the Complainant. (1) Complainant contacted Suzette Gray on March 31st, 2022, and Suzette Gray referred Complainant to the county attorney to answer any questions regarding any open cases in which Complainant had an interest depriving Complainant of access to the courts in the form of communication. Henry County Superior court clerk John Teague, when given the name of Complainant also referred Complainant to the county attorney to answer any questions concerning any pending cases in which Complainant has an interest which includes Complainants modification of Custody and the continued delaying of his direct appeal.

It appears the Henry County Superior court is engaged in acts of deliberately depriving me telephonic communication – access to the courts and said officials are members of Brian Amero's court staff mainly Suzette Gray.

- Evidence also exists as to each telephonic communication with Suzette Gray. Emails sent to the county attorney has gone unresponsive for a period of more than 4 days and Complainant is currently being deprived of telephonic communication – access to the courts by Henry County court clerks.

**(IV)**   **Canon Rule Violations**

As it relates to each of the above allegations in Section I, II, III, IV, & V and each subsection therein, Judge Brian Amero has violated **Canon 1.1-1.2 "by failing to respect and comply with the law and engaging in acts that diminishes public confidence in the judiciary causing injury to the system of government under the law by failing to act in a manner at all times that promotes public confidence in the independence, integrity, and impartiality of the judiciary."**

As it relates to each of the above allegations in Section I, II, III, IV, V and each subsection therein, Judge Brian Amero has violated **Canon 2.2, 2.5, 2.6, 2.7, 2.11, "by engaging in conduct contrary to performing the duties of Judicial office Impartially, Competently and Diligently by failing to dispose of all judicial matters fairly, promptly and efficiently that creates in reasonable minds a perception that the Judges ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired, by failing to perform judicial duties without bias or prejudice including the performing of judicial and administrative duties, failing to accord to Complainant the right to be heard according to law, failing to hear matters assigned to him, and by failing to recuse himself in any proceeding in which his impartiality might reasonably be questioned."**

---

### (V)   Conclusion

Complainant states that said Complaint alleges and constitute serious acts of judicial misconduct that falls under the jurisdiction of the Judicial Qualifications Commission ("JQC") and that if true warrants a preliminary investigation into the allegations set forth in the Complaint. Complainant requests that the JQC finds that this Complaint sufficiently merits a preliminary investigation into the allegations of judicial misconduct of the Complained of Judge and after its full investigation into the validity of the allegations that the JQC seek the ultimate sanction for judicial misconduct by removing the Complained of judge from office with a prohibition on the judge's seeking or holding judicial office in the future due to the serious nature of the multiple of allegations and the diminishing of public confidence regarding his duties to act in the best interests of children, the individual rights of litigants, and to perform the duties of his office impartiality to promote public confidence in the integrity of the judiciary.

Dated 12/9/2021 – as Amended 4/6/2022                    Deandre C. Arnold

# EXHIBIT G

("Dismissal of Judicial misconduct complaint | 2 pgs.")

Judicial Qualifications Dismissal of Plaintiff's Judicial Misconduct
Complaint on 12/28/2022



**Judicial Qualifications Commission**
**State of Georgia**
Charles Boring, Director
1995 North Park Place SE | Suite 325
Atlanta, GA 30339
404.558.6940

December 28, 2022

**CONFIDENTIAL – TO BE OPENED**
**BY ADDRESSEE ONLY**

**VIA U.S. MAIL**

Mr. Deandre Arnold
5420 Riverdale Rd, Apt D15
Atlanta, GA 30349

          Re:  Complaint No. 2021-543

Dear Mr. Arnold,

          The Judicial Qualifications Commission has reviewed the above-referenced complaint which you submitted against Judge Brian Amero.

          The disciplinary system of the Judicial Qualifications Commission serves many purposes: to protect the public; to promote public confidence in the integrity, independence, and impartiality of the Georgia judiciary; and to encourage judges in Georgia to maintain high standards of ethical conduct both on and off the bench. One of the most important ways the Commission accomplishes its mission is through our review of complaints, and if warranted, the subsequent investigation and prosecution of allegations of judicial misconduct.

          Judicial misconduct involves the willful or persistent violation of the provisions contained in the Georgia Constitution, statutes, or the Georgia Code of Judicial Conduct by a person holding judicial office, one authorized to perform judicial functions, or a judicial candidate, at the time of the offense. If, pursuant to Rule 17 of the Judicial Qualifications Commission of Georgia, the Director's initial review of a complaint indicates a violation or potential violation of these rules, a preliminary investigation will be conducted.

          Some allegations, even if true, do not rise to the level of judicial misconduct. For example, as a general rule, complaints about a judge's rulings (e.g., decisions relating to the

introduction or exclusion of testimony or evidence at trial, bond setting, the issuance of arrest or search warrants, contempt of court proceedings, ex parte emergency relief, habeas corpus writs, temporary orders relating to custody, visitation, or child support, etc.) are not subject to review by the Commission, which has no authority to intervene in a court case or change a judge's rulings. Since the Commission cannot act as an appellate court, complaints relating to a judge's discretionary rulings will, in most cases, be dismissed for failure to allege judicial misconduct.

After reviewing and evaluating the information you submitted, the Director has determined that the information provided in your complaint does not identify an allegation which amounts to a violation of the Code of Judicial Conduct. Child custody modification determinations are discretionary rulings do not, in and of themselves, amount to violations of the Code of Judicial Conduct. In some cases, a judge's discretionary rulings may be suitable issues to be raised on appeal. Additionally, statements of opinion, speculative assertions and conclusory allegations do not constitute facts and are not sufficient to warrant further investigation. Accordingly, and pursuant to Rule 17 of the Judicial Qualifications Commission of Georgia, the Director has dismissed the above-referenced complaint.

Sincerely,

Charles P. Boring
Director
Judicial Qualifications Commission

CPB/yk

EXHIBIT H

("Request for Reconsideration of Dismissal of Judicial misconduct complaint | 10 pgs.")

(Attached denial letter – 1 pgs.)

11 pages

**Name:** Deandre Arnold
**Date:** 1/5/2023                                    **Judicial Complaint No:** 2021-543

## COMPLAINANTS RECONSIDERATION TO INVESTIGATE PANEL OF DIRECTORS DISMISSAL OF COMPLAINT

Complainant submits this Reconsideration of the Directors dismissal of his Judicial

Complaint to the Investigative Panel and pursuant to Rule 17 of the Rules of the Judicial

Qualifications Commission of Georgia ("JQC") "... the director shall dismiss the complaint,

subject to reconsideration by the Investigative Panel."

### I.     Introduction

On December 9th, 2021, the Complainant submitted a Judicial Complaint against judge

Brian Amero for egregious acts of judicial misconduct.[1] On December 28th, 2022, the Director

dismissed the Complainants Judicial Complaint in stating that, "[C]hild Custody modification

determinations are ***discretionary* rulings [which] do not, in and of themselves, amount to

violations of the Code of Judicial Conduct**." Moreover, the Director stated that, "[C]omplaints

relating to **a judge's *discretionary* rulings will, in most cases, be dismissed** for failure to allege

judicial misconduct."

The Investigate Panel of the JQC shall reconsider the Judicial Complaint lodged against the

above state official because the facts alleged in the Judicial Complaint **are not *discretionary***

**decisions in which the Judge could lawfully act under the laws of the State of Georgia or**

**under the Constitution of the State of Georgia**. Wherefore, as further alleged below the

Complainant states that his Judicial Complaint alleges acts of Judicial Misconduct separate and

distinct from discretionary decisions, and a preliminary investigation shall be conducted.

---

[1] Complainant Amended this Complaint on April 9th, 2022. In addition, the Complainant also received no mailing, notices or any such physical corresponding documentation as required regarding this Judicial Complaint until December 28th, 2022.

## II.    Complaint alleges Allegations of Misconduct

Complainant alleged 5 (V) Counts below against the above named official and each count constitutes acts of judicial misconduct that are not discretionary acts or decisions in which a Judge has discretion to make a "judge's ruling." The Investigative Panel shall reconsider whether each count and the Directors determination of *discretionary* acts not failing within the purview of the JQC. The Investigative Panel shall consider in its reconsideration previous JQC reports. For instance, the report against Judge Kenneth E. Fowler Docket No. 09-17 in which the JQC brought formal charges because, "he improperly stated to criminal defendants... that the burden of proving their innocence rested with them" and that Judge Fowler violated, "O.C.G.A. § 16-1-5, by failing to understand and apply the proper legal standard for a finding of guilt in criminal matters." (Count one and five) Additionally, the JQC found that the same judge "issued court orders prohibiting Sheriffs from awarding "good time" credits" and "without lawful authority, disposed of criminal matters... outside the scope of his authority." These acts above can be fairly stated to be within the judge's discretion that constituted misconduct. Whereas as further alleged below the Complainant Complaints alleges acts that were neither in the discretion of the Judge to act or was in his discretion to act but he deliberately failed to do so, and those acts constituted egregious judicial misconduct that the JQC has full authority to discipline such judge.

Moreover, the Director also stated that "issuance of *arrest warrants*" are not subject to review however, the Report of Disposition against Judge Brandon Heath (Complaint Nos. 2020-219 and 202-278 | S21Z0649) resulted in the JQC commencing an investigation into "[W]hether Heath improperly issued *arrest warrants*..." (Id. ¶ pg. 1) Because of these differences prescribed in the dismissal of the Complainants Complaint and recent JQC reports, the Investigative Panel shall reconsider the Directors dismissal finding allegations of Judicial Misconduct.

III.    **Falsifying Records and Child Custody Proceedings and Refusal to disqualify**

1)  **Judge Falsifying Records and Child Custody Proceedings and Refusal to disqualify**.

- Complainant stated in his Complaint that the above-named judge, "[e]ngaged in conduct of; falsifying proceedings and documents... mainly a Child Support Addendum... when... *no Petition to Modify Child Support* was filed on the court record." Further, that the "parties individually or never agreed... that an income deduction order was not immediately necessary." (Complainants Judicial Complaint "Jud. Com." ¶ Pg 3 Section I subsection a.)

The Investigative Panel shall reconsider the Directors dismissal and find judicial misconduct within the Complainants Judicial Complaint Section 1 *section a* because **(1)** a Judge has no discretion to make a **modification** of any Child Support orders absent a *Petition to Modify Child Support* filed on the court record. As such, Complainant alleged an act of falsifying documents and proceedings in violation of Georgia law. *O.C.G.A.* § 16-10-20, O.C.G.A. § 45-11-1. These acts cause for a preliminary investigation to conduct interviews and examine evidence of whether (1) The Child Support order and proceeding was falsified because the "record" reflects no Petition to Modify Child Support filed by any of the parties and whether the Complainant's witness, Tyarielle Patterson (The Plaintiff in the custody action) will corroborate the Complainants claims that they never alleged an income deduction order was necessary because the modification of custody action was never a Child Support modification proceeding.

A.  The Investigative Panel shall find that the Judge's acts constitute misconduct and violate **Canon Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing to respect and comply with the law and engaging in acts that diminishes public confidence in the judiciary causing injury to the system of government...and failing to act in a manner at all times...promote confidence in the... judiciary."

2) **Judge Falsifying Records and Child Custody Proceedings and Refusal to disqualify in** *conspiracy* **to retaliate against the Complainant by unlawful incarceration.**
   - The Complaint alleges the named judge "[e]ngaged in conduct of; *individually and/or* in *conspiracy*... falsifying a Support order... to correct nunc pro tunc a 2019... enforcement order... that Brian Amero **knew was void**... to use such falsified order as a means to incarcerate Complainant at a later date in retaliation for his possible filing of a lawsuit against Brian Amero and his coconspirators..." (Complainants Judicial Complaint "Jud. Com." ¶ Pg 3 Section I sub*section b*)

The Investigative Panel shall reconsider the Directors dismissal and find judicial misconduct within the Complainants Judicial Complaint in Section 1 *section b* because it alleges **(1)** the motives to falsify the Child Support Addendum and proceeding in that it was done so **(2)** in conspiracy to incarcerate Complainant in retaliation for a possible suit filed against the judge and his co-conspirators, the **(3)** evidence can only be examined, and interviews conducted at the preliminary stage of the proceedings and **(4)** a conspiracy is not discretionary. At this stage of the investigation, according to Rule 17, **if the information raises allegations that would constitute misconduct,** *if true***, the Director shall conduct a preliminary investigation**. As such, Complainant alleged an act of a sitting judge falsifying documents and proceedings to correct nunc pro tunc a 2019 enforcement order that Brian Amero knew was void in violation of Georgia law in Conspiracy to Commit False Imprisonment against a Georgia litigant. *O.C.G.A.* § 16-10-20, § 45-11-1, § 16-4-8, § 16-5-41. These allegations, if true, constitute misconduct which requires further interviews and examination of evidence to determine whether grounds exist to believe "facts" that the Child Support Order was falsified in order to **(1)** correct a void 2019 enforcement order that Brian Amero knew was void to commit an act of false imprisonment.

Moreover, Complainants statements nor JQC rules support a non-finding of misconduct due to conclusory allegations. The facts are general facts which can be proven in the preliminary stage.

A.  The Investigative Panel shall find that the Judge's acts constitute misconduct and violate **Canon Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing to respect and comply with the law and engaging in acts that diminishes public confidence in the judiciary causing injury to the system of government…and failing to act in a manner at all times…promote confidence in the… judiciary."

3) **Judge Brian Amero failed to "immediately" determine the perquisites of Complainants recusal motion.**

- The Complaint also alleged judicial misconduct in that the named judge "[e]ngaged in conduct of; *failing to immediately* determine the prerequisites of whether his recusal would be warranted and failing to recuse when presented with a recusal motion when he knew that he had a bias or prejudice and used such time in order to… [falsify] a Support order as a means to incarcerate Complainant at a later date. (Complainants Judicial Complaint "Jud. Com." ¶ Pg 3-4 Section I subsection c.)

The Investigative Panel shall reconsider the Directors dismissal and find judicial misconduct within the Complainants Judicial Complaint in Section 1 *section c* because, "[U]SCR 25.3 **does not authorize a discretionary determination** on the part of the trial judge presented with a motion and affidavit to recuse." *MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012*. Therefore, Brian Amero's **(1)** failure to immediately recuse when he knew he had an interest in the outcome (bias or prejudice) and **(2)** his failing to immediately recuse in order to use such time to falsify a Child Support record constitutes misconduct, "in failing to recuse himself in any proceeding in which his impartiality might reasonably be questioned." Because a motion to recuse is not a discretionary act the Directors dismissal of the Complaint for discretionary decisions should be reconsidered and the facts alleged against the Judge as a whole should be examined in a preliminary investigation.

A. The Investigative Panel shall find that the Judge's acts constitute misconduct and violate Canon **Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing to respect and comply with the law and engaging in acts that diminishes public confidence in the judiciary causing injury to the system of government…and failing to act in a manner at all times…promote confidence in the… judiciary… in failing to recuse himself in any proceeding in which his impartiality might reasonably be questioned."

---

## IV.   ACTS INVOLVING COMPLAINANTS OPEN RECORDS SUIT

### 1)  Judge substantially delayed ruling on the merits of Complainants Open Records suit

- Complaint also alleged judicial misconduct in that the named judge "[e]ngaged in conduct of; *failing to immediately* determine the prerequisites of failing to… ensure the issue of Complainants indigence did not affect a decision on the merits… in Complainant's Open Records lawsuit… and engaging in a pattern and practice of bias and prejudice against litigants who file Complaints with paupers affidavits pursuant to O.C.G.A. 9-15-2(d) by substantially delaying a ruling regarding the merits of said Complaints until the issue of indigence was ruled on." (Judicial Complaint "Jud. Com." ¶ Pg 4-5 Section II subsection a)

The Investigative Panel shall reconsider the Directors dismissal and find judicial misconduct within the Complainants Judicial Complaint in Section II of *section a* alleges **(1)** a complete failure to engage in discretionary acts by his failing **(2)** ensure the issue of Complainants indigence did not affect a decision on the merits in Complainant's Open Records lawsuit pursuant to O.C.G.A. § 9-15-2(d) in which he was a presiding judge and alleges **(3)** a pattern and practice of bias and prejudice against litigants who file Complaints with paupers affidavits pursuant to O.C.G.A. § 9-15-2(d) by substantially delaying a ruling regarding the merits of said Complaints until the issue of indigence was ruled on. At this stage of the investigation, according to Rule 17, **if the information raises allegations that would constitute misconduct, *if true*, the**

**Director shall conduct a preliminary investigation**. As such, Complainant alleged acts of a

sitting judge that discriminated against him in a proceeding in which he was a Judge because of

his indigence and who is currently engaged in a pattern and practice of bias and prejudice against

indigent litigants who file Complaints with pauper's affidavits and does so by substantially

delaying a ruling regarding the merits of said Complaints until the issue of indigence are ruled on

in direct violation of Georgia statute O.C.G.A. § 9-15-2(d). Complainant complaints states

judicial misconduct as with other complaints discriminating because of socioeconomic status.

A. The Investigative Panel shall find that the Judge's acts constitute misconduct and violate

   Canon **Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing

   to respect and comply with the law and engaging in acts that diminishes public

   confidence in the judiciary causing injury to the system of government…and failing to

   act in a manner at all times…promote confidence in the… judiciary…"

---

2) **Judge Brian Amero failed to "immediately" determine the perquisites of Complainants recusal motion**

   - Complaint also alleged judicial misconduct in that the named judge
     "[e]ngaged in conduct of; *failing to immediately* recuse himself in
     Complainants Mandamus action under the Georgia Open Records Act…
     despite the fact that he was engaged in conduct in which his impartiality might
     reasonable be questioned or… his acts… of failing to respect and comply with
     the law during the pendency of Complainant's Open Records lawsuit.
     (Complainants Judicial Complaint "Jud. Com." ¶ Pg 5 Section II subsection b)

The Investigative Panel shall reconsider the Directors dismissal and find judicial misconduct

within the Complainants Judicial Complaint in Section II *section b* because, "[U]SCR 25.3 **does**

**not authorize a discretionary determination** on the part of the trial judge presented with a

motion and affidavit to recuse." *MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 -*

*Ga: Supreme Court 2012*. Therefore, Brian Amero's **(1)** failure to *immediately* recuse despite the

fact that he was engaged in conduct in which his impartiality might reasonable be questioned for his acts of failing to respect and comply with the law pursuant to O.C.G.A.§ 9-15-2(d) during the pendency of Complainant's Open Records lawsuit can be fairly stated judicial misconduct because, "in failing to recuse himself in any proceeding in which his impartiality might reasonably be questioned."

A. The Investigative Panel shall find that the Judge's acts constitute misconduct and violate Canon **Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing to respect and comply with the law and engaging in acts that diminishes public confidence in the judiciary causing injury to the system of government...and failing to act in a manner at all times...promote confidence in the... judiciary... in failing to recuse himself in any proceeding in which his impartiality might reasonably be questioned."

## V.    ACTS INVOLVING COMPLAINANT'S PRESENTMENT OF WRIT OF HABEAS

Complainant states that the Complainants Judicial complaint Section III subsection a speaks for itself and should be reconsidered, evaluated thoroughly and reviewed by the Investigative Panel to form a conclusion surrounding the circumstances including the full claims as a whole in Complainants complaint in reconsidering whether this section of Complainants complaint constitute misconduct.

(**Note**: Complainant states that he has learned after the Amending of his Judicial Complaint to the JQC that the Henry County Clerk's Office has destroyed or concealed the presentment of his Writ of Habeas complaint and Complainant believes this was at the direction of Brian Amero.)

A. The Investigative Panel shall find that the Judge's acts constitute misconduct and violate

Canon **Rule 1.1-12, Canon Rule 2.2, 2.5, 2.6, 2.7, and 2.11** and for overall his, "failing

to respect and comply with the law and engaging in acts that diminishes public

confidence in the judiciary causing injury to the system of government...and failing to

act in a manner at all times...promote confidence in the... judiciary... in failing to recuse

himself in any proceeding in which his impartiality might reasonably be questioned."

---

## VI.   ACTS INVOLVING COMPLAINANT'S DIRECT APPEAL AND THE REFUSALS TO TRANSMIT THE TRIAL COURT RECORD TO APPELLATE COURT CLERKS FOR DOCKETING AND REVIEW BY APPELLATE JUSTICES

1) Judge Brian Amero and his court staff engaged in bias and prejudice.
   - Complaint also alleged judicial misconduct in that the named judge "[e]ngaged in conduct of; failing to ensure his court staff did not engage in bias or prejudice against the Complainant and engaging in conspiracy with court staff... [who] had a tacit understanding with said court officials and a close nexus to Amero's act of falsifying support records to delay... stall Complainants lawful direct appeal filed as Amended on December 7th, 2021 which included a paupers affidavit by failing to treat said paupers affidavit as a "superseades to court costs" and delaying the filing of said direct appeal until Brian Amero GRANTED said paupers in violation of O.C.G.A. § 5-6-46, § 5-6-47.

The Investigative Panel shall reconsider the Directors dismissal and find judicial

misconduct within the Complainants Judicial Complaint in Section VI *section a* because

Complainant alleged facts and stated that (1) Suzette Gray (Brian Amero's court staff) caused

Complainants paupers affidavit to be returned to a mailing address for an alleged lacking of

information on the paupers affidavit as stated by Donna YU (Brian Amero's law clerk) and

stated that it had to be GRANTED by Brian Amero before Complainants appeal could be sent to

appellate courts contrary to O.C.G.A.§§  5-6-46,47, (2) Gloria Banister (Henry Appeals clerk)

also stated that Brian Amero needed to GRANT the paupers before his appeal could be filed. Moreover, on or after the submission the judicial Complaint Brian Amero signed and Granted the exact pauper's affidavit that was purportedly returned to Complainant for lack of information. Complainant stated that Brian Amero, Suzette Gray, Danna Yu and Gloria Banister all engaged in conspiracy to deprive Complainant of his lawful direct appeal and gave facts to support circumstantial evidence of a scheme **involving identical reasons for the unlawful delay of Complainants direct appeal** to overturn Brian's Amero's Final Order which incorporated a falsified support order.

The Complainant reminds the JQC that "because conspiracies are secretive by nature... [you] must often rely on inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Geovanni, Court of Appeals, 11th Circuit No. 19-11044 (2022).* Failure to consider the facts given rise to circumstantial evidence of a *scheme* unlawfully deprives the Complainant of lawful judicial inquiry into the conduct of a judge who has committed egregious misconduct in violation of not only canons but Georgia criminal law.

## VII. The Complainant also states that the remainder of his Complaint speaks for itself and requests that the Investigative Panel

CONCLUSION

The Complainant requests that due to the dismissal of the Complainant's Judicial Complaint, he requests that the Investigative Panel of the JQC review this request to Reconsider the Directors dismissal and find FULLY or PARTIALLY on all counts that the Complaint alleges acts of Judicial Misconduct and conduct a preliminary investigation.

Date: 1/5/2023



Judicial Qualifications Commission
State of Georgia
1995 North Park Place SE | Suite 325
Atlanta, GA 30339

January 23, 2023

<u>CONFIDENTIAL - TO BE OPENED
BY ADDRESSEE ONLY</u>

<u>VIA U.S. MAIL</u>

Mr. Deandre Arnold
5420 Riverdale Rd. Apt D15
Atlanta, GA 30349

Re:  Complaint No. 21-543 – Request for Reconsideration Pursuant to JQC Rule 17.A.

Dear Mr. Arnold,

On January 20, 2023, the Judicial Qualifications Commission's Investigative Panel met for a regularly scheduled monthly meeting and reviewed the above-referenced complaint and your Request for Reconsideration pursuant to JQC Rule 17.A.  After review of the complaint and your Request for Reconsideration, the Investigative Panel voted to deny your Request for Reconsideration.

The Investigative Panel's decision is final, and the above-referenced complaint is considered closed.  This concludes and completes this matter.

Sincerely,

Courtney Veal
Deputy Director with Delegated Powers of Director
Judicial Qualifications Commission

CMV/yk

EXHIBIT I

("Exhibit I – Agency Corruption Complaint" | 15 pgs.)

Supplemental Agency Corruption Complaint Received by Georgia State
Inspector General's Office on 3/1/2023

Mr. Deandre C Arnold
**Mailing Address**: c/o 7757 Rutgers Circle Fairburn Georgia 30213
**Telephone**: 470-514-3097 | **Email**: Dresmailbox@gmail.com

March 1st, 2023

**Re:**

Office of State Inspector General
Attn: Scott McCafee | State Inspector General
2 Martin Luther King, Jr. Drive SW
Atlanta, GA. 30334                    **Re:** Amended Complaint with Inspector General

Dear Inspector General,

This correspondence is in reference and a **Supplement Complaint** to the initial Complaint filed with the above confirmation number received on January 31st, 2023. This Complaint is being filed to alert the Inspector General of an existential threat to public confidence arising from the affirmative acts of state officials employed within the executive who in concert with other state officials/officers who have abandoned their oaths and usurped the public office and trust for personal and pecuniary gain for oneself and others. Below are a summary of allegations identifying state Agencies and its officers, officials and employees who have weaponized Georgia's state agencies as an instrument of Oppression and Tyranny for pecuniary gain and to obstruct justice and lawful redress of grievances in official proceedings currently pending within Federal and state court in order to avoid financial liabilty. Moreover, by way of the acts and omissions of these agencies and those in concert with them entail that they believe they will avoid all accountability for their unlawful usage of the state agency so long as they arrest the target of their conspiracy while unlawfully extracting the funds of the Complainant to dwindle his economic liberty for pecuniary gain of themselves and others. Further, any unlawful incarceration will not in of itself automatically remove liabilty which is why there is reason to ascertain the notion that the main goal to spearhead this unlawful incarceration by usage of the agencies in the executive branch is a part of a larger esoteric goal that involves the assassination of a United States Citizen to avoid liabilty which affects the personal pecuniary interest and that interest of others. Based on the allegations below, the Inspector General has jurisdiction to investigate all claims against the agencies and their officials and to report these acts to other state and federal entities with jurisdiction over any criminal matters that may not be within the purview of the jurisdiction of the Inspector General.

## COMPLAINT OF REASONABLE OF PROBABLE CAUSE OF CORRUPTION OF STATE OFFICERS AND AGENCIES AND ACTS AND OMISSIONS

Deandre Arnold ("Complainant")

| State Agencies Involved | State Employees or Officers of Agencies Involved |
|---|---|
| **State Officer's and political subdivisions Involved Necessary for Investigation of Acts and Omissions of State Agencies** | 1. City of Hampton<br>2. City of Hampton Employees & Henry Clerks.<br>3. Brian Amero (Henry County Superior Judge) |
| Department of Community Supervision ("DCC") (MPOU) Misdemeanor Probation Oversight Unit | 1. Marty Matthews (Chief Probation Officer) |
| Judicial Qualifications Commission | 1. Judicial Qualifications Commission, LLC<br>2. Yosra Khalifa and possibly others |
| Sixth Judicial Administrative Circuit | 1. Dr. William Simmons |
| Georgia Department of Human Services | 1. Jacob Davis (Open Records Officer) |
| Georgia Department of Human Services Division of Child Support Services | 1. Barbara Briley (Assistant District Attorney)<br>2. Chelsea Shelton (Former Child Support Agent)<br>3. Tonisha Jackson (Child Support Agent)<br>4. Stephanie Rollings (Child Support Manager) |
| Governor of the State of Georgia | |

## GENERAL BACKGROUND OF ALLEGATIONS

Mr. Arnold ("Complainant") states that there is probable cause to believe that employees, officials and officers employed within the above agencies acted in concert with other state officers in acts of corruption for pecuniary gain of their state agencies and others. The initial Complaint in conjunction with this Supplemental Complaint establishes that these state officers, employees and officials within the above agencies filed an unlawful contempt proceeding without lawful authority to falsely imprison the Complainant, concealed open records of such proceeding, knowingly and unlawfully enforced collection of monies related to this concerted effort and unlawfully influenced Complainant for pecuniary gain of their agencies and to assist or avoid liabilty for themselves and others whose pecuniary interests were affected by these acts.

## **GENERAL ALLEGATIONS**

### **A. State Officer Brian Amero (Chief judge of Henry County Superior Court)**

Complainant states as more fully alleged below that there is probable cause and
reasonable evidence that Georgia Department of Human Services and Barbara Briley, Assistant
District Attorney for the Department became involved with the acts and omissions of the Brian
Amero, Chief Judge of Henry County Superior Court to avoid his and her liabilty for the
confirmation and filing of an unlawful and void registration and enforcement Child Support
order in the Henry County Superior Court on or around November 18th, 2019 without the
required appearance of the Complainant. Complainant states that Brian Amero falsified a Child
Support Addendum on October 7th, 2021, in case no. SUCV-2021-0700 by disguising such order
as a modification or in the words filed as a result of a modification of child support petition
although the parties never filed a Petition for modification of child support nor requested such in
a prayer for relief and no such petition appears in the record. Complainant states that there is
probable cause to believe that on or around December 1st, 2021 he and Barbara Briley acted in
concert together to file a contempt action against the Complainant although they knew the
enforcement order entered in 2019 was void because, to wit; the Department requested to enter
an "income deduction order" (although was one ordered in 2019) and only did so shortly after
the fabrication of the "Child Support Addendum" by Brian Amero filed on October 7th, 2021
which stated therein such Addendum no income deduction order was immediately necessary.
Complainant states that the Barbara Briley and Brian Amero acted in concert to knowingly file
such contempt action although they knew such enforcement of the support order was unlawful
and did so for the purposes of pecuniary gain of the Department and avoiding financial liabilty
which could affect their pecuniary interests in future proceedings challenging said order and acts.

**B. Georgia Department of Human Services, Division of Child Support Services**

Complainant states as more fully alleged below that there is probable cause and reasonable evidence that Tonisha Jackson and Rhonda Bruten knowingly became involved with the unlawful enforcement of monies against Complainant **(1)** for the pecuniary gain of the Georgia Department of Human Services and **(2)** to affect the economic and pecuniary interest of the Complainant to mitigate his ability to drive legally or defend the Departments unlawful actions in furtherance of the Departments pecuniary interest and **(3)** hid *information* (not records) concerning the unlawfully filed contempt proceeding in furtherance of Barbara Briley and Brian Amero's concerted efforts to avoid financial liabilty affecting their personal pecuniary interests.

Complainant states that there is probable cause to believe that the above acts occurred within the Georgia Department of Human Services by employees, mainly Tonisha Jackson (case worker for the Henry County Child Support office) and Rhonda Bruten (Manager of the local Henry County Child Support office) because these employees deliberately conflated Petitioner's request for case information on or around November 9th, 2022, with an open records request, a separate and distinct request for open records, in order to conceal any basic information concerning Complainants "questions" (not records) regarding any judicial determinations or judicial adjudications in the year of 2022 for Complainant's child support case and that based on these facts there is probable cause to believe that these officials concealed said case information in order to assist or obscure evidence that Brian Amero and Barbara Briley were conspiring to falsely imprison the Complainant or had already did an act to make Complainant more vulnerable to arrest in the action by concealing a warrant, to wit;

Moreover, on July 18th, 2022, and came in contact with a manager Ms. Bruten and thereafter a "new" support agent Toneisha Jackson and notified them that Plaintiff was not a

resident of an address that "notices" of an unlawful enforcement hearing was allegedly mailed to
and was also not a resident that process of service was attempted although Petitioner's name was
placed in the "personally served" section in a summons of process by a Clayton County officer
named Lieutenant Disbegnes. (The Lieutenant corrected this error by mailing back the actual
service and summons to the Department and on captured telephonic statements he stated the
summons and process was mailed back to the Department displaying Complainant was not a
tenant of that address.) Complainant further states on or around July 28th, 2022, the Department,
Rhonda Bruten and Tonisha Jackson had knowledge and notice from the receipt of a mail
document of notice of the unlawful enforcement of the support order entered in 2019 and the
subsequent falsified Addendum (and how it was illegal) which attempted to make the 2019
support order legal or lawful nunc pro tunc, however continued to enforce and demand monies of
Complainant.

## C. Department of Human Services Open Records Officer

There is reasonable evidence to believe that the Georgia Department of Human Services,
by and through Jacob Davis (Open Records Officer for the Department) and Chelsea Shelton
(Child Support case worker) became involved with the acts and omissions of Barbara Briley,
Brian Amero, and the Georgia Department of Human Services generally to avoid financial
liabilty affecting Amero, Brileys and the Department generally, pecuniary interests by
concealing the filing of an unlawful and void enforcement contempt action filed by the
Department on or around December 1st, 2021 at a time a such contempt hearing was purportedly
pending against Complainant. On or around April 28th, 2022, Complainant made open records
request for "*any and all action taken on his child support case no*" and on 5/3/2022, 5/5/2022,
5/9/2022, 5/13/2022, 5/19/2022 and 6/7/2022 Complainant followed up on his 4/28/2022 email

and all requests went ignored or unanswered in violation of the Open Records Act. At no time
did the Department respond to Complainant's emails until the Complainant filed an Open
Records lawsuit against the Department in the Fulton County Superior court case no.
(2022CV370090) in September 13th, 2022. There is reasonable cause to believe that the
Department and Child Support Agent Chelsea Shelton deliberately misrepresented responding to
the Complainant's Open records requests due to defenses and exhibits filed in the Departments
defense in such Open Records suit that fails to show a meeting of the minds between Chelsea
Shelton, the Department and the Complainant ever occurred. (Motion to Dismiss filed on
11/16/2022 exhibit D & E) Moreover, neither does it show, or the Department provides evidence
whatsoever of records related to the pending contempt action filed in December of 2021 that was
pending at the time his records request for "*any and all actions taken on his child support case*"
was pending.

### D.  Office of the Georgia Governor

August 22nd, 2022, John Aldrich of Senator Jon Ossoff's Office submitted a Public
Corruption Complaint on behalf of the Affiant to the Office of Governor Brian Kemp stating
that, "Deandre Arnold… is concerned that his interests have not been properly represented
without our court system due to government corruption." John Aldrich was later told by an
employee (unnamed) within the Governor's office to submit Complainants Public Corruption
Complaint to the Office of Legislative Affairs – an arm of the *General Assembly* – not a
prosecutorial or *investigative* office. The Complainant has reasonable and probable cause to
believe that an employee of the Governor's office deliberately avoided or were influenced or
directed to avoid a Formal Complaint by unknown actors submitted by and through the Senator's

office to avoid alerting the Governor or keeping away from the Governor and his full office

intolerable acts of corruption ongoing in the State of Georgia for the pecuniary gain of others.

# ACTS AND OMMISSIONS OF CORRUPTION AND ABUSE

### A. Brian Amero

On September 24th, 2019, the Division of Child Support Services Department of Human

Services, by and through Barbara Briley filed an out-of-state child support order for registration

and enforcement purposes by contempt against the Petitioner in the Henry County Superior court

case no. SUCV-2019-2651, judge Brian Amero presiding. On the face of the record, it shows

that Complainant was served with the notice of registration and summons in this case. On the

face of the record, it shows that on October 15th, 2019, Complainant filed a special appearance

in response to the registration and enforcement action and within the special appearance stated

"that on November 18th, 2020, in the above-entitled court at the hour of 8:30 a.m... Deandre

Arnold... can be heard." On the face of the record, it shows that neither the Henry County

Superior court nor the Georgia Department of Human Services schedule the matter for hearing

nor give notice to any of the parties of the date, time and place of the hearing that would occur in

**the Henry County Superior Court.** On the face of the record, it follows and shows that the

Henry County Superior court could never consider any challenges regarding jurisdiction or

validity or enforceability of the support order because the court failed to schedule a hearing as

within Petitioner's request "to be heard" within his special appearance notice filed on the court

record five days after service of the action for registration and enforcement. On the face of the

record, it shows that on November 19th, 2019, the court entered an order entitled "Order

Recognizing the Out-of-State Child Support Order that is controlling for enforcement and Order

of enforcement." The enforcement order called for license suspensions, lien offsets, seizure of

bank accounts and an income deduction order by DCSS to be made effective immediately. The 2019 "Order for enforcement" also found Petitioner in arrears of $8098.67 as of June 30th, 2019 and ordered Plaintiff to pay $479.00 per month along with an arrear's payment of $47 per month. actions did not immediately take place. Although the 2019 "order of enforcement" called for immediate enforcement the Department did not immediately enforce any acts such as license suspension, $47 arrears payment, income deduction or arrearages of $8098.67. For instance, **DCSS records will show that the Petitioner's license was not suspended until December of 2020 and that the alleged $8098.67 of arrearages in the 2019 order of enforcement were not included in a July 2020 notice of lien on an injury insurance claim in Complainants child support case and the interception of unemployment insurance payments by the Department did not deduct the purported $47 arrearage in the 2019 order of enforcement.**

Years late, **Brian Amero** would preside over a custody modification action involving the Complainants minor child which Complainant was a Defendant and on October 7th, 2021, as shown on the face of the record, Brian Amero did cause to be filed and entered in such action a Final order denying a disqualification motion filed by Complainant, a relocation request causing his minor child to move across state lines and a falsified Child Support Addendum. On the face of the record, it shows that the fabricated Child Support Addendum stated therein that the action was a "modification" action and that the parties agreed that an income deduction order was not immediately necessary. However, no petition to *Modify* Child Support or prayer filed by the parties in such action can be found on the court record as required by statue. (*See Petry v Romo, 547 S.E.2d 736 (2001)*) Thus, there is prima facie evidence that Brian Amero falsified a court

record and a court proceeding that is absent of any Petition to Modify Child Support or any prayer to modify such support in the custody modification action.[1]

**B. Georgia Department of Human Services, Division of Child Support Services**

Complainant realleges all allegations stated above as if fully alleged herein.

On August 19th, 2019, the Complainant complained to District Manager Yolanda Virden that the Department of Human Services, the Division of Child Support Services were corruptly taking his income without having registered an income deduction order from a support order that originated in the State of Florida. In September of 2019, the Department of Human Services ("Department") by and through their assistant District Attorney Barbara Briley filed an enforcement action against the Affiant while also seeking to register an out of state Child Support order which originated in the State of Florida, Judge Brian Amero presiding. The registration was confirmed, and the enforcement order called for immediate enforcement.

After Brian Amero's act of falsifying court records that stated therein a false entry, to wit; "the parties agree that an income deduction order was not immediately necessary" the Complainant would learn on or around July of 2022 that the Department brought an enforcement contempt action against Complainant in or around December 1st, 2021 and included the same actors who filed the 2019 registration and enforcement action, Barbara Briley and the Judge who confirmed the registration and signed the enforcement order, Brian Amero.

The Department would ask for an additional income deduction order less than 2 months after Brian Amero's falsified support Addendum that stated therein no income deduction order was necessary. Moreover, the Department would not include any of the 2019 arrearages in its

---

[1] Also, a witness to the hearing can be contacted and state that the parties never stated that an income deduction order was not immediately necessary at 727-953-0869 whose name is Tyarielle Patterson, Plaintiff in the action.

December 2021 contempt action for enforcement and only included such arrearages on or around November of 2022 in a captured telephonic call to Rhonda Bruten who stated that the alleged arrearages from the 2019 enforcement order had been included in the alleged arrearages arising accumulated after the 2019 enforcement order.

The Complainant would learn in July of 2022, that on May 11th, 2022 – two days before the Complainant requested to supplement the record for exhibits tendered and admitted in his custody modification action (SUCV-2021-0700) in the Appellate court[2] – the Department, by through Assistant District Attorney Barbara Briley would file a Rule Nisi seeking the Complainant's incarceration for non-payment of Child Support under the December 1st, 2021 contempt action – and had done so by addressing an address that Complainant had changed in case no. SUCV-2021-0700 (in which Brian Amero presided) only days prior to the filing of said Rule Nisi. Upon *information and belief*, the Department may have not known that the address belonged to family members of the Complainant and that Complainant would have never gotten notice if said Rule Nisi was mailed or any purported service of summons.

In conjunction with the acts of corruption and abuse stated generally above, there is also probable cause to believe that this contempt hearing has been utilized unlawfully by employees of the Georgia Department of Human Services in order to ensure a pre-determined outcome within said contempt proceeding occurred by procuring, causing and effectuating that the filing of the contempt action would be presided over by a judge who has a pecuniary interest in the

---

[2] The Complainant requested to supplement the record by motioning the appellate court to order the trial court clerk to transmit an affidavit that was tendered and submitted into evidence at the Final trial of the Final hearing of Complainant's modification case that proved Affiant maintained the majority of child custody in 2020 until June of 2021 and there is probable cause to believe that the Department pursued the Complainant to influence the Complainant to not request such records and influence official proceedings in this state affecting or may affect their pecuniary interests and the Complainant fears their acts.

outcome and/or filed by means of intimidation and threats of unlawful imprisonment in order to intimidate or influence the Complainant who is indeed influenced by such threats to withhold seeking records directly within such custody action or testimony, defense or other object in any other official proceedings in this state.

### C. Georgia Department of Human Services

There is reasonable evidence to believe that the Department concealed the Contempt hearing by secreting records, refusing to respond to records request and omitting a contempt action in such a misrepresentation of a false response in an Open Records lawsuit filed in the Fulton County Superior Court. (2022CV370090) On the dates of 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022, 6/7/2022, the Affiant sent repeated emails to the Georgia Department of Human Services Open Records Officer Jacob Davis and DCSS that went unresponsive more than 7 times over the course of 4 months. Neither record sought were confidential under any state or Federal statute as the records requested were related to "self" and identified the Affiant as the requestor in the information. Nor was any statutory record requested subject to any exemptions or delay under any state or federal statute however said records were either not provided to the Affiant or the DHS Open Records Officer Jacob Davis willfully and knowingly failed and refused to provide the records requested or even acknowledge the Complainant's statutory records requested made to him. Chelsea Shelton deliberately misrepresented responding to the Complainant's Open records requests due to defenses and exhibits filed in their defense in such Open Records suit that fails to show a meeting of the minds between Chelsea Shelton, the Department and the Complainant occurred. Moreover, the Department neither provided evidence whatsoever that they sent records related to the pending contempt action filed in December of 2021. [*See Departments Motion to Dismiss filed 10/17/2021 – case no. 2022CV370090*] The

Office of the Georgia State Attorney General including the **Open Records Mediator Ms. Colangelo** employed by the Attorney General was cc'd in each of these emails but did fail to acknowledge or respond to any emails or requests. Office of the Georgia State Attorney General Open Records Mediator Ms. Colangelo did not mediate any of the requests to DCSS or DHS. An open records lawsuit was filed against the Department in the Fulton County Superior Court on or around September 13th, 2022 (2022CV370090). The Attorney General would be counsel for the Defendants.

Complainant sent emails to the local McDonough Child Support office and Jacob Davis requesting "*any and all records action and records related to his Child Support case*" and each email went unresponsive for **over the course of 4 months. The State Attorney General Chris Carr** was cc'd as a recipient in each of these multiple emails. The Attorney General Chris Carr also received a copy of a prior Public Corruption Complaint entailing certain allegations within this Complaint at the equivalent email and also received such Complaint by mail (*certified mail no. 7021 2720 0000 1548 7530*). Complainant contacted DCSS numerous of times over the course of 3 months telephonically and received no contact or call back whatsoever. Complainant left multiple voicemails on the voice mail machine of Chelsea Shelton who failed and refused to respond or return any calls of the Complainant. Phone records will show that Complainant used the number 4705143097 to contact these offices around these specific times. For a period of 4 months or more, individuals employed with the local McDonough Child Support Office did direct, cause, refuse and avoid all contact with Affiant by refusing to respond or acknowledge any statutory records request, emails, phone calls and voice messages. There is reasonable evidence to believe that Barbara Briley, Chelsea Shelton, Jacob Davis and possibly others employed and not employed or contracted with DCSS specifically knew of specific parameters

of the overall goal to "falsely imprison" the Complainant and knew that their refusal to respond

or acknowledge Complainant's records request or emails for "any and all" case information

related to his Child Support case was in furtherance of the future goal to confine the Complainant

for pecuniary gain and eventually utilize said hearing as a means of intimidate Complainant.

i.  **FALSIFIED SERVICE OF PROCESS:** Relevant to the actions of the Department
    is a falsified service of process document. Complainant learned of a falsified "service
    of process" document that was served by a Clayton County Police Officer Lieutenant
    Desbeignes. Complainant was told by family members who were residences at 5420
    Riverdale Rd. College Park Ga that this document had the name of the Affiant
    "Deandre Arnold" in the "personally served section" although the Affiant was never
    personally served and was dated June 3rd, 2022. Complainant learned through family
    members that the Lieutenant corrected this mistaken error, retrieved the documents
    falsely served on the Complainant and mailed the "Service of process summons and
    documents" back to the local McDonough Office that should show and display that
    "Deandre Arnold is not a resident of that address" (5420 Riverdale Rd). Complainant
    was told by family members that a Rule Nisi had a date of May 11th, 2022 – two days
    before the Complainant asked for "supplemental records" in the Appellate court that
    proved that he maintained the majority of custody over his child during March 2020
    up until June 2021. On July 14th, 2022, the Complainant's family members mailed an
    affidavit to the Department that he was not a resident of 5420 Riverdale Rd.
    Complainant also spoke on captured telephonic statements to child support agents on
    July 18th, 2022, that he was not a resident of the 5420 Riverdale Rd. address.

There is reasonable evidence to believe that while actively avoiding Affiants emails,

voicemails and phone calls, **Chelsea Shelton and others employed with DCSS,** on or around

May 11th, 2022, did retrieve, obtain, procure and send mail to the address of 5420 Riverdale Rd.

Apt D15 College Park Ga 30349 (after Affiant changed this incorrect mailing address in case of

SUCV-2021-0700) in order to act on falsified Child Support order and an unlawful 2019

registration of a support order that the Department knew maintained a legal defect and lacked

valid enforcement authority in order to procure, cause or effectuate the ultimate goal of falsely

imprisoning the Complainant for a second time to avoid liability. Further, while actively

avoiding Complainant emails, voicemails and phone calls, **Chelsea Shelton, Barbara Briley and others employed with DCSS**, on or around the month of May 11th, 2022, did by themselves, directed by others or directed others, by the usage of mail, to send mail envelopes that had displayed thereon the face of the envelope an incorrect return address of 46 Sloan St. McDonough Ga 30252 which was neither the accurate, correct or true mailing address of the local McDonough DCSS office. Because of this act, any "returned mail" to the incorrect address of "46 Sloan St" thereon the face of the envelope could not reach the actual and true address of the local McDonough Child Support office or would reach their offices at a later date which on information and belief was done in order to NOT receive returned mail so that it could not interfere with the collective plan which was concocted to falsely imprison the Affiant in the interests of Barbara Briley and Brian Amero and the Department generally and to do so by obstructing justice and affecting official proceedings by and through a contempt proceeding brought corruptly through a state agency of the Department to influence the Complainant and a predetermined outcome.

## ii.     Intimidation by the Department by contacting family members.

There is also reasonable evidence to believe that while <u>actively avoiding Affiant's emails, voice mails and phone calls</u>, Chelsea Shelton, contacted the telephonic number of a family member of the Complainant which telephonic number she could have not possibly known because it was not provided to her by the Complainant (who never spoke to her) and was not known by anyone else employed within the Department. Chelsea Shelton contacted Shun Walker, (an aunt of Complainant) under the guise of seeking the whereabouts of the Complainant concerning his "Child Support case" when the true purpose of the call was to intimidate the Complainant. There is reasonable evidence to believe that Chelsea Shelton

contacted his aunt's number as a means of intimidation because Chelsea Shelton learned or learned from others whose interest was affected – that Shun Walker's mailing address was placed on pre-arrest warrants filed against Brian Amero and Gloria Banister in the Henry County Magistrate court. The Complainant's family members have also expressed that they fear their safety may be at risk due to Child Support agents contacting family members and Shum Walker can attest that Chelsea Shelton contacted her at a telephonic number that she did not know or could not have known because no one in the Department had Complainant's Aunts number. Complainant has unlawfully made payments under fear and unlawful influence and believes that the Department holds a pre-determined outcome sanctioned by the majority of the state in direction or influenced by state officers who have an adverse pecuniary interest in the successful outcome of a challenge to the unlawful registration and enforcement of a support order.

Complainant states that based on the above acts that there is probable cause to believe that employees, officials and officers employed within the above agencies acted in concert with other state officers in acts of corruption for pecuniary gain of their state agencies and others. This Supplemental Complaint establishes that these state officers, employees and officials within the above agencies did knowingly file an unlawful contempt proceeding without lawful authority in order to falsely imprison the Complainant, did conceal open records requests related to the contempt proceeding and thereafter knowingly and unlawfully enforced collection of monies related to this concerted effort all for pecuniary gain of their agencies and to assist or avoid liabilty for themselves and others whose pecuniary interests were affected by these unlawful acts of the Department's officials, agents, employees and officers.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.**

Date: 3/1/2023

EXHIBIT X – 1

("Exhibit X1 – Plaintiff's Appellate Brief | 30 pgs.")

Filed in the Georgia Court of Appeals on 6/1/2022

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

## CASE NO. A22A1367

---

### DEANDRE ARNOLD
#### Appellant,

### vs.

### TYARIELLE PATTERSON
#### Appellee.

---

## BRIEF OF APPELLANT DEANDRE ARNOLD

---

Note:

This brief was filed in this court on 5/31/2022 at 4:13 p.m. however was rejected for, to wit; "Document does not contain certification of word count. Rules 24(f) and 27(a)." The Appellant corrects such error by limiting this brief to 30 pages and files brief back to the original date of filing. Appellant submits this brief in the event that this court does not extend said timeline for filing such brief for the enumerations mentioned in his Filing(s) filed on 5/27/2022 in this court in the above-styled appeal to wit; "Motion to Stay Filing of Brief or Extend Time to File Brief and Enumeration of Errors" and "Motion For Permission to File second Motion For Reconsideration." Appellant, Deandre Arnold, further reserves his right to waive any Motion's to stay, also reserving the right to Amend said brief in the future.

**This submission does not exceed the word count limit imposed by Rule 24**

# TABLE OF CONTENTS

Table of Contents...........................................................................................................2

Table of Authorities...................................................................................................... 4

Introduction.............................................................................................................. 6

Part one.................................................................................................................... 6

       Statement of the Proceedings below...........................................................................6

       Material Facts Related to the Appeal...........................................................................8

       Statement by Which Each Enumeration was preserved.............................................8

Part two.....................................................................................................................9

       Enumeration of Errors..............................................................................................10

       Jurisdictional Statement..........................................................................................10

Part three ............................................................................................................... 10

       Standard of Review..................................................................................................10

       Argument and Citation to Authorities......................................................................11

I.     The trial court erred in failing to assign the recusal motion to another judge and denying
the motion to recuse because the recusal motion and affidavit taken as true warranted the
recusal of the trial court Judge and subsequent assignment to another Judge...............11

       (a) Appellant Satisfied The Prerequisite of whether the Motion to Recuse was timely
          filed.................................................................................................................12

       (b) Appellant Satisfied The Prerequisite of Whether The Affidavits Supporting The
          Motion Was Legally Sufficient.........................................................................14

       (c) Appellant Satisfied the Prerequisite of Whether the Affidavits taken as true aver
          facts that would warrant the Judge's recusal......................................................14

           (i)     Appellant's Open Records Lawsuit implicated in the Appellant's Motion
                 to Recuse the Trial Court Judge................................................................15

      (ii)     Appellant's presentment of a Writ of Habeas in the Henry County
              Superior Court implicated in the Appellant's Motion to Recuse the Trial
              Court Judge...................................................................................19

II.    The trial court erred in modifying the parties custody agreement because the evidence
       does not support the Judge's findings that the Mother lacked a support system and the
       additional reasons for modification of the parties custody agreement does not rise to the
       level of permittance of governmental interference with fundamental rights of association
       and custodial rights.......................................................................................24

         (a) The Trial court erred in interfering with the Appellant's fundamental rights to
            the custody of his child.........................................................................25

III.   The trial court erred in modifying the parties custody agreement because the evidence
       does not support the Judge's findings that the Mother lacked a support system and the
       additional reasons for modification of the parties custody agreement is not in the best
       interests of the child....................................................................................26

         (a) The Trial Court erred in modifying the parties custody agreement because there
            was not a substantial change in circumstances.........................................27

IV.   The trial court abused its discretion in issuing a Child Support Addendum where no Child
       Support Petition was filed on the record.........................................................28

CONCLUSION.......................................................................................................29

CERTIFICATE OF SERVICE.......................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Barnes v. Barnes, 864 SE 2d 119 - Ga: Court of Appeals (2021)*......................................8

*Grogan v. City of Dawsonville, 823 SE 2d 763 - Ga: Supreme Court (2019)*.......................9

*Corley v. Jackson, Ga: Court of Appeals (2020)*......................................................10

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*......10

*A & M HOSPITALITIES LLC v. ALIMCHANDANI, Ga: Court of Appeals (2022)*................11

*Corley v. Jackson, Ga: Court of Appeals (2022)*......................................................11

*Frith v. Harvey, 864 SE 2d 460 - Ga: Court of Appeals (2021)*.......................................11

*Perry v. Jenkins, 862 SE 2d 734 - Ga: Court of Appeals (2021)*......................................11

*Floyd v. Brown, 790 SE 2d 307 - Ga: Court of Appeals (2016)*.......................................12

*A & M HOSPITALITIES LLC v. ALIMCHANDANI, Ga: Court of Appeals (2022)*................12

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*......12

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*......13

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*......14

*Birt v. State, 350 SE 2d 241 - Ga: Supreme Court (1986)*.............................................14

*Frazier v State. A18A1852. 826 S.E.2d 361 (2019)*.....................................................15

*State v. Davis, 284 SE 2d 51 - Ga: Court of Appeals (1981)*.........................................15

*Jones v. State, 827 SE 2d 887 - Ga: Supreme Court (2019)*...........................................19

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*......19

*State v. Davis, 284 SE 2d 51 - Ga: Court of Appeals (1981)*.........................................20

*Isaacs v. State, 355 SE 2d 644 - Ga: Supreme Court (1987)*..........................................21

*Hodges v. Youmans, 200 SE 2d 157 - Ga: Court of Appeals (1973)*..................................24

*King v State, 246 Ga. 386, 390 (7) (271 Se2d 630) (1980)*...........................................24

*Patten v. Ardis, 816 SE 2d 633 - Ga: Supreme Court (2018)*................................................25

*Meyer v. Nebraska, 262 U. S. 390, 399 (1923)*...................................................................25

*Borgers v. Borgers, 820 SE 2d 474 - Ga: Court of Appeals (2018)*.................................25

*Bodne v. Bodne, 588 SE 2d 728 - Ga: Supreme Court (2003)*........................................25

*Clark v. Wade, 544 SE 2d 99 - Ga: Supreme Court (2001)*.............................................25

*Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals (2009)*........................26

*Elk Grove Unified School Dist. v. Newdow, at 14 & n.6 542 US 1 - Supreme Court (2004)*.......26

*Patten v. Ardis, 816 SE 2d 633 - Ga: Supreme Court (2018)*..........................................26

*Floyd v. Brown, 790 SE 2d 307 - Ga: Court of Appeals (2016)*.......................................27

*Peeples v. Newman, 70 SE 2d 749 - Ga: Supreme Court (1952)*.....................................27

*Brazil v. Williams, 859 SE 2d 490 - Ga: Court of Appeals (2021)*...................................28

*Corley v. Jackson, Ga: Court of Appeals (2022)*............................................................28

**Statues**

O.C.G.A. 9-15-2(d) ...............................................................................................16

O.C.G.A. 5-6-34(a)(11)...........................................................................................8

O.C.G.A. 5-6-34(d)................................................................................................8

O.C.G.A. § 9-15-2(d)..............................................................................................23

## INTRODUCTION AND STATEMENT OF PROCEEDINGS BELOW AND MATERIAL FACTS RELEVANT TO THE APPEAL

This case concerns a grotesque miscarriage of justice in the lower courts of Georgia with respect to when a trial court Judge must recuse when warranted. This case challenges and seeks review of not only a Final Order in the lower trial court case but questions the impartialness of the lower trial court Judge who refused to disqualify when presented with a proper Motion to do so. This case seeks review of the prerequisites questioning the impartialness of the lower trial court Judge and orders which affected the interests of the Appellant and his minor child who modified custody absent a substantial change of circumstances. If the lower trial court Judge's recusal is not warranted, the State of Georgia would be signaling to every parent that a sitting Judge cannot only actively conspire against one of its citizens in their cases but can also commit extra-judicial acts in furtherance of the conspiracy while seated in a discretionary position regarding fiercely guarded interests and in determinations of the best interests of the parites Minor Child. This case is such a case. Appellant ("Father") and Appellee ("Mother") are the Father and Mother ("parties") of a 6 year old daughter whose first and last name initials are T.A. ("T.A."). T.A. has lived in the State of Georgia since 2017. [Vol 2. ¶ Pg. 38] On December 13th, 2017, the parties agreed on a parenting plan which was adopted in a mediated agreement which was incorporated into a Final Order in the Sixth Judicial Circuit in Pinellas County Florida. [Vol 2. ¶ Pg. 38] That custody order was domesticated in the State of Georgia in the Gwinnett County Superior Court on December 20th, 2018, the county of residence of the Mother at the time. [Vol 2. ¶ Pg. 38] On March 16th, 2021 the Mother sought modification of the parties custody agreement in the Henry County Superior Court contending a move to the State of Florida with the parties minor child. [Vol 2. ¶ Pg. 31-36] This case was assigned to Judge Brian Amero. The basis for the move in the Petition sought to modify the custody agreement to coincide with the

potential schooling location of T.A. when the Mother eventually relocated. [Vol 2. ¶ Pg. 31 Par. 5-6] The Father answered and counterclaimed this Petition on April 19th, 2021 alleging family violence, custodial interference etc. [Vol 2. ¶ Pg. 38-54] However, before, during and after the Mother's presentment of her Modification of custody Petition to the Henry County Superior court the Appellant had four specific extra-judicial circumstances occurring within that court in which the Appellant sought recusal of the trial court Judge for his involvement. [Vol. 2. ¶¶ Pg. 109-126, 127-128] Before the filing of the parties eventual Modification of custody case ("Modification") the **(1)** Appellant was attempting to overturn a city court conviction arising from the Municipal court of Hampton by filing his **First Writ of Certiorari** that was presented to Henry County Superior court clerks, but not filed at the direction of those clerks. [Vol 2. Pg. ¶ 115. Par. 29-32] After the filing of the Modification of custody Petition, the **(2)** Appellant was seeking to file a **Second Writ of Certiorari** to appeal an order out of the Municipal court of Hampton but was again not filed at the known agreement and direction of a Municipal court of Hampton and Henry County clerk. [Vol. 2. ¶ Pg. 115. Par. 29-32] During the pendency of the Modification Petition the **(3)** Appellant then filed an **Open Records lawsuit** seeking records related to his conviction arising from the Municipal court of Hampton which action was assigned to Brian Amero who in fact failed to ensure the issue of Appellant's indigence did not affect a decision on the merits of said action contrary to law – delaying Appellant's Injunction.[1] [Vol. 2. ¶ Pg. 3-4, Par. 2-12] Finally, the **(4)** Appellant presented a **Writ of Habeas** Petition to Henry County Superior court clerks which was took into possession by said clerks but not filed nor given a case no. yet purportedly assigned to Brian Amero who was allegedly out of town on a

---

[1] **No. 10 of Vol. 2. Pg. 112**, states that on July 23rd, 2021 Arnold subscribed by affidavit that because of his indigence at that time he could not pay the costs of filing his Open Records lawsuit. **The date is a clerical error** and should have said May 26th, 2021. Moreover, **No. 5. of Vol. 2. Pg. 111**, states that **the hearing for the pauper's affidavit was scheduled by Brian Amero before July 23rd, 2021**, the clerical date of error.

judicial conference while Appellant sat in wait for a Writ to be issued against "City of Hampton" officials. [Vol. 2. ¶ Pg. 112-115. Par. 13-28] Each of these (4) specific actions involved City of Hampton officials and Henry County officials.

Appellant based his recusal motion on the analysis prescribed under Uniform Super. Ct. R. 25.3 pursuant to facts and circumstantial evidence, inferred from the nature of the facts and acts done, the relation of the parties and the interests of the alleged conspirators tailored to those four (4) circumstances requiring his disqualification. However, on October 7th, 2021 the lower court Judge entered a Final Order, a falsified Child Support Addendum and denied Appellant's recusal Motion. The Appellant, Deandre Arnold, seeks review of the modification of the custody agreement because the facts does not support a substantial change of circumstances nor a governmental interference with the child's and Appellant's fundamental rights to familial associations notwithstanding the bias and prejudice of the lower trial court Judge requiring his immediate recusal. Moreover, substantial interests are implicated in the highest order in this case because the Appellant has alleged that a fact finder during the pendency and disposition of his modification of custody case was impartial against Appellant. This case also concerns the public as observers in this regard because the actions shock the conscience of the confidence in the impartiality of its trial court judges in the notion that we are a nation of laws.

**Statement By Which Each Enumeration Of Error Was Preserved For Consideration**

"Although appeals from orders in domestic relations cases generally require a discretionary application, "[a] direct appeal is proper under OCGA § 5-6-34(a)(11) from all judgments or orders `in child custody cases' that award, refuse to change, or modify child custody, or orders that hold or decline to hold persons in contempt of child custody orders." Barnes v. Barnes, 864 SE 2d 119 - Ga: Court of Appeals 2021." "Under OCGA § 5-6-34 (d),

[w]here an appeal is taken under any provision of subsection (a) ... of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere. Construing this provision, we have held that, where an order would require a discretionary application to be appealed, such an application is unnecessary when the order is appealed with another order that may be appealed by a notice of appeal." Grogan v. City of Dawsonville, 823 SE 2d 763 - Ga: Supreme Court 2019. The Enumeration of errors concerning the Appellants (1) Final Order entered in on October 7th, 2021 was preserved for consideration on direct appeal because the Appellant appealed on 11/8/2021 and filed Amended Notices of Appeal on December 8th, 2021 in the lower trial court from the Final Order and Recusal Motion when no pending issues remained pursuant to O.C.G.A. 5-6-34(11). [Vol. 2. ¶¶ Pg. 8-26, 5-7] Moreover, "But orders denying motions to recuse may be reviewed and relief afforded after the entry of final judgment. Murphy v. Murphy, 747 SE 2d 21 - Ga: Court of Appeals 2013. The Appellant's appeal of the trial court Judges denial of the Appellants Temporary Motion for Emergency custody and Recusal motion was preserved on appeal because the Appellant appealed those orders pursuant to O.C.G.A. 5-6-34(d) after the entry of final judgment.

## PART TWO
### Enumeration of Errors

1. The trial court erred in failing to assign the recusal motion to another judge and denying the motion to recuse because the recusal motion and affidavit taken as true warranted the recusal of the trial court Judge and subsequent assignment to another Judge.

2. The trial court erred in modifying the parties custody agreement because the evidence and reasoning for modification of the parties custody agreement does not rise to the level of permittance of governmental interference with fundamental rights of Appellant's and his minor child's right to familial association.

3. The trial court erred in modifying the parties custody agreement because the evidence does not support a substantial change in circumstances for modification of the parties initial custody agreement and is not in the best interests of the child.

4. The trial court erred in failing to conduct a hearing on the Appellant's Temporary Emergency Custody Motion because the Appellant alleged specific allegations of abuse.

### Jurisdictional Statement

The Court of Appeals, rather than the Supreme Court, has jurisdiction of this case because the Appellant direct appeal shall be reviewed and determined by the appellate court and "may raise on appeal "all judgments, rulings, or orders rendered in the case . . . which may affect the proceedings below[.]" OCGA § 5-6-34(d). Corley v. Jackson, Ga: Court of Appeals 2022.

### PART THREE
### Standard of Review

Appellant filed his recusal motion pursuant to Uniform Super. Ct. Rule 25.3 and the lower trial court Judge made his order denying his motion and affidavit(s) under Uniform Super. Ct. Rule 25.3 quoting *Baston-cook Co*. The Standard of Review applied to Appellant's recusal Motion should be de novo because it was held in *Batson-cook Co*, "Accordingly, we overrule those appellate decisions **which employ the abuse of discretion** standard in an appeal from the trial court's denial of a motion to recuse because it did not meet the criteria of USCR 25.3... USCR 25.3 does not authorize a discretionary determination on the part of the trial judge presented with a motion and affidavit to recuse." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. "The decision about referring a recusal motion for reassignment to another judge does not involve an exercise of discretion by the judge whose

recusal is sought. See Batson-Cook Co., 291 Ga. at 119, 728 S.E.2d 189. Rather, whether the

three threshold criteria have been met is a question of law, which an appellate court reviews *de

novo*." A & M HOSPITALITIES LLC v. ALIMCHANDANI, Ga: Court of Appeals 2022.

"We…examine *de novo* the trial judge's application of USCR 25.3 to the motion to recuse and its

supporting affidavits" Id.

Moreover, "[a] petition to change child custody should be granted only if the trial court

finds that there has been a material change of condition affecting the welfare of the child since

the last custody award. If there has been such a change, then the court should base its new

custody decision on the best interest of the child. A determination that there has been a material

change in condition supporting a modification of custody will be affirmed absent an abuse of

discretion." Corley v. Jackson, Ga: Court of Appeals 2022. Additionally, "[w]e review a trial

court's ruling on a [child support] modification petition for abuse of discretion, and we will

uphold the factual findings underlying the ruling if they are supported by any evidence..." Id.

"When reviewing an order in a child custody case, we apply a de novo standard of review to any

questions of law decided by the trial court." Frith v. Harvey, 864 SE 2d 460 - Ga: Court of

Appeals 2021. Moreover, "Whether particular circumstances warrant a change in custody is a

fact question determined under the unique situation in each individual case." Perry v. Jenkins,

862 SE 2d 734 - Ga: Court of Appeals 2021.

## Argument and Citation of Authorities

**I. THE TRIAL COURT ERRED IN FAILING TO ASSIGN THE RECUSAL
MOTION TO ANOTHER JUDGE AND DENYING THE MOTION TO
RECUSE BECAUSE THE RECUSAL MOTION AND AFFIDAVIT TAKEN
AS TRUE WARRANTED THE RECUSAL OF THE TRIAL COURT JUDGE
AND SUBSEQUENT ASSIGNMENT TO ANOTHER JUDGE**

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest." Floyd v. Brown, 790 SE 2d 307 - Ga: Court of Appeals 2016. Wherefore, the exercise of that discretion should be unbiased and impartial in the courts of this state because, "Judicial integrity is "a state interest of the highest order" because the power and prerogative of a court to resolve disputes rests upon the respect accorded by citizens to a court's judgments which, in turn, depends upon the issuing court's absolute probity." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. "If the public lacks confidence in the impartiality of judges, or worse, refuses to comply with judicial decisions voluntarily, the notion that `we are a government of laws' would necessarily collapse." Id. "It is vital to the functioning of the courts that the public believe in the absolute integrity and impartiality of its judges, and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial." A & M HOSPITALITIES LLC v. ALIMCHANDANI, Ga: Court of Appeals 2022.

"Uniform Superior Court Rule 25 provides the procedural framework by which a motion to recuse a judge presiding in a particular case may be filed by a party and how said motion is to be resolved. USCR 25.1 provides the timeframe within which the motion to recuse is to be filed and requires the motion to be in writing and to be accompanied by affidavits that present "all evidence thereon ... [and] fully assert the facts upon which the motion is founded." The supporting affidavit must state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons, and circumstances of the extra-judicial conduct or statements demonstrating bias." Id. "in any proceeding in which their impartiality might reasonably be questioned." Id. "The motion and supporting affidavits initially are presented to the judge whose recusal is sought; the judge immediately determines the timeliness

of the motion, the legal sufficiency of the affidavits and, assuming any of the facts of the affidavits to be true, whether recusal would be warranted. USCR 25.3. If all three prongs are met, another judge is assigned to hear the motion to recuse. Id. The judge hearing the motion has the discretion to consider the motion solely on the affidavits or convene an evidentiary hearing, and the ruling on the merits of the motion shall be accompanied by written findings of fact and conclusions. USCR 25.6." Id.

### a. Appellant Satisfied The First Prerequisite Inquire of whether the Motion to Recuse was timely filed

"USCR 25.1 requires the motion to be filed "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification ... unless good cause be shown for failure to meet such time requirements." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. The motion to recuse was filed timely. The appellant alleged in his recusal affidavit that, "On 8/7/2021, after a non-response from clerks and staff under Brian Amero and adequate legal research it became evident that Arnold Complaints/Writs were the subject of a pattern of prejudice and unconstitutional actions when they involve the City of Hampton, or its officials and are assigned under Brian Amero." [Vol. 2. ¶ Pg 123 Par. 58] Further, the Appellant alleged that "this Motion is being filed within 5 days after the Affiant learned grounds for recusal of Brian Amero..." [Vol. 2. ¶ Pg 123 Par. 58] The court is required to accept the affidavit's allegations as true and may not go beyond the motion and affidavit. Specifically, "a judge considering a motion seeking his recusal must evaluate the motion and accompanying affidavit solely on their face and assume that the facts set forth in the affidavit are true." Post v. St., 298 Ga. 241, 247 (2015). Thus, the Appellant satisfied the first requirement in determining whether his recusal Motion was timely filed.

### b. Appellant Satisfied The Second Prerequisite Inquire of Whether The Affidavits Supporting The Motion Was Legally Sufficient.

For the Appellant's affidavit(s) to be considered legally sufficient it was held in *Batson-Cook Co* that, "Each affidavit contained the three elements essential to a complete affidavit: "(a) a written oath embodying the facts as sworn by the affiant; (b) the signature of the affiant; and (c) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. Moreover, "the *original* motion to recuse, construed together with the "affidavit" verifying the facts alleged in the *original* motion, is deemed to constitute a substantial compliance with the requirements of Rule 25.1 of the Uniform Rules for the Superior Courts, supra, and the case law, as to the *original* motion." Birt v. State, 350 SE 2d 241 - Ga: Supreme Court 1986. The Appellant attached an affidavit verifying the facts alleged in the original motion to recuse and thus was in substantial compliance with the requirements of Rule 25.1. of the Uniform Super. Ct. Rules. [Vol. 2. ¶ Pg. 127-128][2]

### c. Appellant Satisfied the Third Prerequisite Inquire of Whether the Affidavits taken as true aver facts that would warrant the Judge's recusal.

"The last of the three inquiries a trial judge is required by USCR 25.3 to make immediately when presented with a motion to recuse the judge is to consider whether the facts contained in the affidavits, when taken as true, would authorize recusal. The rationale for requiring the judge to take as true the affidavit's facts even when the judge knows the facts are not true "is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the [rule] is directed." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. The Appellant affidavit alleged conspiracy

___

Said Affidavit has the incorrect case no. but includes the names of the parties and thus was filed in said court under the said case no.

involving the lower trial court Judge and based on the Affidavits taken as true, it was held in *Frazier* that, "[T]his tacit understanding may be proved by circumstantial evidence, inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." Frazier v State. A18A1852. 826 S.E.2d 361 (2019)

As aforementioned in the statement of proceedings, during the pendency of Appellant's modification of custody action in the lower court the Appellant learned of the trial court Judge's involvement in a conspiracy related and tailored to four (4) specific instances occurring within the Henry County Superior Court which were all brought into question within the Appellant's recusal motion and affidavit(s). The facts entail, when it involved the relations of Henry County public officials, City of Hampton public officials and the Appellant, the appellant rights were violated when he sought remedies against the City of Hampton related to his Municipal court conviction. As such, the Appellant soon learned of the trial court Judge's involvement and specifically stated on page two (2) of his recusal motion that, "Extra-judicial sources and factual circumstances give rise to a reasonable belief that impartiality on the part of Brian Amero might *reasonably be questioned* and that it is more than likely that based on such facts and sources the question in regards to his impartiality which are to be taken as true in this motion can be reasonably questioned arising from extra-judicial sources which involve the City of Hampton and its public officials, including public officials in Henry County." [Vol 2. ¶ Pg. 110] [Vol. 1. ¶ No. 22 Pg. 110] **As further alleged below,** "The fact that his impartiality "might reasonably be questioned" suffices for his disqualification." State v. Davis, 284 SE 2d 51 - Ga: Court of Appeals 1981.

> **(i)** **Appellant's Open Records Lawsuit was implicated in the Appellant's Motion to Recuse the Trial Court Judge.**

One of the four (4) specific circumstances with respect to Appellant's recusal motion of the trial court Judge was concerning Appellant's **Open Records lawsuit** presented on May 26th, 2021, which was not filed until June 8th, 2021. [Vol. 2. ¶Pg. 111. Par. 2-4]. The trial court Judge in denying the recusal motion mischaracterized the specific statements of the Appellant relevant to his Open Records lawsuit. For instance, in denying the Motion to recuse the trial court Judge stated that, "Respondent alleged the Court acted within a "scheme, plot or conspiracy" to block Respondents suits against officials of the city of Hampton by unreasonably delaying a hearing on Respondent's request to proceed in forma pauperis in a separate case, Case No. 2021-SU-CV-1579-BA. However, respondent alleged in the Motion that his poverty affidavit was filed on June 8th, 2021 and that a hearing on that matter was scheduled for August 11[th], 2021." [Vol 2. ¶ Pg 130] [Vol 1. ¶ No. 25 Pg. 130] However, the Appellant's motion to recuse **specifically alluded to the trial court Judge's failure to ensure that the issue of indigence did not affect a decision on the merits of the pending action pursuant to O.C.G.A. 9-15-2(d)**. [Vol 1. ¶ No. 22 Pg. 112 Par. 8] [Vol 2. ¶ Pg. 112]. Appellant did not inquire or concern himself with the poverty hearing other than the unlawful delay of the decision on the merits of Appellant's Open Records lawsuit until the conclusion of his poverty affidavit hearing contrary to statute.

As it relates to the lower court Judge's extra-judicial acts related to the City of Hampton's public officials, the appellant's recusal motion specifically stated; **"there has been no order denying or allowing the Open Records Complaint to proceed which would ensure the issue of indigence did not affect a decision on the merits** of the pending action, likewise, no determination has been made concerning whether the trier of fact (Brian A. Amero) believed that this court could grant any relief against any party named in the pleading. See O.C.G.A. 9-15-2." [Vol 2. ¶ Pg. 112 Par. 8] As such, it is a fact that the lower court Judge delayed the merits of

the Appellant's recusal motion against the *City of Hampton* for over 75 days until the Plaintiff's

poverty affidavit was heard contrary to law. Appellant further alleged that "Brian Amero has

done actions which could now be reasonably considered **to have hindered, stalled or delayed**

**evidence for a possible suit against the** *City of Hampton* **and/or evidence to overturn his**

**conviction.**" [Vol 2. ¶ Pg. 116 Par. 36] Moreover, the Appellant stated in his recusal motion that,

"Brian Amero's impartiality *might reasonably be questioned*...because he is involved or has

acted **in an extrajudicial scheme of an esoteric nature and/or scheme, plot or conspiracy**

with shared motives **to deprive Arnold of...due process...and equal protection**." [Vol. 2 ¶ Pg.

116] [Vol. 1 ¶ No. 22. Pg. 116]

  As such, a reasonable inference of fact can be inferred that Brian Amero's involvement in

the alleged esoteric scheme was to deprive Appellant of evidence for a possible suit against the

City of Hampton and/or evidence to overturn his conviction in conspiracy which arose or arises

from factual circumstances of an extra-judicial nature related to the lower court Judge's unlawful

delay of Appellant's Open Records Lawsuit and Injunction against the *City of Hampton* because

the trial court Judge failed to ensure that the issue of Appellant's indigence did not affect a

decision on the merits of the pending Open Records suit contrary to law. [Vol. 2. ¶ Pg. 111-112,

Par. 2-12] Moreover, the premise is that this extra-judicial act was intertwined with Appellant's

seeking of public records relevant to Appellant's Municipal court conviction, which conviction

the Appellant attempted to overturn by presenting his **First and Second Writ of Certiorari's** in

the Henry County Superior court to court clerks which were not filed at no fault of the Plaintiff

but the fault of Henry County clerks who directed his Writs of Certiorari's to be filed in the

Hampton Municipal court in lieu of the Henry County Superior court. [Vol. 2. ¶ Pg 115. Par. 28-

38]

Appellant alleged in his recusal motion that, "<u>On or around November of 2020 and</u>
<u>March of 2021 Arnold's Writ of Certiorari's were denied in this court due to the fact that Arnold</u>
<u>was told by Henry county clerks in agreement with city of Hampton Municipal Court of</u>
<u>Hampton officials that his Certiorari's was to be filed in the Hampton Municipal court in lieu of</u>
<u>the Henry County Superior court.</u>" [Vol. 2. ¶ Pg. 115. Par. 31] [Vol. 1. ¶ No. 22. Pg 115 Par. 31]

It is a fact that during the pendency of Appellant's Modification of custody action the
trial court Judge's actions relevant to Appellant's Open Records lawsuit was that of an extra-
judicial nature. Second, the relation of the parties throughout the Appellant's modification
proceedings remained the same between Henry County clerk's whom were staff of Brian Amero,
City of Hampton public officials who were in contact with Henry County clerks, the Appellant
whom was seeking appeals to overturn his conviction and evidence related to his conviction and
Brian Amero the Judge assigned to his Open Records lawsuit and named by Henry County
officials as the alleged Judge assigned to his Writ of Habeas action although the Petition was
presented on July 23rd, 2021, but never filed. The interest of the alleged conspirators arose from
the benefits of depriving the Appellant of public records and appeals to overturn his conviction
because, as alleged in the recusal motion, "<u>the delaying of the aforementioned Complaints/Writs</u>
<u>all involve Henry County Public officials and the City of Hampton public officials…and they</u>
<u>have benefited from these delays because…[City of Hampton and its officials] have not been</u>
<u>obligated by law to respond to summons in regard to…pubic records or Arnold's conviction.</u>
[Vol. 2. ¶ Pg. 114 Par. 27] Based on the inference from the nature of the acts done is the exact
reason the Plaintiff further alleged that it would be an extreme miscarriage of justice if a fact
finder "<u>actively involved in a conspiracy resulting from extrajudicial sources, were left to</u>
<u>determine and give opinion regarding the best interests of the parties minor child or whether</u>

Arnold, the target of the conspiracy would be the minor child's primary custodian." [Vol. 2. ¶ Pg. 111] [Vol 1. ¶ No. 22. Pg. 111]

Moreover, "a conspiracy may be shown by direct proof, or by inference, deduced from acts and conduct, which discloses a common design to act in concert for the accomplishment of the unlawful purpose; the common design or purpose may be shown by direct or circumstantial evidence." Jones v. State, 827 SE 2d 887 - Ga: Supreme Court 2019. Whereas the Plaintiff alleged extra-judicial conduct and demonstrated a purported lack of impartiality and were not stated in "conclusory fashion or as a matter of opinion." MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court 2012. The lower trial court Judge erred in refusing to assign the recusal Motion to another Judge and disqualify himself from the action.

> **(ii)** **Appellant's presentment of a Writ of Habeas in the Henry County Superior Court was implicated in the Appellant's Motion to Recuse the Trial Court Judge.**

Out of the remaining four (4) specific circumstances with respect to Appellant's recusal of the trial court Judge was concerning Appellant's presentment of his **Writ of Habeas** to the Henry County Superior Court. In denying Appellant's recusal motion when addressing said Writ of Habeas the trial court Judge stated that, Respondent also alleged that the court had the opportunity to review a "Writ of Habeas" challenging a prior conviction … but did not do so because of the Court's "agreement or possible agreement" to delay Respondent's complaint… Respondent acknowledged that this Writ, which he alleged was presented to the "Henry County clerks" on July 23, 2021, was neither filed nor was assigned a case number." [Vol. 2. ¶ Pg. 130] The trial court Judge went on further to state that, "Bare conclusions and opinions … are not legally sufficient … to warrant further proceedings." [Vol. 2. ¶ Pg. 130] The trial court erred in this regard and his recusal should have warranted an assignment of another Judge.

It appears as if the trial court Judge scanned and extracted one word from the Appellant's recusal motion to allege that the Appellant's usage of the verbiage "possible" was a bare conclusion and opinion not sufficient to warrant the trial court's Judge's recusal. Appellant's conclusion was neither "bare" or based on conjecture but related to actual facts from which an inference of fact could be inferred of a concerted denial of rights involving the lower court Judge warranting the trial court Judge's recusal because his impartiality might reasonably be questioned in Appellant's modification of custody action which, "suffices for his disqualification." State v. Davis, 284 SE 2d 51 - Ga: Court of Appeals 1981. Moreover, the sole single word of the Appellant cannot weigh heavier than the remaining substantial verbiage in Appellants recusal Motion. Appellant's recusal motion consistently entails a denial of some right or statutory right related as to time, place and exact persons with relations to Appellant's multiple attempts to overturn orders and his conviction arising out of the Municipal court of Hampton court notwithstanding a Motion to compel records unlawfully delayed. As aforementioned, the facts entail that within the Henry County Superior Court when it involved Henry County public officials and the City of Hampton, the appellant rights were not only violated when seeking to overturn his conviction in the form of multiple Writ of Certiorari's but a subsequent Writ of Habeas Petition. [Vol. 2. ¶¶ Pg. 112-114. Par. 13-27] The verbiage of the single wording "possible" cannot possibly outweigh the additional substantial verbiage especially when the affidavit entails and leads more in a directional inference of probabilities.

Appellant first alleged the importance of his Writ of Habeas Petition in said recusal motion as it relates to the prior denials of Writ of Certiorari's by stating that, "This is relevant to the overall scheme because Arnold sought Writ of Habeas to determine the legality of his conviction and overturn said conviction as the seemingly last option to challenge his

conviction…" [Vol 2. ¶ Pg. 115 Par. 33] [Vol 1. ¶ No. 22 Pg 115 Par. 33] This was seemingly the last option to overturn his conviction in the Henry County Superior Court due the prior denials of his Writ of Certiorari's in the Henry County Superior court through no fault of his own. [Vol. 2. ¶ Pg. 115-116 Par. 29-34]

Appellant then alleged that on July 23rd, 2021, he presented to Henry County clerks - while the lower court Judge was in office – a, "Writ of Habeas challenging the conviction in the City of Hampton's Municipal court but said examination into the Petition… has been delayed for (1) or more days when he (Amero) could have examined the petition and granted or denied said petition to bring forth any appealable or curable defects." [Vol. 2. ¶ Pg 120 Par. 49] [Vol. 1 ¶ No. 22. Pg. 120 Par. 49] As the lower court Judge stated in his denial of said motion, "the Respondent acknowledge that this writ…was neither filed nor was assigned a case number." [Vol 2. ¶ 130] [Vol 1. ¶ No. 25. Pg. 130] In making said statements the lower court Judge attempted to refute the allegations in defending himself in lieu of reviewing every fact relevant into the reasoning said Writ lacked a case no. nor was filed in which Appellant alleged the lower court Judge's participation with regard to said failures. It was held in Isaac, that, "His efforts at defending himself against a motion to recuse will inevitably create an appearance of partiality. One reason is that if he defends himself, he becomes an adversary of the movant for recusal." Isaacs v. State, 355 SE 2d 644 - Ga: Supreme Court 1987. The trial court Judge should have determined whether the facts alleged, taken as true, support his recusal because the acts, inferences, conduct and circumstantial evidence support a belief that his "impartiality could reasonably be questioned."

The trial court Judge's failure to look at the affidavit as a whole and defend himself in his not being presented with the motion further supports his recusal. The Appellant's remaining facts

are even substantially graver than that of his defense in that, "<u>Brian Amero...was chosen or</u> <u>allegedly assigned to Arnold's Writ of Habeas due to his shared motives in the same colluded</u> <u>result of all conspirators.</u>" [Vol. 2. ¶ Pg. 122. Par. 55] [Vol. 1. ¶ No. 22. Pg. 122 Par. 55] The facts support that Brian Amero's staff knew about Appellant's Writ of Habeas but did not immediately file said Writ, reason being, multiple clerks stated that they did not know of the filing fee amounts for Writ of Habeas Petitions although stating that the Writ was assigned to Brian Amero which received no case no. because of non-filing. [Vol. 2. ¶ Pg. 113 Par. 14] The Recusal Motion also stated that the Appellant contacted Brian Amero's judicial assistant Ms. Chambers, Brian Amero's former staff attorney Mr. Fillpour, clerk of the court Sabryia Hill and Brian Amero's deputy clerk Suzette Gray via email inquiring about said Writ which went unresponsive prior to Appellant's filing of said recusal motion. [Vol 2. ¶ Pg. 121. Par. 24-26, 53] [Vol 1. ¶ No. 22. Pg. 121 Par. 24-26, 53]

As it relates to the conspiracy the Appellant again alleged that, "<u>the delaying of the</u> <u>aforementioned Complaints/Writs all involve Henry County Public officials and the City of</u> <u>Hampton public officials...and they have benefited from these delays because...[City of</u> <u>Hampton and its officials] have not been obligated by law to respond to summons in regard</u> <u>to...pubic records or Arnold's conviction.</u>" [Vol. 2. ¶ Pg. 114 Par. 27] [Vol 1. ¶ No. 22. Pg 114. Par. 27] The sole reasoning City of Hampton public officials were not obligated by law to respond to summons with regard to public records or to the issuance of a Writ addressed to its officials and contractors concerning Appellant's conviction is due to the fact(s) that Appellant was unlawfully prevented and/or unreasonably delayed by Henry County public officials at no fault of the Appellant and certain of those acts involved the lower trial Court Judge Brian Amero.

Under the circumstances, "Such a conspiracy may be shown by direct proof[] or by inference. deduced from acts and conduct, which disclosed a common design to act in concert for the accomplishment of the unlawful purpose; the common design or purpose may be shown by direct or circumstantial evidence." Owens v. State, Ga: Court of Appeals 2020. The statements in the affidavit are not uncertain or speculative or merely raises a conjecture or possibility but based on fact(s) to wit; the trial court Judge (1) **unlawfully delayed Appellant's injunction and Open Records suit for possible evidence to overturn his conviction** against the "City of Hampton" by delaying a hearing on the merits of his Open Records suit contrary to law. See O.C.G.A. § 9-15-2(d) [Vol. 2. ¶Pg. 112 Par. 8] (2) **and named as the assigned Judge to Appellant's Writ of Habeas Petition although it was never filed nor assigned a case no.**, by employees of his staff, namely Suzette Gray, and others within the Henry County clerk's office. Said clerks also stated that it **could not be assigned to another Judge nor could a Writ be issued** against the "City of Hampton" **because of Brian Amero's alleged on Absence on judicial conference** during 7/28/2021 – 8/10/2021. [Vol. 2. ¶ Pg. 15-16, 24-26, 50] and finally (3) Multiple emails sent to Brian Amero's staff from 8/4/2021 – 8/9/2021 in concern for said Writ Petition received no response prior to the filing of Appellant's recusal motion/affidavit. [Vol. 2. ¶ Pg. 24-26] The Appellant further alleged that the lower trial court Judge was, "chosen or allegedly assigned to Arnold's Writ of Habeas due to his shared motives in the same colluded result of all conspirators." [Vol. 2. ¶ Pg. 122. Par. 55]

As such, a reasonable inference of fact can be inferred that Brian Amero's involvement in the alleged esoteric scheme was the sole reason he was named as the assigned Judge by his staff and others within the clerks office to said Writ of Habeas Petition – (which Writ could not be assigned by another Judge nor could a Writ be issued due to his absence on judicial conference

as told by clerks within his staff and others) – because of his willingness or shared motives to unlawfully delay, deprive or prevent Appellant from seeking public records and/or evidence which would overturn Appellant's conviction which act had a close nexus and relations with Henry County superior court clerks and City of Hampton officials unlawful denying of his multiple appeals and eventual Writ of Habeas Petition. [Vol. 2. ¶¶ Pg. 112-115. Par. 13-29]. Taken from the acts and conduct of Brian Amero and others including circumstantial evidence Brian Amero's impartialness could be reasonably questioned which suffices for his recusal. Further, the lower trial court Judge's efforts at defending himself against the motion to recuse inevitably created an appearance of partiality to manifest an appearance of his non-involvement which further created an inference of his involvement by law. The Appellant in recusal affidavit indeed "alleges facts and circumstances which suggest a conspiracy, or which "establish an inference", as a deduction from conduct which discloses a common design." Hodges v. Youmans, 200 SE 2d 157 - Ga: Court of Appeals 1973. Moreover, because, "it is not necessary that there be shown any actual impropriety on the part of the trial court judge. The fact that his impartiality "might reasonably be questioned" suffices for his disqualification." King v State, 246 Ga. 386, 390 (7) (271 Se2d 630) (1980) As such, the trial court Judge erred in his refusal to disqualify and assign the recusal Motion to another Judge and the trial court Judge's denial of Appellant's recusal motion should be overturned and all his orders shall be considered void.

**II. THE TRIAL COURT ERRED IN MODIFYING THE PARTIES CUSTODY AGREEMENT BECAUSE THE EVIDENCE AND REASONING FOR MODIFICATION OF THE PARTIES CUSTODY AGREEMENT DOES NOT RISE TO THE LEVEL OF PERMITTANCE OF GOVERNMENTAL INTERFERENCE WITH THE FUNDAMENTAL RIGHTS OF APPELLANT'S AND HIS MINOR CHILD'S RIGHT TO INTIMATE AND FAMILIAL ASSOCIATION.**

It was held that the "right to the custody and control of one's child is a fiercely guarded

right that should be infringed upon only under the most compelling circumstances." Patten v. Ardis, 816 SE 2d 633 - Ga: Supreme Court 2018; "The U. S. Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without undue state interference." Meyer v. Nebraska, 262 U. S. 390, 399 (1923). "As this Court has rightly recognized, "[t]he constitutional right of familial relations is not provided by government; it preexists government." Borgers v. Borgers, 820 SE 2d 474 - Ga: Court of Appeals 2018. Also, "(child has "extremely likely" liberty interest in preserving established familial or family-like bonds)." Clark v. Wade, 544 SE 2d 99 - Ga: Supreme Court 2001.

### (a) Trial Court Erred In Interfering With The Appellant's Fundamental Rights To The Custody Of His Child.

The trial court Judges basis for modifying the custody agreement and arrangement of the parties in the lower court modification of custody action did not rise to the level of one of the most compelling circumstances permitting governmental interference with Appellant's prior custody with his child and that of the child with the Appellant. None of the above findings by lower trial court supports a permissible governmental interference of a substantial nature into the fundamental rights of association, intimacy and custody of the Appellant's minor child and the same of the Appellant. The lower trial courts mere finding that Appellee found a new job in the State of Florida making the parties prior parenting plan impossible to follow erred in the lower trial courts "discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child and cannot apply a bright-line test." Bodne v. Bodne, 588 SE 2d 728 - Ga: Supreme Court 2003. Moreover, the additional findings of the lower trial court do not support a permissible governmental interference with the fundamental rights of the Appellant nor his child because the original evidence and exhibits tendered in the lower court, mainly "Arnold's affidavit" [Vol. 2. ¶ Pg 95-101] support a finding of virtually equitable

parenting time between the parties and tends to shed light that Appellant maintained majority of the custody. [Vol. 2. ¶ Pg 95-101, Par. 41]. "Evidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case." Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals 2009. Such a finding of the lower trial court that "Petitioner has close and extended family in Florida who are able to act as her support system and care for the Minor child" does not "substantially" as held in *Patten* nor justifiably permit governmental interference with paramount interests of the Appellant nor his child when the evidence tends to shed light that Appellant was also able to care for his child and act as her support system. [Vol. 2. ¶ Pg 95-101, Par. 41] Moreover, the lower trial court judge limited the rights of the Appellant to direct the religious and educational upbringing of his minor child by solely making the Appellee the final decision maker as to those issues. See. Elk Grove Unified School Dist. v. Newdow, at 14 & n.6 542 US 1 - Supreme Court 2004. The lower trial court in making this decision affected the fundamental rights of the Appellant absent substantial justification to do so. "This "paramount right" was "controllable, in general, by the court only in the case of very gross misconduct, injurious to the child." Patten v. Ardis, 816 SE 2d 633 - Ga: Supreme Court 2018. Moreover, the lower trial court did not express if Appellee's purported extended family in Florida were able to act as a "better" support system. The facts evidence tends to shed light that the lower trial court merely alleged an additional support system for the parties minor child contemplated by the Mother's eventual relocation. Because the lower court did have substantial justification rising to the level of permittance of governmental interference of fundamental rights of the Appellant and his minor child the lower court erred in modifying the parties original custody agreement and lower court decision should be reversed.

## III. THE TRIAL COURT ERRED IN MODIFYING THE PARTIES CUSTODY AGREEMENT BECAUSE THE EVIDENCE DOES NOT SUPPORT A

**SUBSTANTIAL CHANGE IN CIRCUMSTANCES FOR MODIFICATION OF THE PARTIES INITIAL CUSTODY AGREEMENT AND IS NOT IN THE BEST INTERESTS OF THE CHILD.**

"A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. The evidence sufficient to warrant a modification of custody can consist of a change in material conditions which have a positive effect on the child's welfare as well as changes which adversely affect the child." Floyd v. Brown, 790 SE 2d 307 - Ga: Court of Appeals 2016. "There must be some substantial change not naturally expected that affects the welfare of the child." Peeples v. Newman, 70 SE 2d 749 - Ga: Supreme Court 1952.

**(a) The Trial Court erred in modifying the Parties custody agreement because there was not a substantial change in circumstances.**

As aforementioned, the lower court Judge found a substantial change in circumstances to warrant modification of the parties custody arrangement for the following reasons to wit; (1) Petitioner has moved to Hillsborough County, Florida and started a new job there, (2) This move would make the following parties prior Parenting Plan impossible and (3) the Petitioner has close and extended family in Florida who are able to act as her support system and care for the Minor Child. Vol 2. ¶ Pg. 132-147.] [Vol. ¶v2. Pg. 132] It should be noted, that on January 29th, 2020, the parties custody agreement was modified changing the parties custody arrangement from 12:00 pm to 6pm in a contempt order in the Gwinnett County Superior Court. Appellant incorporates the statements made in enumeration II as if fully alleged herein. None of these circumstances above of the lower trial court's Final Order warrants a substantial change in circumstances deserving of the relocation of the parties minor child and modification of the parties custody agreement. "We do not second-guess the trial court in this regard when, as here,

there is any reasonable evidence to support the decision." Brazil v. Williams, 859 SE 2d 490 -
Ga: Court of Appeals 2021. Whereas here, two of the above reasoning for modifying the parties
original custody agreement was in relations to the Mother purportedly starting a new job in
Florida and said move making the parties original parenting plan impossible for the parties to
follow. These reasons do not support a substantial change in circumstances warranting
modification of the parties custody agreement. "An initial custodial award will not always
control *after* any new and material change in circumstances that affects the child is considered."
Id. Moreover, the additional reasoning by the lower trial court of Appellee's purported extended
Family in Florida who are able to act as her support system and care for the Minor child does
support a substantial change in circumstances warranting a change in custody. The lower trial
court did not state whether the Appellee's extended family would provide a "better" support
system other than the support system which the evidence tends to shed light of the Father's
support system who maintained if not equal majority of the custody of the Appellant's minor
child. [Vol. 2. ¶ Pg 95-101, Par. 41] Because the evidence, facts, and reasoning of the
modification of the parties original custody agreement does not support a substantial change in
circumstances the lower trial court erred in modifying the parties original custody agreement and
the lower court decision should be reversed.

## IV. THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING A CHILD SUPPORT ADDENDUM WHERE NO CHILD SUPPORT PETITION WAS FILED ON THE RECORD.

"[w]e review a trial court's ruling on a [child support] modification petition for abuse of
discretion, and we will uphold the factual findings underlying the ruling if they are supported by
any evidence..." Corley v. Jackson, Ga: Court of Appeals 2022.

Incorporated in the lower trial court's Final Order is a Child Support Addendum. [Vol. 2. Pg. ¶ 132-147] This Child support Addendum stated within said Order that the lower trial court action was purportedly a "Modification of Child Support Action". [Vol 2. ¶ Pg. 144] Further, this Child support Addendum stated within said Order that "This Addendum includes findings of fact and conclusions of law made by the Court, during or following a hearing, in compliance with OCGA § 19-6-15." [Vol. 2. ¶ Pg. 139-140] However, the Child Support Addendum does support a Modification of Child Support in the lower court action pursuant to O.C.G.A. § 19-6-15 et seq., absent a Modification Petition. The lower trial court Judge incorporating within its Final Order a Child Support Addendum is erroneous and should be reversed and considered void.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the lower trial court decision below.

Respectfully submitted,      6/1/2022

Deandre Arnold
c/o Arnold, Deandre
1954 Airport Road # 1370
Atlanta Georgia 30341
Dresmailbox89@gmail.com
4705143097

## CERTIFICATE OF SERVICE

This certifies that on   6/1/2022   that I DEANDRE ARNOLD, Appellant sent the Appellee,

TYARIELLE PATTERSON copies of the following documents: BRIEF OF APPELLANT

DEANDRE ARNOLD by regular mail with proper postage thereon to counsel of record

Addressed as follows:

Tyarielle Patterson<br>
13762 Ogakor Dr.<br>
Riverview Florida 33759

Dated:   6/1/2022

c/o Arnold, Deandre<br>
1954 Airport Road # 1370<br>
Atlanta Georgia 30341<br>
Dresmailbox89@gmail.com<br>
4705143097

EXHIBIT X – 2

("Exhibit X2 – Plaintiff's Motion for Reconsideration | 12 pgs.")

(Attached Rule 36 Order | 1 pg.)

Filed in the Georgia Court of Appeals on 1/26/2023.

13 PAGES

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

## CASE NO. A22A1367

---

## DEANDRE ARNOLD
### Appellant,

### vs.

## TYARIELLE PATTERSON
### Appellee.

---

## APPELLANT'S MOTION AND BRIEF OF APPELLANT'S MOTION FOR RECONSIDERATION

---

Deandre Arnold
**Mailing**: c/o Attn: Mr. Arnold
7757 Rutgers Cir.
Fairburn Georgia 30213
**Email**: Dresmailbox89@gmail.com
**Telephone**: 470-514-3097

*Pro Se Petitioner*

"This submission does not exceed the word count limit imposed by Rule 24."

## INTRODUCTION AND SUMMARY OF ARGUMENT

Comes Now, Appellant, Deandre Arnold, and files this Motion to Reconsider pursuant to Ga. App. Rule 37 from the decision rendered in this case on January 19th, 2023. This Direct appeal came to this Court presenting issues Appellant contends represents a grotesque miscarriage of justice in the lower courts of Georgia that presents this Court with a case that is clearly appropriate for reconsideration. The issues raised in this appeal concern a failure to recuse when required, a limiting of the interests to direct and control the upbringing of Appellants minor child and an unlawful entry of a Child Support order. This state has set the case rule on recusals of trial court Judges pursuant to Uniform Superior Court Rule 25.3 assuming all the facts in the "affidavit are true." The issue goes directly to the core of Appellants established constitutional rights to an impartial judge and a fair tribunal; whether the lower court Judge's recusal failed to assign the recusal motion to a different judge and recuse himself when required. The Rule 36 ruling of this Court would operate contrary to controlling authority in *MAYOR & ALDERMAN v Batson-Cook Co* and *A & M HOSPITALITIES, LLC v. Alimchandani* that this court is bound. The Appellant pointed out crucial mischaracterizations of the lower court's order denying Appellants recusal motion of an extrajudicial nature. The Lower court's order denying Appellants recusal motion purposely mischaracterized "An unlawful delay to deny or allow an [extrajudicial] Open Records suit to proceed to ensure the issue of indigence did not affect a decision on the *merits*" of such suit as an attempt to "[b]lock Respondent's *suit*" that this Court overlooked in its Rule 36 ruling which substantially presents an issue appropriate for reconsideration en banc. As to the second issue, the Appellant contends that this Court's Rule 36 ruling overlooked a material fact in it that the lower court's three (3) *findings* in its Final Order was the resultant of a temporary order granting modification on the sole basis that "the parties

minor child will *potentially* need to enroll in school *prior* to the Court's issuance of a final order"
and that the courts temporary order granted both parties physical custody. The lower court's sole
three (3) *findings* are contrary to *Bodne* that relocation is a substantial change in circumstances.
The *findings* also clearly do not support a substantial change of circumstances and this court
overlooked controlling authority which states a court shall not apply a bright-line test. Moreover,
the court's ruling infringed on the Appellant's established rights to direct and control the
upbringing of his child which shall be protected. Moreover, the court's affirmance of evidence at
a time Appellant was attempting to supplement the record for evidence that "tend or disprove"
facts material in this case is further appropriate for reconsideration. Finally, the courts issuance
of a Child Support order is purely falsified and this court's Rule 36 ruling overlooked a material
fact in the record that no Petition to modify child support exists in the record and a decision
which is controlling in authority which clearly states that "custody does not include payment of
child support." The court's Rule 36 ruling thus, as further alleged below present substantial
issues which are appropriate for reconsideration under Georgia Appellate Court Rule 37.

### Timeliness

The Court issued its opinion in this case on January 19th, 2023. (Attached) Because this
Motion and Brief for Reconsideration is being filed within 10 days, as required by this Court's
rule 37, the Motion is timely and this Court retains jurisdiction.

### Rule 37(e) Basis for Granting and Jurisdiction

A reconsideration will be granted on motion of the requesting party, only when it appears
that the Court overlooked a material fact in the record, a statute or a decision which is controlling
as authority and which would require a different judgement from that rendered, or has

erroneously construed or misapplied a provision of law or a controlling authority. This court has jurisdiction to revise this opinion and because of the importance of the issues consider it en banc.

## ARGUMENT

### I.    The Trial Court's Modification

**a.    This court overlooked a material fact and controlling authority which would require a different decision from that rendered in it that the court was required to find a substantial change of circumstances and relocation does not constitute such a substantial change in circumstances.**

On July 23rd, 2021, the trial court granted primary physical custody to Appellee and secondary physical custody to Appellant. On October 7th, 2021, the trial court entered its Final Order giving Appellee Primary physical custody with the Appellant having certain visitation and the courts based its sole *findings* for modifying the parties custodial arrangement as follows:

1.  Petitioner has moved to Hillsborough County, Florida and started a new job there.
2.  This move would make the following parties prior Parenting Plan impossible.
3.  Petitioner has close and extended family in Florida who are able to act as her support system and care for the Minor Child.

This court overlooked a material fact in the record that required the lower court to review and find a substantial change in circumstances before considering the best interests standard because the parties' custodial agreement was modified and altered within two years from the date of the Final hearing in the lower court that occurred on July 21st, 2021. The custody arrangement was altered or modified on January 29th, 2020, in the Gwinnett County Superior Court. [Vol 2. ¶ Pg. 63-65] (*Also See Appellate Court order dated June 1st, 2022.*) Accordingly, this material fact would require a different decision from the decision rendered because the lower court Final order's sole *findings* is but a consequence of the Appellee's relocation or move to the State of Florida and relocation of a party in relocation cases does not constitute a substantial change in circumstances warranting consideration of the best interest standard. Moreover, in the court's

*initial* Temporary order, the *findings* also alluded to the Appellants minor child's potential

enrollment in school based on a *move or conjectured move* of the Appellee to the state of Florida.

Reconsideration is appropriate here because of the controlling authority in *Bodne* and

other cases that "[t]he trial court must consider the best interests of the child and cannot apply a

bright-line test." *588 SE 2d 728 - Ga: Supreme Court (2003)*. The court overlooked controlling

authority which states that, "[T]he court in *Bodne* did not alter the standard two-step framework

for a trial court's consideration of a change in custody, and we find no language in *Bodne*

intimating that a parents out-of-state relocation constitutes a material change in circumstances

that warrants the best interests inquiry." *Brazil v. Williams, 859 SE 2d 490 – Ga Court of*

*Appeals (2021)* The lower courts first two findings only mention the Appellee's moving to the

State of Florida which would make the parties parenting plan impossible.

The lower courts last out of its three (3) sole findings, finding that Appellee had "close

and extended family in Florida to act as a support system and care for the minor child" can not

indirectly support a substantial change in circumstances that such support system and care was

needed elsewhere considering "an income deduction order was not immediately necessary" in

the Child Support Addendum, although fabricated because support was not an issue in this case.

[Vol. 2. ¶ Pg 132-147] Secondly, the Appellant motioned the Appellate court on 5/9/2022 and

5/27/2022 to "order the clerk of the trial court" (due to bias in the lower court) to supplement the

record because his, "*admitted* affidavit make an issue of fact… whether the trial court judge's

factual findings were erroneous on review." This affidavit would "[d]isprove, or shed light upon

any material fact at issue in a case," *Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of*

*Appeals (2009)*, which was; the affidavit showed that Appellant maintained equal or majority of

the custody a month before the Final hearing began (June). In such regard this court overlooked a

material fact in the record that the affidavit disproved any notions in the courts "findings" that a
support system or care was needed elsewhere to support a substantial change in circumstances
and requires a different decision than that rendered.

## b. Appellants constitutional rights were limited by the courts order absent compelling reasons.

Appellant asserted and established constitutional rights in this case to direct the custody
and control of his minor child in his counterclaim for custody of his child. "At common law, a
parent possessed the paramount right to the custody and control of his minor children." Patten v.
Ardis, 816 SE 2d 633 - Ga: Supreme Court (2018) "It was held that the "right to the custody and
control of one's child is a fiercely guarded right that should be infringed upon only under the
most compelling circumstances."

The court overlooked a material fact that the court was required to review and find a
substantial change in circumstances before considering the best interest of the child in modifying
custody and those rights erroneously limited the rights of the Appellant. Review is appropriate
because the court overlooked a material fact in the record, a statute or a decision which is
controlling as authority and which would require a different judgement from that rendered or has
erroneously construed or misapplied a provision of law or a controlling authority.

## II.    THE APPELLATE COURT SHOULD ALLOW APPELLANT TO SUPPLEMENT THE RECORD

The Rule 36 affirmance of the lower court order affirmed this ruling stating "The
evidence supports the judgment" at a time the Appellant was attempting to supplement the record
on appeal and the court shall reconsider its ruling. The Appellant requested by motion in the
Appellate court on May 9th, 2022 and May 27th, 2022, that he be allowed to supplement the
record by (1) requesting an affidavit "tendered" in the record in the lower court in the Final trial

(2) supplementing the record on appeal due to bias in the lower court. The court overlooked a material fact requiring a different decision from that rendered because Appellant requested a "tendered" affidavit to be supplemented due to bias in the lower court which affidavit could operate to show whether or not the *findings* were supported by "evidence demanded a finding of change of conditions." _Brazil v. Williams, 859 SE 2d 490 – Ga Court of Appeals (2021)_

As stated in Appellant's motion to Supplement the, "*admitted*" affidavit make an issue of fact… whether the trial court judge's factual findings were erroneous on review" and, "[E]vidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case." _Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals (2009)_ The only indication of that a substantial change of circumstances could have arose, arise from a presumption of the courts written *findings* that the Appellee had family in Florida to act as a support system and care for the minor child. In this regard, this tendered affidavit was necessary due to material facts within the Affidavit that showed that Appellant for over a year and one month before the final trial on July 21st, 2021, had maintained the majority of the custody of his minor child. [Vol. 2. ¶ Pg 101 Par. 41] The Appellant should be allowed to supplement the record to support his interests on appeal and the Appellate court "order the clerk of the trial court" to send up these records because the affidavit constitutes evidence to prove or disprove the courts findings and "[H]ere, the… record does not include the crucial document tendered into evidence and admitted by the trial court." _In re RST, 748 SE 2d 498 – Ga Court of Appeals (2013)_

## III. THE LOWER TRIAL COURT ERRED BY FAILING TO ASSIGN THE RECUSAL MOTION TO ANOTHER JUDGE AND DENYING THE MOTION.

The court overlooked controlling authority and a material fact that the lower court Judge "[C]rucially, mischaracterized the defendants allegations regarding the cause of the delay." The

3197d094c86834fa

lower court judge had solely two reasons for denying Appellants recusal, with respect to the first
reasoning, the lower court,

> "Respondent alleged the Court acted within a "scheme, plot or conspiracy" to **block**
> Respondents suits… by unreasonably delaying a hearing on Respondents request to
> proceed in forma pauperis in a separate case, Case No. 2021-SUCV-1579-BA. However,
> Respondent alleged in the Motion that his poverty affidavit was filed on June 8th, 2021,
> and that a hearing on that matter was scheduled for August 11[th], 2021." [Vol 2. ¶ Pg 130]

However, the Appellant's recusal motion never stated that the court acted to *block* his
Open records lawsuit. As a matter of material fact, the word *block* was not written at all and the
Appellant only and specifically alluded to the trial court Judge's "**failure** to ensure that the **issue
of indigence** did not affect a **decision on the merits** of the *pending* action." [Vol 2. ¶ Pg. 112].
The recusal motion specifically stated; "there has been no order denying or allowing the Open
Records *Complaint* to proceed." [Vol 2. ¶ Pg. 112 Par. 8] Not that Appellant's Open Records *suit*
was being blocked. Thus, this court overlooked a material fact including controlling authority
which would require a different decision from rendered because, "[M]ischaracterizing the
defendants allegation regarding the *reason* for the delay, the trial court evaluated and accepted
the truth of his own factual allegations, mandating his recusal." *A & M HOSPITALITIES, LLC v.
Alimchandani, 871 S.E.2d 290 (2022)*

The second and final reasoning of lower court denial of Appellants recusal with respect to
his Writ of Habeas document stated;

> "Respondent also alleged that the Court had the opportunity to review a "Writ of
> Habeas" challenging a prior conviction from a case involving Hampton City
> officials but did not do so because of the Court's "agreement or possible
> agreement" to delay Respondent's complaints against the City of Hampton.
> However, Respondent acknowledged that this writ, which he alleged was
> presented to the "Henry County clerks" on July 23, 2021, **was neither filed nor
> was assigned a case number**. "Bare conclusions and opinions stated in the
> affidavit are not legally sufficient to support the motion or warrant further
> proceedings…"

The lower court reasoning here supports the entirety of the details of the Appellants recusal motion which requires a different decision from that rendered because the lower court Judge failed to take "[a]ll of the facts set forth in the affidavit as true." The Recusal motion is easy to follow; When Appellant sought to assert grievances to overturn his city court conviction in the City of Hampton, City of Hampton officials acted in concert with Henry County clerks to deny him appellate rights to do so and that the lower court Judge became actively involved in such a scheme at a time Appellant's modification of *custody* case was pending by failing to ensure the issue of indigence did not affect the merits of his open records suit *against the City of Hampton* and being named as a Judge in a Writ of Habeas by his staff although it was not filed.

Appellant alleged that "based on information received from Suzette Gray... said Writ of Habeas *was assigned to* and under Brian Amero and *could not be* assigned to another Judge." [Vol 2. ¶ Pg. 112 Par. 50] Appellant further stated that, "[s]aid writ, assigned to or under Brian Amero, has not received a case no." [Vol. 2. ¶ Pg 113 Par. 16] This court overlooked a material fact that the lower court judge was required to, but never considered, "[a]ll of the facts set forth in the affidavit are true." *A & M HOSPITALITIES, LLC v. Alimchandani, 871 S.E.2d 290 (2022)* Such controlling authority would require this court to reconsider based on the totality of the circumstances as a whole of the reasoning Appellants Writ of Habeas **was neither filed nor was assigned a case number however assigned under Brian Amero**.

As such, Appellant's recusal motion stated that, "an inference can be drawn that Suzette Gray **had motive to assign** said writ under Brian Amero because of his agreement or possible agreement *with* shared motives of conspirators to *delay* Arnold *complaint(s)* involving the City of Hampton." [Vol 2. ¶ Pg. 112 Par. 52] One complaint being Appellants Open records suit, which reasoning for delay the lower court judge purposely mischaracterized. The second being

the Appellants Writ of Habeas which was assigned to Brian Amero according to his court staff and others although not being filed nor having a case.

Appellant stated the basis of his recusal with respect to his Writ of Habeas by stating that, **"Brian Amero has acted within a scheme, plot or conspiracy and/or has shared motives and is a member of said conspiracy or objective which included but not limited to sought and did prevent and/or delay Arnold from accessing the court and *appeal rights*."** [Vol 2. ¶ Pg. 116 Par. 35] Accordingly, Appellant stated that "there is an appearance of partiality on the part of Judge Brian Amero stemming from acts in his involvement in a conspiracy while acting as a fact finder in Arnold's modification case... and favor the Plaintiff in this action if not favors completely against the Defendant." [Vol 2. ¶ Pg. 126 Par. 64] Moreover, this court overlooked controlling authority of precedential value in this case of whether a conspiracy can through circumstantial evidence in a recusal motion because "a conspiracy may be shown by direct proof, or by inference, deduced from acts and conduct." Jones v. State, 827 SE 2d 887 - Ga: Supreme Court 2019.

This Court Rule 36 ruling is appropriate for reconsideration because "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955),* and the courts denial of the recusal motion with respect to Appellants Writ of Habeas presentment alluded to said Writ of Habeas being **neither filed nor... assigned a case number**, to mischaracterize Appellants statements as bare conclusions and opinions while deliberately failing to assume *all of the facts* in the affidavit as true as to the reasoning said Writ of Habeas was neither filed nor assigned a case number, including why it was assigned to him according to his staff without being filed in said court. *MAYOR & ALDERMEN v. Batson-Cook Co* acts as controlling authority here which would require a different decision from that rendered.

## IV.   THE COURT'S RULE 36 RULING AFFIRMING THE ENTRY OF A "CHILD SUPPORT ADDENDUM" IS CONTRARY TO CONTROLLING AUTHORITY

The courts entry of a Child Support Addendum in this case is purely falsified. This courts Rule 36 affirmance overlooks a decision on this issue as controlling as authority which would require a different decision from that rendered. "[T]he term custody does not include a payment of child support. It follows that a prayer for a change in custody does not of its own force pray for a simultaneous and commensurate modification of child support. The petition here does not pray for any modification of child support." *Petry v Romo, 547 SE 2d 736 – Ga: Court of Appeals (2001)* There is no Petition to modify Child Support filed on the record in the lower court nor included in the record in this case although mischaracterized as such in the court index on page 2 Par. 7 by *Henry County clerks*. No Petition to modify child support by any of the parties was filed in this and no prayer requested such. It follows that this action was solely a modification of custody *proceeding* and not otherwise, thus this issue is appropriate for reconsideration on appeal as the record does not support that a Child Support modification petition was never filed in such case nor was there a prayer for such relief that would duly *notice* the Appellant in this action which requires a different decision from that rendered.

### CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the decision below.

**"This submission does not exceed the word count limit imposed by Rule 24."**

Date: 1/26/2023

Deandre Arnold
c/o Arnold, Deandre
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

## CERTIFICATE OF SERVICE

This certifies that on 1/26/2023 that I DEANDRE ARNOLD, Appellant sent the Appellee,

TYARIELLE PATTERSON copies of the following documents: BRIEF OF APPELLANT

MOTION FOR RECONSIDERATION by regular mail with proper postage thereon to counsel

of record Addressed as follows:

> Tyarielle Patterson
> 13762 Ogakor Dr.
> Riverview Florida 33759

Date: 1/26/2023

Deandre Arnold
c/o Arnold, Deandre
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** ***physically received*** **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

**January 19, 2023**

**NOT TO BE OFFICIALLY REPORTED**

# In the Court of Appeals of Georgia

A22A1367. ARNOLD v. PATTERSON.

DILLARD, Presiding Judge.

In this case, the following circumstances exist and are dispositive of the appeal:

(1) The evidence supports the judgment;

(2) No reversible error of law appears, and an opinion would have no precedential value; and

(3) The judgment of the court below adequately explains the decision.

The judgment of the court below therefore is affirmed in accordance with Court of Appeals Rule 36.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

EXHIBIT X – 3

("Exhibit X3 – Plaintiff's Disqualification Motion of Appellate Justices |
19 pgs + 8 pg affidavit and 2 page Denial ORDER.")

Filed in the Georgia Court of Appeals on 2/13/2023

29 PAGES

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

## CASE NO. A22A1367

---

### DEANDRE ARNOLD
### Appellant,

vs.

### TYARIELLE PATTERSON
### Appellee.

---

## MOTION TO DISQUALIFY AND RECUSE

---

Deandre C. Arnold
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

---

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

| Deandre Arnold | ) |
| Appellant, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) **Case No. A22A1367** |
| | ) |
| . | ) |
| Tyarielle Patterson | ) |
| Appellee. | ) |

## MOTION TO DISQUALIFY

Comes Now, Appellant, and files this Motion to Disqualify and recuse all Presiding

Judges pursuant to Rule 8 and Rule 44 of the Rules of the Georgia Court of Appeals involved,

concerned with and who made any decision in this case relevant to the orders at issue below;

## INTRODUCTION

1. The Appellant states that throughout the due course of his appeal he has been deliberately

misgendered in multiple court orders, his requests to supplement the record for evidence in

this court has been repeatedly denied and knowingly mischaracterized in multiple orders

denying such requests, that a decision in this case was deliberately rendered without all

evidence from the lower court and that the Justices making such decision knowingly failed to

render a written opinion and comply with the law and controlling authority which would

require a different decision from the one rendered, thus has subjected Appellant to be bound

to erroneous judgments of a lower court and that from this conduct as a whole now exists a

patterns of bias or prejudice completely against the Appellant or in favor of the Appellee or

the lower court judge and a systematic pattern of prejudicial conduct is evident or can be

determined that each Judge(s) impartiality can be reasonably questioned requiring recusal.

## FACTUAL BACKGROUND

1.      This matter came to this court on April 26th, 2022, from a direct appeal in the Henry

County Superior Court seeking to bring under review a Final Order, a Denial of a recusal motion

and a Denial of an Emergency Temporary Order. [Record Index "Vol 1." No. 2 - Pg. 5-7]

[Record "Vol 2." Pg. 5-7]

### A. Misgender of the Appellant

2.      Upon the docketing of this Appeal in this court the Appellant made multiple motions

throughout May of 2022 up until June of 2022 that resulted in multiple Court orders which

knowingly and deliberately misgendered the Appellant, Deandre Arnold, with the pronouns

of "she" or "her" in its orders. [Appellant's Support Affidavit ¶ Par. 2]

3.      Four court orders entered in this case identified the Appellant, Deandre Arnold as a "she"

or "her" at a time the Appellant had identified himself in motions prior to these orders with

gender specific pronouns such as "his" and at a time he placed next to the Appellant,

"Deandre Arnold" within the contents of motion – a name that had the quality, state or

degree of masculinity in lieu of femineity that a Justice could easily discern. [Id. ¶ Par. 3]

4.      Even after his motion identified himself as the Appellant and utilized the pronoun of

"his" in motions in which the Justices fully read, the court's June 1st, 2022, order continued

to identify the Appellant with pronouns tailored to a female or woman. [Id. ¶ Par. 4]

5.      The motives of the misgender of Appellant's sex at the time was not known but on

information and belief, Appellate Justices motives were to get the attention of the Appellee

by making it appear as if "she" were receiving adverse claims in this court in order to

determine if she would actively participate in opposing Appellant's motions on appeal (on

belief that motions were not mailed to her) in order to encourage a response for additional

reasons in a predetermined Rule 36 order or deny Appellant's motions in its predetermined

bias or prejudice (which would later become a pattern) much more quickly in this court, to wit; Appellant Motions in this court to Supplement the record and Motions for Reconsiderations after the misgender of the Appellant received adverse decisions in less than in 48 hours (Ga App. Rule 41(c)). [Id. ¶ Par. 5]

6.      No reasonable member of the public including Appellant can reasonably state nor conclude that Appellate Justices would continuously misgender an individual on appeal even though name "Deandre Arnold" had the quality, state or degree of masculinity in lieu of femineity that a Justice could easily discern and knowledge of pronouns in his motions such as ("his") that Justices fully read, and the public would conclude that to do so continuously would bring into question each judges impartiality. [Id. ¶ Par. 6]

7.      The Appellate Justices did in fact knowingly misgender the Appellant because of their bias or prejudice being completely against the Appellant, in favor of the Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct regarding the Appellant and the Appellant's direct appeal as a whole. [Id. ¶ Par. 7]

**B. Appellant's Requests to Supplement the Record for evidence.**

8.      After the docketing of this Appeal in this court on April 26th, 2022, the Appellant made multiple motions throughout May of 2022 up until February of 2023 for evidence that was **tendered and admitted** at the Final trial in the lower court. [Id. ¶ Par. 8]

9.      The Appellant specifically requested in motions that the Appellant court order the lower court clerk to transmit an affidavit entitled "Arnold Affidavit" that proved he maintained the majority of the custody of his child for over a year and one month before the final trial began in the lower court which affidavit made an issue of fact on his appeal. [Id. ¶ Par. 9]

10.     The Appellant also specifically requested in multiple motions that the Appellant court order the lower court clerk to transmit a "January 2020 Contempt Order" which he stated in said motions was necessary for the determination of whether there was a need to find a substantial change in circumstances. [Id. ¶ Par. 10]

11.     However, the Justice(s) in its order(s) denying said motions and all reconsiderations of those motions identifying said records as **tendered and admitted** alluded to in its order(s) that the requested records were already apart of the record even though the Justice(s) knew the records in the Appellate record were only mere filings or exhibits attached to certain pleadings – not records that were **tendered and admitted** at the Final trial. [Id. ¶ Par. 11]

12.     No reasonable member of the public including Appellant can reasonably state nor conclude that Appellate Justice(s) would continuously deny and mischaracterize **admitted and tendered evidence** in a final trial as mere filings and exhibits attached to pleadings after their having notice and knowledge in motion(s) to reconsider and supplement that Appellant sought and were in search of records **tendered and admitted** in the Final trial – not mere filings or exhibits attached to pleadings – and would conclude that to do so would bring into question each judges impartiality. [Id. ¶ Par. 12]

13.     The Appellate Justices did knowingly and repeatedly deny Appellants Motions to Supplement the record and all prior reconsiderations because of their bias or prejudice being completely against the Appellant, in favor of the Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct. [Id. ¶ Par. 13]

   **C. Appellate Justices deliberately rendered a decision without all evidence and failed to enter a written opinion and comply with the law and controlling authority which would require a different decision from the one rendered.**

14.    Three out of all of the issues involving the Appellants direct appeal including stated within his brief as enumerations of error was **(1)** the lower court order denying recusal when required, **(2)** removal of his minor child vacant a substantial change in circumstances and **(3)** and the entry of a modification of child support order absent a petition to modify child support which Appellant stated in motions to reconsider was purely falsified. [Id. ¶ Par. 14]

15.    Thus, without written opinion, the Appellant is without knowledge and prejudiced as to the origins in law, controlling authority, factors, standards and the reasoning for their decision to affirm the lower courts judgment(s) which would thus factually show whether evidence requested in Motion(s) to supplement were needed or required on Appeal which affected or influenced their decision to *affirm* the lower court order. [Id. ¶ Par. 15]

16.    Moreover, the Appellant Justices affirmance of the lower court order denying recusal failed to comply with the law and controlling authority in *MAYOR & ALDERMEN v. Batson-Cook Co.* that clearly stated **"[a] trial judge is required by USCR 25.3... to consider whether the facts contained in the affidavits, when <u>taken as true</u>, would authorize recusal."** [Id. ¶ Par. 16]

17.    The Appellant's brief specifically alleged extrajudicial conduct and provided direct and circumstantial evidence of such conduct and stated that, "Brian Amero has acted within a scheme, plot or conspiracy and/or has shared motives and is a member of said conspiracy or objective which included but not limited to sought and did prevent and/or delay Arnold from accessing the court and appeal rights." [Appellant's brief ¶ pg. 17] [Id. ¶ Par. 17]

18.    By law, a non-discretionary recusal or assignment to another Judge to determine whether there was any evidence to support Appellant's allegations, which if taken as true required recusal was mandatorily required. [Id. ¶ Par. 18]

19.     The statements taken as true required a different decision from the one rendered

        requiring recusal because no member of the public including the Appellant or any other

        appellate court or any supreme court could make a determination that a trial court judge who

        is actively involved in a scheme, plot or conspiracy to prevent and delay appeal rights against

        an individual in separate cases could not be bias, prejudice or have his/her impartiality

        reasonably questioned in active cases involving such person and the judge at issue – and no

        court could reasonably render a written opinion affirming such conduct. [Id. ¶ Par. 19]

20.     Moreover, Justices failed to comply with the law and controlling authority in *A & M*

        *HOSPITALITIES, LLC v. Alimchandani* which mandated the lower court judge's recusal

        concerning statements made "**[M]ischaracterizing… allegations regarding… delay**"

        related to the merits of the Appellants open records suit in a separate case. [Id. ¶ Par. 20]

21.     The Appellant's brief stated that the order denying recusal falsely stated that Appellant

        alleged the lower court acted within a scheme to "block" and "**unreasonably delaying a**

        **hearing on Respondents request to proceed in *forma pauperis* in a separate case**" when

        the Appellant in fact stated in his brief of the trial court Judge's "**failure to ensure that the**

        **issue of *indigence* did not affect a decision on the merits of the *pending* action**" and the

        Appellate Justices Rule 36 order did affirm "**[a] decision upon the truth of the facts…for**

        **the evil against which the [rule] is directed**." *MAYOR & ALDERMEN v. Batson-Cook Co.,*

        *728 SE 2d 189 - Ga; Supreme Court (2012*) [Appellant's brief ¶ page 16] [Aff. ¶ Par. 21]

22.     No reasonable member of the public including Appellant can reasonably state nor

        conclude that Appellate Justices would overlook the above laws and controlling authority and

        would conclude that to do so brings into question each judges impartiality. [Appellant's

        Supporting Affidavit. ("Aff.") ¶ Par. 22]

23.    The Appellate Justices did make such a decision because of its bias or prejudice being completely against the Appellant or in favor of the Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct regarding the Appellant's direct appeal. [Id. ¶ Par. 23]

24.    Continuing, the Appellate Judges affirmance of the lower court order affirming the entry of a purely falsified Child Support order failed to comply with the law and controlling authority in *Petry v Romo* that directly stated, "**[T]he term custody does not include a payment of child support. It follows that a prayer for a change in custody does not of its own force pray for a simultaneous and commensurate modification of child support. The petition here does not pray for any modification of child support.**" [Id. ¶ Par. 24]

25.    No reasonable member of the public can reasonably state nor conclude that Appellate Judges would affirm an entry of a child support modification order without a petition or prayer in the record and that to affirm a falsification of records without statutory or lawful authority would bring into question each judges impartiality. [Id. ¶ Par. 25]

26.    The Appellate Judges Rule 36 order did affirm an act in violation of the criminal laws of the State of Georgia which is currently detrimental to the Appellant's interest and the court did so because of its bias or prejudice being completely against the Appellant, in favor of the Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct regarding the Appellant's direct appeal. [Id. ¶ Par. 26]

27.    This systematic *pattern* of deliberate and knowing prejudicial conduct, bias and prejudice regarding the Appellant and his direct appeal came as a whole came within the knowledge of Appellant on or around February 1st, 2023 when the court denied his Motion for Reconsideration that clarified, made certain, corrected, alluded to and made clear of

controlling or case authority that required a different decision than the one rendered;

including a denial of a Post-Judgment Motion to supplement records on February 10th, 2023

that also clarified, made certain, corrected, alluded to requests and made clear of controlling

or case authority for *tendered and admitted evidence* needed on appeal and that the denial of

those motions established and developed a systematic *pattern* of prejudicial conduct of bias

and prejudice and established that all prior orders denying Appellant's motions to supplement

the record and the misgendering of the Appellant was only a continuation of prejudicial

conduct that previously existed that Appellant believed to be incidental prior to February 1st,

2023. [Id. ¶ Par. 27]

## FACTUAL ALLEGATIONS

### A. Misgender of the Appellant

28.     Upon the docketing of this Appeal in this court the Appellant made multiple motions

throughout May of 2022 up until June of 2022 that resulted in multiple Court orders which

knowingly and deliberately misgendered the Appellant, Deandre Arnold, with the pronouns

of "she" or "her" in its orders. (Id. ¶ Par. 2)

29.     For instance, the Appellant on May 9th, 2022, filed a "Motion for Expedited for Review

of the Direct Appeal" and "Motion to court to issue an order directing the trial court clerk to

transmit original evidence and exhibits."

30.     The May 11th, 2022, order denied these motions and identified the Appellant, Deandre

Arnold, with the pronoun of "her" in its May 11th, 2022, order. (Exhibit A)

31.     On May 23rd, 2022, the Appellant filed another motion; Motion for Reconsideration of

the denial of his May 9th, 2022, motions, which was denied on May 25th, 2022, and that order

also identified Appellant with the pronoun as "her" in its order. (Exhibit B)

32.     On May 27th, 2022, the Appellant filed a Motion for permission to file a second motion
for reconsideration, however this motion had Deandre Arnold's name next to Appellant
within the motion itself – which was not done in prior motions other than the court header
and signature block that identified Appellant as "Deandre Arnold."

33.     On May 31st, 2022, the Appellant filed a Motion to Supplement the record requesting that
a January 9th, 2020, Contempt order be included in the Appellate record.

34.     On the same date (May 31st, 2022) the Appellant filed another Motion to extend his time
to file an appellant's brief and enumeration of errors (which expired the same day as this
motion) and the Appellants Motion again identified the Appellant with the pronoun "his"
within that Motion – which was not done in prior motions other than the court header and
signature block that identified Appellant as "Deandre Arnold."

35.     On the same date court Justice(s) entered an order on June 1st, 2022, again identifying the
Appellant with the pronouns "she" or "her" in *both* of its June 1st, 2022, orders. (Exhibit C)

36.     Although the court read Appellant's motions that identified the Appellant being "Deandre
Arnold – a masculine name easily to ascertain – and with the pronouns "his" or "him" in
those motions, Appellant Justices continuously misgendered the Appellant. [Id. ¶ Par. 3]

       **B. Appellant's Requests to Supplement the Record for evidence.**

37.     On May 9th, 2022, the Appellant field a motion to supplement the record requesting "**an
        exhibit tendered**" in the lower court because "**the admitted affidavit make an issue of fact
        relevant to the direct appeal… whether the trial court judges factual findings were
        erroneous**."

38.     On May 11th, 2022, Appellate Justices denied his request to supplement the record stating
that the Affidavit was included on page 95 Volume 2 of the appellate record. (Exhibit A)

39.     On May 23rd, 2022, Appellant filed a Motion for Reconsideration contending the
        Appellant Justices had erroneously construed his requests contending his requests were for
        original evidence. The motion again also identified the records as **admitted and tendered**.

40.     On May 25th, 2022, the court denied this motion for reconsideration. (Exhibit B)

41.     On May 27th, 2022, the Appellant then filed a Motion for permission to file a second
        motion for reconsideration quoting *Locke v State* in that the court may order the clerk of the
        trial court to forward *original* evidence.

42.     While this motion was pending, on May 31st, 2022, Appellant filed a second motion to
        supplement the record this time requesting a January 29th, 2020, contempt order also
        identified as **admitted and tendered**.

43.     The court denied these motions altogether in its June 1st, 2022, orders contending that the
        January 29th, 2020, contempt order was on page pg. 63 and 65. (Exhibit C)

44.     In both instances where the Appellant specifically motioned the Appellate court to
        supplement the Appellate record for evidence/records that were identified in the motions as
        "**tendered**" … "**admitted**" …. "**exhibits**" the Justice(s) deliberately overlooked and
        knowingly mischaracterized this **admitted and tendered evidence** in the lower court final
        trial as mere filings and exhibits attached to pleadings when stating these records were
        included in the Appellate record. [Id. ¶ Par. 11]

45.     Months later, on January 19th, 2023, (without the evidence requested by the Appellant)
        Appellant Justices entered Rule 36 order affirming the lower court judgment(s) stating that
        "the evidence supports the judgment" without a written opinion.

46.     On January 26th, 2023, Appellant filed a Motion for Reconsideration and on February 9th,
        2023, filed a Post-Judgment Motion to again, Supplement the Record.

47.     Each of these motions were filed to clarify, make certain, correct, allude to and make
        clear of his requests and controlling or case authority for *tendered and admitted evidence*
        needed on appeal and made an issue of fact on his appeal. [Id. ¶ Par. 28]

48.     The Appellant stated in his motion for reconsideration that the tendered affidavit was
        necessary due to material facts within the admitted Affidavit that showed that Appellant for
        over a year and one month before the final trial on July 21st, 2021, had maintained the
        majority of the custody of his minor child. [Motion For Reconsideration filed January 26th,
        2023, ¶ pg. 7] [Vol. 2. ¶ Pg 101 Par. 41] [Id. ¶ Par. 28]

49.     Appellant stated within his Motion to Supplement "[H]ere, the... record does not include
        the crucial document tendered into evidence and admitted by the trial court." *In re RST, 748
        SE 2d 498 – Ga Court of Appeals (2013)* to wit; "Arnold's Affidavit" which made an issue of
        fact that the Appellant maintained equal or majority of the custody of his child a month
        before the Final hearing began and that such an inference of the lack of a support system
        conflicts with the admitted evidence and *findings*. [Post-Judgment Motion to Supplement
        filed February 9th, 2023, ¶ pg. 8 no. 30] [Id. ¶ Par. 28]

50.     The Appellant also requested the January 29th, 2020, contempt order [Vol 2. ¶ Pg. 63-65]
        which could have confirmed that the lower court was statutorily bound to find a substantial
        change in circumstances justifying any modification of the parties initial custody agreement
        because the Contempt order modified the parties custody agreement within two years of the
        date of the Final Order. [Id. ¶ Par. 28]

51.     The Appellant stated within this Post-Judgment Motion that the January 29th, 2020
        Contempt Order could have "[d]isprove, or shed light upon any material fact at issue in a
        case," *Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals (2009),* which was;

the lower court was bound by O.C.G.A. § 19-9-3(b) to find a substantial change of

circumstances before further altering the parties initial custody agreement and the findings

support a bright-line test not a change in circumstances.

52.     However, the Appellate Justices(s) denied Appellant's January 26th, 2023, **Motion for

**Reconsideration** on February 1st, 2023, and also denied his February 9th, 2023, **Post-

Judgment Motion to Supplement the record** on February 10th, 2023.

53.     Throughout the course of this appeal the Appellate Justice(s) deliberately overlooked and

knowingly mischaracterized requests for **admitted and tendered** evidence in the lower court

final trial as mere filings and exhibits attached to pleadings when stating those records were

included in the Appellate record when the records did not reflect tendered evidence and was

necessary as it, "tends to prove, disprove, or shed light upon any material fact at issue in a

case." *Moore v. Moore-McKinney, 678 SE 2d 152 - Ga: Court of Appeals*

   **C. Appellate Justices deliberately rendered a decision without all evidence and failed to
   enter a written opinion and comply with the law and controlling authority which
   would require a different decision from the one rendered.**

54.     Three out of all of the issues involving the Appellants direct appeal including stated

within his brief as enumerations of error was **(1)** the lower court order denying recusal when

required, **(2)** removal of his minor child vacant a substantial change in circumstances and **(3)**

and the entry of a modification of child support order absent a petition to modify child

support which Appellant stated in motions to reconsider was purely falsified.

55.     With the first issue (recusal) the Appellant Justices Rule 36 affirmance of the lower court

order denying recusal failed to comply with the law and controlling authority in *MAYOR &

ALDERMEN v. Batson-Cook Co.*, that clearly stated **"[a] trial judge is required by USCR**

**25.3… to consider whether the facts contained in the affidavits, when <u>taken as true,</u> would authorize recusal**."

56.    It is a fact that the Appellant's recusal affidavit in the lower court and his brief specifically alleged that "**Brian Amero has acted within a scheme, plot or conspiracy and/or has shared motives and is a member of said conspiracy or objective which included but not limited to sought and did prevent and/or delay Arnold from accessing the court and appeal rights**." [Vol 2. ¶ Pg. 116 Par. 35] [Appellants Brief – ¶ pg. 17]

57.    Multiple facts to support this assertion against the lower court judge was also alleged in his recusal motion and Appellant's brief, to wit; Appellant stated, "there has been no order **denying or allowing the Open Records Complaint to proceed which would ensure the issue of indigence did not affect a decision on the merits** of the pending action, likewise, no determination has been made concerning whether the trier of fact (Brian A. Amero) believed that this court could **grant any relief against any party named** in the pleading. See O.C.G.A. 9-15- 2." [Appellant's brief – ¶ pg. 16]; "Brian Amero **has done actions** which could now be reasonably considered to have hindered, **stalled or delayed evidence for a possible suit against the City of Hampton and/or evidence to overturn his conviction**." [Appellant's brief – ¶ pg. 17]; "**Failure to ensure that the issue of indigence did not affect a decision on the merits of the pending action**" [Appellant's brief – ¶ pg. 16]; That the lower court judge was, "**Named as the assigned Judge** to Appellant's Writ of Habeas Petition although it was never filed nor assigned a case no., by employees of his staff, namely Suzette Gray." [Appellant's brief – ¶ pg. 23]; That Brian Amero was "**chosen or allegedly assigned to Arnold's Writ of Habeas** due to his **shared motives** in the same colluded result of all conspirators." [Appellant's brief – ¶ pg. 23]; Including that "an **inference can be**

drawn that Suzette **Gray had motive to assign** said writ under Brian Amero **because of his**

**agreement** or possible agreement *with* shared motives of conspirators to delay **Arnold**

**complaint(s) involving the City of Hampton**." [Arnold Motion For Reconsideration filed

January 26th, 2023 – ¶ pg. 9]; Including stated that "**Extra-judicial sources** and factual

**circumstances** give rise to a reasonable belief that **impartiality** on the part of Brian Amero

might reasonably be questioned." [Appellant's brief – ¶ pg. 23]; because **he is involved or**

**has acted in an extrajudicial scheme of an esoteric nature** and/or scheme, plot **or**

**conspiracy with shared motives** to deprive Arnold of…due process…and equal protection."

[Appellant's brief – ¶ pg. 17] [Id. ¶ Par. 28]

58.    Moreover, the Appellant alleged in his brief that the lower court judge was involved in a

conspiracy and Appellant Justices did overlook controlling authority which would require a

different decision from the one Rule 36 ordered rendered because "a conspiracy may be

shown by direct proof, or by inference, deduced from acts and conduct," *Jones v. State, 827*

*SE 2d 887 - Ga: Supreme Court (2019),* and the Appellant alleged facts, which taken as true,

showed direct proof, conduct or inferences that a conspiracy was afoot.

59.    The facts if taken as true would support the notion that when it involved the relations of

Henry County public officials, City of Hampton public officials and the Appellant, the

appellant's rights were violated when he sought remedies against the City of Hampton

related to records or appeals to overturn his Municipal court conviction at a time a

modification of custody action involving his child was pending.

60.    Moreover, the Appellant Justices failed to comply with the law and controlling authority

in *A & M HOSPITALITIES, LLC v. Alimchandani* which mandates a judge's recusal for

"**[M]ischaracterizing… allegations regarding… delay**."

61.     The lower court order judge in denying recusal falsely stated that the Appellant alleged the lower court acted within a scheme "blocking" and "**unreasonably delaying a hearing on Respondents request to proceed in *forma pauperis* in a separate case.**" [Vol 2. ¶ Pg 130]

62.     It is a fact the Appellant did not state at any time that the court delayed respondents request to proceed in forma pauperis and nowhere in Appellant's recusal affidavit does Appellant allege such statement to justify the Appellate Justices affirmance of this order.

63.     Appellant only and specifically alluded to in his brief that the trial court Judge's "**failure to ensure that the issue of indigence did not affect a decision on the merits of the pending action**." [Vol 2. ¶ Pg. 112]. The recusal motion specifically stated, "there has **been no order denying or allowing the Open Records Complaint to proceed**" and the Appellant alleged such facts within his brief. [Appellant's Brief – ¶ Pg. 16]

64.     The Appellant specifically alleged a violation of O.C.G.A § 9-15-2(d) in his brief in the delaying of the merits of his Open Records suit in his brief, not a request to proceed in forma pauperis and the mischaracterization made a decision upon the truth of the facts in the affidavit in lieu of whether the facts, if true warranted recusal.

65.     In the face of such authority the Appellate Justices Rule 36 order did affirm "**[a] decision upon the truth of the facts...for the evil against which the [rule] is directed**." *MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*

66.     The Appellate Justices did fail to comply with the law when confronted with controlling authority stating, "[M]ischaracterizing the defendants allegation regarding the reason for the delay, the trial court evaluated and accepted the truth of his own factual allegations, **mandating his recusal**." *A & M HOSPITALITIES, LLC v. Alimchandani, 871 S.E.2d 290 (2022)*

67.     In lieu of recusal and in the face of direct proof of a purposeful mischaracterization of Appellant's allegations regarding the reason for the delay of his Open Records suit against the City of Hampton, the Appellate Justices affirmed the lower court judgment against controlling authority for the evil against which the [rule] is directed.

68.     Continuing, the Appellate Judges affirmance of the lower court order affirming the entry of a purely falsified Child Support order failed to comply with the law and controlling authority in *Petry v Romo* that directly stated, "**[T]he term custody does not include a payment of child support. It follows that a prayer for a change in custody does not of its own force pray for a simultaneous and commensurate modification of child support. The petition here does not pray for any modification of child support.**" *Petry v Romo, 547 SE 2d 736 – Ga: Court of Appeals (2001)*

69.     There is no Petition to modify Child Support filed in the Appellate record nor in the lower court nor was such a Petition filed and is simply missing in the Appellate record.

70.     Although *Henry County clerks* mischaracterized the modification of custody action as a modification of "CUST, VISITATION **& C.S.**" on page 2 Par. 7 of the Appellate *Index*, the fact remains that there is no modification filed nor any prayer for relief requesting such a modification of child support in any of the initial pleadings – nor thereafter.

71.     Accordingly, the Appellate Justices affirmed an act of falsification of support records, a criminal violation in the State of Georgia and failed to comply with the law and authority.

72.     Appellant Justices overlooked contradicting facts requiring recusal related to the trial court Judge's "**failure to ensure that the issue of *indigence* did not affect a decision on the merits of the *pending* action**" and the Appellate Justices Rule 36 order did affirm "**[a]**

decision upon the truth of the facts...for the evil against which the [rule] is directed."

*MAYOR & ALDERMEN v. Batson-Cook Co., 728 SE 2d 189 - Ga: Supreme Court (2012)*

**CONCLUSION/RELIEF**

1. That this court consider this Motion pursuant to Ga. Ct. Appellate Rule 44;
2. That this Court Grant this motion and disqualify all Judges dealing with, concerning or involved in the affirmance of the lower court decision in its January 19th, 2023 – Rule 36 Order;
3. That this court disqualify and reverse all court orders or decisions of any Judge(s) dealing with, concerning with or involved in the drafting, signing or making any court order involving Appellant's multiple motions to supplement the record including all Motions for reconsideration related to the supplemental motions;
4. That the court order any and all further relief just and proper.

DATE: 2/13/2023

Deandre C. Arnold
c/o 7757 Rutgers Circle
Fairburn Georgia 30213

470-514-3097

Sworn and subscribed to me on this ___13___ of __February__. 2023

Notary Signature                    [                    ]        Deandre Arnold

## CERTIFICATE OF SERVICE

This certifies that I DEANDRE ARNOLD, Appellant sent the Appellee, TYARIELLE

PATTERSON copies of the following documents: **MOTION TO DISQUALIFY** by regular

mail with proper postage thereon to counsel of record Addressed as follows:

Tyarielle Patterson
13762 Ogakor Dr.
Riverview Florida 33759

Dated: 2/13/2023

Deandre C. Arnold
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

# IN THE COURT OF APPEALS
## STATE OF GEORGIA

| | |
|---|---|
| Deandre Arnold | ) |
|      Appellant, | ) |
| | ) |
| | ) |
| vs. | ) |
| | )    **Case No. A22A1367** |
| | ) |
| | ) |
| Tyarielle Patterson | ) |
|      Appellee. | ) |

## APPELLANT'S SUPPORTING AFFIDAVIT TO APPELLANT'S MOTION TO DISQUALIFY

1.    My name is Deandre Arnold, I am over the age of 21 years old and otherwise competent to give this affidavit and testify to its contents. The Facts set forth herein are based upon personal knowledge and are true and correct.

2.    Upon the docketing of this Appeal in this court the Appellant made multiple motions throughout May of 2022 up until June of 2022 that resulted in multiple Court orders which knowingly and deliberately misgendered the Appellant, Deandre Arnold, with the pronouns of "she" or "her" in its orders.

3.    Out of eight of the orders in this case, four of those court orders identified the Appellant, Deandre Arnold as a "she" or "her" at a time the Appellant had identified himself in motions prior to these orders with gender specific pronouns such as "his" and at a time he placed next to the Appellant, "Deandre Arnold" within the contents of motion – a name that had the quality, state or degree of masculinity in lieu of femineity that a Justice could easily discern.

4.   Even after his motion identified himself as the Appellant and utilized the pronoun of "his" in motions in which the Justices fully read, the court's June 1st, 2022 order continued to identify the Appellant with pronouns tailored to a female or woman. [Id. Par.

5.   The motives of the misgender of Appellant's sex at the time was not known but because of this prejudicial pattern now learned of by Appellant, on information and belief, Appellate Justices motives were to get the attention of the Appellee by making it appear as if "she" were receiving adverse claims in this court in order to determine if she would actively participate in opposing Appellant's motions on appeal (on belief that motions were not mailed to her) in order to encourage a response for additional reasons in a predetermined Rule 36 order or deny Appellant's motions in its predetermined bias or prejudice (which would later become a pattern) much more quickly in this court, to wit; Appellant Motions in this court to Supplement the record and Motions for Reconsiderations after the misgender of the Appellant received adverse decisions in less than in 48 hours (Ga App. Rule 41(c)).

6.   No reasonable member of the public including Appellant can reasonably state nor conclude that Appellate Justices would continuously misgender an individual on appeal even though name "Deandre Arnold" had the quality, state or degree of masculinity in lieu of femineity that a Justice could easily discern and knowledge of pronouns in his motions such as ("his") that Justices fully read and the public would conclude that to do so continuously would bring into question each judges impartiality.

7.   The Appellate Justices did in fact knowingly misgender the Appellant because of their bias or prejudice being completely against the Appellant, in favor of the Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct regarding the Appellant and the Appellant's direct appeal as a whole.

8. After the docketing of this Appeal in this court on April 26th, 2022, the Appellant made multiple motions throughout May of 2022 up until February of 2023 for evidence that was **tendered and admitted** at the Final trial in the lower court.

9. The Appellant specifically requested in multiple motions that the Appellant court order the lower court clerk to transmit an affidavit entitled "Arnold Affidavit" that proved he maintained the majority of the custody of his child for over a year and one month before the final trial began in the lower court which affidavit made an issue of fact on his appeal.

10. The Appellant also specifically requested in multiple motions that the Appellant court order the lower court clerk to transmit a "January 2020 Contempt Order" which he stated in said motions was necessary for the determination of whether there was a need to find a substantial change in circumstances.

11. However, the Justice(s) in its order(s) denying said motions and all reconsiderations of those motions identifying said records as **tendered and admitted** alluded to in its order(s) that the requested records were already apart of the record even though the Justice(s) knew the records in the Appellate record were only mere filings or exhibits attached to certain pleadings – not records that were **tendered and admitted** at the Final trial.

12. No reasonable member of the public including Appellant can reasonably state nor conclude that Appellate Justice(s) would continuously deny and mischaracterize **admitted and tendered evidence** in a final trial as mere filings and exhibits attached to pleadings after their having notice and knowledge in motion(s) to reconsider and supplement that Appellant sought and were in search of records **tendered and admitted** in the Final trial – not mere filings or exhibits attached to pleadings – and would conclude that to do so would bring into question each judges impartiality.

13.     The Appellate Justices did in fact knowingly and repeatedly deny Appellants Motions to

Supplement the record and all prior reconsiderations because of their bias or prejudice being

completely against the Appellant, in favor of the Appellee or the lower court judge and in the

continuation of a systematic pattern of prejudicial conduct – of Appellant's appeal.

14.     Three out of all of the issues involving the Appellants direct appeal including stated

within his brief as enumerations of error was **(1)** the lower court order denying recusal when

required, **(2)** removal of his minor child vacant a substantial change in circumstances and **(3)**

and the entry of a modification of child support order absent a petition to modify child

support which Appellant stated in motions to reconsider was purely falsified.

15.     Without written opinion, the Appellant is without knowledge and prejudiced as to the

origins in law, controlling authority, factors, standards and the reasoning for their decision to

affirm the lower courts judgment(s) which would thus factually show whether certain

evidence requested in Motion(s) to supplement were needed or required on Appeal which

affected or influenced their decision to *affirm* the lower court order.

16.     Moreover, the Appellant Justices affirmance of the lower court order denying recusal

failed to comply with the law and controlling authority in *MAYOR & ALDERMEN v. Batson-*

*Cook Co.* that clearly stated **"[a] trial judge is required by USCR 25.3… to consider**

**whether the facts contained in the affidavits, when <u>taken as true</u>, would authorize**

**recusal."**

17.     The Appellant's brief specifically alleged extrajudicial conduct and provided direct and

circumstantial evidence of such conduct and stated that, "Brian Amero has acted within a

scheme, plot or conspiracy and/or has shared motives and is a member of said conspiracy or

objective which included but not limited to sought and did prevent and/or delay Arnold from
accessing the court and appeal rights." [Appellant's brief ¶ pg. 17]

18.    By law, a non-discretionary recusal or assignment to another Judge to determine whether
there was any evidence to support Appellant's allegations, which if taken as true required
recusal was mandatorily required.

19.    The statements taken as true required a different decision from the one rendered
requiring recusal because no member of the public including the Appellant or any other
appellate court or any supreme court could make a determination that a trial court judge who
is actively involved in a scheme, plot or conspiracy to prevent and delay appeal rights against
an individual in separate cases could not be bias, prejudice or have his/her impartiality
reasonably questioned in active cases involving such person and the judge at issue – and no
court could reasonably render a written opinion affirming such conduct.

20.    Moreover, the Appellant Justices failed to comply with the law and controlling authority
in *A & M HOSPITALITIES, LLC v. Alimchandani* which mandated the lower court judge's
recusal concerning statements made "**[M]ischaracterizing... allegations regarding...
delay**" related to the merits of the Appellants open records suit in a separate case.

21.    The Appellant's brief stated that the order denying recusal falsely stated that Appellant
alleged the lower court acted within a scheme to "block" and "**unreasonably delaying a
hearing on Respondents request to proceed in *forma pauperis* in a separate case**" when
the Appellant in fact stated in his brief of the trial court Judge's "**failure to ensure that the
issue of *indigence* did not affect a decision on the merits of the *pending* action**" and the
Appellate Justices Rule 36 order did affirm "**[a] decision upon the truth of the facts...for**

the evil against which the [rule] is directed." *MAYOR & ALDERMEN v. Batson-Cook Co.,
728 SE 2d 189 - Ga: Supreme Court (2012*) [Appellant's brief ¶ pg. 16]

22. No reasonable member of the public including Appellant can reasonably state nor
conclude that Appellate Justices would overlook the above laws and controlling authority and
would conclude that to do so brings into question each judges impartiality.

23. The Appellate Justices did make such a decision because of its bias or prejudice being
completely against the Appellant or in favor of the Appellee or the lower court judge and in
the continuation of a systematic pattern of prejudicial conduct regarding the Appellant's
direct appeal.

24. Continuing, the Appellate Judges affirmance of the lower court order affirming the entry
of a purely falsified Child Support order failed to comply with the law and controlling
authority in *Petry v Romo* that directly stated, "**[T]he term custody does not include a
payment of child support. It follows that a prayer for a change in custody does not of its
own force pray for a simultaneous and commensurate modification of child support.
The petition here does not pray for any modification of child support.**"

25. No reasonable member of the public can reasonably state nor conclude that Appellate
Judges would affirm an act of an entry of a child support modification without a petition or
prayer for modification in the record and that to affirm a falsification of records without
statutory or lawful authority would bring into question each judges impartiality.

26. The Appellate Judges Rule 36 order did affirm an act in violation of the criminal laws of
the State of Georgia which is currently detrimental to the Appellant's interest and the court
did so because of its bias or prejudice being completely against the Appellant, in favor of the

Appellee or the lower court judge and in the continuation of a systematic pattern of prejudicial conduct regarding the Appellant's direct appeal.

27.    This systematic *pattern* of deliberate and knowing prejudicial conduct, bias and prejudice regarding the Appellant and his direct appeal came as a whole came within the knowledge of Appellant on or around February 1st, 2023 when the court denied his Motion for Reconsideration that clarified, made certain, corrected, alluded to and made clear of controlling or case authority that required a different decision than the one rendered; including a denial of a Post-Judgment Motion to supplement records on February 10th, 2023 that also clarified, made certain, corrected, alluded to requests and made clear of controlling or case authority for *tendered and admitted evidence* needed on appeal and that the denial of those motions established and developed a systematic *pattern* of prejudicial conduct of bias and prejudice and established that all prior orders denying Appellant's motions to supplement the record and the misgendering of the Appellant was only a continuation of prejudicial conduct that previously existed that Appellant believed to be incidental prior to February 1st, 2023.

28.    All of the facts, allegations, statements as stated in the **MOTION TO DISQUALIFY** are true and correct.

DATE: 2/13/2023

Deandre C. Arnold
c/o 7757 Rutgers Circle
Fairburn Georgia 30213

470-514-3097

Sworn and subscribed to me on this ____13____ of __February__ __2023__.

Notary Signature       [                        ]       Deandre Arnold

Page 7 of 8

## CERTIFICATE OF SERVICE

This certifies that I DEANDRE ARNOLD, Appellant sent the Appellee, TYARIELLE

PATTERSON copies of the following documents: **APPELLANT'S SUPPORTING**

**AFFIDAVIT TO APPELLANT'S MOTION TO DISQUALIFY** by regular mail with proper

postage thereon to counsel of record Addressed as follows:

Tyarielle Patterson<br>
13762 Ogakor Dr.<br>
Riverview Florida 33759

Dated: 2/13/2023

Deandre C. Arnold<br>
c/o 7757 Rutgers Circle<br>
Fairburn Georgia 30213<br>
Dresmailbox89@gmail.com<br>
4705143097

# Court of Appeals
# of the State of Georgia

ATLANTA,  February 15, 2023

*The Court of Appeals hereby passes the following order:*

## A22A1367.  ARNOLD v. PATTERSON.

The above-referenced appeal was docketed in this Court on April 26, 2022, and the judgment of the trial court was affirmed on January 19, 2023. Nevertheless, on February 13, 2023, appellant filed a motion to disqualify and recuse all presiding judges of this Court from further participating in this matter. Specifically, appellant contends that the judges of this Court exhibited bias by admittedly, mistakenly referring to him with the wrong pronoun in several orders denying his motion to supplement the record and by denying those same motions.

Court of Appeals Rule 44 (a) requires that motions to recuse or disqualify a judge "must be filed within 20 days of docketing unless good cause is shown for failure to meet the time requirement." But appellant did not file his motion until more than 20 days after his appeal was denied—nearly nine months after it was docketed. Moreover, appellant seeks recusal based on an inadvertent use of the wrong pronouns that had no bearing on the orders in which they occurred and on adverse rulings in

those orders. Accordingly, appellant's motion to disqualify and recuse is hereby DENIED.



*Court of Appeals of the State of Georgia*
*Clerk's Office, Atlanta,   02/15/2023*

*I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*

*Witness my signature and the seal of said court hereto affixed the day and year last above written.*

*Stephen E. Castlen*                    *, Clerk.*

EXHIBIT X – 4

("Exhibit X4 – Plaintiff's Motion for Reconsideration to the Denial of
Appellate Justices refusal to recuse | 7pgs. ")

Presented to Appellate Court clerk Tabatha Cooper in the Georgia Court
of Appeals on 2/13/2023 (not filed)

# IN THE COURT OF APPEALS
# STATE OF GEORGIA

## CASE NO. A22A1367

---

## DEANDRE ARNOLD
### Appellant,

### vs.

## TYARIELLE PATTERSON
### Appellee.

---

# MOTION AND BRIEF OF APPELLANT'S MOTION
# FOR RECONSIDERATION[1]

---

Deandre Arnold
**Mailing**: c/o Attn: Mr. Arnold
7757 Rutgers Cir.
Fairburn Georgia 30213
**Email**: Dresmailbox89@gmail.com
**Telephone**: 470-514-3097

*Pro Se Petitioner*

---

[1] **Notice to Appellate Court Clerk**: This Motion for reconsideration is in reference to the February 15th, 2023 order denying recusal and does not require permission to file a second motion for reconsideration with reference to the courts February 1st, 2023 order denying a prior motion for reconsideration of the courts January 19th, 2023 Rule 36 order. Please adhere to the ministerial duties of the clerk and submit the document accordingly.

## **BACKGROUND OF CASE AND SUMMARY OF ARGUMENT**

This direct appeal was docketed in this Court on April 26th, 2023, after a campaign of conspiracy and state corruption that occurred in a lower court and is still ongoing. On August 10th, 2021, the Appellant filed a Motion to recuse the lower court judge contending partiality and bias arising from acts that occurred "before, during and after the Mother's presentment of her Modification of custody Petition to the Henry County Superior court." On October 7th, 2021, the lower court judge **(1)** entered an order denying Appellant's recusal motion, **(2)** granted the Appellee's Petition to relocate with the parties minor child across state lines and **(3)** entered a falsified child support Addendum on the record. On December 7th, 2021, the Appellant filed an Amended Notice of Appeal for review of these three (3) issues and on January 26th, 2023, the Appellate court affirmed the decisions of the lower court after a series of motions in this court filed by the Appellant. On February 13th, 2023, the Appellant filed a Motion to disqualify all judges and reverse all orders of any judges *concerned or involved with* the affirmance of the lower court decision in its January 19th, 2023 – Rule 36 Order including the drafting or making of any court order involving Appellant's multiple motions to supplement the record. On February 15th, 2023, this court denied this motion. Appellant based this motion on solely four (4) issues that Appellant contends requires a different decision from the one rendered because (1) the court overlooked a material fact when stating Appellant motioned to disqualify all judges of this court, (2) overlooked the timeliness of Appellant's recusal motion showing good cause, (3) defended against the allegations in Appellants recusal motion and (4) appeared to have failed to follow Ga. App. Ct. R. 44(d). The Appellant states further below that reconsideration is appropriate to protect the integrity of Georgia's judicial system and the Appellant from ongoing conspiracy which has manifested into state created danger concocted by her (Georgia's) state officials.

**Timeliness**

The Court issued its order on Appellant's Motion to disqualify on February 15th, 2023.
Because this Brief and Motion for Reconsideration is being filed within 10 days (next business
day), as required by this Courts rule 37, the Motion is timely and this Court retains jurisdiction.

**Rule 37(e) Basis for Granting and Jurisdiction**

A reconsideration will be granted on motion of the requesting party, only when it appears
that the Court overlooked a material fact in the record, a statute or a decision which is controlling
as authority and which would require a different judgement from that rendered, or has
erroneously construed or misapplied a provision of law or a controlling authority. This court has
jurisdiction to revise this opinion and because of the importance of the issues consider it en banc.

**ARGUMENT**

I.   **THIS COURT OVERLOOKED A MATERIAL FACT WHEN STATING
     APPELLANT MOTIONED TO DISQUALIFY "ALL" PRESIDING JUDGES OF
     THIS COURT.**

On February 15th, 2023, in the courts order denying recusal the Appellate court stated that
"Appellant filed a motion to disqualify and **recuse all presiding judges of this court**…"
[February 15th, 2023, Order pg. 1] The Appellant however stated in his request for relief that,
**"this Court Grant this motion and disqualify all Judges dealing with, concerning or
involved in the affirmance of the lower court decision in its January 19th, 2023 – Rule 36
Order."** [Appellants Motion to Disqualify ¶ pg. 18] [2] Thus, this court "mischaracterized" and
overlooked a material fact in Appellants disqualification motion appropriate for reconsideration.

---

The Appellant also stated that, "this court disqualify and reverse all court orders or decisions of
**any Judge(s) dealing with, concerning with or involved in the drafting, signing or making
any court order involving Appellant's multiple motions to supplement the record including
all Motions for reconsideration** related to the *supplemental motions*." [Id. 18]

## II.    THIS COURT OVERLOOKED A MATERIAL FACT AS TO THE *TIMELINESS* OF THE APPELLANT'S RECUSAL MOTION SHOWING GOOD CAUSE

The Appellate court stated in denying Appellants recusal motion that "But appellant did not file his motion **until more than 20 days** after his appeal was denied." According to Ga. Ct. App. R. 44 there are two issues to consider;

> "Any motion to recuse or disqualify a judge in a particular case**... must be filed within 20 days** of docketing **unless good cause is shown for failure to meet the requirement**."

The Appellate court did not state that <u>good cause for failure to meet the 20-day requirement was not shown</u> by the Appellant and the court overlooked a material fact in Appellants motion showing good cause when Appellant stated in his disqualification motion that;

> "**This systematic pattern of deliberate and knowing prejudicial conduct, bias and prejudice** regarding the Appellant and his direct appeal came **as a whole came within the knowledge of Appellant on or around February 1st, 2023**... and developed a systematic pattern of prejudicial conduct of bias and prejudice and established that all prior orders denying Appellant's motions to supplement the record and the misgendering of the Appellant was only a continuation of *prejudicial* conduct that previously existed that Appellant believed to be incidental prior to February 1st , 2023." [Appellant Disqualification motion ¶ pg. 8-9]

Moreover, motions filed within 20 days of docketing would conflict with Ga. Ct. App. R. 44(b) requiring litigants to demonstrate a systematic pattern of prejudicial conduct that Appellant stated by affidavit that prejudicial conduct, "**came within the knowledge of Appellant on or around February 1st, 2023**." Moreover, the court did not enter two (2) or more orders in this appeal until after 20 days of docketing this appeal necessary to discern or establish a systematic <u>pattern</u> of *prejudicial* conduct pursuant to Ga. App. R. 44(b) that Appellant stated above discerned such a systematic pattern of this prejudicial conduct on February 1st, 2023.

### i.   The Appellate Court overlooked a pattern of prejudicial conduct on appeal.

The Appellant not only stated that on February 1st, 2023 he discerned a systematic pattern of

prejudicial conduct based on the denial of multiple motions that made certain and clear of facts,

controlling or case authority requiring a different decision than those rendered requiring recusal

of the lower court judge, supplementation to perfect his record on appeal and reconsideration

reversing falsified support orders [Appellants motion to disqualify ¶ no. 27] but also that it

prejudiced his child's dynamic character & development, "by the insecurity of inconclusiveness

if custody is to remain the same" *Scott v. Scott, 578 SE 2d 876 - Ga: Supreme Court (2003)* by

continued litigation over required disqualification. [Post-Judgement Motion ¶ no. 44]

### III.   THE APPELLATE COURT JUSTICES DEFENDED THE ALLEGATIONS IN APPELLANT'S DISQUALIFICATION MOTION MANDATING RECUSAL

The Georgia Supreme Court stated not long ago that a justice or judges "[e]fforts at

defending himself against a motion to recuse will inevitably create an appearance of partiality.

One reason is that if he defends himself he becomes an adversary of the movant for recusal."

*Post v State, 779 SE 2d 624 -- Ga: Supreme Court (2015)* However, in denying the Appellant's

recusal motion the court overlooked this controlling issue when on three occasions the Justices

defended itself in the order denying recusal. The Appellate court stated that;

> "Specifically, appellant contends that the judges of this Court exhibited bias **by admittedly, mistakenly referring to him with the wrong pronoun** in several orders." [February 15th, 2023, Order ¶ pg. 1]

The Appellate court defended itself from recusal in stating that the Court "*admittedly,*

*mistakenly and* (later) *inadvertently* "referred to Appellant with the wrong pronoun.[3] The

Supreme Court of Georgia has explained that, "[a] judge cannot become actively involved in

---

[3] (explaining that argument over recusal issues "may draw the judge into **presenting his side of the story**, which in turn may create a perception that the judge is an advocate or hostile witness rather than an impartial adjudicator in the case," **requiring disqualification**. *Mondy v. Magnolia Advanced Materials, Inc., 815 SE 2d 70 303 Ga. (2018)*

presenting… argument against a motion seeking his recusal without that defense itself becoming a basis for recusal… and that **by attempting to refute a charge of bias**, a judge may become – or appear to have become – an adversary of the party seeking his disqualification." *A & M Hospitalities, LLC v. Alimchandani, 871 S.E. 2d 290 (2022)* This court "[c]annot allow the integrity of the judicial process to be compromised in any way… A community without certainty in the true administration of justice is a community without justice." *Matter of Inquiry Concerning a Judge, 462 SE 2d 728 265 Ga. 843 (1995)* Thus, this court overlooked controlling authorities on these issues of recusal directed to "serve to maintain the integrity of the judiciary and the rule of law." *Propst v. Morgan, 708 SE 2d 291 288 Ga. 862 – Ga Supreme Court (2011)*

## IV. THE APPELLATE COURT APPEARS TO NOT HAVE FOLLOWED GEORGIA APPELLATE COURT RULE 44(d).

Typically, in Appellate court decisions the last names of the J.J.'s that rendered the decision would appear on the decision for purposes of displaying the concurring or dissenting justices. For instance, the courts January 29th, 2023, Rule 36 opinion had the name of three justices or judges (J.J.) thereon in a concurring opinion. The order denying Appellant's recusal, however, did not, and failure to adhere to Ga. App. Rule 44(d) requires reconsideration.

## CONCLUSION

For the foregoing reasons, Appellant requests that this Court grant Appellant's Motion for reconsideration and all other relief as necessary.

**"This submission does not exceed the word count limit imposed by Rule 24."**

Date: 2/27/2023

c/o Arnold, Deandre
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

**CERTIFICATE OF SERVICE**

This certifies that on 2/27/2023 that I DEANDRE ARNOLD, Appellant sent the

Appellee, TYARIELLE PATTERSON copies of the following documents: MOTION AND

BRIEF OF APPELLANT MOTION FOR RECONSIDERATION by regular mail with proper

postage thereon to counsel of record Addressed as follows:

Tyarielle Patterson
13762 Ogakor Dr.
Riverview Florida 33759

Date: 2/27/2023

c/o Arnold, Deandre
c/o 7757 Rutgers Circle
Fairburn Georgia 30213
Dresmailbox89@gmail.com
4705143097

Exhibit X – 6

("Exhibit X6 – Plaintiff's Certificate of Appealability | 24 pgs.")

Filed in the Northern District Federal Court of Atlanta on 12/13/2022

*Arnold v. Broce (1:21-cv-04536-SEG) Doc. 9*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORIGA
ATLANTA DIVISION**

DEANDRE ARNOLD                          )
                                        )
                                        )
                                        )
                                        )       Case No. **1:22-CV-4536-SEG**
v.                                      )
                                        )
                                        )
                                        )
                                        )       PETITIONER'S EMERGENCY APPLICATION
Department of Human Services Candice    )       FOR CERTIFICATE OF APPEALABILITY
Broce, et al.,                          )

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 1 3 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## PETITIONER'S EMERGENCY APPLICATION FOR CERTIFICATE OF APPEALABILITY

### I.  INTRODUCTION

Petitioner, ("Arnold") filed this Habeas action on November 15th, 2022, alleging that his *custody* came as a result of state court proceedings filed in bad faith by Respondents under a registered out-of-state support order for enforcement entered in violation of the Constitution of the United States. Petitioner further alleged that his custody arose out of scheme and design of retaliation and state created danger to prevent his civil redress of grievances in order to avoid liability in official proceedings in the State of Georgia. Arnold filed this Writ alleging that his *custody* for Federal interest's purposes and jurisdiction came solely after the filing of a subsequent contempt action by Respondents and sought relief. Arnold also filed an Emergency Motion to stay the pending state court proceedings and brief in support contending a substantial likelihood of success on the merits of his Habeas Petition and irreparable injury including the absence of substantial harm to Respondents and other parties, and that the stay would serve the public interest. On December 6th, 2022, the District Court entered an order denying Arnold's

Page 1 of 24

Writ of Habeas. Arnold's additional Motions to stay state court proceedings and motion for access to electronic filing were denied as Moot. Arnold seeks a Certificate of Appealability as to two issues, that (1) Arnold is in custody pursuant to the judgment of a state court in violation of the Constitution of the United States and that the (2) Younger Abstention does not prevent the court from intervening in the ongoing state proceedings. As further stated below, Arnold seeks a Certificate of Appealability as to these issues contending that reasonable jurists would conclude that Arnold has presented adequate arguments deserving of encouragement to proceed further.

## LEGAL STANDARD

"A Habeas Petitioner who has been denied relief cannot appeal unless he has fist obtained a certificate of appealability ("COA"). *Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).* "This is a jurisdictional prerequisite because the COA statute mandates that [u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals." *Id.* "This is true whether the habeas corpus petition was filed in the district before or after AEDPA's effective date." *Slack v McDaniel, 529 U.S. 473 (2000).* "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).* "As we have said, a COA determination is a separate proceeding, one distinct from the underlying merits. *Slack, 529 U.S., at 481.* "The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal." *Miller-El, 537 U.S. at 336.* "He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reasons; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v Estelle, 463 US 880 – Supreme Court (1983).*

## I. REASONABLE JURISTS WOULD FIND IN ARNOLD'S FAVOR THAT ARNOLD IS IN CUSTODY PURSUANT TO A STATE COURT JUDGEMENT FOR FEDERAL HABEAS JURISDICTION

The United States Supreme Court has made clear that, "the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 300 (1984)*. Moreover, "[W]hether a person is in custody depends upon the totality of the circumstances in the individual's case." *United States v. Harris, 611 F.2d 170, 172 (6th Cir. 1979)*. The Supreme Court has also stated that, "The writ is available as well to attack future confinement and obtain future releases." *Preiser v. Rodriguez, 411 US 475 – Supreme Court (1973)*. "What matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Jones v. Cunningham 371 U.S. 236 (1963)*. The supreme court has also stated that, "We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired… and unsuspended, save only in the cases specified in our Constitution." *Fay v. Noia, 372 US 391 – Supreme Court (1963)*.

### (A) The Case of *Duvallon* is inapposite to the facts of Arnold's case and should not control.

The District Court disagreed that Arnold was in custody in citing to *Duvallon* and other citing cases. In *Duvallon*, the court stated that "[T]he penalty for which is a fine with no provision for incarceration, is in custody." *Duvallon* further elaborated that, "[T]he existence of the *possibility* that appellant will be found in contempt and incarcerated for willful failure to pay the fine did not change the result," (nor constitute custody) however, only "[B]ecause any incarceration at that point would be in the nature of a penalty for contempt and would be *separate* from the conviction…" *Duvallon v. Florida, F. 2d 483 – Court of Appeals, 11th Circuit (1982)*. *Duvallon* is inapposite to the facts of Arnold's case because Arnold's restraint including

any purported physical incarceration within the contempt action is not *separate* from the
unlawful registration of a *controlling* support order itself which was entered for the purposes of
**enforcement**. As such, the enforcement contempt action is but a consequence of the entry of the
registered controlling out-of-state support order for **enforcement**[1] which Arnold alleges was
entered in violation of the Constitution of the United States. Arnold's restraint or future liberty
*infringement* would neither be "separate" of the action (or conviction) itself but as a result of its
prior registered support order. This was not the case in *Duvallon* but is the case here. On this
basis alone jurists of reason would conclude that this claim is debatable and adequate deserving
of encouragement to proceed further because of the inapposite factor Arnold alleges in *Duvallon*
that is inapplicable to the facts of his case and a court could resolve the issues [in a different
manner] or conclude in Arnold's favor as to *Duvallon*.

**(B)     Hensley should control in this action and reasonable jurists would conclude that
         Arnold is in custody pursuant to the judgment of a state court.**

In *Hensley*, the Supreme Court laid out three considerations of whether a Habeas
Petitioner satisfies the in-custody requirements for Federal Habeas jurisdiction which should
control in this case. "(1) Whether the petitioner was subject to restraints not on the general
public; (2) whether incarceration was a "speculative possibility that depends on a number of
contingencies over which [the petitioner] has no control,;" and (3) whether holding that there was
no custody simply postponed the habeas case until the petitioner was in jail." *Gore v. Callahan,
Dist. Court, ND Texas 2015*. Arnold satisfies all the requirements as further alleged below.

**(1) Petitioner is subject to restraints not on the general public.**

First, Arnold has alleged that Respondents filed a contempt action in December of 2022.
(Doc. 1. ¶ 113) As a result of this contempt action he is undoubtedly obliged to appear at all

---

[1] (Doc. 1 at 24-27)

times and places as ordered by any court or magistrate and he can not come and go as he pleases. Overall, Arnold is "subject to restraints not shared by the public generally." *Jones v. Cunningham, 371 US 236 – Supreme Court (1963*). Arnold's is undoubtedly subject to restraints in a contempt action filed in December 2021 by agents for Respondents (immediate custodians)[2] who may demand his appearance at any time or moment *and* who already has done so in the past and who currently may be concealing information related to the action affecting his interests in the contempt action as done with records requests in the past. (Id. ¶ 68-74, 81, 86, 93-97) Importantly, Arnold's has *restraint on his liberty* in a contempt action filed in bad faith for retaliatory purposes involving state actors who have an adverse interest in Arnold's successful outcome of his challenge of the support order and whose affirmative acts knowingly brought Arnold into custody and made him more vulnerable to danger he should not have to bear. "All that matters is "[T]hey significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Jones v. Cunnigham, 371 US 236 – Supreme Court (1963)*. As stated above and more fully alleged below a reasonable jury could conclude that Arnold's claims are reasonable, debatable and adequately deserving of encouragement to proceed further in the judicial process and that a court could resolve or conclude the issues in favor of Arnold. Moreover, as fully alleged below, under the circumstances of this case, If Petitioner is not in custody, which he denies, "[T]hat result would do no more than postpone this habeas action." *Hensley v. Municipal Court, San Jose-Milpitas Judicial District 411 U.S. 345 (1973)*. Accordingly, the court need not determine that the petitioner here would prevail on appeal, a Certificate of Appealability ("COA") should issue if jurists of reason find his claims are debatable. *See Barefoot v Estelle, 463 US 880 – Supreme Court (1983).*

---

[2] The **Proper respondent** in a federal habeas corpus petition is the petitioner's "immediate custodian." *Brittingham v. US, 982 F. 2d 378 – Court of Appeals 9th Circuit (1992)*

## (2) A Federal Habeas Proceeding is inevitable and Possible incarceration does not depend on a number of factors over which Arnold has control.

Second, District Court concluded that Arnold was not in custody in citing to *Gore* and *Heurung* and its citing cases. However, these cases are also inapposite to Arnold's case because it based its findings of whether those Petitioner's essentially had the "keys to the jailhouse door" solely on their payment of a fine or payment of support to avoid any incarceration altogether. The District Court cite to *Heurung* in its order stated that "[T]he possibility of arrest if Petitioner fails to pay child support in the future does not satisfy the "in custody" requirement for purposes of a habeas attack." *Heurung v. Kelly, Civ. No. 17-3340 (PSJ/BRT), 2017 WL 6611573, at *2 (D. Minn. Dec. 1, 2017).* However, in context, in the case of *Heurung*, that Petitioner filed a Writ of Habeas alleging that he, "…is currently being held in contempt for failure to pay a child support order using **veteran benefit funds**." *Id.* Any challenges to the initial or registered order for enforcement itself was abandoned by *Heurung* in that case. Arnold's case is inapposite as he is alleging that his restraints not shared by the public generally is but a resultant of the registered support order itself, forcing him to pay at all through an unlawful registered support order for enforcement. It is evident that due process is required before any enforcement of any support orders by Respondents. It was clearly said in *Sniadach*, in terms of notice and hearing, that due process is required, **"before he can be deprived of his property."** *95 U.S. at 343, 89 S.Ct. at 1823.* Under this theory, if these cases do apply to Arnold, it would be tantamount to ruling that Arnold can secure his *liberty* from incarceration however he must be deprived of his property (monies, assets) and pay to do so, although in violation of due process. Arnold's case does not deal with "incarceration" that would be *separate* from the conviction or distinct from challenges to the support order enforcing payment itself. Thus, *Gore* is also inapposite because *Gore* did not challenge the support order giving rise to the "enforcement" forcing payment under restraint at

all, (As Arnold does here), rather *Gore* challenged a temporary order for a child support violation purportedly entered without jurisdiction. Neither of these circumstances in *Gore* apply respectfully apply to Arnold. As stated above the case of *Dullavon* is also inapplicable "[B]ecause any incarceration... would be in the nature of a penalty for contempt and would be *separate* from the conviction." *Duvallon v. Florida, F. 2d 483 – Court of Appeals, 11ᵗʰ Circuit (1982)* This is not the case here, the enforcement contempt action is but a consequence of the entry of the registered *controlling* out-of-state support order for **enforcement**[3] and would not be separate from any conviction. The restraint or threat of future liberty *infringement* is but as a resultant of a state court judgment registering a support order that is controlling for enforcement – entered in violation of the Constitution of the United States.

The notion that Arnold here can **control** whether he would be incarcerated by merely paying support only supports "[i]n the perpetuation of unlawful agency action..." *League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir. 2016),* "[t]o exact something unlawfully by threats or putting in fear." *US v. Jackson, 180 F.3d 55 – Court of Appeals 2ⁿᵈ Circuit (1999).* The cases cited in *Gore, Dullavon* and *Heurung,* is far from applicable to Arnold's here and if these cases were to apply to Arnold it would tip the scales of justice erroneously in the direction of a suspension of the Great Writ when, "There is no higher duty than to maintain it unimpaired,'... and unsuspended, save only in cases specified in our Constitution. *Fay v Noia, 372 US 391 – Supreme Court (1963).* If anything, Habeas jurisdiction is inevitable and would be postponed. As such, jurists of reason or a different court would conclude that because *Gore, Dullavon* and *Heurung* show that they are inapposite to Arnold's case and he satisfies the three requirements of "custody" in *Hensley,* he should proceed further.

---

[3] (Doc. 1 at 24-27)

     (i)    <u>Respondents and the presiding judge in the contempt filed action all have an</u>
<u>interest in the outcome and has shown a pattern of retaliation that also render</u>
<u>Arnold's *control* over any number of factors of any incarceration non-existent.</u>

    Arnold is not only in custody as a result of the unlawful registered support order for

enforcement, but he is in custody as a result of a contempt action "nefariously" filed in bad faith

which Arnold's alleges was in **retaliation** to prevent his redress of grievances in order that

Respondents may avoid liabilty. (Doc 1. Introduction) Plaintiff alleged facts that support the

basis that his legal defenses would be overlooked or disregarded in the state proceeding. (Id. ¶

85, 92) These facts support a conclusion and all reasonable inferences in Arnold's favor that **he**

**has no control** over the final result of the state proceedings. Arnold alleged the current presiding

judge in the pending contempt action brought by your respondents refused to disqualify in prior

custody proceedings in which Arnold was a Defendant and thereafter fabricated support records

after such refusal within those proceedings. (Id, ¶ 48-54, 80) That the contempt action was filed

two months after the entry of a fabricated child support Addendum. (Id. ¶ 80) "Agreements" or

communications between the presiding judge Brian Amero and the Department could be inferred

by the request to enter an "income deduction order" shortly after the fabricated "Child Support

Addendum" which Addendum stated no income deduction order was immediately necessary and

the omission of alleged arrears from the 2019 order of enforcement (Id. ¶ 82, 84, 99) Statutory

records request for "any and all action" taken on his child support case were outright ignored by

the local McDonough Child Support office including the Respondents around the same time the

contempt action was pending. (Id. ¶ 69-74) That Respondents would pursue Petitioner less than

48 hours after his request to the Georgia appellate court to retrieve a tendered affidavit which

would prove that he maintained the majority of the custody of his minor child to make an issue

of fact on appeal. (Id. ¶ 64-67, 82) In addition, Arnold alleged that respondents knew of the

unlawfulness of the order yet still pursued and nefariously filed said contempt action. (Id. ¶ 82-

84, 102) Moreover, in November of 2022 Arnold alleged that further acts to conceal case

information concerning "questions" "not records" regarding whether any judicial determinations

was made for the year on his child support account which answers were obscured or hidden. (Id.

¶ 93-98) Finally, Arnold alleged that the presiding Judge in the contempt action including

Respondents have an interest in the outcome of any successful challenge of the unlawful

registered controlling support order for enforcement -- liabilty. (Id. ¶ 2, 87, 103) Each of these

acts are in close proximity to one another, all involve the Respondents and the presiding judge in

the contempt action and give rise to, "[N]onconclusory factual allegations of *parallel behavior* --

to determine whether it gave rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal, 556

US 662 – Supreme Court (2009).*[4] The facts above does just what the cite to *Ashcroft* states.

The facts also clearly supports the elements of retaliation[5] - protected conduct related to

Arnold's redressing of grievances through his filings of lawsuits, recusals, seeking a tendered

affidavit on appeal and the adverse actions of retaliating against Arnold for redressing grievances

and pursuing Arnold within 48 hours of his seeking the tendered affidavit in his appellate court

case related to Arnold's custody action which are all casually related and in close proximity to

the protected expression which, liberally construed, support inferences of a, "[A] total **chilling** of

his First Amendment rights to file grievances and pursue civil rights litigation." *Rhodes v.

Robinson, 408 F. 3d 559 – Court of Appeals Ninth Circuit (2005)*. Inferences also suggest that

the pursuit of Arnold after his seeking of said affidavit was not only to *chill* his right but to chill

[4] "Because conspiracies are secretive by nature, the jury **must often rely on inferences** from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Geovanni, Court of Appeals, 11th Circuit No. 19-11044 (2022)*
[5] "A prima facie case of retaliation contains three elements: "first, the plaintiff engaged in... protected conduct; second, the plaintiff suffered an adverse... action; and finally, the adverse action was casually related to the protected expression." *Williams v. Motorola, Inc., 303 F. 3d 1284 – Court of Appeals 11th Circuit (2002).*

his right to further pursue it elsewhere in order to prevent any successful appeal or other
defenses. Accordingly, those acts give rise to all reasonable inferences in Arnold's favor that the
contempt action could "Not assure adequate vindication of constitutional rights... They suggest
that a substantial loss of or impairment of freedoms of expression will occur." *Younger v. Harris,
401 US 37 – Supreme Court (1971)* Further, the contempt action involves *bad faith and
harassment* acts as spoken of in *Younger* and *Perez*. First, Arnold alleged above showed that
Respondents including the presiding judge in the contempt action had knowledge of the support
orders invalidity and that Respondents "nefariously" filed said action knowing of its
unenforceability. As such, reasonable jurists would conclude that the state contempt action could
only be filed, "[W]ithout hope of obtaining a **valid** conviction." *Perez v. Ledesma, 401 US 82 –
Supreme Court (1971)*. This is because any action brought unlawfully cannot be made valid and
as it was said in *Perez*, when "A state brings or threatens to bring a criminal prosecution in bad
faith for the purpose of harassment, the bringing of the prosecution or the threat is itself a
constitutional deprivation since it subjects a person to a burden of criminal defenses which he
**should not have to bear.**" *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*.

Accordingly, weighing all of these claims together and all reasonable inferences in
Arnold's favor it is evident that jurists of reason would conclude that Arnold has no control over
whether he will be incarcerated and his claims are deserving of encouragement to proceed further
due to the acts alleging retaliation and harassment by Respondents and others under a nefariously
filed contempt proceeding that lawfully has no hope of obtaining a **valid** conviction. The court
need not determine Arnold's success on appeal, rather, would jurists of reason agree that his
claims are debatable. Arnolds satisfies this threshold requirement for the issuance of a COA. *See
Barefoot v Estelle, 463 US 880 – Supreme Court (1983)*.

     (ii)    State Created Danger further render Arnold's *control* over any number of factors
               of any incarceration out of his control

Arnold repeats all allegations prior hereto.

     Arnold is not only in custody as a result of the unlawful registered support order for

enforcement, but he is in *custody* as a result of affirmative acts of **state created danger** to

imprison him – a danger depriving Arnold of self-help and self-protection fueled by retaliation

and liability avoidance. "The language of *DeShaney* does indeed "leave room" for state liability

where the **state creates a danger** or render an individual more **vulnerable to it.**" *Wyke v. Polk*

*County School Bd., 129 F. 3d 560 – Court of Appeals 11th Circuit (1997)*. Moreover, "[this state-

created danger] doctrine necessarily involves affirmative conduct on the part of the state in

placing the plaintiff in danger." *Niziol v. Pasco County Dist. School Bd., 240 F. Supp.2d 1194*

*(2002)*. "It is the State's affirmative act of restraining the individual's freedom to act on his own

behalf – through incarceration…or other similar restraint of personal liberty – which is the

deprivation of liberty triggering the protections of the Due Process Clause." *Jones v Reynolds,*

*438 F. 3d 685 – Court of Appeals (2006)*. As the Supreme Court stated in Farmer, **"Prisons are**

**necessarily dangerous places**; they house society's most antisocial and violent people in close

proximity with one another. Regrettably, "some level of brutality…is inevitable no matter what

the guards do." *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*. The nefariously filed

state contempt action is but the resultant of state affirmative acts involving patterns of retaliation

and schemes that brought forth the contempt action to strip Arnold of "virtually every means of

self-protection and foreclose…access to outside aid." *Farmer v. Brennan, 511 US 825 – Supreme*

*Court (1994)* As Arnold alleged to avoid liabilty. (Doc. 1. Introduction, 87, 103) The conduct

stated behoove this Habeas proceeding in difference to an action nefariously filed for purposes of

harassment, retaliation and to avoid personal liabilty – not a state interest.

The purposes of "The Due Process Clause of the Fourteenth Amendment was intended to

prevent government "from abusing [its] power or employing it as an instrument of oppression."

*DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989).* The court should

liberally construe Arnold's Writ that his restraint and "custody" arises not only from a state court

judgment but from a contempt action employed as an instrument of oppression arising from

affirmative acts of state created danger which should be measured to show that Arnold is indeed

**in custody** and also **has no control** over his imprisonment in the context of *Hensley*. Reasonable

jurists would conclude that Arnold claims here too are deserving of encouragement to proceed

further or that a court would conclude this issue in Arnold's favor.

### (II)   IT IS DEBATABLE WHETHER THE YOUNGER ABSENTION DOCTRINE BARS THE COURT FROM INTERFERING WITH ONGOING STATE PROCEEDINGS

The District court dismissed Arnold's Habeas action because of the "Younger Abstention

Doctrine" and cited this case satisfies *Younger's* three requirements. (Doc. 6. Pg. 6) "The

Supreme Court established that "absent" extraordinary circumstances federal courts should not

enjoin pending state criminal prosecutions... This decision was based not on jurisdiction, but on

the **principles of equity and comity.** *Hughes v. Attorney General of Florida, 377 F.3d 1258*

*Eleventh Circuit (2004).* Arnold states that jurists of reason would conclude that Younger

Abstention does not apply here and even if it did Arnold satisfies one of Younger's exception to

proceed further for the issuance of a COA.

### (A)   Arnold satisfies the three exceptions to Younger Doctrine and jurists of reason would conclude that the Younger Abstention Doctrine does not apply.

Arnold alleges that Younger would not infringe on any state interests here because

"Habeas corpus for persons in the custody of the States offends no legitimate state interest in the

enforcement of criminal justice or procedure." *Fay v. Noia, 371 US 391 – Supreme Court (1963)*

"It is incarceration against one's will, whether it is called "criminal" or "civil."" *In re GAULT,*
*387 US 1 – Supreme Court (1967).* Moreover, the district court would have the continuing
**power to lift at any time** and remit the Petitioner to the state courts if circumstances warranted.
*(See Younger v Harris, 401 US 37 – Supreme Court (1971)* Even if *Younger* did apply the
Supreme Court set out three exceptions to the Younger Abstention doctrine: **(1)** there is evidence
of state proceedings motivated by bad faith, **(2)** irreparable injury would occur, or **(3)** there is no
adequate alternative state forum where the constitutional issues can be raised. *See Younger, 401*
*U.S. at 45, 53-54, 91 S.Ct. at 751,755.* Reasonable jurists would conclude that Arnold satisfies
all three exceptions to the Younger Doctrine under the totality of circumstances of this case.

**(1)     Evidence of proceedings motivated by Bad Faith**
Arnold repeats all allegations prior hereto.

        The Supreme Court has stated that, "Only in cases of proven harassment or prosecutions
undertaken by state officials **in bad faith without hope of obtaining a valid conviction** ... is
federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledesma, 401*
*US 82 – Supreme Court (1971)* As further alleged below, Arnold factually that Defendants were
"*knowingly* enforcing and placing the Petitioner in a position of "*custody*" under an *unlawful*
registered controlling *support order*." (Doc. 1. pg. 1) Arnold also provided evidence of such fact
entailing parallel behavior of an artifice, design and scheme of concerted action that Respondents
knew of the unlawfulness the order yet nefariously filed a contempt action for retaliatory
purposes in concert with other state actors who have an adverse interest (liabilty) in Arnold's
successful challenge of the state court judgment. (Id. ¶ Intro, 2, 87, 103, 125-126) These facts
show that the contempt action is far from those "Incidental to every criminal proceeding brought
*lawfully and* in *good faith.*" *Younger v. Harris, 401 US 37 – Supreme Court (1971),* thus jurists
of reason would conclude that the contempt action was motivated by bad faith.

**(a) Arnold provided evidence that the registered support order was unlawful and
entered in violation of the Constitution of the United States.**
Arnold repeats all allegations prior hereto.

Arnold provided evidence that the registered support order was entered custody in

violation of the Constitution of the United States. Arnold alleged that on September 24th, 2019,

the Division of Child Support Services Department of Human Services ("Plaintiff") filed an Out-

of-state Child Support Order for registration and enforcement purposes. (Doc. 1. No. 15) Arnold

alleged that personal jurisdiction was never established during the confirmation of the registered

controlling support order for enforcement although requesting within his [Arnold's] special

appearance "to be heard." (Id. ¶ 15-27) Arnold alleged that the registering tribunal did not

schedule a hearing and a separate hearing occurred within in the Henry County Superior Court

without the court giving full and fair or proper notice to the Petitioner of the time, place and date

of said hearing. (Id. ¶ 21-23) Although process was due, it was not given, and the support order

was entered in violation of well settled principles of constitutional law at the separate hearing

without Petitioner having notice. (See Id. ¶ Intro, 15-40) In addition to the failure to adjudicate

personal jurisdiction challenges before the entry and confirmation of the registered support order,

the court could never consider any challenges to the validity or enforcement of the support order

before its entry because the court failed to schedule the statutorily required hearing or establish

personal jurisdiction after Arnold's *request to be heard* as filed on the face of the court record.

(Id. ¶ 24-26) The Plaintiff's Writ alleges that this did not occur and in despite of, the registered

support order for enforcement was entered in violation of the Due Process Clause of the

Constitution of the United States and Fourth Amendment as alleged in his Writ. (Id. ¶ 15-27,

103, 104) Arnold also alleged that if not for Respondents actions and those in concert with the

Respondents, the Petitioner would have appealed the denial of his Motion to vacate the support

order. (Id. ¶ 110-113) However, Arnold alleged that his "custody" came in 2022 and not prior –

under the authority of the registered support order and he could not exhaust state remedies until

he is in custody. (Id. ¶ 7, 116-119). The 11th Circuit has recognized that, "Parties whose rights

are to be affected are entitled to be heard; and in order that they may enjoy that right they must

be notified… Furthermore, notice and opportunity to be heard "must be granted at a meaningful

time and in a meaningful manner." *Halpren v. Austin, 385 F. Supp. 1009 – Dist. Court, ND*

*(1974)* Justice Harlen in his concurring opinion in *Sniadach,* stated:

> I think that due process is afforded only by the kinds of 'notice' and 'hearing' which are
> aimed at establishing the validity, or at least the probable validity, of the underlying claim
> against the alleged debtor before he can be deprived of his property or its unrestricted
> use, I think this is the thrust of the past cases of this Court. *395 S. at 343, 89 S.Ct. at 1823*

Arnold alleged the court failed to give notice as due. "The Fundamental requisite of due

process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.,*

*339 U.S. 306 (1950).* "When notice is a person's due … [t]he means employed must be such as

one desirous of actually informing the absentee might reasonably adopt to accomplish it."

*Jones v. Flowers, 547 US 220 – Supreme Court (2006.)* "A substantial likelihood of success on

the merits requires a showing of only likely or probable, rather than certain, success."

*Schiavo ex rel. Schindler v. Schiavo, 403 F. 3d 1223 (2005)* Moreover, the "Fourth Amendment

is a classic repository of constitutional rights. It serves as a bulwark, protecting individual liberty

from arbitrary invasions by state actors." *Denson v. US, 574 F. 3d 1318 – Court of Appeals, 11th*

*Circuit (2009).* Jurists of reason would thus conclude Arnold is in *custody* under a state court

judgment entered in violation of the Fourth Amendment and the Fourteenth Amendment Due for

the purposes of Federal Jurisdiction or a different court would conclude in Arnold's favor.

    **(b) Respondents operated in concert to *knowingly* file the contempt action under an
    unlawful registered support order.**

Arnold's sworn Writ alleged that the attached support order to his Writ of Habeas called for immediate income deduction and license suspensions in November of 2019, however, that no license suspensions occurred until December of 2020. (Id. ¶ 27-29) Arnold also alleged that "Agreements or communications between the presiding judge Brian Amero and the Department could be inferred by the request to enter an income deduction order shortly after the fabricated Child Support Addendum which Addendum stated no income deduction order was immediately necessary." (Id. ¶ 49-56, 82) Arnold also stated that the contempt action omitted any of the alleged arrears from the 2019 order of enforcement (Id. ¶ 82, 84, 99) Further, that the contempt action was "filed by Defendants in Henry County Georgia in 2021 under the presiding Judge who fabricated the Child Support Addendum." (Id. ¶ Intro. pg. 2) Arnold stated that the contempt action was also "filed less than two (2) months after the entry of the fabricated Child Support Addendum." (Id. ¶ 80, 92) Arnold further stated facts that Respondents concealed statutory records request and information related to this *contempt* action. (Id. ¶ 68-71, 93-98) Arnold has also alleged within his Writ that he is currently "being deprived of information concerning whether any judicial determinations or adjudications took place on his child support account no. – which includes the nefariously filed contempt action." (Id. ¶ 93-97) Each of these affirmative acts are in close proximity to one another, all involve the Respondents and the presiding judge in the contempt action and give rise to, "[N]onconclusory factual allegations of *parallel behavior* – to determine whether it gave rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal, 556 US 662 – Supreme Court (2009).*[6] The facts above does just what the cite to *Ashcroft* states, it gives rise to concerted acts that Respondents knew of the unlawfulness of the registered support

---

[6] "Because conspiracies are secretive by nature, the jury **must often rely on inferences** from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Geovanni, Court of Appeals, 11th Circuit No. 19-11044 (2022)*

order yet filed said contempt action by way of its registration for enforcement for retaliatory and bad faith purposes – when the actors were sure Arnold had no "where-with-all" of the unlawfulness of the order (Id. ¶ 92) – and concealed said action or information related to it.

Moreover, under Habeas heightened pleading requirements Petitioner's must, "State the facts supporting each ground under Rule2(c)(2)." *Edwards v. CCDC, Dist. Court SD Georgia (2022)*. In context, the above facts here support the grounds stated in Plaintiff's Writ that the Respondents were "*knowingly* enforcing and placing the Petitioner in a position of "*custody*" under an *unlawful* registered controlling *support order*." (Id. ¶ pg. 87, 97, 101). As such, facts including evidence of facts support that the ongoing state contempt action could only in legal contemplation be filed, "[W]ithout hope of obtaining a *valid* conviction," *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*, to satisfy the first exception to Younger to show that the ongoing state proceedings were filed in bad faith and "Fundamental fairness is the central concern of the writ of habeas corpus." *Coleman v. Thompson, 501 US 722 – Supreme Court (1991)*. This is because any action brought unlawfully cannot be made lawful. Based on the totality of circumstances in this case, facts show that the contempt action is far from those "Incidental to every criminal proceeding brought *lawfully and* in *good faith*" *Younger v. Harris, 401 US 37 – Supreme Court (1971)*. Thus, jurists of reason would conclude that as to this issue, it is not only debatable but deserving of encouragement to proceed further because, "[h]is allegations are comprehensible." *Edwards v. CCDC Dist. Court, ED Georgia (2022)*. Moreover, a different could conclude this matter in Arnold's favor because "[t]here is generally no public interest in the perpetuation of unlawful agency action..." *League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir. 2016)*.

## (2) **Irreparable injury would occur and there is no adequate alternative state forum where the constitutional issues can be raised**

Arnold realleges all allegations prior hereto.

Based on established facts of parallel behavior and conduct – not perturbation – Arnold satisfies the second exception to Younger in that irreparable injury will occur but based on the affirmative acts of state created danger arising from a design and scheme that lead to the filing of the contempt action in bad faith under the unlawful registered support order. The case of *Deshaney* spoke on this state created danger. The 11th Circuit stated in *Mitchell* that, "Under the "special danger" analysis, he must show that the state affirmatively placed him in a position of danger which was distinguishable from that of the general public." *Mitchell v. Duval County School Bd., 107 F. 3d 837 – 11th Circuit (1997)* "It is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration...or other similar restraint of personal liberty – which is the deprivation of liberty triggering the protections of the Due Process Clause." *Jones v Reynolds, 438 F. 3d 685 – Court of Appeals (2006).* Arnold has stated above facts and evidence of facts that Respondents (1) operated in concert to *knowingly* file the contempt action under an unlawful registered support order to (2) place him into custody and eventually incarcerate him. Arnold further stated that these actions was the resultant of **"state created danger"** by Respondents and state actors operating in concert with Respondents. (Id. ¶ 126) As such, as further alleged below, Arnold would be irreparably injured based on affirmative acts of state created danger that led to the contempt filing in order to propel him into Danger under a bad faith filed action he should not have to bear.

### (i) **State Affirmative acts to place Arnold into custody and restrain him of his liberty.**

The ongoing state contempt action would indeed make Arnold more vulnerable to danger because such action was filed nefariously (in bad faith) in furtherance of such a scheme and

purpose to successfully incarcerate Arnold *knowingly* under an unlawful judgment into

**"Prisons… necessarily dangerous places."** *Farmer v. Brennan, 511 US 825 – Supreme Court*

*(1994)*, "[W]ithout hope of obtaining a *valid* conviction," *Perez v. Ledesma, 401 US 82 –*

*Supreme Court (1971)*, because any action brought unlawfully cannot be made lawful. These

facts again show that the contempt action is far from those "Incidental to every criminal

proceeding brought *lawfully and* in *good faith*" *Younger v. Harris, 401 US 37 – Supreme Court*

*(1971)*. Accordingly, there is a substantial threat of irreparable injury that Arnold would be

"Stripped… of Virtually every means of self-protection and foreclosed of access to outside aid,"

*Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*, due to this state created danger

rendering the ongoing state proceedings ineffective to protect his rights, thus irreparable injury is

great and immediate danger. The contempt action that was undoubtedly brought in "bad faith"

also threatens Arnold's, "Right to be free from wrongful restraints upon… liberty." *Jones v.*

*Cunningham, 371 US 236 – Supreme Court (1963)*, in situations where, "The bringing of the

prosecution or the threat is itself a constitutional deprivation since it subjects a person to a

burden of criminal defenses which he **should not have to bear**, and there then exists a situation

"in which defense of the State's criminal prosecution **will not assure adequate vindication of**

**constitutional rights.**" *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*. The cite to *Perez*

is especially true and furthers this existence of inadequate vindication of constitutional rights

when Arnold has stated that Respondents including the presiding judge in the contempt action

has an adverse interest in the outcome of a successful challenge to the support order – *liability*.

(Doc. 1. no. 87) Moreover, the court in Hughes stated that, "[I]rreparable injury may be shown if

a *state statute* is "flagrantly and patently violative of… express constitutional prohibitions."

*Hughes v. Attorney General of Florida, 377 F. 3d 1258 (2004)* Based on the circumstances in

this case, Hughes is respectively applicable to the contempt action because it was not only filed *flagrantly and patently* violative of constitutional prohibitions but was *knowingly* filed by Respondents (or agents thereof) flagrantly and patently violative of the Constitution because of the evidence of *facts* to support grounds that they knew the support order was unlawful. Thus, the contempt action shows a great, immediate, ongoing and threat of irreparable harm arising from this contempt action which is of in itself "Patently and flagrantly unconstitutional on its face" and shows "Bad faith and harassment – official lawlessness" in Respondents *knowing* enforcement of a void support order. *See Younger v Harris, 401 US 37 – Supreme Court (1971)*. The court, "need not determine that the petitioner would prevail on appeal." *Miller-El, 537 U.S. at 336.* "He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reasons; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further." *Barefoot v Estelle, 463 US 880 – Supreme Court (1983).*

### (ii)   Evidence of retaliatory conduct arising from this contempt action.

Arnold stated further evidence of facts of retaliatory conduct under the contempt action in that Respondents would pursue him less than 48 hours after his request to the Georgia appellate court to retrieve a tendered affidavit in order to prove that he maintained the majority of the custody of his minor child to *make an issue of fact on appeal* of whether the trial court judge's factual findings were erroneous (Id. ¶ 64-68, 81-82) Respondents pursuit of Arnold in his attempting to supplement the appellate record on his appeal were all related to orders involving the presiding judge in the contempt action which further depicts a situation that Arnold would further suffer a substantial loss of or impairment of freedoms of expressions that *"clearly show irreparable injury." Younger v. Harris, 401 US 37 – Supreme Court (1971).* Thus, there is a

great, ongoing and immediate threat of irreparable injury related to the contempt action filed in

bad faith for retaliatory purposes involving state actors who have an adverse interest in Arnold's

successful outcome of his challenge of the support order and whose affirmative acts knowingly

brought Arnold into custody and made him more vulnerable to danger he should not have to

bear. Arnold has thus shown that he will be Irreparably injured if this stay is not granted, and

jurists of reason would agree that that his claims are deserving to proceed further.

### A. There is a strong likelihood that others in concert with Defendants may enter erroneous support orders that will irreparably harm the Petitioner
Arnold realleges all allegations prior hereto.

Plaintiff also establishes a strong showing of the likelihood that he will be imminently

irreparably harmed in the nefariously and bad faith filed state court proceedings by the entry of

an erroneous support order to subject the Plaintiff to Federal support laws in the future which

proceedings does not concern itself with the validity of a state court order.[7] (See Writ of Habeas

Petition ¶ Introduction) Facts above support a further inference that the presiding judge in the

contempt action may have erroneously granted a relocation request of Arnold's child across state

lines in Arnold's modification of custody proceedings in order to do just what Arnold is alleging

– subject Plaintiff to Federal support laws by the filing of bad faith proceedings he should not

have to bear. Further evidence of facts supports this inference based on Respondents pursuit of

Arnold 48 hours after his request to supplement the record on appeal by Arnold's seeking a

"tendered" affidavit to prove that he maintained the majority of custody on appeal to make an

issue of fact within said pending appeal of whether the trial court judge's factual findings were

erroneous (Id. ¶ 64-68, 81-82.) These facts support inferences which entails the introduction of

the Writ – "As a result of *state created danger* arising from an artifice, scheme and design...

---

[7] *See US v. Bailey, 115 F.3d 1222 – Court of Appeals, 5th Circuit (1997)*

Petitioner in a position of "custody... all in violation of the Fourteenth Amendment." Thus, Arnold establishes a strong threat of irreparable injury arising from nefarious motives of retaliation by state actors having an adverse interest in the successful outcome of Arnold's challenge to the entry of an erroneous support order which if entered, could not be challenged in other sovereign jurisdictions and that threat is irreparable, ongoing – concealed – or imminent.

Based on all the facts stated above reasonable jurists would conclude that the ongoing state proceedings is **no adequate state forum where the constitutional issues can be raised or in other words.** As Arnold alleged, are "ineffective to protect the rights of the applicant and extraordinary circumstances support the courts discretion to show difference to any comity related interests of Respondents." (Id. ¶ 127) Moreover, Arnold argues that because he is now "in custody pursuant to the judgment of a State Court" and the limitations period shall run from the latest of – **the date on which the judgment became final** by conclusion of direct review or the expiration of the time for seeking such review – the adequacy of a state form only applies to available remedies that traditionally applies only to the normal appellate procedure that Arnold has stated is no "longer available." (Id. ¶ 116-118). Moreover, a Habeas applicant "[N]eed not invoked every conceivably "available" remedy." *O'Sullivan v. Boercke, 526 US 838 – Supreme Court (1999)*. The pending state proceeding is wholly an action brought in bad faith by state officials whose efforts and conduct have been not only been to place Arnold under restraint but whose efforts have been comprehensible of a utilization of the contempt order to make him more vulnerable to physical incarceration and retaliation which manifests "[A] **chilling** of his First Amendment rights to file grievances and *pursue civil rights litigation*." *Rhodes v. Robinson, 408 F. 3d 559 – Court of Appeals Ninth Circuit (2005)*.

The Younger abstention doctrine is but "the assumption that state courts are co-equal to federal courts and are fully capable of respecting and protecting [a plaintiff's constitutional] rights," *Courthouse News Serv., 908 F.3d at 1074*. Jurists of reason would conclude that based on the entirety of the claims and the totality of circumstances in this case Younger cannot compel a conclusion that these state officials within said contempt action are capable of respecting plaintiff's constitutional rights over the notion that they would disregard those rights and due process altogether resulting in irreparable injury which would moot this action. The actions of the Respondents depict multiple occurrences that touches on, "[T]he practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny." *Boumediene v. Bush, 553 US 723 – Supreme Court (2008)* It was stated that "[A] judgment that "tends clearly" to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy." *Ackermann v. Levine, 788 F. 2d 830 – Court of Appeals 2nd Circuit (1986)* The actions of the Respondents have indeed undermined the public interest and confidence in the administration of the law and any consideration of comity are outweighed based on Respondents bad faith conduct that violates Arnold's constitutional rights and "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio, 695 F. 3d 990 – Court of Appeals (2012),* and "Preventing corruption... are interests of the highest importance." *First Nat. Bank of Boston v. Bellotti, 435 US 765 – Supreme Court (1978)*. A court need not determine Arnold's success on appeal, rather, show that jurists of reason would agree that Arnold's claims are debatable deserving to proceed further, Arnold states that they are.

For all the above reasons, the Petitioner request that this Court GRANT Petitioner's request for the issuance of a Certificate of Appealability ("COA").

Dated: December 13th, 2022

By: _____

Mr. Deandre Arnold
**Mailing:** c/o General Delivery
Fairburn Georgia 30213
**Email:** Dresmailbox89@gmail.com
**Telephone:** 4705143097

Exhibit X – 7

("Exhibit X7 – Emergency Motion to Stay state court proceedings | 24 pgs.")

Filed in the Northern District Federal Court of Atlanta on 12/13/2022

*Arnold v. Broce (1:21-cv-04536-SEG) Doc. 8*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORIGA
ATLANTA DIVISION

| | | |
|---|---|---|
| DEANDRE ARNOLD | ) | |
| | ) | |
| | ) | |
| | ) | Case No. **1:22-CV-4536-SEG** |
| | ) | |
| v. | ) | |
| | ) | PETITIONER'S MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF PETITIONER'S EMERGENCY |
| | ) | MOTION TO STAY STATE COURT |
| | ) | PROCEEDINGS PENDING PETITIONER'S |
| | ) | APPEAL |
| DEPARTMENT OF HUMAN SERVICES | ) | |
| CANDICE BROCE, ET AL., | ) | |
| | ) | |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
EMERGENCY MOTION TO STAY STATE COURT PROCEEDINGS PENDING
PETITIONER'S APPEAL**

**I.      INTRODUCTION**

    Petitioner, ("Arnold") filed this Habeas action on November 15th, 2022, alleging that his

*custody* came as a result of state court proceedings filed nefariously by Respondents under a

registered out-of-state support order for enforcement entered in violation of the Constitution of

the United States. Arnold further alleged that his custody arose out of concerted action of

retaliation and state created danger. Arnold filed this Writ alleging that his *custody* for Federal

interest's purposes and jurisdiction came solely after the filing of a contempt action by

Respondents and sought relief. On November 22nd, 2022, Arnold filed an Emergency Motion to

stay the civil contempt proceeding in Henry County Superior Court and to enjoin DCSS from

enforcing the Henry County Child Support order. (Doc. 5 at 2) On December 6th, 2022, the

District Court entered an order denying Arnold's Writ of Habeas. (Doc. 6.) Arnold's additional

Motions to stay state court proceedings and motion for access to electronic filing were denied as

Moot. (Doc. 6. pg 9) Arnold now seeks an Emergency Stay of the ongoing state proceedings

pending his appeal. Arnold contends that he has a substantial likelihood of success on the merits

of his Habeas Petition and will undergo irreparable injury if this stay is not granted. Furthermore,

the stay would not remotely nor substantially harm Respondents, rather, granting this stay would

serve a governmental interest whose interest is public interest while these issues are on appeal.

FACTS

Arnold respectfully refers the Court to Petitioner's "**EMERGENCY PETITION FOR**

**GREAT WRIT OF HABEAS**" and "**PETITIONER'S EMERGENCY APPLICATION**

**FOR CERTIFICATE OF APPEALABILITY**" and the exhibits and affidavits attached thereto

these Petitions, if any, for a full recitation of the facts. Arnold incorporates these facts by

reference within this Emergency Stay pending appeal.

ARGUMENT

"Under Section 2251, we consider four factors: "[w]hether the movant has made a showing

of likelihood of success on the merits and of irreparable injury if the stay is not granted, whether

the stay would substantially harm other parties, and whether granting the stay would serve the

public interest." *Woods v Warden 952 F.3d 1251 (2020)* According to the 11th Circuit, "Whether

to grant a stay pursuant to section 2251 requires the court assess the following criteria: **1)** the

likelihood of success on the merits; **2)** the likelihood of irreparable harm unless the stay is

granted; **3)**, whether the stay causes substantial harm to others; and **4)**, whether the stay serves

the public interest." *Sadler v. Washington, Dist. Court, ED Michigan 2022.* "Under principles of

comity and federalism, a federal court should not interfere with ongoing state…proceedings by

granting injunctive or declaratory relief absent extraordinary circumstances." *Younger v Harris,*

*401 U.S. 37, 43-46 (1971)* (holding that extraordinary circumstances exist when there is danger

Page 2 of 24

of great and immediate irreparable loss). *Sharp v. Koenig, Dist, Court, ED California 2020*. In this case, Arnold's irreparable injury is imminent, great and neither incidental to the civil action. The Court is required to "balance the conveniences of the parties pending final adjudication" on the merits, and an injunction may issue to preserve the status quo "if, after balancing the relative equities of the parties, it appears the equities favor the party seeking the injunction." *Bernacchi v. Forcucci, 614 S.E.2d 775, 777 (Ga. 2005)*. "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)*. As further alleged below, Arnold carries the burden of persuasion as to the four prerequisites.

## I.    ARNOLD HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS HABEAS CLAIMS

Arnold has a substantial likelihood of success on the merits related to (1) whether he is in custody within the historical meaning of the Great Writ and *Jones v Cunningham* and (2) whether his *custody* is unconstitutional for the purposes of Federal jurisdiction to inquire about whether Arnold's *custody* is "in violation of the Constitution or laws or treaties of the United States." It is well established that the Federal Habeas statute is a *jurisdictional* statute that limits its availability only to those in *custody*.[1] As further alleged below Arnold has a likelihood of success on the merits as to these two (2) items.

### (A)    Plaintiff is in custody and has a substantial likelihood of success on this claim.

The case of *Hensley* should control here as to whether Arnold is in custody. The Supreme Court laid out *three* considerations of whether a Habeas Petitioner satisfies the in-custody requirements for Federal Habeas jurisdiction. "(1) Whether the petitioner was subject to

---

[1] The custody requirement is a **jurisdictional** one; if a petitioner is not "in custody" at the time that the petition is filed, the Court lacks jurisdiction to consider it. *Umbarger v. State, Dist. Court WD Michigan 2013*

restraints not on the general public; (2) whether incarceration was a "speculative possibility that depends on a number of contingencies over which [the petitioner] has no control;" and (3) whether holding that there was no custody simply postponed the habeas case until the petitioner was in jail." *Gore v. Callahan, Dist. Court, ND Texas 2015.* Arnold satisfies all the requirements as further alleged below to satisfy the likelihood that he is in custody.

## (1) Petitioner is subject to restraints not on the public generally by way of the contempt action filed under the registered support order.

"Similarly, in the United States the use of habeas corpus **has not been restricted to situations in which the applicant is in actual, physical custody**." Id. The test or factor for determining whether a Petitioner is in *custody* was stated in *Hensley* which factor directly applies to Arnold today in its saying that, "He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice." *Hensley v. Municipal Court, San Jose-Milpitas Judicial District 411 U.S. 345 (1973).* Overall, Arnold is "subject to restraints not shared by the public generally." *Jones v. Cunningham, 371 US 236 – Supreme Court (1963).* Arnold's is undoubtedly subject to restraints in a contempt action filed in December 2021 by agents for Respondents (immediate custodians) [2] who may demand his appearance at any time or moment and who has already done so in the past and who currently may be concealing information related to the action. In addition, Arnold's *custody* arises as the resultant of a *knowing* enforcement of an unlawful support order through affirmative acts which lead to the state created dangers in which Arnold alleges further below and within his Writ. (See Writ of Habeas Petition ¶ Introduction., 10, 85, 94-97)

## (2) Federal Habeas Proceeding is inevitable and Possible incarceration does not depend on a number of factors over which Arnold has control

---

[2] The **Proper respondent** in a federal habeas corpus petition is the petitioner's "immediate custodian." *Brittingham v. US, 982 F. 2d 378 – Court of Appeals 9th Circuit (1992)*

On December 6th, 2022, the District Court concluded that Arnold was not in custody in

citing to *Gore*, *Heurung* and *Duvallon* and its citing cases. However, Arnold contends that all

three of these cases are inapposite to Arnold's case, as these three cases involved circumstances

in which those courts based its findings on whether those Petitioner's essentially had the "keys to

the jailhouse door" solely on their payment of a fine or payment of support to avoid any

incarceration altogether. The District Court cited *Heurung* in its order denying Arnold's Writ

stating that, "[T]he possibility of arrest if Petitioner fails to pay child support in the future does

not satisfy the "in custody" requirement for purposes of a habeas attack." *Heurung v. Kelly, Civ.*

*No. 17-3340 (PSJ/BRT), 2017 WL 6611573, at \*2 (D. Minn. Dec. 1, 2017).* However, in context,

in the case of *Heurung* that Petitioner filed a Writ of Habeas alleging that he, "is currently being

held in contempt for failure to pay a child support order using **veteran benefit funds**." Id. Any

challenges to the initial or registered order for enforcement itself was abandoned by *Heurung* in

that case. Arnold's case is inapposite here as he is alleging that his restraints not shared by the

public generally is but a resultant of the registered support order itself, forcing him to pay at all

by contempt. It is evident that due process is required before any enforcement of any support

orders by Respondents. It was clearly said in *Sniadach*, in terms of notice and hearing, that due

process is required, "**before he can be deprived of his property.**" *95 U.S. at 343, 89 S.Ct. at*

*1823.* Under this theory, if these cases do apply to Arnold, jurists of reason may conclude that it

would be tantamount to ruling that Arnold can secure his *liberty* from incarceration however he

must be deprived of his property (monies, assets) and pay to do so, although in violation of due

process. Arnold's case also does not deal with "incarceration" that is *separate* from the

conviction or distinct from challenges to the support order enforcing payment itself. Thus, *Gore*

is also inapposite because *Gore* did not challenge the support order giving rise to the

"enforcement" forcing payment under restraint at all, (as Arnold does here), rather *Gore* challenged a temporary order for a child support violation purportedly entered without jurisdiction. Neither of these circumstances in *Gore* apply respectfully to Arnold. The case of *Dullavon* is also inapplicable "[B]ecause any incarceration… would be in the nature of a penalty for contempt and would be *separate* from the conviction." *Duvallon v. Florida, F. 2d 483 – Court of Appeals, 11th Circuit (1982)* This is not the case here, the enforcement contempt action is but a consequence of the entry of the registered *controlling* out-of-state support order for **enforcement**[3] and would not be separate from any conviction as was the case in *Duvallon*. The restraint or future liberty *infringement* would neither be "separate" of the action (or conviction) itself but as a result of the prior registered support order that is controlling as Arnold alleged, was entered in violation of the Constitution of the United States.

The notion that Arnold here can **control** whether he would be incarcerated by merely paying support only supports "[i]n the perpetuation of unlawful agency action…" *League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir. 2016)*, "[t]o exact something unlawfully by threats or putting in fear." *US v. Jackson, 180 F.3d 55 – Court of Appeals 2nd Circuit (1999)*. The cases cited in *Gore, Dullavon* and *Heurung,* is far from applicable Arnold's here and if these cases applied to Arnold it would tip the scales of justice erroneously in the direction of a suspension of the Great Writ when, "There is no higher duty than to maintain it unimpaired,'… and unsuspended, save only in cases specified in our Constitution. *Fay v Noia, 372 US 391 – Supreme Court (1963)*. If anything, Habeas jurisdiction is inevitable and would be postponed. As such, Arnold has a substantial likelihood of success on the merits that he is in custody and his claim does not have to be certain, only probable or likely.

---

[3] (Doc. 1 at 24-27)

(i)     **Arnold is also in custody as the result of an unlawful registered support order**
**for enforcement in violation of the Constitution of the United States.**

Arnold has a substantial likelihood on the merits of whether he is in custody as a result of

the unlawful registered support order and in custody in violation of the Constitution of the

United States. Arnold alleged that on September 24th, 2019, the Division of Child Support

Services Department of Human Services ("Plaintiff") filed an Out-of-state Child Support Order

for registration and enforcement purposes. (Doc. 1. No. 15) Arnold alleged that personal

jurisdiction was never established during the confirmation of the registered controlling support

order for enforcement although requesting within his [Arnold's] special appearance "to be

heard." (Id. ¶ 15-27) Arnold alleged that the registering tribunal did not schedule a hearing and a

separate hearing occurred within the Henry County Superior Court without the court giving full

and fair or proper notice to the Petitioner of the time, place and date of said hearing. (Id. ¶ 21-23)

Although process was due, it was not given, and the support order was entered in violation of

well settled principles of constitutional law. (See Id. ¶ Intro, 15-40) In addition to the failure to

adjudicate personal jurisdiction challenges before the entry and confirmation of the registered

support order, the court could never consider any challenges to the validity or enforcement of the

support order before its entry because the court failed to schedule the statutorily required hearing

or establish personal jurisdiction after Arnold's *request to be heard* as filed on the face of the

court record. (Id. ¶ 15-27) The Plaintiff's Writ alleges that this did not occur and in despite of,

the registered support order for enforcement was entered in violation of the Due Process Clause

of the Constitution of the United States and Fourth Amendment as alleged in his Writ. (Id. ¶ 15-

27, 103, 104) Arnold also alleged that if not for Respondents actions and those in concert with

the Respondents, the Petitioner would have appealed the denial of his Motion to vacate the

support order. (Id. ¶ 110-113) However, Arnold also alleged that his "custody" came in 2022 and

not prior – under the authority of the registered support order and that he could not exhaust state remedies until he is in custody. (Id. ¶ 7, 116-119). The 11th Circuit has recognized that, "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified… Furthermore, notice and opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Halpren v. Austin, 385 F. Supp. 1009 – Dist. Court, ND (1974)* Justice Harlen in his concurring opinion in *Sniadach*, stated:

> I think that due process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use, I think this is the thrust of the past cases of this Court. *395 S. at 343, 89 S.Ct. at 1823*

Arnold alleged the court failed to give notice as due. "The Fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)*. "When notice is a person's due … [t]he means employed must be such as one **desirous of actually informing** the absentee might reasonably adopt to accomplish it." *Jones v. Flowers, 547 US 220 – Supreme Court (2006.)* "A substantial likelihood of success on the merits requires a showing of only **likely or probable, rather than certain**, success." *Schiavo ex rel. Schindler v. Schiavo, 403 F. 3d 1223 (2005)* Moreover, the "Fourth Amendment is a classic repository of constitutional rights. It serves as a bulwark, protecting individual liberty from arbitrary invasions by state actors." *Denson v. US, 574 F. 3d 1318 – Court of Appeals, 11th Circuit (2009)*. Arnold here too has a substantial likelihood, "probable or likely" of success on the merits of his claim that he is in custody under a state court judgment entered in violation of the Fourth Amendment and the Due Process Clause for the purposes of Federal Jurisdiction for which the Great Writ was designed to grant relief.

**(B)     Arnold satisfies the jurisdictional exhaustive requirements and statute of limitations and has a substantial likelihood of success on the merits of his claims.**

"Congress codified the judicially constructed exhaustion requirement, *Medberry v. Crosby, 351 F. 3d 1049 Court of Appeals 11th Circuit (2003*), which "Exhaustion doctrine existed long before its codification by Congress in 1948." *Rose v. Lundy, 455 US 509 – Supreme Court (1982)* The jurisdictional exhaustive requirement for *Habeas* historically comes as a basis of comity and federalism related to state court considerations of reviewing claims traditionally of state court prisoners or parolees in custody under a state court conviction or sentence *in violation of the Constitution* before a Federal district court would "impose" its jurisdictional hand under the constitutional Writ. However, these comity and federalism considerations do not apply until a Habeas Petitioner is in "custody." The Supreme Court has stated in *Wilkinson* that, "[T]hose prerequisites, such as exhaustion of state remedies... **apply only** to "a person in custody pursuant to the judgment of a State court."" *Wilkinson v. Dotson, 544 US 74 – Supreme Court (2005)*. Arnold alleged that "at the time of the entry of the support order he was not in *custody* until December 2021 and at such time there were no adequate or *available* state remedies." (Doc. 1, No. 119) As such, Arnold was neither required by the Habeas statute nor were considerations of comity applicable at the entry of the unlawful support order to exhaust *available* state remedies because Federal courts historically only considers the exhaustion requirement in its discretion "On causes properly within its jurisdiction." *Fay v. Noia, 372 US 391 – Supreme Court (1963)*. Prior to December of 2021, Arnold's Writ of Habeas would not have been properly within this Court's jurisdiction. Accordingly, Arnold has a substantial likelihood of success on the merits of his claims here because there **is a probability or likelihood** that the doctrine of comity and federalism related to the Federal court's jurisdiction for Writ of Habeas applicants did not apply to Arnold until he was in *custody* and subjects to restraints on *liberty* which only came in December 2021 – albeit through affirmative acts of state created danger.

Moreover, as it relates to the **exhaustion** requirement, Arnold does not argue that because he is now "in custody pursuant to the judgment of a State Court" that he must exhaust state remedies, he contends there are no *available* remedies within the historical meaning of the Great Writ applying only to normal appellate procedures which has thus expired – "no longer *available*." (Id. Doc. 1. no. 119) Furthermore, a Habeas applicant "[N]eed not invoked every conceivably "available" remedy." *O'Sullivan v. Boercke, 526 US 838 – Supreme Court (1999)*

    **(i)**    **Statute of limitations also did not apply until Arnold was in custody**

Arnold has a substantial likelihood of success on the merits that the Federal Habeas statute of limitation did not apply under the statutory Writ until he was in custody which did not occur until on or around December 2021. Although the exhaustion of state remedies, procedural defaults and abuse of the writ were imposed to vindicate comity, the *dissents* stated in *Day* that, **"Unlike AEDPA's statute of limitations,** these defenses were all created by the *habeas courts* themselves, in the exercise of their traditional equitable discretion… **no time limitation…** was imposed to vindicate comity and *finality*. AEDPA's 1 year limitations period is entirely a **creature of statue."** *Day v. McDonough, 547 US 198 – Supreme Court (2006)*. Congresses motivations for legislating AEDPA is distinct from a district court's exercise of traditional equitable discretion as it relates to time limitation. However, even if not, the legislatively enacted limitation applies *to persons in custody* pursuant to a Judgement of a state court.[4] According to 28 U.S.C. § 2244(d)(1), the statutes plain language clearly states;

> "1-year period of limitation shall apply to an application for a writ of habeas corpus by a **person in custody pursuant to the judgment of a State court**. The limitation period shall run from the latest of – **the date on which the judgment became final** by conclusion of direct review or the expiration of the time for seeking such review."

---

[4] "AEDPA expressly enacted, without further qualification, "[a] 1-year period of limitation" for habeas applications by persons in custody pursuant to the judgments of state courts." *Day v. McDonough, 547 US 198 – Supreme Court (2006).*

Accordingly, the statute's plain language states that the 1-year period of limitation period shall run from the latest of the date on which the judgment (State court judgement in which a person is in custody) became final by conclusion of direct review or expiration for seeking such review. The threshold question under the circumstances of this case would then be;

> Was Arnold in custody or restrained of his *liberty* after the entry of the state court support order for enforcement at the time of the conclusion of direct review by the normal appellate procedures in the State of Georgia?

The answer is no. (Doc. 1. at 119) Additional questions which may arise as to whether comity and finality play any role supports the probable or likelihood of success factor on Arnold's claims that it did not play any role considering *Duncan's* dissents stating, "...Comity and finality did not compel any time limitation at all..." *Day v. McDonough, 547 US 198 – Supreme Court (2006)*. Any notions to the contrary impermissibly violates the Suspension clause for Habeas jurisdiction here. "[I]t is a cardinal principle of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality of the statue, "this court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas v. Davis, 533 US 678 – Supreme Court (2001)*. It is only reasonable to state that Arnold was only **(1)** in custody and restrained of his liberty under a state court judgment, as alleged, **(2)** in violation of the Constitution of the United States until on or after December 2021. Therefore, similar to exhaustion above, Arnold argues that because he is now "in custody pursuant to the judgment of a State Court" and the limitations period shall run from the latest of – **the date on which the judgment became final** by conclusion of direct review or the expiration of the time for seeking such review – no limitation period applies because the time has expired for seeking such review under available remedies traditionally applying to normal appellate procedure and even if it didn't, Arnold filed such Writ within 1-

year time limitation period on which he came into sudden *custody* under the judgment of a state

court entered in violation of the Constitution as alleged. Arnold thus has a substantial likelihood

of success on the merits of his claims here too. These claims do not have to be certain rather

reasonable, probable, and likely.

**(C)     Extraordinary circumstances exist which render any state exhaustive requirement
ineffective and there is an absence of available state corrective process.**
Arnold realleges all allegation above.

      Arnold has alleged within his Writ that there are no available remedies. (Doc.1. ¶ 119)

Arnold contends that the exhaustion requirement and its provision contending "circumstances

exist that render such process ineffective" (28 U.S.C. § 2254((b)(1)(B)(ii)) does not apply since

such requirements apply to those in custody that had or has available remedies through the

normal appellate procedures. However, even if it does apply, Arnold has factually pleaded

parallel behavior of an artifice, design and scheme which led to Arnold's sudden custody under a

nefariously filed contempt action for retaliatory purposes by state actors who have an adverse

interest (liabilty) in Arnold's successful challenge of the judgment which has him in custody (Id.

¶ Introduction, 87, 101) These facts are far from those situations "Incidental to every criminal

proceeding brought *lawfully and* in *good faith" Younger v. Harris, 401 US 37 – Supreme Court

(1971)* Indeed, this Writ requires difference to any considerations of comity. Arnold alleged that

the contempt action was "nefariously" filed. (Id. ¶ 87, 101) The Supreme Court has stated that,

"Only in cases of proven harassment or prosecutions undertaken by state officials **in bad faith

without hope of obtaining a valid conviction** … can be shown is federal injunctive relief

against pending state prosecutions appropriate." *Perez v. Ledesma, 401 US 82 – Supreme Court

(1971)* Arnold has factually pleaded that the Respondents were "**knowingly enforcing and

placing the Petitioner in a position of "custody" under an unlawful registered controlling**

support order for enforcement." (Doc. 1. Intro, 103, 125-126) Arnold first stated facts and evidence of fact that the support order was unlawful. Arnold alleged that personal jurisdiction was never established during the confirmation of the registered controlling support order for enforcement although requesting within his [Arnold's] special appearance "to be heard." (Id. ¶ 15-27) Although process was due, it was not given, and the support order was entered in violation of well settled principles of constitutional law. (See Id. ¶ Intro, 15-40) In addition to the failure to adjudicate personal jurisdiction challenges before the entry and confirmation of the registered support order, the court could never consider any challenges to the validity or enforcement of the support order before its entry because the court failed to schedule the statutorily required hearing or establish personal jurisdiction after Petitioner's *request to be heard* as filed on the face of the court record. (Id. ¶ 15-27) Arnold further stated that the contempt action was filed "two (2) months after the entry of the fabricated Child Support Addendum in Petitioner's modification of child custody action," by the current presiding judge in the ongoing state proceeding (Id. ¶ Intro pg. 2, 47-54, 79-80) Arnold then stated that "the contempt action did not include any of the alleged adjudicated arrearage under the 2019 order of Enforcement but instead included arrearage which were separate and distinct from said 2019 order of enforcement." (Id. ¶ 82) Arnold further stated that agreements between the presiding judge Brian Amero and the Department could be inferred by the Departments "request to enter an "income deduction order" shortly after the fabricated Child Support Addendum which Addendum stated no income deduction order was immediately necessary. (See Id. ¶ 84) In addition, Arnold stated that the Department and the presiding judge Brian Amero all have an interest in the outcome of any successful challenge of the unlawful registered controlling support order for enforcement – liabilty. (See Id. ¶ 87) Jurists of reason would conclude that Arnold's

Writ factually pleads "[N]onconclusory factual allegations of *parallel behavior* – to determine whether it gave rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal, 556 US 662 – Supreme Court (2009)*. Moreover, under Habeas heightened pleading requirements Petitioner's must, "State the facts supporting each ground under Rule2(c)(2)." *Edwards v. CCDC. Dist. Court SD Georgia (2022)*. The above facts support the grounds stated in Plaintiff's Writ that the ongoing state court proceedings are, "Ineffective to protect the rights of the applicant," (Id. ¶ 127), and the support order was entered in violation of Arnold's Fourteenth Amendment rights to substantive and procedural due process and Fourth Amendment rights under the United States Constitution. (Id. ¶ 129-131) As such, because the registered order is patently unconstitutional it can only support that the ongoing state contempt action could only in legal contemplation be filed, "[W]ithout hope of obtaining a *valid* conviction," *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*, to satisfy whether *evidence* of the state proceedings were motivated by bad faith. This is because any action brought unlawfully cannot be made lawful. Facts that show again that the contempt action is far from those "Incidental to every criminal proceeding brought *lawfully and* in *good faith*" *Younger v. Harris, 401 US 37 – Supreme Court (1971)* Thus, Plaintiff has a substantial likelihood on the merits that he will be successful on this claim because, "[h]is allegations are comprehensible," *Edwards v. CCDC Dist. Court, ED Georgia (2022)*, to show whether the proceeding was filed in bad faith and "Fundamental fairness is the central concern of the writ of habeas corpus." *Coleman v. Thompson, 501 US 722 – Supreme Court (1991)*. Accordingly, there is a substantial likelihood of success on the merits of whether circumstances exist that render any available remedies ineffective to protect the rights of the applicant and that success requires a showing of only **likely or probable**, rather than certain, success.

### (a.) Evidence of ongoing state proceedings further motivated by bad faith pursuant to facts alleging Retaliation and Harassment and evidence of such fact.

Arnold also stated facts which further supports a knowingly and nefariously filed contempt action to satisfy grounds that the state proceedings were motivated by bad faith. These facts also support the grounds stated in Plaintiff's Writ that the ongoing state court proceedings are, "Ineffective to protect the rights of the applicant." (Id. ¶ 127) Not only did Arnold state facts of parallel behavior of concerted action to place him into sudden "*custody*" under a registered order that Respondents knew was unlawful, but Arnold also stated facts to support grounds as he alleged for "Retaliation for Petitioner's [Arnold's] civil redress of grievances in official proceedings." (Id. ¶ Intro, 60-61). "The Federal Plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing or other illegitimate motive." *Diamond "D" Construction Corp v. McGowan, 282 F. 3d 191 (2002)*. Arnold alleged that the contempt action was filed by Defendants in Henry County Georgia in 2021 under the presiding Judge who fabricated the Child Support Addendum. (Id. ¶ Intro. pg 2) Arnold further alleged that the presiding judge in the contempt action is a "Defendant" in a Federal lawsuit for due process violations of deprivations of an impartial Judge and the removal of Arnold's child across state lines ... in conspiracy for *retaliation of suit or possible suit*. (Id. ¶ 60-61) Arnold alleged that "Defendants" in this Federal lawsuit conspired to falsify records in his custody action as a means to affect his safety and security…to prevent litigation of a possible suit or retaliation for suit including acts to subsequently stall his direct appeal which could possibly overturn fabricated and biased orders. (Id.¶ 60-61) Arnold further alleged that Respondents pursued him less than 48 hours after his request to the Georgia appellate court to retrieve a tendered affidavit in order to prove that he maintained the majority of the custody of his minor **child to make an issue of fact on his appeal.** (Id. ¶ 64-67, 81-82). These facts together support "[N]onconclusory factual allegations of *parallel behavior*," that supports grounds that a "substantial loss or impairment of

freedoms of expression will occur" in the ongoing state proceedings rendering them ineffective

to protect the rights of Arnold. The Supreme Court has cautioned that "Courts ordinarily should

entertain and resolve on the merits an action within the scope of a jurisdictional grant and should

not "refus[e] to decide a case in deference to the States." *NOPSI, 491 U. S., at 368, Sprint*

*Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013)* Arnold has a substantial likelihood of success that

abstention is not appropriate here because Arnold has factually pleaded grounds to support -- as

stated within his Writ -- facts that any deemed "*available*" remedies currently, if any, are

ineffective to protect the rights of the applicant. (Id. ¶ 88, 89, 91, 120, 127) Moreover, a different

could conclude this matter in Arnold's favor because "[t]here is generally no public interest in

the perpetuation of unlawful agency action..." *League of Women Voters of U.S. v. Newby, 838*

*F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir. 2016).*

## II.    ARNOLD WILL SUFFER IRREPARABLE INJURY IF THIS STAY IS NOT GRANTED

"The Court is correct that relief is not warranted "simply to prevent the possibility" of

some remote future injury... However, the injury need not have been inflicted when application

is made or be certain to occur; a **strong threat of irreparable injury** before trial is an adequate

basis." *Winter v. Natural Resources Defense Council, Inc 129 S.Ct, 365 555U.S. 7 (2008)*

### A.    State Created Danger promulgated by the Acts of Defendants and others in concert with Defendants will leave Arnold irreparably harmed absent stay

Arnold realleges all allegations prior hereto by incorporation.

Based on established facts of parallel behavior and conduct -- not perturbation -- Arnold

satisfies the second factor of whether a threat of irreparable is likely absent this stay. Arnold has

thoroughly provided facts of affirmative acts of state created danger arising from a design and

scheme that lead to the filing of the contempt action in bad faith under the unlawful registered

support order that Respondents knew were unlawful and evidence of such facts. The Supreme

court case of *DeShaney* should control here based on "[D]angers the state played a part in

creating."[5] The 11ᵗʰ Circuit stated in *Mitchell* that, "[U]nder the "special danger" analysis, he

must show that the state affirmatively placed him in a position of **danger** which was

distinguishable from that of the general public." *Mitchell v. Duval County School Bd., 107 F. 3d*

*837 – 11ᵗʰ Circuit (1997)*. "The language of *DeShaney* does indeed leave room for state liabilty

where the state creates a danger or renders an individual **more vulnerable** to it." *Wyke v. Polk*

*County School Bd., 129 F. 3d 560 – 11ᵗʰ Circuit (1997)*. "It is the State's affirmative act of

restraining the individual's freedom to act on his own behalf – through incarceration…or other

similar restraint of personal liberty – which is the deprivation of liberty triggering the protections

of the Due Process Clause." *Jones v Reynolds, 438 F. 3d 685 – Court of Appeals (2006)*. Arnold

states, as further alleged below, facts and evidence of facts that Respondents (**1**) operated in

concert to *knowingly* file the contempt action under an unlawful registered support order to (**2**)

place him into custody and eventually incarcerate him. (Doc. 1. Intro, 2)

    (i)    **Respondents operated in concert to *knowingly* file the contempt action under an unlawful registered support order.**

        Arnold's sworn Writ alleged that the attached support order to his Writ of Habeas called

for immediate income deduction and license suspensions in November of 2019, however, that no

license suspensions occurred until December of 2020. (Id. ¶ 27-29) Arnold also alleged that

"Agreements or communications between the presiding judge Brian Amero and the Department

could be inferred by the request to enter an income deduction order shortly after the fabricated

Child Support Addendum which Addendum stated no income deduction order was immediately

necessary." (Id. ¶ 49-56, 82) Arnold also stated that the contempt action omitted any of the

alleged arrears from the 2019 order of enforcement (Id. ¶ 82, 84, 99) Further, that the contempt

---

[5] *DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

action was "filed by Defendants in Henry County Georgia in 2021 under the presiding Judge who fabricated the Child Support Addendum." (Id. ¶ Intro. pg. 2) Arnold stated that the contempt action was also "filed less than two (2) months after the entry of the fabricated Child Support Addendum." (Id. ¶ 80, 92) Arnold further stated facts that Respondents concealed statutory records request and information related to this *contempt* action. (Id. ¶ 68-71, 93-98) Arnold has also alleged within his Writ that he is currently "being deprived of information concerning whether any judicial determinations or adjudications took place on his child support account no. – which includes the nefariously filed contempt action." (Id. ¶ 93-97) Each of these affirmative acts are in close proximity to one another, all involve the Respondents and the presiding judge in the contempt action and give rise to, "[N]onconclusory factual allegations of ***parallel behavior*** – to determine whether it gave rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal, 556 US 662 – Supreme Court (2009).*[6] The facts above does just what the cite to *Ashcroft* states, it gives rise to concerted acts that Respondents knew of the unlawfulness of the registered support order by their conduct yet filed said contempt action by way of its registration for enforcement for retaliatory and bad faith purposes – when the actors were sure Arnold had no "where-with-all" of the unlawfulness of the order (Id. ¶ 92) – and concealed said action and its information.

    (ii)    **The above Affirmative acts placed Arnold into custody.**

Continuing, the ongoing state contempt action would indeed make Arnold more vulnerable to danger because such action was filed nefariously (in bad faith) in furtherance of such a scheme and purpose to successfully incarcerate Arnold knowingly under an unlawful judgment into **"Prisons... necessarily dangerous places."** *Farmer v. Brennan, 511 US 825 –*

---

[6] "Because conspiracies are secretive by nature, the jury must often rely on inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Geovanni, Court of Appeals, 11th Circuit No. 19-11044 (2022)*

*Supreme Court (1994)*, "[W]ithout hope of obtaining a *valid* conviction," *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*, because any action brought unlawfully cannot be made lawful. These facts again show that the contempt action is far from those "Incidental to every criminal proceeding brought *lawfully and* in *good faith*" *Younger v. Harris, 401 US 37 – Supreme Court (1971)*. Accordingly, there is a substantial threat of irreparable injury that Arnold would be "Stripped... of Virtually every means of self-protection and foreclosed of access to outside aid," *Farmer v. Brennan, 511 US 825 – Supreme Court (1994)*, due to this state created danger rendering the ongoing state proceedings ineffective to protect his rights, thus irreparable injury is substantial. The contempt action undoubtedly brought in "bad faith" also erodes Arnold's, "Right to be free from wrongful restraints upon... liberty." *Jones v. Cunningham, 371 US 236 – Supreme Court (1963)*, in situations where, "The bringing of the prosecution or the threat is itself a constitutional deprivation since it subjects a person to a burden of criminal defenses which he **should not have to bear**, and there then exists a situation "in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights." *Perez v. Ledesma, 401 US 82 – Supreme Court (1971)*. The cite to *Perez* is especially true when Arnold has stated Respondents including the presiding judge in the contempt action has an adverse interest in the outcome of a successful challenge to the support order – *liabilty*. (Doc. 1. no. 87) "It is incarceration against one's will, whether it is called "criminal" or "civil."" *In re GAULT, 387 US 1 – Supreme Court (1967)*. Based on these circumstances, the contempt action shows a great, immediate, ongoing and substantial likelihood of irreparable harm and is in itself "Patently and flagrantly unconstitutional on its face" that shows "Bad faith and harassment – official lawlessness" in Respondents enforcement of a knowing void support order. *See Younger v Harris, 401 US 37 – Supreme Court (1971)*

Arnold stated further evidence of facts of retaliatory conduct under the contempt action in that Respondents would pursue him less than 48 hours after his request to the Georgia appellate court to retrieve a tendered affidavit in order to prove that he maintained the majority of the custody of his minor child to *make an issue of fact on appeal* of whether the trial court judge's factual findings were erroneous (Id. ¶ 64-68, 81-82) Respondents pursuit of Arnold in his attempting to supplement the appellate record on his appeal were all related to orders involving the presiding judge in the contempt action which further depicts a situation that Arnold would further suffer a substantial loss of or impairment of freedoms of expressions that *"clearly show irreparable injury." Younger v. Harris, 401 US 37 – Supreme Court (1971)*. Thus, there is a great, ongoing and immediate threat of irreparable injury related to the contempt action filed in bad faith for retaliatory purposes involving state actors who have an adverse interest in Arnold's successful outcome of his challenge of the support order and whose affirmative acts knowingly brought Arnold into custody and made him more vulnerable to danger he should not have to bear. Arnold has shown that he will be Irreparably injured if this stay is not granted, and the injury is thus substantial, great and immediate and cannot be remedied.

**B.  There is a strong likelihood that others in concert with Defendants may enter erroneous support orders that will irreparably harm the Petitioner**
Arnold realleges all allegations prior hereto.

Plaintiff also establishes a strong showing of the likelihood that he will be imminently irreparably harmed in the nefariously and bad faith filed state court proceedings by the entry of an erroneous support order to subject the Plaintiff to Federal support laws in the future which proceedings does not concern itself with the validity of a state court order.[7] (See Writ of Habeas Petition ¶ Introduction) Facts above support a further inference that the presiding judge in the

---

[7] *See US v. Bailey, 115 F.3d 1222 – Court of Appeals, 5th Circuit (1997)*

contempt action may have erroneously granted a relocation request of Arnold's child across state lines in Arnold's modification of custody proceedings in order to do just what Arnold is alleging – subject Plaintiff to Federal support laws by the filing of bad faith proceedings he should not have to bear. Further evidence of facts supports this inference based on Respondents pursuit of Arnold 48 hours after his request to supplement the record on appeal by Arnold's seeking a "tendered" affidavit to prove that he maintained the majority of custody on appeal to make an issue of fact within said pending appeal of whether the trial court judge's factual findings were erroneous (Id. ¶ 64-68, 81-82.) These facts support inferences which entails the introduction of the Writ – "As a result of *state created danger* arising from an artifice, scheme and design... Petitioner in a position of "custody... all in violation of the Fourteenth Amendment." Thus, Arnold establishes a strong threat of irreparable injury arising from nefarious motives of retaliation by state actors having an adverse interest in the successful outcome of Arnold's challenge to the entry of an erroneous support order which if entered, could not be challenged in other sovereign jurisdictions and that threat is irreparable, ongoing – concealed – or imminent.

## II.   THE STAY WOULD NOT SUBSTANTIALLY HARM OTHER PARTIES BUT WOULD SERVE THE PUBLIC INTEREST
Arnold realleges all allegations prior hereto.

The actions of the Respondents or agents thereof depict multiple occurrences that touches on, "[T]he practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny." *Boumediene v. Bush, 553 US 723 – Supreme Court (2008)* It was stated that "[A] judgment that "tends clearly" to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property is against public policy." *Ackermann v. Levine, 788 F. 2d 830 – Court of Appeals 2nd Circuit (1986)* The actions of the Respondents have indeed undermined the public

interest and confidence in the administration of the law. Any harm that may affect the

Respondents would be minimal if non-existent for there could be no reasonable argument that

this stay is not in the public interest because, "[I]t is always in the public interest to prevent the

violation of a party's constitutional rights." *Melendres v. Arpaio, 695 F. 3d 990 – Court of*

*Appeals (2012)*. Moreover, "Preventing corruption… are interests of the highest importance."

*First Nat. Bank of Boston v. Bellotti, 435 US 765 – Supreme Court (1978)*. Respondents cannot

plausibly face any harm while Arnold's claims are being litigated pending appeal which claims

alleges Respondents and others in concert with Respondents (i.e., the presiding judge in the

pending contempt action) acted in concert through a series of state affirmative acts to *knowingly*

file a contempt action patently unconstitutional on its face under a state court judgment entered

in violation of the Constitution of the United States in order to propel Arnold into danger places

and make him more vulnerable to it in the future. Under the circumstances here, no harm to the

public interest would occur in this stay pending appeal involving state actors who are the fruit

bearers of the state created danger here who filed a contempt action far from those "Incidental to

every criminal proceeding brought *lawfully and* in *good faith*" *Younger v. Harris, 401 US 37 –*

*Supreme Court (1971)*, but rather a concerted effort that brought said contempt action corruptly,

in bad faith and for nefarious and retaliatory purposes. Furthermore, it serves the public interest

to ensure that citizens in this state who funds it state government for the protection of society[8] –

i.e., its judicial system and its public servants – and whom has the burden of maintaining them

through taxation are neither funding, "[G]overnment… abusing [its] power… as an instrument of

oppression." *Deshaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*.

Indeed, "[t]here is generally no public interest in the perpetuation of unlawful agency action…"

---

[8] "All forms of government for the protection of society are expensive, and the burden of maintaining them is laid upon the citizen and his property through taxation." *McWilliams v. Smith, 142 Ga. 209, 221 (82 S.E. 569) (1914)*.

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12, 426 U.S. App. D.C. 67 (D.C. Cir.

2016) (internal quotation marks and citation omitted). Moreover, Arnold has requested that the

court not only GRANT a stay pending his appeal but that the court do so having "[C]ontinuing

power to lift it any time and remit the plaintiffs to the state courts if circumstances warranted.

*Younger v. Harris, 401 US 37 – Supreme Court (1971)* No harm can occur to Respondents.

### III.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST SUPPORT GRANTING A PRELIMINARY INJUNCTION
Arnold repeats allegations prior hereto by reference.

      "Where the balance of the equities weighs heavily in favor granting the [injunction], the

movant need only show a substantial case on the merits." In assessing the balance of equities,

"The Court is required to "balance the conveniences of the parties pending final adjudication" on

the merits, and an injunction may issue to preserve the status quo "if, after balancing the relative

equities of the parties, it appears the equities favor the party seeking the injunction."*Bernacchi v.*

*Forcucci, 614 S.E.2d 775, 777 (Ga. 2005).* An additional factor bearing on the Court's decision is

whether the moving party is likely to succeed on the merits of its claims. *Toberman v. Larose*

*Ltd. P'ship, 63 7 S.E.2d 158, 1 61 (Ga. Ct. App. 2006).* Arnold has demonstrated that he has a

substantial likelihood of success of his claims because as stated above, **(1)** he is in custody within

the historical meaning of the Great Writ and *Jones v Cunningham* and **(2)** his *custody* is

unconstitutional for the purposes of Federal jurisdiction to inquire about whether Petitioner's

*custody*" in violation of the Constitution or laws or treaties of the United States. Arnold's

custody arises not only from a judgment of a state court but as a result of acts making him more

vulnerable to restraints "[O]f … the individual's freedom to act on his own behalf – through

incarceration…or other similar restraint of personal liberty – which is the deprivation of liberty

triggering the protections of the Due Process Clause." *Jones v Reynolds, 438 F. 3d 685 – Court*

*of Appeals (2006)*. Arnold's restraint through said affirmative acts is thus in violation of the Due

Process Clause. The court is not required to find that ultimate success, only "[A] mathematical

probability, and indeed… may grant a stay even though its own approach may be contrary to

movant's view of the merits." *Washington Metropolitan Area, Etc. v. Holiday Tours 559 F.2d*

*841 (1977)*. According to the body of case law in support of his claims which is not "outlandish"

but reasonable, it supports the "likelihood, and *probability* of success" factor even if not certain

he would succeed. Moreover, "Because the government is a party, and "the government's

interest *is* the public interest," the last two factors merge." *New York v. U.S. Dep't. of Commerce,*

*351 F. Supp. 3d 502, 673 (S.D.N.Y. 2019)) (internal quotation marks omitted)*. In balancing the

equities, the Respondent's actions are clearly not a proper exercise of state judicial power or its

state agencies, rather an unlawfully utilization of state judicial power and its agencies through

the state courts of Georgia in order to further a personal vendetta against Arnold through,

harassment and retaliation in a nefariously filed contempt action in bad faith patently

unconstitutional on its face all while having an adverse interest in Arnold's successful challenge

of the judgment of the state court which Arnold alleged was "entered in violation of the

Constitution of the United States." The balance of equity's tips decidedly in Arnold's favor.

## CONCLUSION

For all the above reasons, Arnold request that this Court GRANT Petitioner's Emergency

Motion to Stay State Court Proceedings Pending Petitioner's Appeal.

Dated: December 13th, 2022

By: _____

Mr. Deandre Arnold
**Mailing:** c/o General Delivery
Fairburn Georgia 30213
**Email:** Dresmailbox89@gmail.com
**Telephone:** 4705143097

Exhibit X – 8

("Exhibit X8 – Motion for Permission to File Electronically | 7 pgs.")

Filed in the Northern District Federal Court of Atlanta on

*Arnold v. Broce (1:21-cv-04970-SEG) Doc. 75*

IN THE UNITED STATES DISTRICT COURT FILED IN CLERK'S OFFICE
FOR THE NORTHERN DISTRICT OF GEORIGA
ATLANTA DIVISION

U.S.D.C. Atlanta

MAR 30 2023

KEVIN P. WEIMER, Clerk
By: _Kimberly_ Deputy Clerk

Deandre Arnold, also on behalf of        )
Tymya Arnold                             )
                    Plaintiff,           )
                                         )        CIVIL ACTION NO.
v.                                       )        1:21-CV-04970-SEG
                                         )
                                         )
                                         )
City of Hampton, et al,.                 )
                    Defendants.          )

---

**PLAINTIFF'S MOTION FOR ELECTRONIC FILING OR IN THE ALTERNATIVE A CHALLEGNE TO THE CONSTITUTIONAILTY OF STANDING ORDER 19.01 AS APPLIED TO PLAINTIFF**

COMES NOW, Petitioner, and files this motion for electronic filing of documents in this case under penalty of perjury and states good as grounds as follows:

1. The Plaintiff in this case has utilized mailing of documents in this case since the initiation of this lawsuit in early December of 2021.

2. The constant mailing of documents in this case has caused hardship to Plaintiff as he does not have the adequate funds nor can he at all times successfully borrow the funds in order to mail his filings to this clerks office.

3. The Plaintiff at this time cannot afford payment of multiple mailing in this case in order to send documents to this clerk's office for filing and to Defendants counsel.

4. The Plaintiff also can neither determine nor suggest when and if he may be able to borrow the funds to successfully mail filings in this case.

5. Moreover, mailings of documents in this case has resulted in Plaintiff's filings not physically appearing on the record until on average of 3 days after said mailing physically reaches the clerks intake office.

6. Moreover, the Petitioner's locale further prejudices the Petitioner as it is substantially far and would further prejudice the Plaintiff to manually file the documents himself.

7. The Petitioner would thus be prejudiced to relocate his locale for the purposes of this filing documents into this action in order to file his documents manually without the assistance of others or via the usage of the mails.

8. Petitioner has utilized General Delivery in the past as a means to expedite mail in the location of family and friends in Fairburn Georgia in order to receive mailing of documents much quicker in this state vs. mail that will go much further.[1]

9. In addition, if Petitioner were to mail his documents to the court for manual filing it would without a doubt reach the court nearly 2-3 days after his mailing and possibly another 2-3 days before the clerk's intake office eventually files it.

10. This is not speculation but is likely to occur or will occur as a regular process of mail delivery and clerk's intake procedure of how documents are filed when sent manually.

11. This will not only burden the Petitioner but prejudice the Petitioner because if and when he completes a motion or other paper for filing with the clerk and utilizes mail, he is undoubtedly estimated to not have his documents filed on the record for a minimum period of 5 days or more utilizing mail delivery of documents.

---

[1] Petitioner has ceased utilization of this General mail Delivery in the past as a result of the post office handing over mail to the individual authorized to accept mail without the individual agent showing a Power of Attorney. Said issues have been addressed as the date of this action/filing.

12. Moreover, documents sent via regular mail delivery has the likelihood to be lost, misplaced or filed incorrectly at no fault of the Petitioner which may further delay the judicial proceedings against the interest of judicial economy vs. electronic filing where he can control the destination and timing of the filing of these documents at no charge.

13. Moreover, the court may enter orders that it may not have entered due to a specific filing of Petitioner that is completed and on its way via the mail however not filed as a result of the delay that ensues via mail processes and intake.

14. For instance, if Petitioner which to corrects a filing by filing a Notice of Errata which otherwise holds errors requiring dismissal by sending mail on 3/20/2023 and the court enters an order dismissing the filing for such error on 3/21/2023 the court would not know whether or not the error was corrected before its receipt of mailing that it would have gotten directly on 3/20/2023 if Plaintiff were able to electronically file.

15. Moreover, there is no opposition or suggestion that Plaintiff can not follow the applicable rules such as attorneys or lawyers who have access to the electronic filing system.

16. Another unforeseen circumstance is weather that may affect the timing of the mailing in the future or in the near coming days that may burden the Petitioner's "emergency motions" and thus limit and prejudice any emergent filing consistent with his emergency by subtracting nearly five days from date of actual mailing.

17. Moreover, in this case, summons was omitted from the filing on the court record in February 2022 of Wayne Jernigan although a friend of the family mailed a substantial number of summons to the clerk's office on behalf of the Petitioner for clerk's signature of summons which included Wayne Jernigan.

18. Moreover, surprise extreme weather has the substantial likelihood to stop the flow of mail but not interrupt the electronic services or filings such as the CM/ECF system.

19. Petitioner is already familiar with the electronic CM/ECF system, already has a registered account, has immediate access to the electronic and technical requirements and has read the rules on electronic filing of documents to ensure his filings would be sufficient, compliance and in conformity with how the clerks electronically accepts pleadings.

20. Plaintiff has also utilized the CM/ECF electronically filed system to file documents in additional cases in Federal court.

21. Plaintiff states for the reason above and below that the court GRANT him the ability to electronically file his documents under the condition that such permission be subject to reconsideration by the court if the Court finds that Petitioner is abusing this privilege or on information of the clerk that Plaintiff is incorrectly filing his documents inconsistent with his claim that he is familiar with the technical requirements and rules on electronic filing.

**ARGUMENT**

22. The 11th circuit and other sister circuits have allowed Pro Se litigants to electronically file documents however under the condition that such permission be subject to reconsideration by the Court if the Court finds that Petitioner is abusing this privilege or utilizing the ECF system improperly.

23. "The Court notes that Plaintiff has recently filed several cases in this Court and has been granted permission to utilize electronic filing in some cases... Plaintiff has been warned that his motion for permission to utilize electronic filing is subject to reconsideration by

the Court is the Court finds that Plaintiff is abusing the privilege." *See, e.g., Walker v. Progressive Select Ins. Co., Case No. 1:19-cv-182-AW-GRJ, ECF No. 8.*

24. However, according to this court's local rules it does, "Not permit pro se litigants to file documents electronically. Standing Order No. 19-01 states, "Pro Se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form." *Claiborne v. JP Morgan Chase Bank, NA, Dist. Court ND Civil Action No. 1:18-CV-5542-SDG-CCB*

25. The Petitioner is now subject to all the situations that will occur as a result of his not being able to afford filing, not being able to determine when he can borrow funds for mailing and possible misplacement of documents that would not otherwise occur if Plaintiff were Granted the ability to file electronically.

26. Attorneys in this case who are party's in this action and in the State of Georgia generally are granted the ability to file electronically in this court while the Plaintiff cannot although similar situated to Attorneys as party's in this case and citizens generally.

27. "Filing of ECF ends the concept of the clerk's office being inaccessible on weekends and legal holidays. Under ECF, the clerk's office is always open for the reception of filings." *McElveen v. Westport Recovery Corp., 310 F. Supp.3d 1374 (2018)*

28. Attorneys in this case and Attorneys generally are also provided up to 11pm to file documents electronically via the ECF system.

29. The clerk's office expansion of acceptance of court filings via the ECF system provides more time to skilled Attorneys than the Plaintiff with no legal education to file his documents and such expansion has only been offered to the benefit of Bar Attorneys who are all opposing counsel in Plaintiff's case.

30. There is no legitimate reason or basis as applied to Petitioner currently to deny this simple permission and such denial will prejudice the Petitioner in violation of due process, substantive due process and equal protection.

31. All of these circumstances will diminish if the court grants Petitioner's request to file electronically under the conditions that his permission be subject to reconsideration by the Court if the Court finds that Petitioner is abusing the privilege and utilizing the electronic filing of the ECF system improperly.

32. The Plaintiff hereby certifies that he has read and is familiar with all of the local rules to file electronically and has immediate access to the technical and electronic necessities to file electronically. Plaintiff also understands that hard copies may no longer be issued by the court or any opposing counsel and his notice may solely electronically.

33. Plaintiff also certifies that he can comply with the court's requirements for electronic filing and that if this motion is granted he understands that he will be subject to reconsideration if the court finds that the Petitioner is abusing this privilege and utilizing the electronic filing access improperly.

**I swear or affirm under penalty of perjury under United States laws that the foregoing are true and correct. (28 U.S.C. 1746; 18 U.S.C. 1621)**

**WHEREFORE,**

Petitioner requests that the court GRANT Petitioner's request to file electronically subject to reconsideration that the court deems just and proper.

Dated: March 29th, 2023

By: _____
Mr. Deandre Arnold
Mailing: c/o General Delivery
Fairburn Georgia 30213
Email:
Telephone: 4705143097

## CERTIFICATE OF SERVICE

Plaintiff, Deandre Arnold, files his certificate of service and states that the foregoing

**PLAINTIFF'S MOTION FOR ELECTRONIC FILING OR IN THE ALTERNATIVE A**

**CHALLEGNE TO THE CONSTITUTIONAILTY OF STANDING ORDER 19.01 AS**

**APPLIED TO PLAINTIFF** was served on the Defendants below by placing the same in

U.S.P.S. mail and mailing to Defendants regular mail at the addresses below and the same by

email below;

> Attn: Karen Woodard
> Meridian II, Suite 2000
> 275 Scientific Drive
> Peachtree Corners, GA 30092
> kwoodward@cmlawfirm.com
>
> Sun S. Choy, schoy@fmglaw.com
> E. Andrew Treese atreese@fmglaw.com
> Freeman, Mathis & Gary, LLP
> 100 Galleria Parkway, Suite 1600
> Atlanta, GA 30339
>
> Patrick D. Jaugsetter, patrickj@jarrad-davis.com
> Jarrad & Davis, LLP
> 222 Webb Street
> Cumming, GA 30040

DATE: 3/29/2023

Mr. Deandre Arnold Pro Per
Attn: Arnold, Deandre
**Mailing Address:** General Delivery
Fairburn, Georgia 30213
**Email**: Drasmailbox80@gmail.com
470-514-3097

EXHIBIT Y – 1

("Exhibit Y-1 | Federal Court Orders in cases 1:21-cv-09470-SEG and
1:21-cv-04536-SEG | 15 pgs.")

Pgs. 1 – 9 | 12/6/2022 | Case no. 1:21-cv-04536-SEG
Pgs. 10 – 12 | 2/14/2023 | Case no. 1:21-cv-04536-SEG
Pgs. 13 – 15 | 4/11/2023 | Case no. 1:21-cv-04970-SEG

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEANDRE ARNOLD,

          Petitioner,

    v.

COMMISSIONER CANDICE
BROCE, of the Department of
Human Services, Director, and
SARAH HURST, Director of Child
Support Services,

          Respondents.

CIVIL ACTION NO.

1:22-CV-04536-SEG

## O R D E R

    This case is before the Court on Petitioner Deandre Arnold's petition for writ of habeas corpus (Doc. 1), emergency motion to stay state court proceedings (Doc. 5), and motion for access to electronic filing (Doc. 4). Mr. Arnold asks the Court to relieve him of his child support obligations and to stay a civil contempt proceeding against him in state court. This Court acknowledges the important interests at stake when a parent faces possible incarceration for child support debt. *Turner v. Rogers*, 564 U.S. 431, 445 (2011) (stating that "[t]he interest in securing . . . the freedom from bodily restraint, lies at the core of the liberty protected by the Due Process Clause.") (citation

and quotations omitted). This federal court, however, cannot grant Mr. Arnold
the relief that he seeks. For the following reasons, this case must be dismissed.

## I.    Background

Construed liberally, Mr. Arnold's *pro se* petition for habeas corpus
alleges the following facts.[1]  On December 13, 2017, the Circuit Court for
Pinellas County, Florida issued a child support order (the "Florida Child
Support Order") requiring Mr. Arnold to make monthly payments to his child's
mother. (Doc. 1 at 24-27.) On November 18, 2019, the Superior Court of Henry
County, Georgia issued an order (the "Henry County Child Support Order")
recognizing the Florida Child Support Order and requiring that the Florida
Child Support Order be enforced in Georgia. (*Id.*) The Henry County Child
Support Order stated that Mr. Arnold was in arrears in his child support
payments in the amount of $8,098.67 and ordered Mr. Arnold to pay his child's
mother $47 per month. (*Id.* at 25.)

On October 7, 2021, the Superior Court of Henry County allegedly issued
an addendum to its prior child support order.[2]  (*Id.* ¶¶ 48-50.)  Mr. Arnold

---

[1] "*Pro se* pleadings are held to a less stringent standard than pleadings
drafted by attorneys and will, therefore, be liberally construed."
*Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

[2] Mr. Arnold did not attach a copy of this addendum to his petition.

2

alleges that this addendum to the Henry County Child Support Order was "fabricated or falsified." (*Id.* ¶ 53.) On November 8, 2021, Mr. Arnold filed a notice of appeal. His currently pending appeal in the Court of Appeals of Georgia seeks review of the addendum to the Henry County Child Support Order, which Mr. Arnold alleges is unenforceable. (*Id.* ¶¶ 56-57.)

Mr. Arnold further alleges that, sometime in December 2021, the Georgia Department of Human Services, Division of Child Support Services ("DCSS") commenced a civil contempt action against him for nonpayment of child support. (*Id.* ¶ 113.) The status of the contempt proceeding is not readily apparent from Mr. Arnold's petition. Mr. Arnold alleges that DCSS may, "under the open contempt action, at any time or moment, demand Petitioner's presence and . . . subject him to incarceration." (*Id.* ¶ 85.) Mr. Arnold is not currently incarcerated. (*See id.*)

On November 15, 2022, Mr. Arnold filed the instant case, in which he asks the Court to "[a]ssume jurisdiction over" the ongoing state court proceedings and relieve him of his obligations under the Henry County Child Support Order and addendum. (*Id.* ¶ 22.) On November 22, 2022, Mr. Arnold filed an emergency motion to stay the civil contempt proceeding against him in Henry County Superior Court and to enjoin DCSS from enforcing the Henry County Child Support Order. (Doc. 5 at 2.)

3

## II.   Legal Standard

Mr. Arnold filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 2241. (Doc. 1 at 1.) The Court therefore reviews the petition pursuant to the Rules Governing Section 2254 Cases in the United States District Courts ("the Rules"). The Rules extend to habeas petitions brought under both sections 2254 and 2241. Rule 1(B), Rules Governing Section 2254 Cases. Rule 4 requires the Court to dismiss a petition for habeas corpus "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

## III.   Discussion

In his habeas petition, Mr. Arnold asks the Court to relieve him of his obligations under the Henry County Child Support Order, which he argues is invalid and unenforceable. The federal habeas corpus statute provides in part that the writ of habeas corpus shall not extend to a "prisoner" unless he "is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added). Further, section 2254 authorizes federal district courts to review habeas claims brought by individuals who are "*in custody* pursuant to the judgment of a State court." 28 U.S.C. § 2254(a)

4

(emphasis added); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)) (emphasis added) (stating that the federal habeas statute "contemplate[s] a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge").

Mr. Arnold states that he is not currently incarcerated but is nevertheless "in the custody" of DCSS because the agency may, pursuant to the ongoing civil contempt proceeding, "at any time or moment demand Petitioner's presence and . . . subject him to incarceration."   (Doc. 1 ¶ 85.) While "the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody,"[3] *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300 (1984), in order to satisfy the "in-custody" requirement, the petitioner "must be subject to 'significant restraint' on his individual liberty that is not shared by the general public." *Blanco v. Florida*, 817 F. App'x 794, 796 (11th Cir. 2020) (quoting *Howard v. Warden*, 776 F.3d 772, 775 (11th Cir. 2015)).

---

[3] For example, the Eleventh Circuit has found that the "in custody" requirement may be met when a petitioner is on probation, parole, or bail. *Duvallon v. Florida*, 691 F.2d 483, 485 (11th Cir. 1982).

Here, while the Court understands that the prospect of possible incarceration in an ongoing contempt proceeding can cause stress, anxiety, uncertainty, and other burdens, the Court cannot agree that Mr. Arnold satisfies the "in custody" requirement for habeas relief. *See, e.g., Duvallon v. Florida*, 691 F.2d 483, 485 (11th Cir. 1982) ("[T]he existence of the possibility that appellant will be found in contempt and incarcerated for willful failure to pay the fine does not [satisfy the "in custody" requirement]."); *see also Heurung v. Kelly*, Civ. No. 17-3340 (PJS/BRT), 2017 WL 6611573, at *2 (D. Minn. Dec. 1, 2017) ("[T]he possibility of arrest if Petitioner fails to pay child support in the future does not satisfy the 'in custody' requirement for purposes of a habeas attack."); *Gore v. Callahan*, No. 3:15-CV-0272-K (BH), 2015 WL 4162760, at *3 (N.D. Tex. July 7, 2015) (finding habeas petitioner did not satisfy the "in custody" requirement when his incarceration was suspended, contingent on his payment of child support). This is especially so given that Mr. Arnold alleges only a possibility of incarceration at some unknown future time.

Even if Mr. Arnold were "in custody" for purposes of federal habeas, this case must be dismissed for a second reason: the *Younger* abstention doctrine prevents the Court from intervening in the ongoing state proceedings related to Mr. Arnold's child support obligations. The *Younger* abstention doctrine requires a federal court in certain circumstances to abstain from interfering

6

with ongoing state court proceedings. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (discussing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention principles are "fully applicable to noncriminal judicial proceedings when important state interests are involved." *31 Foster Children*, 329 F.3d at 1274 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (internal quotation marks omitted). A federal district court should abstain from adjudicating a case if (1) there are ongoing state judicial proceedings with which federal proceedings would interfere, (2) the ongoing "proceedings implicate important state interests," and (3) "there [is] an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 1274-75 (quoting *Middlesex*, 457 U.S. at 432) (internal quotation marks omitted).

All three *Younger* requirements are satisfied here. First, "[w]hen a petitioner is obligated by court order to make continued child-support payments and is subject, on an ongoing basis, to contempt proceedings for failure to make those payments, 'there is a pending state court proceeding.'" *Redford v. Conley*, No. 1:16-CV-4106-WSD-JFK, 2016 WL 11260339, at *2 (N.D. Ga. Dec. 28, 2016), *report and recommendation adopted as modified*, No. 1:16-CV-4106, 2017 WL 490425 (N.D. Ga. Feb. 7, 2017) (quoting *Pompey v. Broward County*, 95 F.3d 1543, 1548 n.6 (11th Cir. 1996)).

7

Second, the state's interest in "preserving the integrity of its contempt proceedings, as well as its domestic relations cases," is an important state interest. *Pompey*, 95 F.3d at 1548 n.6 (quoting *Parker v. Turner*, 626 F.2d 1, 4 (6th Cir. 1980)) (internal quotation marks omitted).

Third, a person facing contempt (or actually jailed) for alleged noncompliance with a child support order may raise constitutional and other challenges in state court. For instance, under Georgia law, an indigent parent jailed for contempt of a child support order may petition the superior court for release on the ground that he lacks the ability to purge contempt. *See Hughes v. Ga. Dep't of Human Res.*, 502 S.E.2d 233, 234 (Ga. 1998) ("A trial court . . . may not continue incarceration for civil contempt when the respondent lacks the ability to purge himself. Imprisonment under civil sanctions is always conditional and a party found in contempt may apply for release at any time upon a showing of inability to pay."). Additionally, Georgia law allows for appeal of domestic-relations contempt orders to the Supreme Court of Georgia. *See Horn v. Shepherd*, 732 S.E.2d 427, 430 (Ga. 2012).

The Eleventh Circuit has cautioned against federal district courts assuming "the role of overseer of [state] child support enforcement proceedings." *Pompey*, 95 F.3d at 1550. "[F]ederal courts generally dismiss cases involving . . . child custody . . . [and] child support." *Ingram v. Hayes*,

8

866 F.2d 368, 369 (11th Cir. 1988). This is because federal district courts have traditionally abstained from deciding cases concerning domestic relations, leaving those matters to the realm of the state courts. *Id.*; *Pompey*, 95 F.3d at 1550. To the extent that Mr. Arnold contends that his rights have been violated, *see generally Turner v. Rogers*, 564 U.S. 431, 445-449 (2011) (requiring certain due process protections in civil child support contempt proceedings), he can appeal to the appropriate state appellate court. Because the *Younger* abstention doctrine applies, the Court cannot grant Mr. Arnold the relief he seeks. Accordingly, the Court must dismiss Mr. Arnold's petition for a writ of habeas corpus pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

## IV.  Conclusion

Mr. Arnold's petition for habeas corpus (Doc. 1) is **DENIED**.  Mr. Arnold's emergency motion to stay state court proceedings (Doc. 5) and motion for access to electronic filing (Doc. 4) are **DENIED AS MOOT**. This action is **DISMISSED**. The Clerk of Court is directed to close the case.

**SO ORDERED** this 6th day of December, 2022.

*Sarah E. Geraghty*
SARAH E. GERAGHTY
United States District Judge

9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEANDRE ARNOLD,

      Petitioner,

     v.

COMMISSIONER CANDICE
BROCE, of the Department of
Human Services, Director, and
SARAH HURST, Director of Child
Support Services,

      Respondents.

CIVIL ACTION NO.

1:22-CV-04536-SEG

## ORDER

On December 6, 2022, this Court issued an order dismissing Deandre

Arnold's petition for writ of habeas corpus and denying his motion to stay the

state court proceedings related to his child support obligations. (Doc. 6.) Mr.

Arnold has since filed another motion seeking to stay the state court

proceedings, this time pending his appeal of this Court's December 6 order.

(Doc. 8.) For the reasons explained in the December 6 order, this latest motion

is also DENIED.

Mr. Arnold has filed a motion for issuance of a certificate of

appealability. (Doc. 9.) Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of

appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted). The Court finds that Mr. Arnold has failed to make this showing. Accordingly, his motion for issuance of a certificate of appealability is DENIED. Mr. Arnold is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases and Section 2255 Proceedings.

Mr. Arnold has also moved to proceed on appeal in forma pauperis. (Doc. 15.) Pursuant to 28 U.S.C. § 1915(a)(3), "an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." A party's good faith is demonstrated "when he seeks appellate review of any issue not frivolous." *Coppedge v. United States*, 369 U.S. 438, 445 (1962). "[A]n appeal on a matter of law is frivolous where '[none] of the legal points [are] arguable on their merits.'" *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (quoting *Anders v. California*, 386 U.S. 738, 744 (1967). ¡

2

The Court concludes that Mr. Arnold's appeal lacks an arguable basis in law or fact. The Court therefore CERTIFIES that the appeal is not taken in good faith. Mr. Arnold's request to proceed on appeal in forma pauperis is DENIED. Mr. Arnold is advised that any further requests to appeal in forma pauperis should be directed to the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate procedure 24.

**SO ORDERED** this 14th day of February, 2023.

SARAH E. GERAGHTY
United States District Judge

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEANDRE ARNOLD on behalf of
TYMYA ARNOLD,

      Plaintiff,

      v.

CITY OF HAMPTON, *et al.*,

      Defendants.

CIVIL ACTION NO.

1:21-CV-4970-SEG

## ORDER

On March 16, 2023, the Court issued an order resulting in the dismissal of certain claims and defendants in this matter. (Doc. 72.) The order informed Plaintiff that if he wanted to amend his complaint, he should file a motion seeking leave to do so within 21 days. (*Id.* at 89.) The order also directed Plaintiff to show cause as to why certain defendants should not be dismissed for lack of timely service. (*Id.* at 91.)

Plaintiff asks to extend both deadlines to April 30, 2023. (Doc. 73.) For good cause show, Plaintiff's request is GRANTED. Plaintiff shall have until April 30, 2023, to move to amend his complaint and to show cause as to why certain defendants should not be dismissed for lack of timely service.

Plaintiff also filed a motion for permission to file documents using the district court's electronic filing system. (Doc. 75.) Plaintiff states that e-filing would save him time and money; eliminate postal service delays that might occur in the case of inclement weather; and obviate problems that could arise from delayed docketing of his filings.

The Court's Local Rules and procedures generally do not permit *pro se* litigants to file electronically. *See* N.D. Ga. Loc. R. App'x H (Standing Order 19-01) at A7 ("A party proceeding *pro se* shall not file electronically unless the party is an attorney in good standing admitted to practice before this Court."); App'x H at 3 ("Pro se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form."). A judge may, however, deviate from the foregoing procedures "in specific cases . . . if deemed appropriate in the exercise of discretion, considering the need for the just, speedy, and inexpensive determination of matters pending before the court." App. H at A7.

Here, Plaintiff has not shown that a special exception from the general rule is needed for a just, speedy, and inexpensive determination of the matters before the Court. Mailing documents admittedly may be inconvenient, but Plaintiff has not identified any problem that has occurred from delays in filing due to inclement weather, late docketing, or otherwise. *See, e.g., Levine v.*

2

*Roberts*, No. 121CV02189-SEG-RGV, 2022 WL 2389271 (N.D. Ga. May 10, 2022) (denying a *pro se* litigant leave to file using the court's electronic filing system and collecting cases); *see also Love v. Mem'l Health Univ. Med. Ctr., Inc.*, No. CV413-112, 2013 WL 6408344, at *1 (S.D. Ga. Dec. 6, 2013) ("Even pro se litigants must bear their own litigation expenses."). Plaintiff's motion (Doc. 75) is therefore DENIED.

**SO ORDERED** this 11th day of April, 2023.

*Smh E Aacyg*

SARAH E. GERAGHTY

United States District Judge

3

EXHIBIT Y

("Exhibit Y | 2019 Confirmation and Registration of Child Support
Order | 4 pgs.")

(Includes 2 page court order Denying Plaintiff's Motion to Quash)

Filed in the Henry County Superior court on 11/18/2021

6 pages

*19 - CV265 - BL*

## IN THE SUPERIOR COURT OF HENRY COUNTY
## STATE OF GEORGIA

**THE GEORGIA DEPARTMENT OF HUMAN
SERVICES, ex. rel., TYMYA ZENAYA ARNOLD
    PLAINTIFF**

**CIVIL ACTION FILE NO.**

v.

**Deandre Arnold
    DEFENDANT**

FILED IN OPEN COURT
SUPERIOR COURT
HENRY COUNTY, GA

**NOV 18 2019**

CLERK OF SUPERIOR COURT

### ORDER RECOGNIZING THE OUT OF STATE CHILD SUPPORT ORDER THAT
### IS CONTROLLING FOR ENFORCEMENT AND ORDER OF ENFORCEMENT
(Pursuant to the Uniform Interstate Family Support Act, O.C.G.A. § 19-11-100 et seq.)

After a hearing on the matters raised by the pleadings in the above-styled case, the Court finds
and/or orders as follows:

**A.   Determination of Controlling Order**
    1. The Court (finds) (confirms) that the existing child support order issued on
*DECEMBER    13TH    ,  2013  ,* action number *16-11424FD-25* by the
*CIRCUIT COURT FOR   PINELLAS COUNTY  ,* State of *FLORIDA            ,* must be
recognized as the controlling order for enforcement pursuant to O.C.G.A. § 19-11-116, and it is so
ordered. Said Order was filed with the *HENRY     * County, Georgia, Clerk of Court on
*09/24/19 * and thereby registered as a foreign judgment pursuant to O.C.G.A. § 19-11-160 et seq.
Said order is referred to hereinafter as "the controlling order."
    2. This determination was made after the Court considered all of the child support orders
included in the pleadings and on the basis of the following findings of fact:
        _X_____ The controlling order is the only existing child support order.
        _X_____ The tribunal that issued the controlling order is the only tribunal that has continuing
exclusive jurisdiction. The (obligor) (obligee) (children) presently reside(s) in the State of this
tribunal.
        _____ Two or more states have continuing exclusive jurisdiction, but the controlling order
was issued by a tribunal of the State which is the child(ren)'s current home State.
        _____ Two or more States have continuing exclusive jurisdiction, but neither is the
child(ren)'s current home State. The controlling order is the most recently issued child support
order.
        _____ No tribunal has continuing exclusive jurisdiction, so this Court has issued a child
support order that shall henceforth be the controlling order.
    3. The controlling order shall be enforceable in the same manner and subject to the same
procedures as an order issued by a tribunal in the State of Georgia.

**B.   Order of Enforcement:**
    _____ 1. Defendant is found to be in willful contempt, due to Defendant's failure to make a diligent
and bona fide effort to comply with the controlling order and shall be confined to the county jail for a
period of _____ days. Defendant may purge himself of said contempt by the payment of
$_____ toward his child support arrears by _____ p.m. on _____
_____. Defendant shall be subject to a bench warrant for his immediate arrest and confinement to
jail if he fails to make the payment as ordered and an affidavit to this effect is presented to the Court
by the Plaintiff. If the Defendant has not paid the purge amount by the expiration of the 30th day
following incarceration, he shall be placed upon the next regularly scheduled DCSS calendar date for

the Court to review if continued incarceration is warranted.

_____ 2. Defendant is hereby ordered to reappear before this Court on the _____ day of _____, 201__ to show his compliance with the terms and conditions of this order. Defendant, at that time, may be found to be in contempt of this order should the evidence show that the Defendant willfully failed to abide the terms and conditions of this order.

_____ 3. Defendant shall pay current child support as ordered by the controlling order, i.e., $_____ per child per _____.

__X__ 4. Defendant is found to be in arrears in his child support payments as required by the controlling order in the amount of $ _8098.67_ as of _JUNE 30TH_, _2019_. Child support arrears may be subject to interest charged at the legal rate of interest allowed under the law of the state issuing the support order. Defendant shall repay this arrearage (as ordered by the controlling order, i.e. $_____ per _____) (at the rate of $ _47.00_ per _month_) until all arrears have been paid in full.

_____ 5. The Defendant has not had the ability to comply as to current support or that there is some other lawful justification for Defendant's failure to comply with the pre-existing order

__X__ 6. The Defendant is found to be in arrears in an amount equivalent to or greater than the current support due for 60 days. Therefore, the Department is authorized to present this order to a licensing or registering entity under section 19-6-28.1 for suspension of a license or non-renewal of a license, including but not limited to, recreational licenses issued by the Georgia Department of Natural Resources.

__X__ 7. The Court orders the IV-D Agency (DCSS) to issue an Income Deduction Order (Federal Form OMB:0970-0154, Income Withholding Notice) to the employer/payor of Defendant and all subsequent employers/payors.
　　This Income Deduction Order should be made effective:
　　( _X_ ) Immediately.
　　(_____) Upon a delinquency equal to one month's support. This court finds that good cause was shown to delay the effective date of this order. The IV-D Agency (DCSS) may issue its IDO, by serving a "Notice of Delinquency" on Defendant as provided in O.C.G.A. §19 6 32(f).
　　**AMOUNT:** The IV-D Agency shall issue the IDO for the amount of current support due under this order. The IV-D Agency may add to this amount an additional amount for repayment if the Obligor becomes more than 30 days delinquent on his current support or fee accounts. Further, if the Obligor becomes more than 30 days delinquent for support or for fees owed to DCSS, including but not limited to past due genetic test fees and file maintenance fees, pursuant to O.C.G.A. 19-6-32 DCSS may add an amount to be applied towards any amount owed for such past due support or fees. The IV-D Agency shall notify the obligor by first class mail at the obligor's last known address, of its intent to add this extra amount and if the obligor makes a written objection to the amount of the repayment, a hearing shall be held to hear said objection.
　　**DURATION:** The IV-D Agency (DCSS) IDO shall supersede any IDO which may have been previously entered in this case. This IDO shall remain in full force and effect until modified, suspended or terminated by further order of this Court or until such time as the Custodial Parent terminates the assignment of rights to the IV-D Agency (DCSS) and there are no funds being collected on behalf of a debt owed to the State.
　　The IV-D Agency (DCSS) IDO and all further papers required to be served pursuant to O.C.G.A. §19 6 30 et seq., shall be served upon the Defendant by regular mail in accordance with the alternative service provisions of O.C.G.A. §9 11 4(i).
　　When all past due amounts are paid, the IV-D Agency shall issue a new IDO for collection of

current support only.

**DUTY TO INSURE COMPLIANCE:** Defendant is hereby ordered to perform all acts necessary for the proper withholding of the sums stated in this IDO, including delivery of the same to his employer/payor and future employers/payors, and to personally monitor and confirm on an ongoing basis that the payments withheld are timely and properly deducted from his/her income and forwarded as ordered, correctly identified with the above case. Failure of the employer/payor to perform under this order does not relieve the Defendant of the obligation to ensure that payment is made.

**CONSUMER CREDIT PROTECTION ACT:** The maximum amount to be deducted shall not exceed the amounts allowed under 303.b of the Consumer Credit Protection Act, 15 U.S.C. §1673 (b) as amended.

_N/A_ 8. Defendant shall provide accident and sickness insurance coverage for the subject child(ren) as ordered in the controlling order. The Defendant shall maintain accident and sickness insurance for the minor child(ren) as the same is available at reasonable cost as defined by the Court. Defendant shall send a copy of the insurance policy and/or insurance card to the Division of Child Support Services within ten (10) days of the date of this order, or within ten (10) days of Defendant's obtaining said insurance. Defendant shall notify the Department within ten (10) days of the date said insurance becomes available. Failure to provide such coverage may result in direct enforcement of the Order in accordance with O.C.G.A. § 19-11-27. Obligee or the IV-D (DCSS) agency shall, upon request, provide information to the insurer necessary to meet the ERISA requirements, 29 U.S.C. §1169, defining a qualified medical support order.

_____ The Court finds the children are covered by public or private medical insurance.

_____ The Court finds the children are not covered by public or private medical insurance.

_X_ 9. Defendant shall make child support payments to Georgia Department of Human Services-**Division of Child Support Services, Family Support Registry, P.O. Box 1600, Carrollton, GA 30112-1600,** and such payments, if not paid by income deduction order, shall be by money order, certified check, cashier's check or personal check directly to the Division of Child Support Services at any address as is required by the Georgia Department of Human Services. The Department shall transmit said payments to the State of _____.

_X_ 10. Defendant is ordered to keep his child support agent informed of his current residence address and his current place of employment and shall report any change within **7 days** of said change.

_____ 11. _____

_____

_____

12.    The Defendant is notified that pursuant to sections of Georgia law, the Division of Child Support Services may take various administrative remedies, independent of the Court, including but not limited to: seizure of financial assets from various sources as well as suspension of any and all licenses held by the Defendant issued by the State of Georgia.

13.    All payments received shall be first applied to any current support obligations, then to past due support and any interest, then towards state arrears. If the Defendant owes any arrears at the time

current support ends for a child or children, then the Total Amount of Deduction listed in the income deduction order (IDO) shall continue unreduced until all arrears are paid in full.

14. Whenever, in violation of the terms of this Order, there shall have been a failure to make the support payments due hereunder so that the amount unpaid is equal to or greater than the amount payable for one month, the payments required to be made may be collected by the process of continuing garnishment for support.

15. The Defendant shall pay any applicable Family Support Registry (FSR) fee for each payment pursuant to O.C.G.A. § 19-6-33.1(j) as well as any other fees owed to the State by FIW, including but not limited to those fees due under Ga. law or applicable DHS Rules and Regulations pursuant to Rule 290-7-1.05

16. All missed payments of support shall be subject to interest pursuant to O.C.G.A. § 7-4-12.1 or under the law of the issuing state of the underlying order.

17. This order is subject to the right to request a review and modification as set forth in O.C.G.A. § 19-11-12.

SO ORDERED, this the ___18___ day of ___November___, 20_19_,

~~John A. "Trea" Pipkin III, Holly Veal,~~ Brian Amero
Judge, Superior Courts
State of Georgia

Consented:                                          Consented:

_____        _____
Deandre Arnold                                      Attorney for Defendant
Defendant

_____
DCSS Agent

_____
Barbara B. Briley
Assistant District Attorney

Prepared By: Division of Child Support Services
By: Barbara B. Briley, Assistant District Attorney
46 SLOAN ST
MCDONOUGH, GA 30253-
(844) 694-2347
Ga. State Bar No.: 082175
DCSS Case No.: 200028422
Fax No: 770-954-2823
mcdonoughCSE@dhr.state.ga.us

**IN THE SUPERIOR COURT OF HENRY COUNTY**

FILED IN OFFICE
HENRY COUNTY
SUPERIOR COURT

**STATE OF GEORGIA**

MAR 0 5 2020

Barbara A. Harrison
OF SUPERIOR COURT

THE GEORGIA DEPARTMENT OF )
HUMAN SERVICES, ex. rel., )
TYMYA ZENAYA ARNOLD, )
    Plaintiff, )
                   )    CIVIL ACTION NO.
v. )
                   )    2019-SU-CV-2651-BA
DEANDRE ARNOLD, )
    Defendant. )

**ORDER**

On September 24, 2019, Plaintiff filed the instant complaint seeking to register a Florida child support order (the "Child Support Order") and have Defendant held in contempt of said order. Plaintiff's complaint properly informed Defendant that he may request a hearing to contest the validity or enforcement of the Child Support Order within twenty (20) days of receiving notice and failure to timely request a hearing would preclude Defendant from later contesting the same.

On October 10, 2019, Defendant was personally served with a copy of the complaint and summons. On October 15, 2019, Defendant filed a special appearance and on October 16, 2019, Defendant filed an answer. Neither of these filings requested a hearing as to the legitimacy of the Child Support Order.

On November 18, 2019, more than twenty (20) days after the Plaintiff served the pleading on Defendant, the Court entered an order recognizing the Child Support Order.[1] Thereafter, November 20, 2019, Defendant filed a motion to vacate and quash the Child Support Order and requested a hearing for the first time.

---

[1] On December 11, 2019, the Court corrected a scrivener's error which omitted the current support figure for the November 18, 2019, order.

On January 13, 2019, the parties appeared before the Court on Defendant's motion to vacate and quash the Child Support Order. Plaintiff was present and represented by Assistant District Attorney Barbara B. Briley. Defendant was present and appeared *pro se*.

Having considered the evidence presented, the argument of the parties, and the record as a whole, the Court finds that Defendant failed to timely request a hearing to contest the validity or enforcement of the Child Support Order and as such it is confirmed by operation of law. O.C.G.A. § 19-11-165(b). Accordingly, it is hereby ORDERED that Defendant's motion to vacate and quash the Child Support Order is **DENIED.**

SO ORDERED this ____ day of March, 2020.

_____
Brian J. Amero, Chief Judge
Superior Court of Henry County
Flint Judicial Circuit