FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 0 6 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORIGA
# ATLANTA DIVISION

| | |
|---|---|
| Deandre Arnold,<br>                    Plaintiff,<br><br>v.<br><br><br>Brian Kemp et al.,<br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL ACTION NO.**
**1:23-2219-JPB**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BRIAN KEMP AND CHRISTOPHER CARR'S MOTION TO DISMISS

Pursuant to Local Rule 7.1(B), N.D. Ga., Plaintiff, Deandre Arnold ("Arnold") submits this Response in opposition to Defendant Brian Kemp and Defendant Christopher Carr collectively ("Defendants") Motion to Dismiss. The Defendant's Motion to Dismiss evince constructive legal gamesmanship to disparage and abscond from the gravity of the claims declared in this action of criminal activity by Georgia state officials that Arnold claims has occurred and continues to occur in the State of Georgia under the acquiescence of Defendants. Defendants Motion to Dismiss narrates a distorted version of the facts to fit their legal arguments, even against counts not alleged against these Defendants. Their defenses weigh short on the scale against the bulk of the fundamental claims alleged herein that Plaintiff argues more fully below are contrary to the U.S. Constitution, the Georgia constitution, clearly established law and an understanding of the law and the history of the times in cases cited. Because Plaintiff alleges facts that state a claim of relief plausible on its face, the Defendants Motion to Dismiss should be denied and the Plaintiff should be allowed to proceed to the next stage of this case.

**FACTUAL BACKGROUND**

Defendant's alleged in their Motion that it "appears" that Plaintiff alleges Defendants failed to protect him when he sent sworn formal complaints to "Defendants informing them that judge Brian Amero committed a crime because he was going to "falsely imprison" Plaintiff for failure to provide child support." [Doc. 30-1. Pg. 1-2] Defendants are very aware that this is not what the Plaintiff has alleged. Plaintiff has in fact alleged that Defendants have knowingly and persistently ignored sworn formal complaints ("Complaints") showing ***probable cause*** of a conspiracy to commit false imprisonment involving the falsification of child support records by judge Brian Amero including the secreting of the child support contempt hearing via open records request filed to imprison him which had all the inferences of a secret plot that affected Plaintiff's safety & security – his life. [Id. Par. 6, 90, 68–119] Arnold's claims that despite the Defendants actual and constructive knowledge of the sworn formal complaints showing actual probable cause of a *knowing* (1) conspiracy to commit false imprisonments, (2) state created danger and (3) each of the schemes alleged inferences, that Defendants had the legal expertise to discern, that they knowingly and persistently, with malice or reckless disregard for the rights of the Plaintiff, refused to arrest, investigate, criminally refer, indict, procure the same or even acknowledge Arnold's grievances although within their power to do so. [Id. Par. 51-55, 59, 100] Arnold thus asserted five (5) counts against these Defendants. Excluding (1) declaratory relief, **(2) Count 2** is for Breach of a social compact or contract. [Id. Par. 448, 456] **(3) Count 3** is a substantive due process claim based on Defendants failure to provide protection to Plaintiff under *Deshaney v. Winnebago County Dep't. of Social Services, 489 U.S. 189 (1989)*. [Id. Par. 465-484] **(4) Count 4** is a First and Fourteenth Amendment claim for failure to render Plaintiff a proper redress. [Id. Par. 485-497] **(5) Count 5** is an intentional infliction of emotional distress (IIED) claim." [Id. Par. 514] Contrary to Defendants assertion, there are no conspiracy claims

alleged against these Defendants. Because the Defendants defenses weighed against Plaintiff's claims does not tip the scale in their favor, Defendants Motion to Dismiss should be denied.

## I.   ARGUMENT AND CITATION OF AUTHORITY

### A.   STANDARD FOR MOTION TO DISMISS

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is ***plausible*** on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. Further, "The Court favors the plaintiff with all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)*. Additionally, "Pro Se pleadings are liberally construed and held to less stringent standards." *Jones v. Fla Parole Comm'n, 727 F.3d 1105, 1107 (11th Cir. 2015)*. The "Defendants" defenses fail as a matter of law as Plaintiff in fact states a claim upon which relief can be granted **plausible** on its face as more fully alleged below.

### B.   THE ELEVENTH AMENDMENT DOES NOT BAR ANY OF THE PLAINITFF'S CLAIMS AGAINST THESE DEFENDANTS IN AN OFFICIAL CAPACITY

As an initial matter, ""[W]e the People" formed the governments of the several States. Under our constitutional system... a State is not the sovereign of its people. Rather, its people are sovereign." *Employees v. Missouri Public Health Dept., 411 US 279 (1973)* The Eleventh Amendment Immunity Doctrine purportedly barring a citizen from suing its own state in name gained its original footing in the 1890 Supreme Court Case of *Hans*. Almost a century prior in the case of *Chilsolm v Georgia* it was held that "[A] state was liable to be sued by a citizen of another state... and [it] created such a shock of surprise throughout the country that at the first meeting of Congress... the Eleventh Amendment to the Constitution... was in due course

adopted by the legislatures of the states." *Hans v. Louisiana, 134 US 1 – Supreme Court 1890*.

Although Congress did not at such time pass any law stating that a state could not be sued by

citizens of its own state, the case of *Hans* purportedly created such a precedent in stating;

> "**Can we suppose** that, when the Eleventh Amendment was adopted, it was understood to
> be left open for citizens of a State to sue their own state in the federal courts, **whilst the
> idea of suits by citizens of other states**... was indignantly repelled?" Suppose that
> Congress, when proposing the Eleventh Amendment, had appended to it a proviso that
> nothing therein contained should prevent a State from being sued by its own citizens...
> can we imagine that it would have been adopted by the States? The supposition that it
> would is almost an absurdity on its face. *Id*.

Plaintiff argues that Congresses failure to include a proviso in the Eleventh Amendment

prohibiting a State from being sued by its own citizens not only favor the arguments of the

Plaintiff, but also, (1) *Hans* clarification in such case to avoid "misapprehension" of their ruling

and (2) the severing of the *Swift* Doctrine supports his argument – that Eleventh Amendment

Immunity does not apply. Congress knew at the time of its adoption of the Eleventh Amendment

that Art. III Sec. II of the United States Constitution authorized a State to be sued by its own

citizens, however, Congress did not include a proviso prohibiting a construing of suits against a

state by its own citizens because Congresses sole concern was with States being sued by citizens

of different states as a result of *Chisolm's* holding. Consequently, Congresses declining to do so

was a continued adoption of the plain language of Art. III Sec. II that *Hans* presupposed was an

absurdity. Moreover, *Hans* cite to Hamilton and others in the Federalist papers were only

applicable to their "protests" against states being sued by citizens of other states or foreign states.

(1)   THE CASE OF *ERIE* CALLS FOR AN OVERRULING OF *HANS* DUE TO ITS
INCORRECT INTERPRETATION OF ARTICLE III JURISPRUDENCE.

Further, the Supreme Court case of *Erie* brings into question the holding of *Hans* which

interpretated the Eleventh Amendment without a distinction between diversity and federal

question owing to the 1842 decision of *Swift v Tyson*, which federal courts interpreted at such

time, required the application of federal law to both diversity and federal question, overruled by *Erie*.[1] At the time of *Hans* ruling, the *Swift* Doctrine was in full effect & the *Hans* court stated;

> "That a State cannot be sued by a citizen of another State… on the mere ground that the case is one arising under the Constitution or laws of the United States, is clearly established by the decisions of this court in several recent cases. Louisiana v. Jumel, 107 U.S. 711; Hagood v. Southern, 117 U.S. 52; In re Ayers, 123 U.S. 443. Those were cases under the Constitution of the United States, upon laws complained of as impairing the obligations of contracts."… [I]nasmuch as that [11th] amendment only prohibits suits against a State which are brought by the citizens of another state… if this is the necessary consequence of the language and the law, the result is no less startling and unexpected than was the original decision of this court, that under the language of the Constitution and of the judiciary act of 1789, a state was liable to be sued by a citizen of another State." *Hans v Louisiana, 134 US 1 – Supreme Court 1890*

*Hans* itself and its cited prior precedents failed to distinguish diversity and federal question when reviewing the Eleventh Amendment consistent with the courts consistent holdings following *Swift* that time in history. *Erie* overruled *Swift* in 1928 for its failure to distinguish diversity and federal question. Thus, when the *Hans* court reviewed the Eleventh Amendment, it did so consistent with *Swift's* holding in interpreting the application of federal law without distinguishing diversity & federal question jurisdiction which supported their ruling. Thus, Plaintiff argues that *Erie's* decision supports a **plausible** claim for relief that *Hans* failure to distinguish between diversity and federal question and Congresses continued adoption of Art. III Sec. II. supports that the Eleventh Amendment only prohibits those suits brought by citizens of different states under federal question and there are in fact, many legal scholars who supports in Plaintiff's assertion.[2] Because Plaintiff is a state citizen of GA, and these claims are plausible, Defendants Motion to Dismiss on grounds of Eleventh Amendment Immunity should be denied.

---

[1] *See Erie R. Co. v. Tompkins, 304 US 46 – Supreme Court 1928*
[2] See William A, Fletcher, Exchange on the Eleventh Amendment, 57 U Chi L. Rev131 (1990), and The Diversity Explanation of the Eleventh Amendment: A Reply to Critics, 56 U Chi L. Rev 1261 (1989); Vicki Jackson, The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity, 98 Yale L J 1, 4 (1988) Also See Justice Brennan Dissenting in *Employees v. Missouri Public Health Dept., 411 US 279 (1973)*

## C. PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT/COMPACT - LEGAL OBLIGATION AND LEGAL DUTY (COUNT 2)

### (1) *HANS* AUTHORIZES SUITS BY CITIZENS FOR BREACH OF COMPACT.

Notwithstanding, the *Hans* court also left open the possibility that states too may be sued

for breach compact and that no state can impair the obligations of contract. The court stated;

> "To avoid misapprehension it may be proper to add that, although the obligations of a State rest for their performance upon its honor and good faith, and cannot be made the subjects of judicial cognizance **unless the State consents** to be sued, or comes itself into court; **yet where** property or **rights are enjoyed under a** grant or **contract made by a State**, they cannot wantonly be invaded. Whilst the State cannot be compelled by suit to perform its contracts, **any attempt on its part to violate** property or **rights acquired under its contracts, may be judicially resisted**; and any law impairing the obligations of contracts under which such property or rights are held is void and powerless to affect their enjoyment." *Hans v Louisiana, 134 US 1 – Supreme Court 1890*

That the framers formed our constitutional compact for the "benefit of the People" cannot

be disputed. Plaintiff alleged that he is the beneficiary of the Georgia and United States

Constitution (compacts). [Doc. 1. Par. 40-41]. Plaintiff thus argues that his rights are enjoyed

under compacts made by this nations framers for his benefit which Defendants took an oath to

support and defend and because he alleges that Defendants breached the compacts in which he is

a beneficiary, the Defendants in both capacities may be judicially resisted and sued by Plaintiff

and because no law shall impair the obligations of contracts all claims of immunity is powerless.

> (i)   Plaintiff has an enforceable right as third party beneficiary to the U.S. and GA Constitutions ("Compacts") to sue Defendants for breach of contract.

Plaintiff indeed has an enforceable contractual right to sue Defendants **in both capacities**

for breach of compact, duties and obligations consistent with *Hans*. Plaintiff alleged Defendants

herein have a legal duty and obligation to provide him protection of the laws and to protect him

from state created danger arising from the unlawful acts of Georgia state actors and that they had

the **power to do so**. [Doc. 1. Par. 43, 46, 437] Plaintiff alleged Defendants were bound by this

duty and obligation via *contract* as a result of their oath to support and defend the United States Constitution. [Id. Par. 44] The Plaintiff alleged an enforceable contractual right to sue these Defendants as **third party beneficiary** to the "United States Constitution and Georgia constitution" - the social compact(s) or contract(s)... for breach of those legal obligations and duties owed to Plaintiff **in the social compact or contract.** [Id. 68-133, Par. 450-456] The Defendants purport that "Plaintiff failed to show that Governor Kemp and Attorney General Carr entered into a written contract with him, as required by O.C.G.A. § 50-21-1." [Doc. 30-1. pg. 4] Plaintiff assumes that Defendants allege Plaintiff has no right as third party beneficiary to sue Defendants for breach of compact. However, "[T]he beneficiary of a contract made between other parties **for his benefit** may maintain an action against the promisor on the contract." *Northern v. Tobin, 585 SE 2d 681 GA Court of Appeals (2003*).) (A third party has standing to enforce that type of contract "it if clearly appears from the contract that it was intended for his benefit.) *Id*." Thus, the Plaintiff has an enforceable contractual right to sue Defendants in their individual and official capacities for breach of compact consistent with *Hans* holding.

    (ii)    <u>Defendants have a contract with the social contract or compacts (Georgia and United States Constitution) in which Plaintiff is a beneficiary.</u>

       Defendants allege in their Motion to Dismiss that "There is no such thing as a "social contract" between state officials and Georgia citizens." [Doc 30-1. Pg. 4] Plaintiff assumes that Defendants allege that there is no contract between Georgia state officials and Georgia citizens. Plaintiff here argues that the Defendants oath of offices was a promise owed to the beneficiaries of the compact(s) in the law of contracts.[3] "[A] third-party beneficiary contract is **"one in which the promisor engages to the promisee to render some performance to a third person."** *Northern v. Tobin, 585 SE 2d 681 GA Court of Appeals (2003)* Plaintiff states that this was a

---

[3] Restatement of Contracts (Second): A promise is a contract.

contract and an, "[E]xpression of the individuals allegiance **to the principles embodied in that**

**document."** *In re Lindsey, 158 F. 3d 1263 – Court of Appeals, District of Columbia (1998)*

Plaintiff requests the court to take judicial notice of Article VI of the Constitution. Plaintiff

argues that Defendants oath was in fact a contract to abide by the legal duties and obligations

*principled* in the Constitution which included protecting Plaintiff. [Id. Par. 46-47] In other words

Defendants oath was a contract with our constitutional compact for the benefit of We the people.

    (2) Eleventh Amendment Immunity Does Not Bar *Individual Capacity* Claims.

    "So long as the plaintiff does not "see[k] to impose a liabilty which must be paid from

public funds in the state treasury." *Wilson v Dunn, Dist. Court, ND Alabama 2022*. Plaintiff

seeks compensatory and punitive damages separate from the state treasury in the Defendants

*personal capacities*. Defendant's Motion to dismiss personal capacity claims meets an

exhaustive list of court rejection and thus should be denied. *See Hafer v Melo, 502 U.S. 21, 30-*

*31, 112 S (1991); See Hobbs v Roberts, 999 F.2d 1526 – Court of Appeals, 11ᵗʰ Circuit (1993)*.

### D. PLAINTIFF'S STATES A FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST THESE DEFENDANTS UNDER DESHANEY (COUNT 3)

    Arnold brought two (2) substantive due process claims against these Defendants for their

having a duty and obligation principled in the constitution **(1)** to protect him from *probable*

*cause* of state created danger arising from a conspiracy to commit false imprisonment **(2)** and

creating a new danger in their failure to protect Plaintiff from such acts. [Id. Par. 468] The

Supreme Court case of *Deshaney & Marbury* shall guide the way.

#### (1) DEFENDANTS HAVE A SPECIAL RELATIONSHIP AND/OR DUTY TO PROTECT PLAINTIFF FROM *STATE* CREATED DANGER CREATED BY OTHERS.

    Courts have stated "[W]hile an actor is always bound to prevent his acts from creating an

unreasonable risk to others, he is under the affirmative *duty* to act **to prevent another from**

**sustaining harm** only when certain *socially recognized relations exist* which constitute the *basis*

for such *legal duty*." *Bradshaw v. Daniel, 854 SW 2d 865 – Tenn: Supreme Court (1993)*[4] The

Plaintiff alleged and here argues that the basis for Defendants *duty* to protect him was created by

their oath to a **socially recognized contract** which is **principled** in protecting him from acts of

*state* created danger in his *grievances*.[5] [Id. Par. 44-47, 118] These duties and obligations are the

"Common-law duties owed by government actors… constitutiona lized by the Fourteenth

Amendment." *Deshaney v. Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

"[I]t's purpose was to **protect the people from the State**, not to ensure that the State protected

them from each other." *Id.*[6] Contrary to Defendants Motion, Plaintiff's does not allege a failure

to protect against private violence from third parties under *Deshaney*, rather, their failure to

protect him against *state* created danger brought by *state* officials although within their power to

do so when he asserted **grievances** to Defendants alerting them of such danger. [Id. Par. 51-54,

492] Plaintiff alleged that based on the failures and belief he would not secure protection from

local law enforcement and prosecutors in or around August of 2022, that he sent sworn

complaints to Defendants who essentially waved the hand in refusing to provide protection or

even act with "due care" and acknowledge his complaints. [Id. Par. 68, 73, 123-124, 452, 465-

483][7] [Id. Par. 68-119] "[I]naction can be every bit as abusive of power as action, ... when a State

undertakes a vital duty and then ignores it." *DeShaney v. Winnebago County Dept. of Social*

---

[4] "[T]o ensure the preservation of this *social contract* between our government and its citizens ... we developed a group of rights defined by a constitution, and a judicial system charged with being the vigorous... guardian of those rights." *Christensen v. State, 468 SE 2d 188 266 Ga. 474 -Ga Supreme Court (1996)*
[5] "[F]or more than two hundred years each officer of the Executive Branch has been bound by oath or affirmation… This is… a binding of the person… an expression of the individuals allegiance **to the principles embodied in that document.**" *In re Lindsey, 158 F. 3d 1263 – Court of Appeals, District of Columbia (1998)*
[6] "[T]he language of *Deshaney* does indeed "leave room" for state liability where the **state creates a danger or render an individual more vulnerable to it.**" *Wyke v. Polk County School Bd., 129 F. 3d 560 – 11th circuit (1997)*
[7] Plaintiff alleged this breach of the compact annuls him of any obedience to GA's laws until such breach is cured. [Doc. 1. PG. 2] [See *Georgia Constitution 1861, Article I Section III*] **"Protection for Obedience"** Doctrine.

*Services 489 U.S. 189 (1989)* Thus, Plaintiff states a plausible claim in that Defendants special

relationship and/or duty to protect Plaintiff even if they did not create the danger were created by

their oaths to support and defend the principles embodied in our constitutional compact.

(2) PROBABLE CAUSE OF STATE CREATED DANGER UNDER *DESHANEY*.

Defendants misleads the court in stating that there is "nothing conscience-shocking about

[Defendants] alleged refusal to arrest or prosecute a judge for *merely* enforcing a child support

order against the Plaintiff." [Doc. 30-1. Pg. 5] Plaintiff has in fact alleged that sworn formal

complaints under the constructive or actual knowledge of Defendants *showing* **probable cause**

**of a *knowing* conspiracy to commit false imprisonment** by a Georgia Judge and agents of the

Department of Human Services have been knowingly and persistently ignored by Defendants

**although within their power to act** in the manner that Plaintiff alleges in his grievances –

arrest, investigate, indict, charge or criminally refer, or procure the same. [Id. Par. 68-133].

(i)     State Created Danger & More Vulnerable To Danger Under *Deshaney* arising from
        **probable cause** allegations of a *knowing* conspiracy to commit false imprisonment.

"[T]he language of *Deshaney* does indeed "leave room" for state liability where the **state**

**creates a danger or render an individual more vulnerable to it.**" *Wyke v. Polk County School*

*Bd., 129 F. 3d 560 – 11th circuit (1997)* Plaintiff alleged the Defendants had the legal expertise

viewing the 2023 sworn formal complaints to know that Plaintiff was in danger or more

vulnerable to danger for **two reasons**, the first being because the complaint stated *probable*

*cause* of a plot to *knowingly* falsely imprison the Plaintiff by state officials and any arrest to

place any person into prison is dangerous because, "[P]risons ... [are] necessarily dangerous

places." *Farmer v. Brennan.511 US 825-Supreme Court (1994)* [Doc. 1 Par. 106] The Second

reason being that Plaintiffs safety and security was further at risk as a result of any false

imprisonment because the sworn facts alleged "[The conspirators] knew that the enforcement

support order was unlawful" and facts support that state officials conspired to imprison Plaintiff

in despite which supported his alleged inferences that his life was at risk if he was imprisoned

because "the liablity for the unlawful acts to falsely imprison Plaintiff would not end with his

false imprisonment." [Id. Par. 107] The probable cause allegations within Plaintiff's complaint –

which Defendants continue to avoid – clearly show **(1)** *probable cause* of *state* created danger in

a *knowing* conspiracy to commit false imprisonment and **(2)** a new *state* created danger in

Defendants failure to protect under *Deshaney*. Liberally construed, Plaintiff alleged facts that

support that the government itself restricts Plaintiff's "free[dom] from… unjustified intrusions

on personal security" and "[T]he Due Process Clauses generally confer no affirmative right to

governmental aid… [unless] the government itself… deprive the individual." *DeShaney v.*

*Winnebago County Dept. of Social Services 489 U.S. 189 (1989)*

    (ii)    <u>Probable cause that the 2019 Registration and Enforcement Support order(s) are void.</u>

        As an initial matter, Plaintiff alleged that Defendants had the legal expertise from the

sworn complaints to know that the **2019 registration & enforcement order** hereinafter ("2019

support order) were void because such order was confirmed in a hearing without Plaintiff's

*required* appearance on 11/18/2019, although he alleged that he requested *specially* in said

registration and contempt action within 20 days, a time, place & date "to be heard". [Doc. 1. Par.

90-92, 105, PG. 184] Multiple courts have held that "[T]he non-registering party cannot contest

the validity or enforcement of a registered order unless he first "request a hearing within 20 days

after notice of registration." *Tepper v. Hoch, 536 SE 2d 654 – NC: Court of Appeals (2000*)

Because the orders were confirmed in the face of Arnold's request for a hearing, *probable cause*

was first shown that the 2019 support order was void, unlawful & without effect and Plaintiff

alleged Defendants had the legal expertise and knowledge to know this much. [Id. Par. 105]

(iii)    Probable cause[8] that state officials *knew* the 2019 support order(s) were void.

Plaintiff alleged nearly two years later, *probable cause* that Henry County Superior court judge Brian Amero ("Amero") and Barbara Briley, Assistant District Attorney ("ADA") for the ("Department") of Human Services conspired on or around 12/1/2021, to knowingly falsely imprison him under an unenforceable out-of-state registered support & enforcement order ("2019 [support] order") [Exhibit Y] entered on 11/18/2019, they **knew** was unlawful. [Doc. 1 Par. 90]

In support of these claims, Plaintiff alleged that on 10/7/2021, GA judge Brian Amero falsified a Child Support *modification* Addendum in his modification of *child custody* action in which he and his child's mother were "parties", **without the required petition to modify *child support*** on the record *and* falsely stated therein said addendum that "the parties" agree that no IDO was immediately necessary." [Doc. 1. Par. 9, 94-95, PG. 185] Under the "[U]IFSA… a state has continuing, exclusive jurisdiction as long as… each party **consents for another state to modify the support order.**" *Gentzel v. Williams, 965 P. 2d 855 – Kan: Court of Appeals (1998)*. Plaintiff argues that on belief Amero falsely "modified" the support order **to later *enforce*** the out-of-state support order and because said state officials knew personal jurisdiction was an issue in the 2019 registration and enforcement action, falsified the addendum because "[P]ersonal jurisdiction, [or other challenges] which concerns the court's authority over the parties may be waived." *Chalmers v. Burrough, 472 P. 3d 586 (2020)* Liberally construed, *probable cause* supports Plaintiff arguments here because facts were alleged that the falsification of this Addendum was in furtherance of a plot to falsely imprison Plaintiff, "***under* the 2019 support order**" – to subject him to the void 2019 support order(s) *nunc pro tunc*. [Id. Par. 90, PG. 160]

---

[8] Probable cause is, "[W]hether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [state actors] had committed an offense." *Spinelli v. United States, 393 US 410-Supreme Court (1969)*

Plaintiff *alleged* that GA judge Brian Amero and others had <u>no reason to know</u> about [Plaintiff's] **knowledge of the Addendum's falsity** – and falsified the order **to correct a legal defect**. [Id. Par. 185, 192, PG.160.] Plaintiff further alleged that "agreements" could be inferred between Amero and the ADA by the ADA's request to enter an income deduction order ("IDO") less than two months after Amero fabricated the Support Addendum which also falsely stated therein that "the parties agree that an [IDO] was not immediately necessary"." [Id. Par. 90, PG. 193-194] Plaintiff alleged the ADA omitted arrearages in the 2021 contempt action confirmed in the 2019 support order. [Id. Par. 90, PG. 193-194] Plaintiff alleged the IDO, and the omitted arrearages were both previously ordered in the 2019 Order of Enforcement attached as Exhibit Y. [Id. Par. 103] Plaintiff further alleged that the ADA and Amero did such acts to give the appearance that the 2021 contempt action was distinct from enforcement action ordered in the 2019 support order. [Id. Par. 90, 103, PG 212] Thus, probable cause was shown that state officials *knew* of the invalidity of the 2019 support order by their affirmative acts to separate the 2021 contempt enforcement requests from the enforcement action ordered in the 2019 support order and correct a legal defect by falsifying a support Addendum to imprison Plaintiff *under* the 2019 order. [Id. Par. 90, 93, Exhibit Y, PG. 419-424] Plaintiff allegations that state officials were conspiring to *knowingly* falsely imprison him, have merit. [Id. Par. 70, 89, PG. 186, 195] Liberally construed, Plaintiff's facts support probable cause of a *knowing **conspiracy*** to commit false imprisonment "[B]ecause conspiracies are secretive by nature, the jury must often rely on inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Geovanni, Court of Appeals, 11th Circuit No. 19-11044 (2022*)

    (iv)   <u>Probable cause that the conspiring state officials would imprison Plaintiff regardless of his legal excuses within the Department's contempt hearing (State created danger).</u>

The facts support that Plaintiff's probable cause allegations do not involve a mere payment of support to avoid incarceration altogether (affecting his dangers), rather than, threats of incarceration for non-payment to Respondents **regardless of his excuses** and ***under*** an unlawful support order for enforcement confirmed in a hearing that constitutionally deprived Arnold of the time, place and date of said hearing. These actions are far from the "control" factor in *Herung.*[9] Liberally construed, the facts show probable cause "[t]o exact something unlawfully by threats or putting in fear," *US v. Jackson, 180 F.3d 55 – Court of Appeals 2nd Circuit (1999*) and to "[c]oerc[e] the defendant to do what a court had previously ordered him to do" *Turners v. Rogers, 131 S.Ct. 2507 564 US 431 – Supreme Court (2011*), "[i]n such a way as to coerce **unlawful** payments." *Evans v. United States, 504 US 255 No. 90-6105 – Supreme Court (1992*)

Plaintiff alleged the Defendants had the legal expertise, experience and knowledge from the sworn facts in the complaint received by them in 2022 to further support the sworn facts alleged in the 2023 sworn complaints of a sufficient belief and reasonable inferences that the conspirators would arrest the Plaintiff **regardless of any legal excuses.** [Doc. 1 Par. 98] This is because Plaintiff alleged that facts in the 2022 complaint shows that when the Department's ADA or others got wind of the Plaintiffs request for an affidavit tendered in his custody proceedings in the appellate court **which proved Plaintiff maintained the majority of custody of his child during March 2020 up until July 2021**, the ADA immediately filed a Rule Nisi to incarcerate the Plaintiff. [Id. Par. 102, PG. 162-164] Plaintiff alleged that on "May 11th, 2022 –

---

[9] "[T]he possibility of arrest if Petitioner fails to pay child support in the future does not satisfy the "in custody" requirement…," *Heurung v. Kelly, Civ. No. 17-3340 (PSJ/BRT), 2017 WL 6611573, at *2 (D. Minn. Dec. 1, 2017)* because in the case of *Heurung*, that petitioner needed only pay the support he owed to secure his liberty even though he challenged the payment method. Arnold's case is inapposite to *Heurung* as he is not challenging any specified payment in which he faces danger, rather, alleging Defendants had knowledge of *probable cause* of a conspiracy to commit false imprisonment under a 2019 Order entered without his required appearance and the falsification of child support records to correct a legal defect to imprison him under a void 2019 Support order.

two days before he requested to supplement the record for exhibits tendered and admitted in his

custody modification action in the Appellate court – the Department's ADA would only file a

Rule Nisi seeking his incarceration for non-payment of Child Support under the December 1st,

2021 contempt action." [Id. Par. 100, 474, PG. 162] Plaintiff alleged that this tendered affidavit

could have been used by the Plaintiff to offset a substantial amount of alleged arrearages or for a

legal *excuse* in a failure to pay hearing.[10] Liberally construed in Plaintiff's favor, the facts

supports his alleged inferences that state officials would imprison him "regardless of his legal

*excuses*" because the conduct evince a scheme to prevent his "legal *excuses*" by pursuing him in

a contempt action less than 48 hours after his requesting an affidavit that could have been

utilized by Plaintiff for such a legal excuse in order that the conspirators bring about a

"predetermined outcome" as Plaintiff alleged in his complaint. [Id. Par. 100-102, PG. 161-162]

    (a) Open records request "for any and all action/records taken on Plaintiff's Child Support case" were ignored at a time the Departments contempt proceeding was pending against the Plaintiff.

      Continuing, the Plaintiff further alleged that the Department ignored his Open records

request at a time Plaintiffs contempt proceeding was pending which he alleged created a

reasonable belief or inference with any prompt investigation by Defendants (which they failed to

do) that the Department's failure to respond to such records request was an attempt to **secret the**

**contempt hearing filed to imprison him from Plaintiff.** [Doc. 1. Par. 96-97] Plaintiff alleged

that on the dates of 3/21/2022, 3/29/2022, 4/28/2022, 5/5/2022, 5/9/2022, 5/13/2022 and

6/7/2022 Jacob Davis of the "Department" refused to respond to records request "for any and all

action taken on [Plaintiff's] Child Support case" at a time the Department's contempt hearing

---

[10] Plaintiff alleged the requested affidavit in the Appellate court "proved he maintained the majority of his child's custody during March 2020 up until July 2021" and a parent maintaining the majority of the custody of their child[ren] could use such as a **legal excuse** in any failure to pay hearing. [Doc. 1. Par. 100-102, PG. 164]

was pending. [Id. Par. 96-97, 474, PG. 160-165] These facts support inferences that the

Department refused to respond to records request not only to secret the contempt hearing but to

conceal the entire filing of the contempt action itself.[11] Liberally construing the facts in

Plaintiff's favor, facts supports Plaintiff's alleged inferences that state officials would imprison

him "regardless of his legal excuses" because the conduct evince a scheme of a "secreting of the

contempt hearing" as alleged in his complaint by the Departments failure to respond to records

requests at a time the Department's contempt proceeding was pending against the Plaintiff in

order to bring about a pre-determined outcome as Plaintiff alleged. [Id. Par. 96-97, 474, PG. 147]

    (b) Probable cause of threats to Plaintiff safety and security.

    Liberally construing Plaintiff's allegations as a whole, Plaintiff's facts supports his claims

that such conspiracy threatened his safety and security because state officials feared liability.

[Doc. 1 Par. 90, 98-99, 107, 113] Plaintiff alleged that ADA (who filed 2019 the registration and

contempt action in 2019) and GA judge Amero (who presided over the action) would be the

exact same state actors in the 2021 contempt action; Barbara Briley would file the contempt

action and GA judge Amero would preside. [Doc. 1. Par. 90, PG. 186, 193] Plaintiff further

alleged that both state officials "have an adverse interest in ***the successful outcome*** of [his]

challenge to the validity of the 2019 support order" and "that the imprisonment of Plaintiff under

the 2019 [support] order did not diminish the liabilty of these state actors – "because **the liabilty**

**for the unlawful acts to falsely imprison the Plaintiff would not end with Plaintiffs arrest.**"

[Id. Par 90, 107] It is a fact that if Plaintiff is falsely imprisoned the *under* the 2019 order the

liability from his false imprisonment would not end by operation of law. Plaintiff alleged facts

---

[11] Plaintiff further alleged in this complaint that judge Belinda Edwards, named as a Defendant in this case, "has unlawfully delayed the due course of the Plaintiffs Open Records suit by failing to make a ruling on the minimum of motions in his case and continues as of the date of this filing." [Doc. 1. Par. 343] This is not news to the offices of Defendant Chris Carr who is currently representing the Department in said open records suit.

supported his alleged inferences that Amero and Briley (state officials) conspired to falsely

imprison Plaintiff knowing that his life would be in danger when they did so or that he would be

**more vulnerable to danger** to unlawful imprisonment. [Id. Par. 90] Liberally construed, the

Plaintiff is in fact **more vulnerable to danger as a result of the falsification of the child**

**support Addendum**. One of Plaintiff's probable cause claims was the fact that the 2019 Support

order was entered without the *required* appearance of Plaintiff, also requested by Plaintiff in his

special appearance. [Id. Par. 90] Plaintiff reiterates his argument that Amero had no reason to

know that Plaintiff knew of the falsity of the Addendum and falsified the order to "correct a legal

defect" to imprison Plaintiff under the 2019 Support order.[12]  Plaintiff indeed alleged allegations

that Amero falsified the Addendum to "correct a legal defect" to "knowingly falsely imprison

Plaintiff *under* the [2019 support order]" [Id. Par. 90, PG. 160] – & that "any arrest,

indictment... based on the showing of probable cause that a state actor falsified the Child

Support Addendum could be utilized by the Plaintiff in any proceeding to show that the Child

Support Addendum is unlawful rendering **him less vulnerable to danger**." [Id. Par. 120]

Thus, the dangers the Plaintiff faced was not only in the incarceration itself, but state

officials attempt to imprison him knowing that their liability would not end by operation of law.

The Plaintiff could not challenge an unlawful order if an assassination attempt was made on his

life. This is precisely why the Plaintiff alleged, that **based on facts**, not perturbation, the

unlawful plot to imprison Plaintiff threatened his safety and security (state created danger) – his

life. [Id. Par. 68, 90] The secreting of the Department's contempt hearing via open records

---

[12] Plaintiff repeats and realleges all claims in Section D(2)(iii) of this Motion. *Also see* O.C.G.A. § 19-11-170(a)(2): [U]pon *petition* a tribunal of [GA] may *modify* a child support order issued in another state which is registered in [GA] if... the parties... **filed _consents_** to modify. Also see O.C.G.A. § 19-11-169: A tribunal of [GA] **may enforce** a child support order of another state registered for purposes of modification in the same manner as if the order had been issued by a tribunal of Georgia.

requests, the attempts by said state officials to separate the 2019 enforcement order from the

2021 contempt action, the pursuing of Plaintiff for an affidavit which could have been used as a

legal excuse in a failure to pay hearing, supports Plaintiff's inferences of "threats to his safety &

security" as a result of unlawful imprisonment because said state officials "feared liability if they

did not arrest the [Plaintiff]". [Id. Par. 107] Thus, Liberally construing Plaintiff's claims, it only

follows that his allegations that state officials plotted to imprison him because they feared

liability creates the substantial inference that imprisonment threatened his safety and security.

    (c) Defendants Actions shock the conscience.

    Plaintiff alleged that his sworn formal complaints was **not of any matter de minimis** but

matters that "shocked the conscience" as a threat to life was alleged and ignored by Defendants

who a duty and obligation to act in responses to his grievances but refused to do so. [Doc. 1. Par.

472, 492, 512] The allegations above and all reasonable inferences thereof show just what

Plaintiff is alleging – probable cause that state officials not only knowingly plotted to falsely

imprison him but substantial inferences that the plot to imprison him was to assassinate the

Plaintiff in the name of his child in order that said state officials avoid liability. [Id. Par. 6, 68]

Plaintiff alleged Defendants with malice and reckless disregard for his rights, refused to provide

the requested protection from state created danger. [Id. Par. 116-119] As a matter of factual

validity, this entire complaint is littered in allegations of a broad conspiracy to "cover-up" and

"delay" Plaintiff's grievances against GA judge Amero which grievances involved some of the

very criminal acts in the sworn formal complaints that Plaintiff alleges these Defendants are

ignoring. These acts undoubtedly **shock the conscience**. The Defendants had the statutory power

to prevent the state plot and knew from the complaints that local law enforcement would not

intervene. [Id. Par. 51-54, PG. 138, 139] Plaintiff alleged these facts were in the actual and

constructive knowledge of Defendants who engaged in knowing and persistent conduct and behavior that could be considered acquiescence to the crimes of the state officials as Defendants did not even acknowledge his complaints. [Id. Par. 514-515] These actions were foreseen by GA legislators centuries ago who felt the need to state in writing a natural occurrence of societal relations – "protection for obedience" in the Georgia constitution of 1861. Plaintiff argues these actions affect public confidence in the entirety of the administration of justice in Georgia because GA's Top ranking officials have disregarded grievances alleging probable cause of a conspiracy by GA state officials (still employed in their offices) to commit false imprisonment & substantial inferences that suggest that said imprisonment is a pretext for an assassination attempt on a U.S. citizen. As applied to Plaintiff, it cannot be reasonably disputed that Defendants disregard of Plaintiff's grievances – with malice or reckless disregard for his rights – are "[A]cts intended to injure in some way unjustifiable by any government interest… likely rise to the conscience shocking level." *Waldron v. Spicher, 349 F. Supp. 3d 1202 – Dist. Court MD Florida (2018*)

## E. PLAINTIFF STATES A FIRST AND FOURTEENTH AMENDMENT CLAIM AGAINST THESE DEFENDANTS FOR VIOLATING HIS TO A PROPER REMEDY, REDRESS AND RELIEF (COUNT 4)

Plaintiff alleged a First and Fourteenth Amendment violation by Defendants for their violating his right to a proper remedy, redress and relief in his petitioning for redress against *state* created danger. [Id. Par. 485-492] The Plaintiff argues that if Defendant's *officially* are immune under the Eleventh Amendment under *Deshaney* and the Defendants personally have no duty to protect Plaintiff from *state* created danger in his grievances, is he not without remedy and redress contrary to *Marbury*? "[C]ertainly the right to petition extends to all departments of the Government." *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 Supreme Court (1972)* It was held long ago, "[I]t is a general and indisputable rule, that where there is a

legal right, there is also a legal remedy by suit, or action at law, when ever that right is invaded...

I am next to consider such injuries as are cognizable by the courts of the common law... every

right, when withheld, must have a remedy, and every injury **its *proper redress***." *Marbury v.*

*Madison, 5 US 137 – Supreme Court (1803)* "[T]he State's obligations under the Fourteenth

Amendment are not simply generalized ones; rather, the State **owes to each individual** that

process which, in light of the values of a free *society*, can be characterized as *due*." *Boddie v.*

*Connecticut. 401 US. 371 (1971)*[13] Plaintiff argues (1) that he petitioned for a redress of

grievances within Defendants power to redress and (2) that Defendants failed to give him the

**proper** redress in response to Plaintiff's grievances. Plaintiff argues that *Marbury's* call for a

***proper* redress** gives consideration that a right to petition indeed has a right to ***proper* redress**

because "[I]t cannot be presumed that any clause in the constitution is intended to be without

effect." *Marbury v. Madison. 5 US 137-Supreme Court (1803)*

(1) IT IS WITHIN DEFENDANTS POWER TO REDRESS PLAINTIFF'S GREIVANCES.

Plaintiff's grievances to Defendants were in the nature of criminal complaints stating

probable cause of state created danger. [Doc. 1. Par. 90] Plaintiff did not outright reach out to the

Defendants asserting such a grievance, he did so because of local law enforcement's (with

jurisdiction over the crimes) refusals to do so. Plaintiff alleged he mailed his complaints to

Defendants in or around August of 2022 based on the failures and/or reasonable belief that he

would not secure protection from local law enforcement and local prosecutors. [Id. Par. 73]

Plaintiff in fact alleged that on or around February 2022 he sent a criminal complaint to a John

Doe Henry county Sheriff's Office Captain via email; That this complaint was "interrelated to

the general claims alleging probable cause against [GA judge] Brian Amero... of a conspiracy to

---

[13] That "[R]ight to petition government for redress of grievances, as guaranteed by the First and
Fourteenth Amendments. *Franco v. Kelly, 854F.2d. 584 Court of Appeals 2ⁿᵈ Circuit (1988)*

commit false imprisonment and the falsification of support records to accomplish such a goal";

and was told to seek legal counsel and that the matter was civil even after his reiterating that the

matter was in fact criminal. [Id. Par. 78-82] Plaintiff also alleged the Henry County District

Attorney's Office via telephonic communication on or around February of 2022 stated that the

Henry County D.A. could not investigate his claims because of a conflict of interest – because

the Plaintiff had named Henry County officials. [Id. Par. 84-88] Plaintiff having no recourse in

petitioning local law enforcement, petitioned Defendants who were both made aware that local

law enforcement refused to investigate and alleged a conflict of interest as early as 10/27/2022

for Defendant Carr and 8/18/2022 for Defendant Kemp – [Id. PG. 138, 139] – who in fact had

within their power the authority to render Plaintiff a ***proper redress.*** [Id. Par. 51-54]

    (a) <u>Defendants knowingly and persistently failed to render Plaintiff a proper redress.</u>

        To avoid repetition, Plaintiff realleges by reference the claims alleged in Section D. of

this motion. Plaintiff alleged that the Defendants knowingly & persistently, with malice or

reckless disregard for the rights of the Plaintiff did acquiesced, refused to arrest, investigate,

criminally refer, indict or file warrants or procure the same against state officials based on

probable cause as shown in Plaintiff's sworn formal complaints that state officials were

committing or were about to commit unlawful acts of state created danger in their jurisdiction.

[Id. Par. 59] The Plaintiff alleged that the Defendants had not even acknowledged the criminal

complaints. [Id. Par. 120-124] Having a right to petition Defendants for a redress of grievances,

where no clause is meant to be without effect, and no injury without *proper* redress, Defendants

failed to render Plaintiff a proper redress although within their power to do so.

**F. <u>DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY</u>**

"This Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Torres v. Howell, Court of Appeals, 11th Circuit (2022)* It is clearly established that "[F]iling a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right" to petition the government for the redress of grievances." *Meyer v. Board of County Com'rs Harper County Oklahoma 482 F.3d 1232 (2007)* Plaintiff argues that *Deshaney* put beyond debate that a state has a duty to protect its citizens from *state* created danger or affirmative state acts rendering them more vulnerable to it. Plaintiff's thus asserted a grievance for redress of injuries alleging probable cause of a plot to knowingly falsely imprison Plaintiff that threatened his safety and security following local inaction or unwillingness to investigate. In doing so, it has been clearly established since 1803 that every injury have "its **proper** redress." *Marbury v. Madison, 5 US 137 – Supreme Court (1803)* These are no pre-exiting precedents as the cases quoted and its applicability here, has not been overturned. Furthermore, Georgia's constitution of 1861 establishes a "protection for obedience" doctrine consistent with *Deshaney*.[14] Plaintiff argues that this doctrine establishes an affirmative duty of Government to act to protect Plaintiff from unjustified intrusions on personal security by the *state* itself. "[T]he obligation of... obedience which the *individual* owes to the government... or to his sovereign in return for the protection he receives." *Carlisle v United States, 83 US 147 – Supreme Court (1873)* This doctrine establishes that protection from Government is a reciprocating duty for Plaintiff's obedience. Thus, the "protection for obedience" doctrine also establishes that Defendants owes Plaintiff a duty of protection and is still recognized in law today.

## G. PLAINTIFF STATES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

---

[14] Plaintiff alleged that "a Government which knowingly and persistently, withholds from the governed such protection when within its power, releases them from the obligation of obedience. [Doc. 1 Par.

Continuing, Plaintiff alleges these claims could have been redressed and intentional infliction be mitigated, however, that Defendants ignored his grievances knowingly and persistently, with malice and reckless disregard for the rights of the Plaintiff, although within their power to act. [Doc. 1. Par. 57-59] Plaintiff alleged Defendants has not even acknowledged, corresponded, or did any act that would place Plaintiff's mind-frame within the belief that their offices were going to abide by their duties and obligations and provide protection of the laws. [Id. Par. 123] Plaintiff alleged that he has had to suffer severe mental distress and emotional distress and severe mental anxiety in being in a constant state of fear that his state may have sanctioned or all agreed to ignore his showing of probable cause of a plot to falsely imprison him by state officials because of the persistent failures to acknowledge receipt or contact Plaintiff nor investigate, arrest, indict, refer or do any act that showed any concern of his allegations and that has affected the Plaintiff economically, socially and mentally. [Doc. 1. Par. 124] It could be argued to a jury that after Plaintiff submitted complaints to Defendants after local law enforcement refused to act and they too disregarded his grievances alleging probable cause of a conspiracy to commit false imprisonment by GA state officials which housed substantial inferences that said imprisonment was a pretext for an assassination attempt on his life would cause the exact emotional distress that Plaintiff alleged in his complaint. [Id. Par. 120-133][15]

## H. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER COUNT 2 AND COUNT 6 ALLEGED AGAINST THESE DEFENDANTS AND SOVERIGN IMMUNITY DOES NOT APPLY.

Plaintiff argues that the court has supplemental jurisdiction over Plaintiff's Breach of Compact claim (Count 2) and his IIED claim (Count 6) and Sovereign immunity does not apply

---

[15] This is the exact "shock the conscience factor" that courts seek "on a claim of a substantive due-process violation..." *Nix v. Franklin County School Dist., 311 F. 3d 1373 - Court of Appeals, 11th Circuit 2002;*

to any claim. "This Court, in turn, has supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." *Hassan v. city of Atlanta, Dist. Court, ND Georgia 2022 No. 1:21-CV-4269-TWT*.[16] Neither of these circumstances apply to Arnold's case. Arnold's breach of compact claim (Count 1) is more than related, they in fact arise from the constitutional claims alleged against these Defendants in count three (3) and four (4) within the original jurisdiction of this court. Plaintiff alleged Defendants in ignoring the sworn formal complaints alleging acts of state created danger in a plot to knowingly falsely imprison him failed "[T]o perform according to their duties and obligations owed to Plaintiff… and said acts fundamentally breached the contractual obligation and duties they owed to Plaintiff in the social compact or contract." [Id. Par. 456] Without the violation of Arnold's rights, Plaintiff argues here that there would be no breach of compact, thus the court has supplemental jurisdiction over Plaintiff's breach of compact claim. *See, e. g., Dunn v City of Fort Valley, 464 F. Supp. 3d 1347, 1374 (M.D. Ga. 2020)* (exercising supplemental jurisdiction over an Open Records Act claim where the records sought were related to the same events as the plaintiff's constitutional claims). There is also no novel or complex issue of law over Plaintiff's breach of compact claim – Georgia case law clearly provides a right to sue as beneficiary of a compact. His claims of Intentional infliction of Emotional Distress ("IIED") are neither novel or complex or "too attenuated" but the resultant of the constitutional deprivations arising from what Plaintiff alleges is the resultant of the

---

[16] "[T]he district courts may decline to exercise supplemental jurisdiction over a claim… if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559 (1994)*

Defendants inaction in their refusal to render a proper redress to Plaintiff's grievances. [Id. 117-119] This court has supplemental jurisdiction over these claims.

    **(a) There is no compelling reason that does not outweigh this courts exercise of supplemental jurisdiction**.

    Moreover, The case of *Mitchum* although not fully in context, supports the exercise of supplemental jurisdiction because it has been alleged that Georgia's "[S]heriffs, having eyes to see, see not; judges having ears to hear, hear not… [J]ustice, skulk away as if government and justice were crimes and feared detection." *Mitchum v. Foster, 407 US 225 – Supreme Court 1972*. The facts in this case compels this court to exercise supplemental jurisdiction over Plaintiff's claims. Plaintiff has alleged facts supporting his declaration that he, "[H]as repeatedly plead for protection by her state and have been answered by repeated injury marked by every act which defines Tyrannical activity in the public offices of Georgia." [Doc. 1. Pg 1-2] Not only is supplemental jurisdictional applicable, but the facts in their entirety in this complaint compel this court take jurisdiction over these claims because the allegations establish a broad concerted effort to railroad and/or unlawfully delay Plaintiff's relief in the state courts of Georgia.

    **(I) <u>NO CONSPIRACY CLAIMS ALLEGED AGAINST THESE DEFENDANTS</u>**.

    Contrary to Defendant's Motion, there are no conspiracy claims against Defendants.

**CONCLUSION**

    Because the Plaintiff states claims plausible on their face, Defendants should be denied.

Respectfully submitted this 5th day of July 2023.

Mr. Deandre Arnold
**Mailing Address**: 7577 Rutgers Circle
Fairburn, Georgia 30213
**Email**: <u>Dresmailbox89@gmail.com</u>
**Telephone**: 470-514-3097

## CERTIFICATE OF SERVICE

I hereby certify that on July 5th, 2023, I sent the foregoing **PLAINTIFF'S RESPONSE**

**IN OPPOSITION TO DEFENDANT BRIAN KEMP AND CHRISTOPHER CARR'S**

**MOTION TO DISMISS** to counsel of record via regular mail with proper postage thereon

addressed below as follows:

> **ELLEN CUSIMANO**
> Assistant Attorney General
> Georgia Department of Law
> 40 Capitol Square, SW
> Atlanta, Georgia 30334-1300

This day of July 5th 2023.

By: _____

**Mailing**: c/o Attn: Mr. Arnold
7577 Rutgers Cir.
Fairburn Georgia 30213
**Email**: Dresmailbox89@gmail.com
**Telephone**: 470-514-3097



DEANDRE ARNOLD
MAILING: 7577 RUTGER'S CIRCLE
FAIRBURN  GA 30213

**1 LBS**

**1 OF 1**

DWT: 5,5,1

SHIP TO:
ATTN: CLERK OF THE COURT
UNITED STATES CLERK OF THE COURT
22ND FLOOR SUITE 2211
75 TED TURNER DRIVE SOUTHWEST
**ATLANTA  GA  30303**

**GA 303 9-02**

**UPS GROUND**

TRACKING #: 1Z T7M C53 03 0780 4822

BILLING: P/P





UNITED STATES CLERK OF THE COUR
75 TED TURNER DR SW
STE 2211
ATLANTA GA 30303

1:222

P:REDBL2  S: 2MY

CNN – 7550   4822