FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 1 7 2023

KEVIN P. WEIMER, Clerk
By: KW   Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORIGA
## ATLANTA DIVISION

Deandre Arnold,  )
        Plaintiff,  )
          )
          )    **CIVIL ACTION NO**.
v.          )    1:23-2219-JPB
          )
          )
          )
Brian Kemp et al.,  )
        Defendants.  )
          )

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS AMANDA MERCIER, STEPHEN DILLARD, AND TODD MARKLE'S MOTION TO DISMISS

Pursuant to Local Rule 7.1(B), N.D. Ga., Plaintiff, Deandre Arnold ("Arnold") submits this Response in opposition to Defendants Amanda Mercier, Stephen Dillard, & Todd Markle's, collectively ("Defendant Appellate Judges") Motion to Dismiss. As Plaintiff argues more fully below, Defendants claims are contrary to the U.S. Constitution, the Georgia constitution, clearly established law and an understanding of the law and the history of the times in cases cited and because Plaintiff raises a right to relief above the speculative level, he states a plausible claim of relief of which can be granted. Because Plaintiff alleges facts that state a claim of relief plausible on its face, the Defendants Motion to Dismiss should be denied and Plaintiff allowed to proceed to the next stage of this case.

### FACTUAL BACKGROUND

On April 26th, 2022, Mr. Arnold's ("Plaintiff"), appeal was docketed with the Georgia Court of Appeals seeking appellate review of various rulings arising out of a modification of child custody case involving his minor child in the Henry County Superior court, judge Brian

Amero presiding. [Doc. 1 at ¶¶ 130–139] Specifically, Plaintiff sought review of: (1) an order that authorized the relocation of his minor child across state lines, (2) the entry of a Child Support Addendum, and (3) the denial of a disqualification motion of the presiding court judge who rendered such orders. [Doc. 1 ¶ 136] This appeal was assigned to a panel of three of Georgia's Court of Appeal judges, to wit: Defendants Mercier, Dillard, and Markle. [Id. ¶ 142] While docketed Plaintiff made a series of motions to Supplement the appellate record for records tendered and admitted in the lower court trial that showed he maintained the majority of custody of his child for greater than a year less than a month *prior* to the final hearing in the lower court – contending it made a substantial issue of fact on appeal against any substantial change of circumstances. [Id. ¶ 162-165] These motions were denied including each motion to reconsider those denials. [Id.] On January 19th, 2023, Defendant Appellate Judges then issued a one page Rule 36 Order affirming each Order in Plaintiff's modification of child custody case. [Id. ¶ 42, 168] Plaintiff's motions to reconsider that Order including post motions to supplement the record were too denied. [Id. ¶¶ 145–146, 163–164, 175.] Plaintiff then filed a motion to disqualify each judge involved in his Appellate court case contending a "systematic pattern of prejudicial basis" pursuant to Appellate court Rule 8 and Rule 44. [Id. 175-178] This motion was too denied. [Id. ¶ 179-180] Defendant Cooper then thereafter refused to file a motion to reconsider that order - [Id. ¶ 203-207] – before his filing a Petition for Certiorari. [Id. ¶ 207] Plaintiff then filed suit against a series of Defendants including Defendant Appellate Judges contending their rulings were: "prejudicial and bias[ed]"; "entered with malice or reckless disregard for [his] rights"; and "manifestly incompatible with the law." [Id. at ¶ 457] Plaintiff has sued Defendants for (1) breach of contract, (2) violation of his First Amendment and Fourteenth Amendment right to a *redress* of grievances, (3) Conspiracy and (4) and intentional infliction of emotional distress.

## ARGUMENT AND CITATION OF AUTHORITY

### A.   STANDARD FOR MOTION TO DISMISS

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. *See Goodman v. COLUMBUS REGIONAL HEALTH CARE SYSTEM, INC,. Dist. Court, MD Georgia 2022.* "The Court favors the plaintiff with all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).* Additionally, "Pro Se pleadings are liberally construed and held to less stringent standards." *Jones v. Fla Parole Comm'n, 727 F.3d 1105, 1107 (11ᵗʰ Cir. 2015).* The "Defendants" defenses fail as a matter of law as Plaintiff in fact states a claim upon which relief can be granted as more fully alleged below.

### B. ABSOLUTE JUDICIAL IMMUNITY DOES NOT AND CANNOT APPLY UNDER THESE CIRCUMSTANCES

Eric Hoffer, an American Moral and Social philosopher and Presidential Medal of Freedom recipient stated, quote "[A]bsolute power corrupts even when exercised for humane purposes... the taint inherent in absolute power is not its inhumanity but its anti-humanity" end quote. This power has not only been exercised against the Plaintiff in an unconstitutional manner, but these Defendants now seek to avoid all liability for their *malice and reckless* acts under the infamous "Absolute" Judicial immunity Doctrine. Defendants argue that from the earliest dawn of jurisprudence down to the latest reported cases, "**[J]udicial officers have been**

**shielded** from civil actions for acts done in their judicial character." *West End Warehouses, Inc., v. Dunlap, 141 Ga. App. 333, 333 (1977*) [Doc. 41-1] Plaintiff agrees with Defendants that such principle is indeed rooted in the belief that Judicial Immunity is "of the highest importance to the *proper* administration of justice that a judicial officer … be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco, 502 U.S. 10 (1991*) This principle arose as early as 1872 when the United States Supreme Court in *Bradley v Fisher* embraced judicial immunity when that Court noted that it was "[N]ot for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest is that judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Bradley v Fisher, 80 US 335 – Supreme Court (1872*)

(1) <u>JUDICIAL IMMUNITY DOES NOT APPLY TO DEFENDANT JUDGES</u>

Plaintiff argues that this centuries long doctrine has been far from the public interest and neither correct in its application following *Bradley*. If anything, this doctrine has been used by corrupt judges to avoid liability for deliberate acts in violation of their oaths. The public interest is not furthered by shielding a judge deliberately engaged in acts of Tyranny in the willful weaponization of their offices knowingly in breach of their oath's. It is for this reason that under no theory under our social compact can the public's interest be furthered by immunizing judicial officers who purposely act with malice and reckless disregard for the rights of a beneficiary to a social compact that they swore to protect and defend. It cannot be contemplated that the framers of this country, who declared their independence from an Oppressive King, would in turn create such a politic society and immunize every act of judicial officers charged with being guardians of every individual liberty which were meant to be protected under such social compact. These Defendants now seek to shield themselves from civil liability in a position not designed nor

contemplated for their kind of judicial conduct, conduct not only being in breach of the social compact they swore to protect and defend but conduct showing malice and reckless disregard for the rights of the Plaintiff who is a beneficiary to that compact. Judicial immunity does not apply.

    (i)    <u>The Supreme Court case of *Bradley* did not hold that Judicial Immunity bars all acts that are malicious and corrupt in the judicial office.</u>

        Before the Supreme Court in *Bradley v Fisher* ever came to term, the Supreme Court case of *Randall* held that judicial officers can be sued for judicial acts if done maliciously or corruptly. The Supreme Court in *Randall* stated that "[T]his doctrine is as **old as the law**, and its maintenance is essential to the *impartial* administration of justice." <u>*Randall v. Brigham, 74 U.S. 523 (1868)*</u> That Doctrine being that "[J]udicial officers are exempt from liability in a civil action for their judicial acts done within their jurisdiction… even when their judicial acts are in excess of their jurisdiction, **unless perhaps where the acts in excess of their jurisdiction are done maliciously or corruptly."** Id. The Supreme court in *Bradley* called *Randall's* insertion of the words "malicious or corruptly" – qualifying words. It did not disagree with this doctrine, it stated "[I]n the *present case*… the qualifying words used were **not necessary** to a correct statement of the law." <u>*Bradley v Fisher, 80 US 335 – Supreme Court (1872*</u>) 150 years later this doctrine has been misapplied or simply done away with the wave of the hand. Because of such, it should be of no surprise that 150 years later the Plaintiff has alleged an existential amount of Tyranny in this case occurring in nearly all branches of Georgia's government including its judiciary and GA's federal judicial officers in this Federal court. As such, it should also come as no surprise to all of America that as a young black man he has alleged that "[H]e has been esoterically left within the realm of the state of nature to fend for oneself **all because of his knowledge** and his pursuit to hold public servants accountable to the laws that they had a duty and were obligated by law to follow." [Doc. 1. Par. 127] According to *Bradely* and *Randall* Judicial immunity does not apply.

C. **PLAINTIFF STATES A BREACH OF CONTRACT - CONTRACTUAL OBLIGATION - LEGAL OBLIGATION AND LEGAL DUTY AGAINST DEFENDANT APPELLATE JUDGES (COUNT 2)**

Georgia's own social contract provides that "Government is instituted for the protection, security, and benefit of the People." *See Georgia Constitution Art. I Section II Par. II*. That the framers formed our constitutional compact for the "benefit of the People" cannot be disputed.[1] Plaintiff alleged that he is the beneficiary to the Georgia and U.S. Constitution (compacts) – and that Defendant Appellate Judges is bound by contract with the beneficiaries as a result of their oaths. [Doc. 1. Par. 39-41] The Plaintiff further alleged that Defendant Appellate Judges having taking such oath, acting as Judges in Plaintiff's modification of child custody case, with malice or reckless disregard for his rights, did knowingly and persistently, without justification, disregard controlling authority, the law & facts (their duties) & refused to provide Plaintiff a *proper* remedy, redress, psychological vindication & relief to his meritorious grievances during his appeal of judgements of Georgia judge Brian Amero. [Id. Par. ¶ 60, 139-142]

Plaintiff states that these duties are "[S]tate's obligations under the Fourteenth Amendment… not simply generalized ones… the State **owes to each individual** that process which, in light of the values of a free *society*, can be characterized as *due*." *Boddie v. Connecticut. 401 US. 371 (1971)*. Plaintiff argues what was *due* here was a *proper* remedy, redress and psychological vindication while acting as Judges and an "[E]xpression of the individuals allegiance **to the principles embodied in that document**". *In re Lindsey, 158 F. 3d 1263 – Court of Appeals, District of Columbia (1998)* Not otherwise.

(i)   Plaintiff has an enforceable right as third party beneficiary to the U.S. and GA Constitutions ("Compacts") to sue Defendant Appellate Judges for breach of contract.

---

[1] It was also James Madison that proposed an Amendment to the Constitution that "[T]he Government is instituted and ought to be exercised for the **benefit** of the People." 1st Congress, 1st Session, June 8th, 1789, pg. 451-453.

The Plaintiff alleged an enforceable contractual right to sue Defendant Appellate Judges as **third party beneficiary** to the "United States Constitution and Georgia constitution" – the social compact(s) or contract(s)… for breach of those legal obligations and duties owed to Plaintiff **in the social compact or contract**. Defendants allege that "Plaintiff has failed to show that the Judges entered into a written contract with him, as required by O.C.G.A. § 50- 21-1." [Doc. 41-1. p. 5] However a contract between Plaintiff and Defendants is not necessary. As a beneficiary, "[T]he beneficiary of a contract made between other parties **for his benefit** may maintain an action against the promisor on the contract." *Northern v. Tobin, 585 SE 2d 681 GA Court of Appeals (2003*).) (A third party has standing to enforce that type of contract "it if clearly appears from the contract that it was intended for his benefit.) *Id*." Thus, the Plaintiff has an enforceable contractual right to sue Defendant Appellate Judges in their individual capacities for breach of our compact in which Plaintiff is a beneficiary, into perhaps they show he is not.

(ii)     Defendants have a contract with the social contract or compacts (Georgia and United States Constitution) in which Plaintiff is a beneficiary.

Defendants allege in their motion that "There is no such thing as a **"social contract"** *between* state officials and Georgia citizens." [Doc 41-1. Pg. 5] However Georgia's own Supreme court states that, "[T]o ensure the preservation of this **social contract *between* our government and its citizens** ... we developed a group of rights defined by a constitution, and a judicial system charged with being the vigorous and independent guardian of those rights." *Christensen v. State, 468 SE 2d 188 266 Ga. 474 -Ga Supreme Court (1996*) Plaintiff assumes that Defendants allege that there is no written contract between Georgia state officials and Georgia citizens to defeat his breach of contract claim. Plaintiff argues that the Defendants oath

of offices was a promise owed to the beneficiaries of the compact(s) in the law of contracts.[2]

"[A] third-party beneficiary contract is **one in which the promisor engages to the promisee to render some performance to a third person**." *Northern v. Tobin, 585 SE 2d 681 GA Court of Appeals (2003)*[3] Plaintiff requests the court take judicial notice of Article VI of the Constitution. Plaintiff argues that Defendants oath was in fact a contract to abide by the legal duties and obligations *principled* in the compact(s) which included providing Plaintiff "an adequate, honest and good faith review" acting as judges in Plaintiffs direct appeal and a "proper remedy, relief and redress from any erroneous decision in the lower court and overall protection of the laws." [Doc. 1. Par. 46-47, 141] In other words Defendants oath was a contract with our constitutional compact(s) erected for the benefit of the people and Plaintiff has a contractual right to now enforce that breach of compact as beneficiary to the compact(s).

### D. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT RIGHT TO A PROPER REMEDY, REDRESS AND RELIEF – VIOLATION OF FOURTEENTH AMENDMENT PROTECTION OF THE LAWS (COUNT 4)

Plaintiff proposed a question that interests millions of Americans across the several states. Plaintiff alleged, "For what purpose is the right to a redress of grievances when that right is met by public servants in either the offices of the judicial or executive branch where the grievance is submitted, who owe a duty and obligation to provide a remedy if one shall be rendered according to law but with malice or reckless disregard for the rights of the aggrieved, refuses, fails, withholds or denies *meritorious* redress when such redress should have been rendered", end quote. [Doc. 1. Par. 488] Plaintiff argues this question has been answered as early

---

[2] Restatement of Contracts (Second): A promise is a contract.
[3] "[H]ow immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support." *Marbury v Madison. 5 US 137 - Supreme Court (1803)*

as 1803 in the Supreme court case of *Marbury* in which the court stated, "[I]t cannot be presumed that any clause in the constitution is intended to be without effect." *Marbury v. Madison. 5 US 137-Supreme Court (1803)* Thus Plaintiff argues he was not merely entitled to have his appeal simply docketed in order that Defendant Appellate Judges merely review his appeal, he was in fact entitled to a *proper* remedy. As such, Plaintiff alleged two claims against Defendants. (1) First, a violation of his First and Fourteenth Amendment rights **to a proper remedy, redress and relief**. (2) Second, a violation of his Fourteenth Amendment rights to **procedural and substantive due process** "in the protection of the laws". [Doc. 1. Count 4] Plaintiff rejects the gamesmanship in which Defendant's counsel attempts to *strictly* house Plaintiff's claim as an access-to-court claim. [See Doc. 41-1, pg. 7] As applied to these Defendants, Plaintiff alleged that the First Amendment *also* included interests in "[P]rivate litigation - compensation for violated rights and interests, the psychological benefits of vindication [and] public airing of disputed facts" and "the right to a *proper* remedy, redress, relief." [Doc. 1. Pg. 124] Moreover, as with his access to court claim Plaintiff shows "[T]hat [he] suffered an actual injury in that [he] lost a chance to pursue a nonfrivolous or arguable underlying claim and (2) that [he has] … no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." *Preacher v. Overmyer, Dist. Court, WD Pennsylvania, (2020)*

Plaintiff first addresses Defendant Appellate Judges violation of his First and Fourteenth Amendment **right to a remedy, redress and relief** then the latter – the violation of his fourteenth Amendment rights to procedural and substantive due process and how these violations cause him injury because he lost the chance to pursue a nonfrivolous argument and have no other remedy that may be awarded as recompense for the loss of psychological vindication and relief.

(1) <u>THE DENIAL OF PLAINTIFF'S MOTION TO RECONSIDER, MOTION TO
SUPPLEMENT AND DISQUALFIICATION MOTION VIOLATED PLAINTIFF'S
FIRST AND FOURTEENTH AMENDMENT RIGHTS</u>

Plaintiff argues that in lieu of receiving the *proper* remedy and the psychological benefits

of vindication that he was entitled to, that his Motions to reconsider, his post motions to

supplement and his disqualification motions which were ruled upon by Defendant Appellate

Judges knowing or having reason to know – based on their 50 years of collective experience – of

what the law was and what it said, rendered decisions that were manifestly incompatible with the

law and refused to recuse knowing or having reason to know that they had a bias, prejudice or

that their impartiality could reasonably be questioned. [Doc. 1. Par. 493]

Plaintiff alleged facts showing that these acts were done with **malice and reckless**

**disregard for his rights**. [Id] Thus Plaintiff argues the denial of the previous mentioned motions

violated his 1st and 14th Amendment right in the psychological benefits of vindication and the

right to a proper remedy, redress and relief because Defendant's deliberately denied clear

*meritorious* requests for a *proper* remedy requiring a different decision than the ones rendered.

(a) <u>Affirmance of Georgia Judge Amero's entry of a Child Support Order Was Manifestly
Incompatible With The Law.</u>

Plaintiff alleged that on 1/26/2023, he filed a Motion for Reconsideration to the

Defendant Appellate Judges Rule 36 Order affirming of the entry of a child support Addendum

on 1/19/2023 stating therein said Motion to reconsider, to wit;

> "The courts entry of a Child Support Addendum in this case is **purely falsified**. This
> courts Rule 36 affirmance overlooks a decision on this issue as controlling as authority ...
> that ... , "[T]he term custody does not include a payment of child support. It follows that **a**
> **prayer for a change in custody does not of its own force pray for a simultaneous and**
> **commensurate** *modification* **of child support**. The petition here does not pray for any
> modification of child support." *Petry v Romo. 547 SE 2d 736- Ga: Court of Appeals*
> *(2001)* There is no Petition to modify Child Support filed on the record in the lower court
> nor included in the record in this case although mischaracterized as such in the court
> index on page 2 Par. 7 by Henry County clerks. **No Petition to modify child support by**

**any of the parties was filed in this [lower case] and no prayer requested such**. It follows that this action was solely a modification of custody proceeding and not otherwise, thus this issue is appropriate for *reconsideration* on appeal as the record does not support that a Child Support modification petition was ever filed in such case nor was there a prayer for such relief... which requires a different decision from that rendered." [Exhibit X-2 -Motion for Reconsideration pg. 11] [Doc. 1. Par. 145]

These facts showed that the falsification of a child support record was clearly meant to be overturned or reversed because Plaintiff alleged no petition to modify nor prayer for relief was requested by any party in his modification of child custody case thus, showing that the Child Support Addendum was falsified. In the face of these clear facts and a case on point with Plaintiff's modification of child custody case compelling reversal, Defendant Appellate Judges denied this Motion to reconsider on 2/1/2023 although having 50 years combined experience to know that it required a different decision than the one rendered thus their denial of such relief as Plaintiff alleged, "was manifestly incompatible with the law". [Doc. 1. Par. 145-150]

(b) Affirmance of Georgia Judge Brian Amero's refusal to recuse/disqualify when mandated or required was manifestly incompatible with the law.

Plaintiff further alleged that On 1/26/2023, he filed a Motion for Reconsideration to the Appellate Justices affirmance of the denial of a recusal motion stating therein said motion, to wit;

"The lower court judge had solely two reasons for denying Appellants recusal, with respect to the first reasoning ... [the court stated] ... " ... Respondent alleged the Court acted within a "scheme, plot or conspiracy" to block Respondents suits ... by unreasonably delaying a hearing on Respondents request to proceed in forma pauperis in a separate case, Case No. 2021-SUCV-1579-BA. However, Respondent alleged in the Motion that his poverty affidavit was filed on June 8th, 2021, and that a hearing on that matter was scheduled for August 11th, 2021." However, the Appellant's recusal motion never stated that the court acted to block his Open records lawsuit ... and specifically alluded to the trial court Judge's "failure to ensure that the issue of indigence did not affect a decision on the merits of the pending action." [Vol 2. ,r Pg. 112]. The recusal motion specifically stated; "there has been no order denying or allowing the Open Records Complaint to proceed." [Vol 2. Pg. 112 Par. 8] Not that Appellant's Open Records suit was being blocked. Thus, this court overlooked a material fact including controlling authority which would require a different decision from rendered because, "[M]ischarcterizing the defendants allegation regarding the reason for the delay, the trial court evaluated and accepted the truth of his own factual allegations, mandating his

recusal." A & M HOSPITALITIES. LLC v. Abmchandani. 871 S.E2d 290 {2022) [See Exhibit X-2 pg. 8] [Doc. 1. Par. 151]

The facts in the complaint alleged and show that Georgia judge Brian Amero had two reasons for denying Plaintiff's motion to disqualify in his modification of child custody case. As to the first reasoning, Plaintiff argues and it is clearly shown that Georgia judge Amero deliberately mischaracterized the reason for the delay of Plaintiff's Open records Complaint against the City of Hampton which was used as an excuse to deny his Motion to disqualify. As to the second reasoning, Plaintiff argues it is just as compelling as the first. Plaintiff stated that Georgia judge Amero alleged as to the second reason denying his motion to disqualify, to wit;

> "[The] Respondent also alleged that the Court had the opportunity to review a "Writ of Habeas" challenging a prior conviction from a case involving Hampton City officials but did not do so because of the Courts "agreement or possible agreement" to delay Respondent's complaints against the City of Hampton. However, Respondent acknowledged that this writ, which he alleged was presented to the "Henry County clerks" on July 23, 2021, **was neither filed nor was assigned a case number**. "Bare conclusions and opinions stated in the affidavit are not legally sufficient to support the motion or warrant further proceedings." [Doc. 1. Par. 153]

Plaintiff further alleged and argues here that controlling authority would have required the Defendant Appellate Justices to reconsider based on the totality of the circumstances as a **whole of the reasoning** Appellants Writ of Habeas was neither filed nor was assigned a case number, however, being *assigned* under Brian Amero. [4] Plaintiff alleged in his complaint that his Motion to reconsider stated that, "based on information received from Suzette Gray (his court clerk)... said Writ of Habeas was assigned to and under Brian Amero and could not be assigned to another Judge..." [and that] "an inference can be drawn that Suzette Gray had *motive* to assign said writ under Brian Amero because of his agreement or possible agreement *with* shared

---

[4] As Plaintiff alleged in his complaint, Defendant Appellate Judges overlooked a material fact that the lower court judge was required to, but never considered, **"[a]ll of the facts set forth in the affidavit** are true." *A & M HOSPITALITIES, LLC v. Alimchandani, 871 S.E.2d 290 (2022)* as to the reasoning his Writ of Habeas was neither filed nor received a case no. [Doc. 1. Par. 154]

motives of conspirators to delay Arnold *complaint(s)* involving the City of Hampton… One *complaint* being Appellants Open records [complaint]. [Id. Par. ¶ 154] Thus facts clearly show that Plaintiff's Writ of Habeas was assigned to Brian Amero according to his court staff and others **although not being filed nor having a case no**. [Id. Par. 154] However, Defendant's denied Plaintiff's Motion to reconsider having 50 years combined experience to know that it was manifestly shown that it required a different decision than the one rendered and was thus manifestly incompatible with the law. [Id. Par. 151-160]

(c) Affirmance of Georgia judge Brian Amero's relocation of Plaintiff's minor child was a manifest injustice and manifestly incompatible with the law.

Plaintiff alleged that in multiple motions to supplement the record for *tendered* and *admitted* records in Plaintiff's modification of child custody case that the Defendant Appellate Judges mischaracterized those requested records as records already in the appellate record although they in fact did not reflect records that were *admitted* and *tendered* in Plaintiff's modification of custody case as opposed to mere filings or exhibits attached to pleadings in the appellate record. [Doc. 1. Par. 162-163] Thus, Plaintiff alleged with malice or recklessness, Defendant Appellate Judges attempted **to lead the Plaintiff to believe** that the *tendered* and *admitted* records were already included in the record although they knew and had reason to know that the records the Plaintiff were requesting were not the *tendered* and *admitted* records. [Doc. 1. Par. 165][5] Plaintiff alleged that the records he sought to "supplement" made a **"substantial issue of fact"** of whether there was a showing of a substantial change in circumstances, because the 1/29/2020 contempt ruling (1) showed that Plaintiff's custody agreement was altered within 2 years which required a showing of a substantial change in circumstances and (2) Plaintiffs

---

[5] As Plaintiff alleged in his Complaint, he Motioned the Appellant court to order the trial court clerk to: "transmit an exhibit tendered in the lower court Final trial on July 21st, 2021, specifically his affidavit entitled "Arnold Affidavit" and a "Contempt Order". [Doc. 1. Par. 163]

affidavit entitled "Arnold Affidavit" contradicted any inference/evidence in the lower court's

three (3) findings in its Final Order – one being Plaintiff's child's mother had a support system in

Florida to care for the minor child – that Plaintiff was not "*the*" support system for his child or

that a support system was lacking to find such a substantial change of circumstances because the

Affidavit *tendered and admitted* showed that Plaintiff for the **majority of 2020 up until June of**

**2021 maintained the majority of the custody of his child**. [Id. Par. 167] As such, on 1/26/2023

when Plaintiff filed his Motion to reconsider, he mentioned facts that were relevant to the records

he sought to supplement on appeal to show that the relocation of his minor child was not based

on a finding of any substantial change in circumstances which was required in such case.[6]

Plaintiff alleged however, that Defendant Appellate Judges did not write a written

opinion and did not do so for two reasons (1) because Plaintiff's "Arnold Affidavit" manifestly

made a substantial issue of fact which operated against Georgia judge Brian Amero's findings of

any substantial change of circumstances and (2) that they knew or should have known that absent

a written and detailed opinion the Plaintiff could not pinpoint the error in law in an opinion

normally rendered by Appellate courts to determine whether those records he sought to

supplement were actually needed on appeal because their one page rule 36 Order affirming the

lower court's orders allowed them to avoid writing a written opinion. [Id. Par. 166-169, 172]

Thus, as Plaintiff alleged, on 2/1/2023, the Defendant Judges, having 50 years of combined legal

experience, affirmed Ga judge Brian Amero's Final Order relocating the Plaintiffs minor child by

---

[6] Plaintiff alleged the "Contempt Order" showed a need to find a substantial change of circumstances on appeal because the parties custodial agreement was modified and altered within two years from the date of the Final hearing to avoid the bright-line test mentioned in *Bodne* and that his affidavit entitled "Arnold Affidavit" disproved any notions in the lower court's findings that a support system was needed elsewhere to support the required substantial change in circumstances arising from the sole three (3) reasons the lower court alleged modified the custody agreement in its Final order for, (1) Petitioner's move to Florida to start a new job, (2) making the parenting plan impossible (3) and a support system in Fla who were able to act as a support system for the parties minor child. [Doc. 1. Par. 170 Pg. 296-298]

deliberately refusing, omitting, and/or ignoring statue, material facts, case law and plain controlling authority that required a different decision from the one rendered and knowingly mischaracterized and denied Plaintiffs requests to supplement the record and avoided a written opinion on this issue because they knew or had reason to know that a written decision would have shed light that **the mischaracterized records that Plaintiff sought to perfect the record on appeal were actually needed** and required a different decision than the one(s) rendered. [Id. 173-174] Plaintiff alleged and argues that to do so was not only manifestly incompatible with the law but a *manifest injustice* to Plaintiff as he alleged in his complaint. [Id.]

(d) Denial of Plaintiff's disqualification motion against Appellate Judges was manifestly incompatible with the law.

Plaintiff requests the court to take judicial notice of the disqualification motion attached to his complaint as exhibit X-3 filed on 2/13/2023, which Plaintiff incorporates herein this section as if fully alleged herein and argues that the facts *manifestly* showed that it required their recusal. On 2/13/2023, the Plaintiff filed a motion to Disqualify all Justices dealing with the 1/19/2023 "Rule 36" affirmance of Georgia judge Brian Amero's lower court orders. [Doc. 1. Par. 175-176].[7] Plaintiff then alleged that two days later, on 2/15/2023, Defendants denied this motion by **defending against the allegations** – mandating their recusal – which Defendants stated in such order denying, to wit; "Specifically, appellant contends that the judges of this

---

[7] Plaintiff alleged that throughout the due course of his appeal he was deliberately misgendered in multiple court orders, his requests to supplement the record was repeatedly denied and knowingly mischaracterized in multiple orders denying such requests, that a decision in this case was deliberately rendered without all evidence from the lower court and that the Justices making such decision knowingly failed to render a written opinion and **comply with the law** and controlling authority which would require a different decision from the one rendered ... and that from this conduct as a whole exists a patterns of bias or prejudice and a systematic pattern of prejudicial conduct is evident or can be determined that each Judge(s) impartiality can be reasonably questioned requiring recusal." [Exhibit X3 pg. l] Plaintiff further alleged that "This systematic pattern of deliberate and knowing prejudicial conduct, bias and prejudice as a whole came within the knowledge of Appellant on or around February 1st 2023 when the court denied his Motion for Reconsideration that clarified, made certain & alluded to case authority that required a different decision than the one rendered. [Id. Par. 177]

Court exhibited bias by *admittedly, mistakenly* referring to him with the wrong pronoun in several orders denying his motion to supplement the record and by denying those same motions ... appellant seeks recusal based on an *inadvertent* use of the wrong pronouns." [Doc. 1. Par. 179-180] Such Defense required their immediate recusal. "([E]xplaining that argument over recusal issues "may draw the judge into presenting his side of the story, which in turn may create a perception that the judge is an advocate or hostile witness rather than an impartial adjudicator in the case," **requiring** disqualification." *Mondy v. Magnolia Advanced Materials. Inc., 815 SE 2d 70 303 Ga. (2018*) On this basis Plaintiff alleged there is reason to believe that Defendant Appellate Judges were actually bias and prejudicial against the Plaintiff and/or showed favor to Georgia judge Brian Amero by their defending against the allegations made in Plaintiffs disqualification motion seeking to disqualify Defendant Appellate Justices for the exact acts and omissions supporting Plaintiff's allegations of bias and prejudice in his Motion to disqualify and that no reasonable member of the public could reasonably state nor conclude that their orders would not bring into question each judges impartiality. [Id. Par. 180-188]

On 2/27/2023, the Plaintiff filed a Motion to Reconsider the Defendant's order denying that motion to disqualify laying out all the clear facts that manifestly and clearly showed that their recusal was mandated or required. [Id. Par. 203] However, Defendant Appellate Justices would be never presented with that motion all due to Defendant Cooper's refusal to file such motion which Plaintiff alleged, "allowed the [Defendant] Appellate Justices to avoid being confronted with Plaintiff's Motion to Reconsider that showed clear controlling authority that mandated their recusal." [Id. Par. 221] Thus, Plaintiff argues that for these reasons the denial of his motion to disqualify Defendant Appellate Judges was manifestly incompatible with the law. As such, Plaintiff states that his injuries cannot now be remedied because his First Amendment

interests in the psychological benefits of vindication has been successfully frustrated and delayed and no recompense can compensate for that "frustration and delay" which is already lost to the detriment of Defendant Appellant Judges and that their denial of his motion to disqualify also interfered with Plaintiff's chance to pursue non-frivolous arguments under *impartial* judges.

(2) THE DENIAL OF PLAINTIFF'S MOTION TO RECONSIDER, MOTION TO SUPPLEMENT AND DISQUALFIICATION MOTION VIOLATES PLAINTIFF'S 14th AMENDMENT RIGHTS TO PROCEDURL AND SUBSTANTIVE DUE PROCESS

Plaintiff realleges all allegations prior hereto by reference.

Plaintiff now addresses Defendant's violation of his Fourteenth Amendment Rights to procedural and substantive due process in the **protection of the laws** under Count 4. [Id. ¶ 485, 493] It is clear that "[T]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison, 5 US 137 – Supreme Court (1803*) "[F]or, in that category… if the Federal Constitution prohibits a State from taking certain actions regardless of the fairness of the procedures… the constitutional violation is complete as soon as the prohibited action is taken; the independent **federal remedy is then authorized** by the language and legislative history of § 1983." *Daniels v. Williams, 474 US 327 – Supreme Court (1986*)

(i)     Defendant's violated Plaintiff's Substantive and Procedural Due Process Rights.

Plaintiff alleged that "In lieu of his direct appeal being docketed in a court erected for his benefit for correction of errors amongst judges who owed him… [a] duty to correct errors… he was instead met by a strategic and skillful judicial stratagem to prevent, delay and deny him *proper* redress and relief." [Doc. 1. Par. 240] When claiming a protection of the laws in the form of his filing an appeal to review orders from his child custody case he contended was in error the Plaintiff was met by actions and conduct that denied him at every turn, *meritorious* relief and

redress, regardless of what the law demanded or required. Although Defendants urge that "Plaintiff had access to the Georgia Court of Appeals" [Doc. 41-1. P 8] Plaintiff argues, "[T]he substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them," *Waddell v. Hendry County Sheriff's Office, 329 F. 3d 1300 (2003)* by the filing of such an appeal. As such, Plaintiff argues that while having his appeal reviewed he was entitled to substantive and procedural due process and the outright denial of his *proper* remedy and psychological vindication in relief violated his 14th Amendment substantive & procedural rights.

### E.  PLAINTIFF STATES A § 1983 CONSPIRACY CLAIM AGAINST DEFENDANTS

Plaintiff realleges all allegations prior hereto by reference.

Because the Defendants Appellate Judges have a combined 50 years of experience to know what the law is, what it says and what it demands, questions not only arise to their impartiality but to the reasons Defendant Appellate Judges denied even the most basic of relief which was clearly manifestly incompatible with the law and their combined experience. These acts are not isolated but evince patterns of a scheme to avoid rendering Plaintiff a *proper* remedy by strategic *judicial stratagem*. Further, this judicial stratagem is also neither isolated but done in conjunction with the continuation of the *meritorious* denial, delay, acquiescence or ignoring of grievances submitted in Georgia's executive branch including this Federal court involving the same Georgia judge – Brian Amero. These acts shows and creates the inferences of conspiracy. Plaintiff argues that the orders denied by Defendants do not evidence those type of court orders entered by judges exercising good faith, in which an appeal would be an adequate responsive remedy, rather, it shows a continuation of the usurpation of public office and an esoteric conspiracy by state actors who with malice and reckless disregard for Plaintiff's rights knew of

the need and at every turn did deny Plaintiff even the clearest *meritorious* redress, railroaded, delayed or deep-six his relief, redress and his remedy. Facts also show that Defendants did so because there was a possibility or certainty that criminal prosecution could or would be brought against judge Amero in the relief requested because of the criminal nature of a falsified record.

The facts further show that when Plaintiff sought to recuse said judges as a part of his *procedural* remedy to obtain an impartial referee, the Defendant's not only argued against the motion which required their recusal or showed the bias and prejudice alleged, but was able to avoid his motion to reconsider which alleged case law that undoubtedly required their recusal by the acts of a clerk of their court. These facts, evidence, and inferences all show the agreement necessary to prove § 1983 conspiracy and contrary to the Defendants belief, a direct agreement or even direct evidence is unnecessary because "[C]onspiracies are by their very nature secretive operations, and may have to be proven by circumstantial evidence, rather than direct, evidence." *Harris v. Pierce County, Dist. Court, SD Georgia (2014)* "[T]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Cruz v. Savoie, Dist. Court, ED California (2023)

(1) THERE IS CIRCUMSTANTIAL EVIDENCE AND INFERENCES OF DEFENDANT's INVOLVEMENT IN A CONSPIRACY AGAINST PLAINTIFF.

Plaintiff argues that Defendant Appellate Judges (A) knew or had knowledge of the common objective of the conspiracy (B) willfully participated in the conspiracy and in furtherance thereof denied Plaintiff of meritorious relief and redress.

(a) Defendants Appellate Judges knew of the common conspiratorial objective and need not have known all the details of the conspiracy.

Defendant Appellate Judges knew of and had knowledge of the common goal of the conspiracy, as Plaintiff alleged was a "[G]eneral conspiratorial objective to frustrate or deny

Arnold of due and proper redress, relief, remedy vindication and protection of the laws when such grievances involved chief judge Brian Amero." [Doc. 1. P. 2] Defendant Appellate Judges, like all Defendants in this case, knew that the grievances asserted, and that the relief requested by the Plaintiff involved orders or relief requested against Georgia judge Brian Amero. [Id. ¶ 136-142] The Defendant Appellate Judges also knew that one of those orders from which Plaintiff sought review of, was what he alleged to be a "Falsified Child Support Addendum." [Id. ¶ 142, 145] Plaintiff alleged that based on their "[C]ombined 50 years of experience, when Plaintiff mentioned that the Child Support Addendum was "purely *falsified*[8]" in his Motion to reconsider and stated that it was entered "absent a Modification Petition" in his Appellate brief that they knew criminal prosecution was possible against Georgia judge Brian Amero if the relief went in Plaintiffs favor." [Id. ¶ 199] This is because of the criminal nature of a falsified record and because the Plaintiff alleged that "[A] change in custody does not of its own force pray for a simultaneous and commensurate modification of child support" – it showed the record was "purely falsified." [Id. ¶ 145] Even if the Defendants did not know the full extent of the criminal nature of falsified records, which they did, Defendants still knew of the general common goal.

   (b) <u>Defendants willfully participated in the conspiracy and in furtherance thereof denied Plaintiff of meritorious relief and redress.</u>

     Plaintiff alleged that there is no other plausible reason (and the only plausible reason) why highly skilled and educated Appellate Court Justices with a combined 50 years of legal experience would affirm orders and render *multiple* decisions or rulings being manifestly incompatible with the law, especially affirm – absent *modification* of support petitions – what Plaintiff alleged to be was a "purely falsified support order" if they had not known or had no knowledge of an esoteric shared motive, understanding or agreement of the need to deny

---

[8] See O.C.G.A. 16-10-20 "False Statements and Writings"

Plaintiff of any relief related to any grievances against Georgia Judge Brian Amero because there was a possibility that criminal prosecution could be brought if the relief actually went in Plaintiff's favor. [Doc. 1. Par. 198] These facts not only provide the substantial inferences to prove Defendant's participation in such a conspiracy, but other facts support further inferences of their involvement in such a conspiracy based on the actions of Defendant Tabatha Cooper, who refused to file Plaintiff's motion to reconsider which successfully allowed Defendant Appellate Judges to avoid articulated law within a motion which undoubtedly showed that it required their recusal. [Id. ¶ 203-224] Not only did Defendant's deny orders that were manifestly incompatible with the law, but motions were prevented from being docketed in that court by that court's clerk's which motion just so happened to be a motion not only seeking to recuse those judges but required recusal of those very judges. As Plaintiff alleged, there is reason to believe that Tabatha Cooper took orders from Defendant's – to make certain that the essential objective of the conspiratorial objective **was not disturbed**. [Id. ¶ 221] What is obvious are facts that show "[S]ecretive operations… by circumstantial evidence," [*Harris v. Pierce County, Dist. Court, SD Georgia (2014)*] and Defendant's involvement in conspiracy including acts in furtherance thereof by frustrating or denying Arnold of *proper* redress, relief, remedy, and vindication and the protection of the laws when such grievances involved chief judge Brian Amero.

## F. **DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

In the 11th circuit "This Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Torres v. Howell, Court of Appeals, 11th Circuit (2022)* It is clearly established and Plaintiff argues that *Marbury* put beyond debate that Defendant's had to render Plaintiff a *proper* remedy for *meritorious* redress. It has been clearly established since 1803 that

every injury have "its **proper** redress." *Marbury v. Madison, 5 US 137 – Supreme Court (1803*)

To state that Plaintiff only has a right to petition *for* redress but not obtain the redress he petitions

for obscures that "[I]t cannot be presumed that any clause in the constitution is intended to be

without effect." *Marbury v. Madison, 5 US 137-Supreme Court (1803*) The notion of such flies

in the face of the protection promised to Plaintiff and all citizens – the whole reasoning of the

People's creation of a politic society in the first place. See *Carlisle v United States, 83 US 147 –*

*Supreme Court (1873*) Denials of proper relief, motion to disqualify & psychological vindication

in redress – shows typically and quite obvious to have all been apart of "[C]onspiracies, cover-

ups, and other officials acts that have impeded, and now preclude, a plaintiff from obtaining a

*remedy* in a **meritorious** case." *Point Conversions, LLC v. Lopane, Dist. Court, S.D. Florida*

*(2021*), notwithstanding and "[R]egardless of the fairness of the procedures used to implement

them." *Waddell v. Hendry County Sheriff's Office, 329 F. 3d 1300 (2003)*

### G. ELEVENTH AMENDMENT IMMUNITY DOES NOT APPLY

For the same reasons alleged in Plaintiff's Response in Opposition to Defendant's Kemp

and Carr's Motion to Dismiss, Eleventh Amendment Immunity does not apply against Defendant

Appellate Judges in an official capacity or personal capacity. [See Doc. 37 p. 3-5, 8]

### H. PLAINTIFF STATES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff realleges all allegations prior hereto be refence.

Continuing, Plaintiff alleges these claims could have been redressed and the intentional

infliction would have been mitigated, however, that Defendants with malice and reckless

disregard for the rights of the Plaintiff and without justification, disregarded controlling

authority, the law & facts & refused to provide Plaintiff a *proper* remedy, redress, psychological

vindication & relief to his meritorious grievances during his appeal of judgements of Georgia

judge Brian Amero. [Id. Par. ¶ 60, 139-142] Plaintiff alleged that such acts cause Plaintiff severe

mental and emotional distress, mental anguish, anxiety. [Doc. 1. Par. 516] Plaintiff alleged that

the Defendants knew and had reason to know that any finding of meritorious errors or required

relief in Plaintiff's appeal would or could; (1) result in Brian Amero being disqualified and his

orders causing the relocation of Plaintiffs minor child being overturned or declared void; (2) in a

finding that a substantial change of circumstances was not found resulting in the reversal of

modification or (3) in the entry of the child support addendum being reversed or considered void

and that overturning of said modification would entitle Plaintiff to spend more time with his

child. [Id. Par. ¶ 229-231] Plaintiff alleged it can be argued to a jury that he would certainly face

mental and emotional distress, mental anguish, and psychological anxiety while *merely awaiting*

any decisions on appeal of (1) whether or not the modification of his custody agreement was in

error and/or (2) whether Plaintiff would continue to be subject to a decreased time with his minor

child of 3 days. [Id. Par. ¶ 242] Plaintiff also alleged that he would certainly face severe mental

and emotional distress, anxiety, mental anguish and become severely deprived of psychological

vindication when the decisions or orders were rendered being manifestly incompatible with the

law and contrary to authority. [Id. Par. ¶ 243] Thus, it can certainly be argued to a jury that a

Plaintiff would face severe mental and emotional distress when having his appeal housed

amongst judges who owe a legal duty and obligation to render a proper remedy if one required,

however, per *judicial stratagem* meet a team of judges who deny or frustrate Plaintiff's

meritorious redress involving not only the overturning of clear falsification of child support

records that would have mitigated transactional dangers but the reversal of an order that would

have gave him more time with his minor child. To the extent that Defendants argue that

Plaintiff's IIED claim is barred by sovereign immunity, Plaintiff argues that this court has

supplemental jurisdiction over his IIED claim and the facts compel such jurisdiction over this claim and thus his claim is not barred by Sovereign Immunity.

I. **THE COURT HAS SUPPLEMENTAL JURISDICTION OVER COUNT 2 AND COUNT 6 ALLEGED AGAINST THESE DEFENDANTS**.

Plaintiff argues that the court has supplemental jurisdiction over Plaintiff's Breach of Compact claim (Count 2) and his Intentional infliction of emotional distress claim (Count 6). "This Court, in turn, has supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." *Hassan v. city of Atlanta, Dist. Court, ND Georgia 2022 No. 1:21-CV-4269-TWT.* "[T]he district courts may decline to exercise supplemental jurisdiction over a claim... if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559 (1994)* Neither of these circumstances apply to Arnold's case. Count 1 and Count 6 is more than related, they in fact arise from the constitutional claims alleged against Defendants. Without the violation of Arnold's rights, Plaintiff argues here that there would be no breach of compact and IIED from those violations – thus the court has supplemental jurisdiction over Plaintiff's breach of compact claim. *See, e. g., Dunn v City of Fort Valley, 464 F. Supp. 3d 1347, 1374 (M.D. Ga. 2020)* (exercising supplemental jurisdiction over an Open Records Act claim where the records sought were related to the same events as the plaintiff's constitutional claims). Further, there is no novel or complex issue of law over any purported state claim by the Plaintiff. His claims of Intentional infliction of Emotional Distress ("IIED") are neither novel or complex but the resultant of the constitutional deprivations arising from the

abuse of power that Plaintiff alleges is the resultant of the Defendants denial of meritorious redress and denying him a proper remedy. [Doc. 1. Par. 134-202] Second, his breach of compact claim is also neither a complex or novel issue of law but a clear claim of an enforceable contractual right as beneficiary to the United States compact – in which Georgia's appellate court held 20 years ago that a beneficiary to a contract in fact had to sue on a breach of the compact.

**(a)** There is no compelling reason that does not outweigh this courts exercise of supplemental jurisdiction.

Moreover, under the circumstances of this case it further compels an impartial court to exercise supplemental jurisdiction over declining because all comity considerations compelling the former weighs in Plaintiff's favor. Plaintiff has alleged facts supporting his declaration that he, "[H]as repeatedly plead for protection by her state and have been answered by repeated injury marked by every act which defines Tyrannical activity in the public offices of Georgia. Plaintiff publishes and declares that… as applied to Plaintiff, Georgia's institutions and agencies have been usurped and managed as an instrument of oppression." [Doc. 1. Pg 1-2] It has been alleged throughout this complaint and continuously shown throughout these proceedings "[S]heriffs, having eyes to see, see not; judges having ears to hear, hear not… [J]ustice, skulk away as if government and justice were crimes and feared detection." *Mitchum v. Foster, 407 US 225 – Supreme Court 1972*. Not only is supplemental jurisdictional applicable, but the facts compel this court take jurisdiction because Georga's state courts cannot "[A]ssure adequate vindication of constitutional rights." *Younger v. Harris, 401 US 37 – Supreme Court (1971*)

Submitted this 15th day of August 2023.

Mr. Deandre Arnold
**Mailing Address**: 7577 Rutgers Circle
Fairburn, Georgia 30213
**Email**: Dresmailbox89@gmail.com
**Telephone**: 470-514-3097

## CERTIFICATE OF SERVICE

Plaintiff, Deandre Arnold, files his certificate of service and states that the foregoing

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS AMANDA MERCIER,**

**STEPHEN DILLARD, AND TODD MARKLE'S MOTION TO DISMISS** was served on the

Defendants below by placing the same in U.S.P.S. mail and mailing to Defendants regular mail at

the addresses below and the same by email below.

**ELLEN CUSIMANO**
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334-1300

**A.D.A NEELI BEN DAVID**
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 3030

Dated: August 15th, 2023

Attn: Arnold, Deandre
**Mailing Address**: 7577 Rutgers Circle
Fairburn, Georgia 30213
**Email**: Dresmailbox89@gmail.com
470-514-3097



DEANDRE ARNOLD
MAILING: 7577 RUTGER'S CIRCLE
FAIRBURN  GA 30213

**1 LBS**

DWT: 5,5,1

**1 OF 1**

**SHIP TO:**
ATTN: CLERK OF THE COURT
UNITED STATES CLERK OF THE COURT
SUITE 2211
75 TED TURNER DRIVE NORTHWEST
**ATLANTA  GA  30303**

**GA 303 9-02**

**UPS GROUND**
TRACKING #: 1Z 173 L0T 03 9403 1031

**BILLING: P/P**

XOL 23.07.08      NV45 33.0A 08/2023"



UNITED STATES CLERK OF THE COUR
75 TED TURNER DR SW
STE 2211
ATLANTA GA 30303

P:REDBL2:2MY    |222

CNN-8180

1Z173L0T039403 1031

SAT08485 Aug 17 03:45:33 2023
US 3032 MIPPS 25.8.0 SAT08485gL